| | |
|---|---|
| DAVID BROWN CAUDLE, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| AAC HOLDINGS, INC., MICHAEL T. CARTWRIGHT, KIRK R. MANZ, and ANDREW W. MCWILLIAMS. | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff David Brown Caudle ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AAC Holdings, Inc. ("AAC" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired AAC securities between March 8, 2017 and April 15, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      AAC was founded in 2014 and is headquartered in Brentwood, Tennessee.  The Company provides inpatient and outpatient substance use treatment services for individuals with drug addiction, alcohol addiction, and co-occurring mental/behavioral health issues in the United States.

3.       Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) AAC's internal control over financial reporting and disclosure controls and procedures was inadequate to accurately reflect adjustments related to estimates for accounts receivable, provision for doubtful accounts, and revenue; (ii) AAC consequently misstated financial and operating results in its annual reports for fiscal years 2016 and 2017, as well as all quarterly reports throughout 2017 and 2018; (iii) accordingly, those reports could not be relied upon, requiring AAC to restate the financial and operating results reflected therein; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.       On April 16, 2019, AAC issued a press release, appended as an exhibit to the Company's Current Report on Form 8-K filed with the SEC, announcing AAC's financial results

for the fourth quarter and fiscal year ended December 31, 2018, and providing guidance for 2019 (the "April 2019 Press Release"). The April 2019 Press Release disclosed that the Company's annual reports for fiscal years 2017 and 2016, as well as all quarterly reports throughout 2017 and 2018, could no longer be relied upon, and stated that these financial statements would be restated to reflect adjustments related to estimates for accounts receivable, provision for doubtful accounts, and revenue.

5.      On this news, AAC's stock price fell $0.40 per share, or 18.69%, to close at $1.74 per share on April 16, 2019.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of AAC' securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). AAC is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

10.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not

limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

11.     Plaintiff, as set forth in the attached Certification, acquired AAC securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant AAC is a Nevada corporation with its principal executive offices located at 200 Powell Place, Brentwood, Tennessee 37027.   AAC's securities trade in an efficient market on the New York Stock Exchange ("NYSE") under the symbol "AAC".

13.     Defendant Michael T. Cartwright ("Cartwright") has served as AAC's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Kirk R. Manz ("Manz") served as AAC's Chief Financial Officer ("CFO") from January 2011 until December 2017.

15.     Defendant Andrew W. McWilliams ("McWilliams") has served as AAC's CFO since January 1, 2018 and served as its Chief Accounting Officer between August 2014 and January 1, 2018.

16.     The Defendants referenced above in ¶¶ 13-15 are sometimes referred to herein collectively as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of AAC's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their

positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     AAC was founded in 2014 and is headquartered in Brentwood, Tennessee. The Company provides inpatient and outpatient substance use treatment services for individuals with drug addiction, alcohol addiction, and co-occurring mental/behavioral health issues in the United States.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on March 8, 2017. On March 7, 2017, after market hours, AAC filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K"). For 2016, AAC reported a net loss attributable to AAC stockholders of $0.59 million, or $0.03 per diluted share, on net revenue of $279.77 million, compared to a net income attributable to AAC stockholders of $11.17 million, or $0.48 per diluted share, on net revenue of $212.26 million for 2015. Additionally, for 2016, AAC reported accounts receivable of less $45.84 million, accounts receivable, net of allowances of $87.33 million, and provision for doubtful accounts of $21.49 million.

20.     With regard to AAC's disclosure controls and procedures, the 2016 10-K stated, in relevant part:

As of the end of the period covered by this report, our management conducted an evaluation, with the participation of our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act). ***Based on this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded***, processed, summarized and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

(Emphasis added.)

21.     With regard to AAC's internal control over financial reporting, the 2016 10-K stated, in relevant part:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an assessment of the effectiveness of our internal control over financial reporting based on the framework in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on our assessment under the framework in Internal Control — Integrated Framework, our management concluded that our internal control over financial reporting was effective as of December 31, 2016.***

\* \* \*

There have been no changes in our internal control over financial reporting during the fourth quarter ended December 31, 2016, that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting.

(Emphasis added.)

22.     The 2016 10-K also contained merely generic, boilerplate representations regarding the risk of a financial reporting error, stating: "Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Therefore, even those systems determined to be effective can provide only reasonable assurance with respect to financial statement preparation and presentation."

23.     Appended as exhibits to the 2016 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein Defendant Cartwright certified that "[t]he [2016 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," Defendant Manz certified that "[t]he [2016 10-K] fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934," and both Defendants Cartwright and Manz certified that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

24.     On May 4, 2017, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended March 31, 2017 (the "1Q 2017 10-Q").  For the quarter, AAC reported a net loss available to AAC stockholders of $0.60 million, or $0.03 per diluted share, on net revenue of $73.04 million, compared to a net income available to AAC stockholders of $0.59 million, or $0.03 per diluted share, on net revenue of $65.35 million for the same quarter the year prior.  Additionally, the 1Q 2017 10-Q reported accounts receivable of less $13.40 million for the three months ended March 31, 2017; accounts receivable, net of allowances of $94.14 million for March 31, 2017; and provision for doubtful accounts of $6.59 million for the three months ended March 31, 2017.

