# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

AAC HOLDINGS, INC., MICHAEL T. CARTWRIGHT, KIRK R. MANZ, and ANDREW W. MCWILLIAMS,

      Defendants.

Civil Action No. 3:19-cv-00407

Judge Eli J. Richardson
Magistrate Judge Alistair E. Newbern

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

I. THE RESTATEMENT CLAIM SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER ............................................. 1

    A. The "Red Flags" Alleged in the Complaint Fail to Allege Scienter .................................. 2

        1. Scrutiny of Lab Diagnostic Testing ................................................. 2

        2. AAC's DSO Metrics ..................................................... 3

        3. The SEC's Subpoena & Comment Letter ................................................. 4

        4. The Signed SOX Certifications .................................................. 5

        5. The Executive Resignations ................................................... 6

    B. Considered in Totality, the Competing Inference of Non-Fraudulent Intent Is More Compelling ..................................................... 7

II. THE MARKETING CLAIM SHOULD BE DISMISSED ....................................... 9

    A. The Complaint Fails to Allege Loss Causation ................................................. 10

    B. The Complaint Fails to Allege An Actionable Misstatement ..................................... 11

        1. Protected Forward-Looking Statements ..................................... 11

        2. Inactionable Statements of Opinion ........................................... 12

        3. Inactionable Statements of Corporate Optimism ...................................... 13

    C. The Complaint Fails to Allege a Strong Inference of Scienter ..................................... 13

III. PLAINTIFF'S SCHEME ARGUMENT DOES NOT SAVE THE COMPLAINT .............. 14

IV. THE CONTROL PERSON LIABILITY CLAIMS SHOULD BE DISMISSED ................. 15

V. PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Almost Family, Inc. Sec. Litig.*,
  3:10-cv-00520, 2012 WL 443461 (W.D. Ky. Feb. 10, 2012)..................................................10

*In re Am. Int'l Grp., Inc.*,
  965 A.2d 763 (Del. Ch. 2009)...................................................................................................9

*In re Am. Serv. Grp., Inc.* (*ASG*),
  No. 3:06-0323, 2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009) .........................................5, 7

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
  No. 3:16-CV-1106, 2019 WL 6251435 (N.D. Ohio Nov. 22, 2019).........................................6

*In re Cardinal Health, Inc. Sec. Litig.*,
  426 F. Supp. 2d 688 (S.D. Ohio 2006) ....................................................................................9

*City of Monroe Emps.' Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ...................................................................................................1

*Cosby v. KPMG, LLP*,
  No. 3:16-cv-121, 2018 WL 3723712 (E.D. Tenn. Aug. 2, 2018)..........................................4, 5

*In re Envoy Corp. Sec. Litig.*,
  133 F. Supp. 2d 647 (M.D. Tenn. 2001)...................................................................................8

*In re Ford Motor Co.*,
  381 F.3d 563 (6th Cir. 2004) .................................................................................................13

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) ...................................................................................................2

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
  No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011).........................................15

*Gelfer v. Pegasystems, Inc.*
  96 F. Supp. 2d 10 (D. Mass. 2000) ..........................................................................................5

*Gordon v. Elite Consulting Grp. LLC*,
  No. 09-cv-10772, 2009 WL 4042911 (E.D. Mich. Nov. 19, 2009)........................................15

*In re Health Management Inc. Sec. Litig*
  970 F. Supp. 192, 203 (E.D.N.Y. 1997) ...................................................................................4

*Holbrook v. Trivago N.V.*,
No. 17 CIV 8348, 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ..............................................14

*IBEW Local No. 58 Annuity Fund v. EveryWare Glob., Inc.*,
849 F.3d 325 (6th Cir. 2017) ...............................................................................................15

*Ind. State Dist. Council v. Omnicare, Inc.*,
583 F.3d 935 (6th Cir. 2009) ...............................................................................................10

*In re Interpool, Inc. Sec. Litig.*,
No. 04-Civ-04-321, 2005 WL 2000237 (D.N.J. Aug. 17, 2005).............................................9

*Konkol v. Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2010) ............................................................................................3, 4

*La. Sch. Emps.' Ret. Sys. v. Ernst & Young LLP*,
622 F.3d 471 (6th Cir. 2009) .......................................................................................4, 8, 15