25.     The 1Q 2017 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

26.     Appended as exhibits to the 1Q 2017 10-Q were signed SOX certifications wherein Defendants Cartwright and Manz certified that "[t]he [1Q 2017 10-Q] fully complies

with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [1Q 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27. On August 3, 2017, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended June 30, 2017 (the "2Q 2017 10-Q"). For the quarter, AAC reported a net loss available to AAC common stockholders of $1.92 million, or $0.08 per diluted share, on net revenue of $78.04 million, compared to a net income available to AAC common stockholders of $0.87 million, or $0.04 per diluted share, on net revenue of $71.54 million for the same quarter the year prior. Additionally, the 2Q 2017 10-Q reported accounts receivable of less $25.28 million for the six months ended June 30, 2017; accounts receivable, net of allowances of $96.53 million for June 30, 2017; and provision for doubtful accounts of $9.50 million for the three months ended June 30, 2017, and $16.08 million for the six months ended June 30, 2017.

28. The 2Q 2017 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

29. Appended as exhibits to the 2Q 2017 10-Q were signed SOX certifications wherein Defendants Cartwright and Manz certified that "[t]he [2Q 2017 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [2Q 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.     On November 6, 2017, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended September 30, 2017 (the "3Q 2017 10-Q").  For the quarter, AAC reported a net income available to AAC common stockholders of $0.76 million, or $0.03 per diluted share, on net revenue of $80.42 million, compared to a net loss available to AAC stockholders of $2.53 million, or $0.11 per diluted share, on net revenue of $70.53 million for the same quarter the year prior.  Additionally, the 3Q 2017 10-Q reported accounts receivable of less $30.98 million for the nine months ended September 30, 2017; accounts receivable, net of allowances of $92.55 million for September 30, 2017; and provision for doubtful accounts of $9.68 million for the three months ended September 30, 2017, and $25.77 million for the nine months ended September 30, 2017.

31.     The 3Q 2017 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

32.     Appended as exhibits to the 3Q 2017 10-Q were signed SOX certifications wherein Defendants Cartwright and Manz certified that "[t]he [3Q 2017 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [3Q 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

33.     On February 23, 2018, AAC filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2017 (the "2017 10-K").  For the 2017, AAC reported a net loss attributable to AAC common

stockholders of $20.58 million, or $0.88 per diluted share, on net revenue of $317.64 million, compared to a net loss attributable to AAC stockholders of $0.59 million, or $0.03 per diluted share, on net revenue of $279.77 million for 2016. Additionally, for the year, AAC reported accounts receivable of less $43.68 million, accounts receivable, net of allowances of $94.10 million, and provision for doubtful accounts of $36.91 million.

34.     The 2017 10-K also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures, the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting, and the merely generic, boilerplate representations regarding the risk of a financial reporting error.

35.     Appended as exhibits to the 2017 10-K were signed SOX certifications wherein Defendant Cartwright certified that "[t]he [2017 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," Defendant McWilliams certified that "[t]he [2017 10-K] fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934," and both Defendants Cartwright and McWilliams certified that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

36.     On May 9, 2018, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended March 31, 2018 (the "1Q 2018 10-Q"). For the quarter, AAC reported a net loss attributable to AAC common stockholders of $0.20 million, or $0.01 per diluted share, on net revenue of $78.47 million, compared to a net loss attributable to AAC common stockholders of $0.60 million, or $0.03 per diluted share, on net revenue of $73.04 million for the same quarter the year prior.

Additionally, the 1Q 2018 10-Q reported accounts receivable of less $1.13 million for the three months ended March 31, 2018; accounts receivable, net of allowances of $99.58 million for March 31, 2018; and excluded figures for provision for doubtful accounts for the three months ended March 31, 2018.

37.     The 1Q 2018 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

38.     Appended as exhibits to the 1Q 2018 10-Q were signed SOX certifications wherein Defendants Cartwright and McWilliams certified that "[t]he [1Q 2018 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [1Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On August 3, 2018, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended June 30, 2018 (the "2Q 2018 10-Q").  For the quarter, AAC reported a net loss attributable to AAC common stockholders of $3.01 million, or $0.12 per diluted share, on net revenue of $86.76 million, compared to a net loss attributable to AAC common stockholders of $1.92 million, or $0.08 per diluted share, on net revenue of $78.04 million for the same quarter the year prior. Additionally, the 2Q 2018 10-Q reported accounts receivable of $0.72 million for the six months ended June 30, 2018; accounts receivable, net of allowances of $97.36 million for June 30, 2018; and provision for doubtful accounts of $0.37 million for both the three months and six months ended June 30, 2018.