*Ley v. Visteon Corp.*,
543 F.3d 801 (6th Cir. 2008) .................................................................................................6

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019).........................................................................................................15

*Miller v. Champion Enters. Inc.*,
346 F.3d 660 (6th Cir. 2003) ...............................................................................................11

*N. Port Firefighers' Pension-Local Option Plan v. Fushi Copperweld, Inc.* (*Fushi*),
929 F. Supp. 2d 740 (M.D. Tenn. 2013)..............................................................................3, 7

*Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
830 F.3d 376 (6th Cir. 2016) ...............................................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..............................................................................................................12

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) .................................................................................................3

*Perrin v. S.W. Water Co.*,
2:08-cv-7844, 2011 WL 10756419 (C.D. Cal. Jun. 30, 2011) ................................................5

*Plumbers, Pipefitters & MES Local Union v. Fairfax Fin. Holdings Ltd.*,
886 F. Supp. 2d 328 (S.D.N.Y. 2012)...................................................................................10

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) .........................................................................................2, 8, 9

*Ricker v. Zoo Entm't, Inc.*,
   534 F. App'x 495 (6th Cir. 2013) ...................................................................................2

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
   552 U.S. 148 (2008).......................................................................................................15

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
   436 F. Supp. 2d 873 (N.D. Ohio 2006).........................................................................1

*In re Velti PLC Sec. Litig.*,
   No. 12-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)...................................8

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)...................................................................................................1

15 U.S.C. § 78u-5(e) ...........................................................................................................11

**Other Authorities**

M.D. Tenn. LR 15.01...........................................................................................................15

**I.     THE RESTATEMENT CLAIM SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER**

Defendants[1] established in the Motion to Dismiss that the Restatement Claim should be dismissed because the Complaint fails to allege particularized facts that give rise to the requisite strong inference of scienter.  Plaintiff's three arguments in response fail.

*First*, Plaintiff contends that Defendants conceded that they "materially misled investors" on the Restatement Claim.  Lead Plaintiff's Opposition to Motion to Dismiss ("Opp."), Dkt No. 56 at 5.  But all Defendants state is the well-recognized law that "[b]y definition . . . a restatement says that the prior financial statement was false."  *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 894 (N.D. Ohio 2006).  There is no concession that Defendants misled investors.  Indeed, the entire argument on the Restatement Claim is devoted to establishing that Defendants did *not* intentionally mislead investors.

*Second*, directly contrary to the PSLRA and Sixth Circuit law, Plaintiff tries to overshadow its failure to allege a strong inference of scienter on the Restatement Claim by combining the scienter analysis for the Restatement Claim and the Marketing Claim.  Opp. 11-23.  But the PSLRA specifically requires that "the complaint shall, *with respect to each act or omission alleged to violate this chapter*, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).  And, as the Sixth Circuit has explained, "[m]indful that to survive a motion to dismiss, a federal securities fraud claim must 'withstand an exacting statement-by-statement analysis,' the question then is whether the Complaint adequately pled scienter for these particular statements."  *City of Monroe Emps.' Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 682 (6th Cir. 2005).  Scienter as to the

---

[1] Capitalized terms shall have the same meaning as set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Motion to Dismiss" or "Mot."), Dkt No. 53.

Restatement Claim must be considered separately from scienter as to the Marketing Claim.

*Third*, Plaintiff criticizes Defendants for citing to *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004), for the restatement scienter standard because it was purportedly overruled by *Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011). Opp. 12. But *PR Diamond*'s restatement scienter standard has not been overruled by *Frank*. Indeed, since *Frank*, the Sixth Circuit itself continues to cite to *PR Diamonds* for the scienter standard in restatement cases. *See Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 500 (6th Cir. 2013). *PR Diamonds* is still the applicable standard and, as explained in the Motion to Dismiss and below, the Complaint woefully fails to allege either the requisite "multiple, obvious red flags" or a strong inference of scienter that is at least as compelling as the competing inference of non-fraudulent intent. *See* 364 F.3d at 686-87.

### A. The "Red Flags" Alleged in the Complaint Fail to Allege Scienter

"Before finding that a defendant acted recklessly, [the Sixth Circuit] typically looks for multiple, obvious red flags." *Ricker*, 534 F. App'x at 499. "That is, warning signs that would have revealed the accounting errors prior to their inclusion in public statements." *Id.* Where, however, the alleged accounting violations are "not 'in your face facts' that 'cry out' scienter," the Complaint is appropriately dismissed. *PR Diamonds*, 364 F.3d at 686.