40. The 2Q 2018 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

41. Appended as exhibits to the 2Q 2018 10-Q were signed SOX certifications wherein Defendants Cartwright and McWilliams certified that "[t[he [2Q 2018 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [2Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

42. On November 6, 2018, AAC filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended September 30, 2018 (the "3Q 2018 10-Q"). For the quarter, AAC reported a net loss attributable to AAC common stockholders of $11.49 million, or $0.47 per diluted share, on net revenue of $77.47 million, compared to a net income attributable to AAC common stockholders of $0.76 million, or $0.03 per diluted share, on net revenue of $80.42 million for the same quarter the year prior. Additionally, the 3Q 2018 10-Q reported accounts receivable of $3.50 million for the nine months ended September 30, 2018; accounts receivable, net of allowances of $94.58 million for September 30, 2018; and excluded a figure for provision for doubtful accounts for the three months ended September 30, 2018, but provided provision for doubtful accounts of $0.37 million for the nine months ended September 30, 2018.

43. The 3Q 2018 10-Q also contained substantively the same statements quoted in ¶¶ 20-21 above regarding the sound effectiveness of AAC's disclosure controls and procedures

and the lack of any changes in internal control over financial reporting that materially affected, or were reasonably likely to materially affect, AAC's internal control over financial reporting.

44.     Appended as exhibits to the 3Q 2018 10-Q were signed SOX certifications wherein Defendants Cartwright and McWilliams certified that "[t]he [3Q 2018 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [3Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     The statements referenced in ¶¶ 19-44 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AAC's internal control over financial reporting and disclosure controls and procedures was inadequate to accurately reflect adjustments related to estimates for accounts receivable, provision for doubtful accounts, and revenue; (ii) AAC consequently misstated financial and operating results in its annual reports for fiscal years 2016 and 2017, as well as all quarterly reports throughout 2017 and 2018; (iii) accordingly, those reports could not be relied upon, requiring AAC to restate the financial and operating results reflected therein; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

46.     On April 16, 2019, AAC issued a press release, appended as an exhibit to the Company's Current Report on Form 8-K filed with the SEC, announcing AAC's financial results for the fourth quarter and fiscal year ended December 31, 2018, and providing guidance for 2019.  The April 2019 Press Release disclosed that the Company's annual reports for fiscal years

2017 and 2016, as well as all quarterly reports throughout 2017 and 2018, could no longer be relied upon, and stated that these financial statements would be restated to reflect adjustments related to estimates for accounts receivable, provision for doubtful accounts, and revenue. Specifically, April 2019 Press Release stated, in relevant part:

**Restatement**

On March 29, 2019, the Company, the Audit Committee of the Company's Board of Directors and executive management, in consultation with the Company's independent registered public accounting firm, BDO USA, LLP ("BDO"), ***determined that adjustments to certain of its previously issued annual and interim financial statements were necessary, and that those annual and interim financial statements could no longer be relied upon***. ***The adjustments related to estimates of accounts receivable, provision for doubtful accounts and revenue for the relevant periods described below, as well as the related income tax effects. Certain other immaterial reclassifications within the financial statements are also reflected in the adjustments.*** The restatements do not implicate misconduct with respect to the Company, its management or its employees.

The Company's previously issued annual financial statements are included in ***the Company's Annual Report on Form 10-K for the years ended December 31, 2017 and 2016 and the unaudited financial statements and included in the Company's quarterly reports on Form 10-Q for the quarters ended September 30, 2018 and 2017, June 30, 2018 and 2017, and March 31, 2018 and 2017, have been restated*** in the Company's 2018 Annual Report on Form 10-K for the year ended December 31, 2018 to properly reflect these corrections.

The adjustments do not relate to the change in estimate that the Company made during the three months ended September 30, 2018 and effective as of July 1, 2018, regarding its estimate of the collectability of accounts receivable, specifically relating to accounts where the Company has received a partial payment from a commercial insurance company, and the Company continues to pursue additional collections for the balance that it estimates remains outstanding or "partial payment accounts receivable".

All comparisons to prior period results contained in this release are presented on an as restated basis.

(Emphasis added.)

47.     On this news, AAC's stock price fell $0.40 per share, or 18.69%, to close at $1.74 per share on April 16, 2019.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of AAC' securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AAC securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, AAC securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by AAC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AAC;

- whether the Individual Defendants caused AAC to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AAC securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AAC securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AAC securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AAC securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AAC securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AAC securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AAC's finances and business prospects.

62.     By virtue of their positions at AAC, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of AAC, the Individual Defendants had knowledge of the details of AAC's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of AAC.  As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AAC's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AAC securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning AAC's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AAC securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, AAC securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AAC securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AAC securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of AAC securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of AAC, and conducted and participated, directly and indirectly, in the conduct of AAC's business affairs.  Because of their senior positions, they knew the adverse non-public information about AAC's misstatement of income and expenses and false financial statements.

70.     As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AAC's financial condition and results of operations, and to correct promptly any public statements issued by AAC which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AAC disseminated in the marketplace during the Class Period concerning AAC's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AAC to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AAC within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AAC securities.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of AAC.  By reason of their senior management positions and/or being directors of AAC, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AAC to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of AAC and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AAC.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 16, 2019

Respectfully submitted,

**s/*Paul Kent Bramlett***
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
**BRAMLETT LAW OFFICES**
P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
PKNASHLAW@aol.com
Robert@BramlettLawOffices.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*