The Complaint cites five purported "red flags." *See* Compl. ¶¶ 139, 142, 144, 146, 147, 148. Plaintiff's response to Defendants' arguments on each of these factors fails to stave off dismissal of the Restatement Claim as explained below.

### 1. Scrutiny of Lab Diagnostic Testing

Defendants established that the delay in collections AAC was experiencing for out-of-network lab testing was not a red flag. Mot. 11. Plaintiff's Opposition does not cure the deficiencies in the Complaint. Opp. 14-15.

2

*First*, as Defendants noted, AAC publicly disclosed its collection trends at the very beginning of the alleged class period. Mot. 11. ***The fact that the purported "red flags were disclosed to the public, [] negates the inference that defendants acted with scienter."*** *Owens v. Jastrow*, 789 F.3d 529, 540-41 (5th Cir. 2015). Plaintiff does not challenge that the collection trends were disclosed and likewise offers no response at all to the law holding that the disclosure of the alleged red flag negates an inference of scienter.

*Second*, Defendants argued that collection trends were not a red flag in any event because the Complaint is devoid of any allegations explaining how those trends would make it obvious that the Restatement was needed. "The standard from *Tellabs* requires specific facts that [the alleged reports] were known to Defendants ***and reflected the revenue-recognition scheme in such a way that it would have been obvious that [the Company] was improperly inflating its revenue***." *Konkol v. Diebold, Inc.*, 590 F.3d 390, 398 (6th Cir. 2010) (emphasis added). Plaintiff's Opposition offers zero explanation linking the collection trends to the Restatement.

### 2. AAC's DSO Metrics

Plaintiff's response to the other metric identified as a purported red flag – days sales outstanding (DSO) – likewise lacks merit.

*First*, as with the collection trends discussed above, AAC publicly disclosed its DSO trends at the very beginning of the alleged class period. Plaintiff does not challenge this fact or offer any law to contradict the holding in *Owens* that disclosure of alleged red flags negates an inference of scienter. *See* 789 F.3d at 540-41.

*Second*, in response to Defendants' argument that the DSO levels were not a red flag because the Complaint failed to identify how the DSO levels were related to the Restatement, Plaintiff cites two cases. Opp. 15, citing *N. Port Firefighers' Pension-Local Option Plan v. Fushi*

*Copperweld, Inc.* (*Fushi*), 929 F. Supp. 2d 740 (M.D. Tenn. 2013) and *Cosby v. KPMG, LLP*, No. 3:16-cv-121, 2018 WL 3723712 (E.D. Tenn. Aug. 2, 2018). Neither of those two cases dealt with DSOs at all. As such, they do not contradict the two Sixth Circuit cases holding that DSO reports do not support a strong inference of scienter in restatement cases. *See Konkol*, 590 F.3d at 398 (holding that defendants monitoring of DSO reports did not support a strong inference of scienter); *La. Sch. Emps.' Ret. Sys. v. Ernst & Young LLP*, 622 F.3d 471, 483 (6th Cir. 2009) (holding that knowledge of DSO levels did not support an inference of scienter).

### 3. The SEC's Subpoena & Comment Letter

Plaintiff claims that the Company's October 2018 disclosure of a March 2018 SEC subpoena was a red flag. *See* Compl. ¶ 145 (alleging that "defendants concealed the SEC investigation for over seven months"). In response, Defendants established that the SEC subpoena was not a red flag because companies have no duty to disclose SEC subpoenas. Mot. 12-13. Plaintiff does not oppose this well-established law. Rather, Plaintiff has backed away from the purported "concealment" theory and now cites three cases trying to make the SEC subpoena relevant to the Restatement, but none of those cases applies here. Opp. 17-18.

In *In re Health Management Inc. Sec. Litig.*, the red flags were a letter to the defendant company's auditor with named sources identifying the fictitious accounts receivable at issue and a related SEC inquiry. 970 F. Supp. 192, 203 (E.D.N.Y. 1997). Here, the Restatement did not involve fictitious numbers, there was no letter to AAC's auditor about fictitious numbers, and there is no well-pled allegation linking the SEC inquiry to the Restatement.

In *Cosby v. KPMG, LLP*, the red flags were defendants use of a report to establish an asset's value despite the report expressly stating it was not an estimate of fair value, obvious double counting of an asset value on the financial statements, and an investigation by the SEC into the

4

company's statements of its asset value. 2018 WL 3723712, at *4. Here, there are no detailed allegations of misuse of any reports, double counting of any asset, or any link between the SEC inquiry and the Restatement.

Finally, in *Gelfer v. Pegasystems, Inc.*, there was no SEC investigation. 96 F. Supp. 2d 10 (D. Mass. 2000). Plaintiff's quotation from the case intentionally replaces the Court's reference to a prior private securities class action with the word "investigation," but it was the Court's holding in the prior class action that was relevant because both cases involved a restatement of the same account in the financials. *Id.* at 14-15. Here, there is no prior related civil action or other indication that the Restatement was needed.

Plaintiff also contends that the Company's failure to respond to an SEC comment letter somehow gives rise to a strong inference of scienter because it shows that Defendants "'deliberately failed to provide' complete information." Opp. 15, quoting *In re Am. Serv. Grp., Inc.* (*ASG*), No. 3:06-0323, 2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009). *ASG*, however, held that an inference of scienter was appropriate, in part, because "ASG allegedly deliberately failed to provide complete restated quarterly financial results," choosing instead to provide only a net impact. *Id.* at *51. Here, however, AAC provided detailed restated quarterly financial statements. Dkt No. 53-7 at F-37-F-54. *ASG* does not apply. Moreover, the allegation that the "SEC questioned the accounting is not sufficient to show that Defendants had the requisite intent to defraud investors or acted with the deliberate recklessness as to the financial reports." *Perrin v. S.W. Water Co.*, 2:08-cv-7844, 2011 WL 10756419, at *11 (C.D. Cal. Jun. 30, 2011) (dismissing restatement claim with allegations of two SEC comment letters).

### 4. The Signed SOX Certifications

Defendants established that the SOX certifications did not contribute to a strong inference

of scienter because (a) the Complaint fails to allege facts to suggest that Defendants "had reason to know or should have suspected accounting irregularities or other 'red flags' at the time they signed the certifications"; and (b) the Complaint does not even "explain[] the link between the statements [in the SOX certification] and the actual accounting issues." Mot. 13-14, quoting *Ley v. Visteon Corp.*, 543 F.3d 801, 812 (6th Cir. 2008). In response, the only point Plaintiff makes that is arguably relevant to this Sixth Circuit standard is that Defendants ignored the historical collections experience. Opp. 19. As discussed above, however, nowhere in the Complaint or in the Opposition does Plaintiff explain with the requisite specificity how the historical collections experience would have led Defendants to know the Restatement was needed. The collections experience was not a red flag that would have alerted Defendants to any accounting irregularities at the time the SOX certifications were signed. The SOX certifications, thus, do not give rise to a strong inference of scienter under Sixth Circuit law. *See Ley*, 543 F.3d at 812.

### 5. The Executive Resignations

Defendants established that the executive resignations alleged in the Complaint did not contribute to an inference of scienter because "Lead Plaintiff[] identif[ies] no evidence of a connection between the departures and an inference of misconduct." Mot. 14, quoting *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-CV-1106, 2019 WL 6251435, at *7 (N.D. Ohio Nov. 22, 2019). Plaintiff's Opposition still fails to make any connection. Plaintiff has named three executives in this lawsuit – two CFOs and the former CEO. One of the CFOs is still at the Company and the other voluntarily resigned ***nearly a year and a half*** before the Restatement. The only other individual named in this lawsuit is the former CEO and he resigned as CEO ten months after the Restatement, ***but still remains Chairman of AAC's Board of Directors***. There is no connection between these voluntary resignations and the Restatement. The resignations are

therefore not indicative of scienter.

**B.** **Considered in Totality, the Competing Inference of Non-Fraudulent Intent Is More Compelling**

As Defendants established in the Motion to Dismiss, because none of the "red flags" are red flags at all, the more compelling inference here is the one of non-fraudulent intent given that: (1) the Restatement alone is not sufficient to allege scienter under the law because the issues involved are not simple accounting issues, (2) the Restatement resulted in both increases and decreases to net income across the affected quarters, and (3) the Complaint fails to allege that any of the Individual Defendants had any motive whatsoever to misstate the financial statements. Mot. 14-16. Plaintiff's four arguments in response simply do not support a strong inference of scienter.

*First*, Plaintiffs assert that a restatement alone is enough, citing *Fushi*, 929 F. Supp. 2d 740 and *ASG*, 2009 WL 1348163. Opp. 13-14. But neither of those cases involved a restatement alone. Indeed, *ASG* included allegations that both the CEO and CFO sold over 90% of their ASG stock before the alleged fraud was revealed and the complaint included allegations from firsthand witnesses. *ASG*, 2009 WL 1348163, at *22-27. *Fushi* likewise involved allegations that the CEO reaped $4.7 million in insider trading proceeds as a result of the alleged fraud. *Fushi*, 929 F. Supp. 2d at 766. In stark contrast, the Complaint here is devoid of any witness allegations and none of the Individual Defendants at AAC is alleged to have sold any stock during the alleged class period. In fact, Mr. Cartwright was AAC's largest shareholder – owning 19% of the Company's outstanding shares. Mr. Cartwright had absolutely no incentive to commit fraud and damage his own holdings. *Fushi* and *ASG* are inapposite.

*Second*, Plaintiff contends that the accounting issues involved in the Restatement were simple and should have been known by Defendants. Plaintiffs are trying to evade the rule that a restatement alone does not support scienter unless the accounting violations are "so simple, basic,

and pervasive in nature, and so great in magnitude, that they should have been obvious to a defendant." *PR Diamonds*, 364 F.3d at 684.

As Defendants established in the Motion to Dismiss, the accounting violations are not simple because the Complaint did not even identify the GAAP provision that was violated or how it was violated. Mot. 15. The Opposition does not cure this deficiency, but simply states that the issues are simple without any supporting authority. Stating that the issues are simple does not make them so. And, in fact, Plaintiff's statement is contrary to Sixth Circuit law, which has held that accounting for accounts receivable and its interplay with days-sales-outstanding (DSOs) (the exact issues alleged here) was not such a simple accounting issue that it created an inference that the defendants acted with scienter. *La. Sch.*, 622 F.3d at 483 (affirming dismissal for failure to allege scienter). As another court held, "the increase in receivables and DSOs, standing alone, does not indicate that [defendant] knew or should have known at any time before its final audit of [client's] financial statements that [client's] reserves were insufficient." *In re Velti PLC Sec. Litig.*, No. 12-CV-03889-WHO, 2015 WL 5736589, at *36 (N.D. Cal. Oct. 1, 2015).

***Third***, citing *In re Envoy Corp. Sec. Litig.*, 133 F. Supp. 2d 647 (M.D. Tenn. 2001), Plaintiff contends that it does not matter that the Restatement involved both increases and decreases to net income. Opp. 21. But the financial entry at issue in *Envoy* was the amount of the asset recorded in connection with three acquisitions – and, for all three of the acquisitions, the asset was written down at percentages of 73%, 80%, and 83%. *Id.* at 661-62. ***There was no increase in the asset amounts***. *Id. Envoy* does not contradict the law as explained by one court:

> The Court also recognizes that by Plaintiffs' own admission, Interpool's restatement of their historical financial statements did not uniformly result in a decrease to Interpool's reported income or assets. Some of the restated figures in fact resulted in an increase to reported income, or an increase to income in one year, and a decrease to income in another. The Court finds that this tends to negate an inference that Defendants acted with intent to perpetrate a fraud on investors via false and

8

misleading financial statements.

*In re Interpool, Inc. Sec. Litig.*, No. 04-Civ-04-321, 2005 WL 2000237, *17 (D.N.J. Aug. 17, 2005) (dismissing complaint for failure to allege strong inference of scienter).

**Fourth**, in response to the devastating fact that the Complaint does not allege any of the Individual Defendants had any motive to commit fraud, Plaintiff contends that the Individual Defendants had an "opportunity" to commit fraud. Opp. 23. But as Plaintiff's own case notes, opportunity is not the question because any executive has the opportunity to commit fraud. Rather, "the more compelling question in this case is whether the Complaint alleges **motives** on the part of [] Defendants from which the Court could infer a knowing or reckless state of mind*." In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 726 (S.D. Ohio 2006) (emphasis added).

On the question of motive, Plaintiff tries to counter the lack of alleged stock sales with citation to a Delaware derivative case, *In re Am. Int'l Grp., Inc.*, 965 A.2d 763 (Del. Ch. 2009). But, in that case, the defendants did sell stock to profit from the alleged fraud in sales of $6 million and $20 million each. *Id.* at 801. Plaintiff has no response to the Sixth Circuit's holding that "courts have explained that the absence of inside sales dulls allegations of fraudulent motive." *PR Diamonds*, 364 F.3d at 691. The Complaint contains absolutely no allegations of any motive from which the Court "could infer a knowing or reckless state of mind." *Cardinal Health*, 426 F. Supp. 2d at 726. All of the Individual Defendants owned AAC stock with Mr. Cartwright being AAC's largest shareholder. It does not make sense that any of them would commit fraud to damage their own stock holdings. The Restatement Claim should be dismissed for failure to allege any inference of scienter, much less the requisite strong inference of scienter.

## II. THE MARKETING CLAIM SHOULD BE DISMISSED

Defendants established that the Marketing Claim should be dismissed because the

9

Complaint fails to allege (a) loss causation; (b) any actionable misstatements or omissions; or (c) a strong inference of scienter.  The arguments in Plaintiff's Opposition all fail as discussed below.

**A.      The Complaint Fails to Allege Loss Causation**

Loss causation may be alleged under a "corrective disclosure theory" or "the alternative theory of materialization of the risk." *Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016).  Defendants established that the Complaint failed to allege a corrective disclosure theory of loss causation on the Marketing Claim because the two alleged corrective disclosures regarding changes in Google's algorithms did not "possess[] a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement." Mot. 17, quoting *Plumbers, Pipefitters & MES Local Union v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012).

Plaintiff's Opposition does not offer any such nexus and instead contends that the Complaint alleges a materialization of the risk theory of loss causation.  Opp. 24.  But nowhere in the Complaint does Plaintiff state a materialization of the risk theory and, in fact, the Complaint expressly pleads a corrective disclosure theory with the unambiguous allegation ***in its loss causation section*** that "[t]he decline in the price of AAC common stock ***after the corrective disclosures came to light*** was a direct result of the revelation of the nature and extent of defendants' scheme and fraudulent misrepresentations and omissions to investors and the market."  Compl. ¶ 138 (emphasis added).

The failure to allege any nexus between the alleged corrective disclosures and the alleged misstatements on the Marketing Claim is fatal to the Marketing Claim and it should be dismissed. *Ind. State Dist. Council v. Omnicare, Inc.*, 583 F.3d 935, 944 (6th Cir. 2009) (affirming dismissal on loss causation grounds); *Fairfax*, 886 F. Supp. 2d at 338; *In re Almost Family, Inc. Sec. Litig.*,

3:10-cv-00520, 2012 WL 443461, at *10 (W.D. Ky. Feb. 10, 2012).

### B. The Complaint Fails to Allege An Actionable Misstatement

Defendants established in the Motion to Dismiss that the Marketing Claim should be dismissed for the separate and independent reason that the alleged misstatements are (1) protected forward-looking statements; (2) inactionable statements of opinion; or (3) inactionable statements of corporate puffery/optimism. The flaws in Plaintiff's response on these points follow below.

#### 1. Protected Forward-Looking Statements

The PSLRA's Safe Harbor undeniably immunizes the forward-looking statements on the Marketing Claim from liability. Mot. 18-20. Plaintiff raises two faulty assertions in response.

*First*, Plaintiff contends that whether the cautionary language is meaningful cannot be decided on a motion to dismiss. Opp. 7. Plaintiff's cited case was decided before the Sixth Circuit's opinion in *Miller v. Champion Enters. Inc.*, 346 F.3d 660 (6th Cir. 2003). *Miller* makes it clear that a statement that is "accompanied by meaningful cautionary language, [is] subject to the safe harbor provisions of the PSLRA and [is] therefore not actionable." *Id.* at 678 (affirming dismissal based on Safe Harbor). This is consistent with the text of the PSLRA, which requires that "[o]n any ***motion to dismiss based upon*** [the Safe Harbor provision], the ***court shall consider*** any statement cited in the complaint and ***any cautionary statement*** accompanying the forward-looking statement." 15 U.S.C. § 78u-5(e) (emphasis added). The issue is proper for resolution on the Motion to Dismiss.

*Second*, Plaintiff contends that the cautionary language was not meaningful because it warned of risks that had already materialized. Opp. 7-9. Not so. Plaintiff first asserts that the cautionary language issued on February 23, 2018 was not meaningful because, in January 2018, Google stopped running ads for all addiction businesses and AAC ceased to be a member of

11

NAATP. Fatal to Plaintiff's argument, however, is that the Complaint does not and cannot allege that either of these issues impacted AAC's business. The only impact alleged in the Complaint is when Google changed its algorithm that impacted traffic to AAC's websites. That occurred in August of 2018 and was timely disclosed. *See* Dkt No. 53-6 at 30. The January 2018 events that Plaintiff cites had no impact whatsoever – 1Q 2017 revenues were $73 million compared to an *increase* for 1Q 2018 of $81 million. Dkt No. 53-7 at F-39, F-42.

Plaintiff also misleadingly suggests that the cautionary language in the November 6, 2018 Form 10-Q was meaningless because the change to the Google algorithm had already occurred. Opp. 8. But Defendants specifically disclosed in the November 6, 2018 Form 10-Q that the risk was already impacting its business – "[f]ollowing the Google algorithm change, our websites generally have experienced lower rankings and decreased visits, resulting in significantly fewer calls to our helpline." Dkt No. 53-6 at 30. The cautionary language is not meaningless for failing to disclose issues that were impacting AAC's business. The forward-looking statements should be dismissed.

### 2. Inactionable Statements of Opinion

Defendants established that several of the Marketing Claim statements alleged in the Complaint were statements of opinion that were not actionable under the Supreme Court's *Omnicare* opinion because the Complaint is devoid of allegations that (a) the speaker did not actually believe the expressed opinions or (b) the speaker lacked the reasonable basis for making the opinion statements. Mot. 20-21, citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015). In response, Plaintiff does not identify a single allegation in the Complaint that satisfies *Omnicare*'s standard for alleging an actionable opinion. Opp. 9-10. The statements of opinion should be dismissed.

12

### 3. Inactionable Statements of Corporate Optimism

Defendants established that several of the Marketing Claim statements were inactionable statements of corporate optimism. Mot. 21-22. Plaintiff once again contends the issue is not appropriate for a motion to dismiss, but, once again, the Sixth Circuit disagrees with Plaintiff's position. *See In re Ford Motor Co.*, 381 F.3d 563, 570-71 (6th Cir. 2004) (affirming dismissal of statements of corporate optimism). Plaintiff also asserts that the statements include hard facts, such as AAC received 2+ million site visits per month. Opp. 11. Plaintiff is correct that the numbers provide hard facts, but nowhere in the Complaint is it alleged that AAC did not, in fact, receive 2+ million site visits per month. Thus, the hard facts Plaintiff identifies are not alleged to be false and do not save the Complaint from dismissal.

### C. The Complaint Fails to Allege a Strong Inference of Scienter

In response to all the reasons Defendants identified that the Complaint does not allege a strong inference of scienter on the Marketing Claim (Mot. 22-24), Plaintiff responds only on the congressional testimony and core operations points.

As to the congressional testimony, Plaintiff has absolutely no basis whatsoever to contend Mr. Cartwright lied and its suggestion that he did is offensive. Mr. Cartwright testified that "we make clear that users know which treatment centers are going to answer the numbers they call. We make clear that AAC's toll-free numbers go to AAC's call center. ***And when they pick up, AAC's call center reps identify themselves as an AAC employee***." Dkt No. 53-4 at 31 (emphasis added). The identification by the AAC reps when the call is answered definitely makes it clear which center the users are calling. Neither the Complaint nor the Opposition identifies a single fact to contradict this statement. As to the testimony regarding NAATP membership, Plaintiff distorts the record by contending that Mr. Cartwright responded to the question of why AAC was

13

not a member of NAATP by stating another organization was meeting its needs more appropriately. The actual record makes clear, however, that the question was not why AAC was not a member, but whether AAC was a member, and Mr. Cartwright correctly testified it was not. *Id.* at 65. The ***very next question*** probed further, and, even though the question did not call for the explanation, Mr. Cartwright openly explained that NAATP asked AAC not to be members based on their new ethical guidelines. *Id.* Plaintiff's attempt to impugn Mr. Cartwright fails.

Thus, all Plaintiff is left with is that marketing was core to AAC's operations. These core operations allegations, however, are not "an independent means to plead scienter." *Holbrook v. Trivago N.V.*, No. 17 CIV 8348, 2019 WL 948809, at *2 (S.D.N.Y. Feb. 26, 2019). Plaintiff must plead more than core operations and it has not here. The Complaint wholly fails to identify a single particularized fact that demonstrates any Defendant made any of the marketing statements with an intent to deceive. This is particularly true in light of the fact that not a single one of the Defendants is alleged to have sold a single share of stock during the alleged class period or otherwise profited from the purported fraud. Once again, Mr. Cartwright was AAC's largest stockholder at the time and it simply makes no sense that he would commit a fraud to damage his own shares.

The more compelling inference is the innocent inference that Defendants, who had absolutely no motive whatsoever to commit fraud here, believed their websites were first in class for the industry, that their statements on the website marketing were truthful, and that they were surprised by Google's algorithm change, but disclosed the change and its impact on the business when it happened. The Marketing Claim should be dismissed for failure to allege scienter.

## III. PLAINTIFF'S SCHEME ARGUMENT DOES NOT SAVE THE COMPLAINT

Trying to gloss over all the deficiencies discussed above, Plaintiff contends that the Complaint adequately pleads "scheme liability." Opp. 4. Plaintiff is flat wrong. "Reliance by the

14

plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008). In particular, when a plaintiff attempts to allege "scheme liability," plaintiff's reliance on the alleged scheme must be pled. *Gordon v. Elite Consulting Grp. LLC*, No. 09-cv-10772, 2009 WL 4042911, at *5-6 (E.D. Mich. Nov. 19, 2009) (dismissing scheme liability allegations for failing to allege reliance). Plaintiff's Complaint has a section devoted to allegations of reliance (Compl. ¶¶ 153-158), and nowhere in that section does it allege reliance on a purported scheme. Without any allegations of reliance on an alleged scheme, the Complaint does not plead scheme liability.[2]

## IV. THE CONTROL PERSON LIABILITY CLAIMS SHOULD BE DISMISSED

Because Plaintiff has not stated any viable Section 10(b) claims, its claims for "control person" liability under Section 20(a) of the Exchange Act likewise fail. *See IBEW Local No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325, 328 (6th Cir. 2017).

## V. PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

Demonstrating the insufficiency of the Complaint, Plaintiff asks the Court for leave to file another amended complaint in the event the Complaint is dismissed. Opp. 25. That request should be denied because (a) a request for leave to amend cannot be made in an opposition memorandum, *La. Sch.*, 622 F.3d at 486; and (b) it does not include any of the material that LR 15.01 requires.

For the foregoing reasons and those set forth in the Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[2] Plaintiff's citation to cases that the Securities & Exchange Commission ("SEC") brings is inapposite because "the Commission, unlike private parties, need not show reliance in its enforcement actions." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1104 (2019). Plaintiff's citation to *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011), is likewise deficient because nowhere in that case did the court analyze or hold that the complaint sufficiently alleged scheme liability.

15

Respectfully submitted,

/s/ *W. Travis Parham*
W. Travis Parham (TN BPR #16846)
Michael T. Harmon (TN BPR # 27279)
Waller Lansden Dortch & Davis LLP
Nashville City Center
511 Union Street
Suite 2700
Nashville, TN 37219
Tel: (615) 244-6380
travis.parham@wallerlaw.com
michael.harmon@wallerlaw.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
lhobson@kslaw.com

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to the following attorneys of record:

Christopher M. Wood
Christopher H. Lyons
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2203
cwood@rgrdlaw.com
lyons@rgrdlaw.com

Darren J. Robbins
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
darrenr@rgrdlaw.com

*Lead Counsel for Lead Plaintiff Indiana Public
Retirement System and the members of the Putative Class*

Jerry E. Martin
Bank of America Plaza
BARRETT JOHNSTON MARTIN
& GARRISON, LLC
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2202

*Local Counsel for Lead Plaintiff Indiana Public
Retirement System and the members of the Putative Class*

/s/ W. Travis Parham
W. Travis Parham

17