UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM,) Individually and on Behalf of All Others ) Similarly Situated, ) <br><br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL T. CARTWRIGHT, KIRK R. ) MANZ and ANDREW W. McWILLIAMS, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) | Civil Action No. 3:19-cv-00407 <br><br> <u>CLASS ACTION</u> <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern <br><br> MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 2 |
| | A. | Summary of the Allegations | 2 |
| | B. | The Proposed Class Representatives | 4 |
| III. | ARGUMENT | | 5 |
| | A. | The Proposed Class Satisfies the Requirements of Rule 23(a) | 5 |
| | | 1. The Class Is Sufficiently Numerous | 6 |
| | | 2. Questions of Law and Fact Are Common to the Class | 7 |
| | | 3. The Proposed Class Representative's Claims Are Typical | 8 |
| | | 4. INPRS Will Adequately and Fairly Protect the Interests of the Class | 9 |
| | B. | The Proposed Class Satisfies the Requirements of Rule 23(b)(3) | 11 |
| | | 1. Common Factual and Legal Questions Predominate | 11 |
| | |     a. INPRS is Entitled to a Presumption of Reliance Pursuant to *Basic* | 12 |
| | |     b. Plaintiff is Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute* | 17 |
| | | 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action | 18 |
| IV. | CONCLUSION | | 19 |

4838-1341-2336.v1

**Page**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)................................................................................2, 17, 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................5, 11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).............................................................................11, 12, 18

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................................2, 5, 12

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) ....................................................................7

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
843 F.3d 1119 (6th Cir. 2016) .......................................................................11

*Burges v. BancorpSouth, Inc.*,
2017 WL 2772122
(M.D. Tenn. June 26, 2017)............................................................... *passim*

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .......................................................13, 14, 15, 16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .....................................................................14

*Castillo v. Envoy Corp.*,
206 F.R.D. 464 (M.D. Tenn. 2002) ...............................................................1, 5

*Dougherty v. Esperion Therapeutics, Inc.*,
2020 WL 6793326
(E.D. Mich. Nov. 19, 2020) ...........................................................................17

*Freeman v. Laventhol & Horwath*,
915 F.2d 193 (6th Cir. 1990) .....................................................................13, 15

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) ..............................................................5, 6

- ii -

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).................................................................................12, 13, 16, 18

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).................................................................................................5

*In re Accredo Health, Inc. Sec. Litig.*,
2006 WL 1716910
(W.D. Tenn. Apr. 19, 2006).................................................................................13, 14

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................................15

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) .................................................................................9

*In re Direct Gen. Corp.*,
2006 WL 2265472
(M.D. Tenn. Aug. 8, 2006) ....................................................................................9

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008),
*aff'd*, 639 F.3d 623 (3d Cir. 2011) ........................................................................14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................8

*In re Xcelera.com Sec. Litig.*,
430 F.3d 503 (1st Cir. 2005)..................................................................................14

*Kasper v. AAC Holdings, Inc.*,
2017 WL 3008510
(M.D. Tenn. July 14, 2017)....................................................................................5

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) .................................................................13, 16, 17

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)...............................................................................................5

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013).............................................................14, 16

*Powers v. Hamilton Cnty. Pub. Def. Comm'n,*
  501 F.3d 592 (6th Cir. 2007) ......................................................................................11

*Ret. Sys. v. Psychiatric Sols., Inc.,*
  2010 WL 1790763
  (M.D. Tenn. Apr. 30, 2010) .........................................................................................10

*Ret. Sys. v. Psychiatric Sols., Inc.,*
  2012 WL 1071281
  (M.D. Tenn. Mar. 29, 2012).....................................................................................5, 19

*Ret. Sys. v. Talmer Bancorp, Inc.,*
  2016 WL 11549401
  (E.D. Mich. Sept. 14, 2016) ........................................................................................10

*Ross v. Abercrombie & Fitch Co.,*
  257 F.R.D. 435 (S.D. Ohio 2009) ...............................................................................7, 8

*Schuh v. HCA Holdings, Inc.,*
  2014 WL 4716231
  (M.D. Tenn. Sept. 22, 2014) ..........................................................................................7

*Schuh v. HCA Holdings, Inc.,*
  No. 3:11-cv-01033
  (M.D. Tenn. Apr. 11, 2016) .........................................................................................10

*Stein v. U.S. Xpress Enters.,*
  2021 WL 1410035
  (E.D. Tenn. Feb. 12, 2021) ..................................................................................5, 8, 10

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
  552 U.S. 148 (2008).....................................................................................................17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007).......................................................................................................5

*W. Va. Pipe Trades Health & Welfare Fund v.*
  *Medtronic, Inc.,*
  325 F.R.D. 280 (D. Minn. 2018)..................................................................................17

*Weiner v. Tivity Health, Inc.,*
  334 F.R.D. 123 (M.D. Tenn. 2020) ...............................................................................5

4838-1341-2336.v1

*Willis v. Big Lots, Inc.*,
2017 WL 1074048
(S.D. Ohio Mar. 17, 2017) ........................................................................................16

*Willis v. Big Lots, Inc.*,
242 F. Supp. 3d 634 (S.D. Ohio 2017) .....................................................................15

*Yost v. First Horizon Nat'l Corp.*,
2011 WL 2182262
(W.D. Tenn. June 3, 2011).........................................................................................8

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) .....................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77............................................................................................................................7
§78j(b)...................................................................................................................2, 8
§78t(a) ..................................................................................................................7, 8

17 C.F.R.
§240.10b-5 ......................................................................................................2, 3, 12

Federal Rules of Civil Procedure
Rule 23(a)..............................................................................................................1, 5
Rule 23(a)(1) .............................................................................................................6
Rule 23(a)(2) .............................................................................................................7
Rule 23(a)(4) .............................................................................................................9
Rule 23(b) .................................................................................................................5
Rule 23(b)(3)......................................................................................................*passim*
Rule 26....................................................................................................................10

4838-1341-2336.v1

Lead Plaintiff Indiana Public Retirement System ("INPRS" or "Plaintiff") submits this Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification and respectfully requests that the Court: (1) certify this case as a class action; (2) appoint Plaintiff as Class Representative; and (3) appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    INTRODUCTION

Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure (the "Rules"), Plaintiff seeks certification of the following Class:

> All persons who purchased or otherwise acquired the common stock of AAC Holdings, Inc. ("AAC" or the "Company") between March 8, 2017 and November 5, 2018, inclusive (the "Class Period"). Excluded from the Class are AAC, Michael T. Cartwright, Kirk R. Manz, Andrew McWilliams and members of their respective immediate families, any entity of which any of them has a controlling interest and the legal representatives, heirs, predecessors, successors or assigns of any of them (collectively, the "Excluded Parties").

Courts have consistently recognized that "class actions are the most favorable means of adjudicating federal securities fraud claims." *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 474 (M.D. Tenn. 2002). This case is no different, as thousands of AAC investors (including the proposed Class Representative) were damaged by Defendants' conduct in the same manner and Plaintiff satisfies the requirements of Rule 23(a) and (b)(3).[1]

First, the four requisite elements of Rule 23(a) are readily established here:

(1)    Numerosity: Thousands of investors acquired the millions of nationally traded shares of AAC common stock during the Class Period.

(2)    Commonality.

---

[1]    "Defendants" are Michael T. Cartwright, Kirk R. Manz and Andrew McWilliams.

- 1 -

(3)     Typicality: Defendants engaged in the same scheme, issued the same false and misleading statements and omitted the same material facts when communicating to all investors.

(4)     Adequacy: The proposed Class Representative has participated in the litigation and is committed to prosecuting this action on behalf of the Class through experienced and competent counsel.

Second, this action meets the predominance and superiority requirements of Rule 23(b)(3). Predominance, as with commonality, is met because the core elements of Plaintiff's §§10(b) and 20(a) claims are susceptible to common proof.  Similarly, reliance can be presumed on a class-wide basis under the "fraud-on-the-market" presumption articulated by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), as AAC's securities traded in an efficient market throughout the Class Period.  Reliance can also be presumed on a class-wide basis under the test set forth in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  Lastly, a class action promotes judicial economy and is undoubtedly the superior method of resolving the claims of the thousands of geographically dispersed investors that were similarly harmed by Defendants' fraudulent conduct.

For these reasons and the reasons further explained below, Plaintiff's Motion for Class Certification should be granted.

## II.     STATEMENT OF FACTS

### A.     Summary of the Allegations

This is a federal securities action alleging that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.  AAC is a for-profit healthcare company that operates addiction treatment centers, offering inpatient and

outpatient substance abuse treatment services for individuals with drug addictions issues. ¶¶2, 24.[2] Amid the national opioid crisis, and throughout the Class Period, Defendants represented AAC to be a company dedicated to aiding those suffering from substance abuse disorders. ¶3. In reality, Defendants falsified AAC's financial results and oversaw a deceptive marketing scheme that deliberately inflated AAC's financial results. ¶¶24-62.

At the core of AAC's efforts to recruit patients and drive revenue growth was its use of more than 100 deceptive websites that were intentionally designed to appear to provide unbiased and reliable addiction advice and directories of treatment facilities but were, in fact, thinly veiled lead-generation mechanisms. ¶¶4, 28-32. When individuals suffering from substance abuse disorders called the toll-free number appearing on AAC's websites, they were not directed to counselors or treatment specialists, but to commission-based salespersons located in AAC's Brentwood, Tennessee call center. *Id*. While AAC told investors that its "best-in-class sales and marketing engine" gave it a "significant competitive advantage," its deceptive patient recruitment scheme ultimately crippled its business, causing it to be banned from Google's advertising platforms, denied membership into key industry groups, and called before congressional committees to testify in defense of its practices. ¶¶33-49, 63-83.

AAC also fraudulently overstated its financial results. ¶¶5, 50-62. Defendants told investors that AAC accounted for doubtful accounts according to its own "historical experience," but in reality based it on unrepresentative "industry and other data." ¶¶50-62, 84-127. Consequently, AAC was able to avoid reserving for or writing off impaired receivables accounts, allowing it to overstate its net income and understate its net losses. *Id*.

---

[2] All "¶__" and "¶¶__" references are to the Consolidated Complaint for Violations of the Federal Securities Exchange Act of 1934 (ECF No. 45) ("Complaint").

4838-1341-2336.v1

On November 6, 2018, Defendants disclosed that AAC had missed its revenue and earnings targets and that it was lowering its guidance for the remainder of fiscal year 2018 due its inability to continue its fraudulent accounting and marketing schemes. ¶¶7, 79-81, 129-131. On this news, AAC's stock price declined 44% from $5.31 per share to $2.96 per share. ¶131. Then on April 15, 2019, AAC filed its 2018 Form 10-K with the SEC, revealing it was restating its historical financial statement and had missed its already-lowered guidance for its fourth quarter of fiscal year 2018. ¶¶8, 132-137. On this news, AAC shares fell over 18% to close at $1.74 per share.

## B. The Proposed Class Representatives

On August 13, 2019, INPRS was appointed as Lead Plaintiff. ECF No. 37. INPRS is among the largest 100 pension funds in the United States. It oversees a total of nine separate retirement funds, serves the needs of approximately 467,000 members and retirees and manages approximately $36.9 billion in assets. INPRS purchased or otherwise acquired more than 136,000 shares of AAC common stock during the proposed Class Period and suffered approximately $1 million in losses. *See* The Declaration of Jeffrey M. Gill in Support of Lead Plaintiff's Motion for Class Certification ("Gill Decl."), attached as Exhibit A to the Declaration of Christopher M. Wood in Support of Lead Plaintiff's Motion for Class Certification ("Wood Decl.").

The proposed Class Representative has expended significant time and effort prosecuting this action on behalf of the proposed Class – actively participating in discovery and monitoring and reviewing the work of Lead Counsel Robbins Geller. Gill Decl., ¶6. Court-appointed Lead Counsel Robbins Geller, in turn, has conducted an extensive investigation into Defendants' alleged misconduct, drafted a comprehensive and well-researched consolidated complaint, successfully opposed Defendants' motion to dismiss and is diligently pursuing the discovery necessary to prove the Class' claims. *See, e.g.*, Complaint.

- 4 -

## III.     ARGUMENT

Class actions are widely considered to be the most favorable means of adjudicating federal securities fraud claims. *See Castillo*, 206 F.R.D. at 474; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313-14, 320 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . ."). Indeed, the Supreme Court[3] and courts within the Sixth Circuit[4] overwhelmingly find that, in securities fraud actions, class treatment is an appropriate way to vindicate investors' rights.

For the reasons discussed below, the requirements of Rule 23(a) and Rule 23(b) are readily met in this case; thus, the Court should certify the Class.

### A.     The Proposed Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) establishes four requisite elements for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 128 (M.D. Tenn. 2020) (citing Fed. R. Civ. P. 23(a)).

Here, the proposed Class meets each of these requirements.

---

[3]   *E.g.*, *Basic*, 485 U.S. at 229-30, 249-50; *Tellabs*, 551 U.S. at 313-14, 320; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

[4]   *E.g.*, *Stein v. U.S. Xpress Enters.*, 2021 WL 1410035 (E.D. Tenn. Feb. 12, 2021); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481 (M.D. Tenn. 2019); *Kasper v. AAC Holdings, Inc.*, 2017 WL 3008510, at *5 (M.D. Tenn. July 14, 2017); *Burges v. BancorpSouth, Inc.*, 2017 WL 2772122, at *11 (M.D. Tenn. June 26, 2017); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012).

### 1. The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rather than a "strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Burges*, 2017 WL 2772122, at \*2; *see also Corr. Corp. of Am.*, 330 F.R.D. at 501 ("'[T]he exact number of class members need not be pleaded or proved' for a class to be certified, as long as the class representatives can show that joinder would be impracticable.").[5] Indeed, "[n]umerosity is generally assumed to have been met in class action suits involving nationally traded securities." *Burges*, 2017 WL 2772122, at \*2.

Throughout the Class Period, AAC common stock traded on the New York Stock Exchange ("NYSE"), "'a leading global cash equity exchange [and] the leading equity exchange for initial public offerings, or IPOs, globally.'" *See* Expert Report of W. Scott Dalrymple, CFA ("Dalrymple Rpt."), attached to the Wood Decl. as Exhibit B, ¶29. Evidencing numerosity, the average weekly trading volume of AAC common stock was approximately 759,086 shares, or 3.1% of the shares outstanding. *Id.*, ¶34. In addition, institutional investors owned 95.7% of AAC's public float on average during the Class Period, further demonstrating the numerosity of the proposed Class. *Id.*, ¶47. These institutional investors, such as asset management and brokerage firms, often hold shares on behalf of numerous undisclosed beneficial holders (*i.e.*, individual investors).

Based on this volume of trading and the number of institutional shareholders, it is reasonable to conclude that many thousands of individuals owned AAC common stock during the Class Period. In short, because "[t]his case involves the sale of millions of stock, and Plaintiff estimates that the number of purchasers is likely to be 'in the thousands' and that those purchasers

---

[5] Citations are omitted and emphasis is added throughout unless otherwise indicated.

4838-1341-2336.v1

reside in many states," numerosity is satisfied. *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at \*13 (M.D. Tenn. Sept. 22, 2014).

### 2. Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The claims of the potential class members need not be factually identical," though "[t]he mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009). Instead, commonality exists if there is at least "one question common to the class." *Id*.

Plaintiff's claims readily meet this standard as the allegations in the Complaint raise numerous questions common to the Class. These include, *inter alia*, whether: (1) Defendants were engaged in a scheme to defraud and/or made materially false or misleading statements or omissions to investors regarding AAC's sales and marketing programs (¶¶26-49, 63-83); (2) Defendants were engaged in a scheme to defraud and/or made materially false or misleading statements or omissions to investors regarding AAC's financial results (¶¶50-62, 84-127); (3) Defendants acted with scienter (¶¶139-152); (4) Defendants' misrepresentations caused the putative Class to suffer damages (¶¶128-138); and (5) Defendants were "control persons" within the meaning of §20(a) of the Exchange Act (¶¶174-178). Because all Class members' claims depend on the answers to these common questions, commonality is established. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003) (explaining that questions bearing upon misrepresentations and materiality are among """the paradigmatic common question[s] of law in a securities fraud class action""").

- 7 -

### 3.  The Proposed Class Representative's Claims Are Typical

"A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if its claims are based on the same legal theory." *Burges*, 2017 WL 2772122, at *4.  "[A] plaintiff's burden to establish typicality is not onerous." *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *8 (W.D. Tenn. June 3, 2011).

Plaintiff's claims are typical of the proposed Class as they arise out of the same course of conduct – specifically, that Defendants artificially inflated AAC's share prices by engaging in a scheme to defraud and misrepresenting its financial results and deceptive marketing practices.  ¶¶4, 5.  As courts consistently recognize, trivial "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009); *Ross*, 257 F.R.D. at 456 ("'[i]ndividual differences regarding the purchasing and selling of stock during the proposed class period [do] not destroy the typicality requirement'").  All of Plaintiff's claims – *i.e.*, the alleged violations of §§10(b) and 20(a) of the Exchange Act – will be proven by the same evidence on a class-wide basis.  *See U.S. Xpress*, 2021 WL 1410035, at *6 (proposed class representatives' claims were typical and "driven by the same factual underpinnings as the Securities Act claims of the proposed class because they derive from the same alleged misrepresentations and/or omissions").

Plaintiff and the putative Class suffered losses from the same course of conduct and share identical interests in holding Defendants accountable and maximizing the Class' recovery.  The claims are therefore typical.

4838-1341-2336.v1

### 4. INPRS Will Adequately and Fairly Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy: (i) "'the representative must have common interests with unnamed members of the class'"; and (ii) "'it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). The first adequacy factor overlaps with the commonality and typicality elements discussed above and seeks to ensure that the class representative has interests aligned with, rather than antagonistic to, the interests of the unnamed Class members. *See In re Direct Gen. Corp.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006). The second adequacy factor requires that the representative have sufficient financial and personal involvement to encourage them to prosecute the action vigorously and adequate legal representation to meet the demands of maintaining the action. *Id*. Plaintiff clearly satisfies both prongs of Rule 23(a)(4)'s adequacy test.

Plaintiff's interests are neither antagonistic to, nor in conflict with, the interests of the other Class members. To the contrary, Plaintiff acquired AAC common stock during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Class members. *See* Gill Decl., ¶4. Indeed, Plaintiff purchased or acquired more than 136,000 shares of AAC common stock, suffering approximately $1,000,000 in losses. *Id.*

In addition to its financial stake, INPRS has demonstrated a willingness and ability to take an active role in the litigation to protect the interests of the Class members. Gill Decl., ¶6. Plaintiff has, among other things, filed a consolidated complaint with a comprehensive set of claims, successfully defended those claims through a motion-to-dismiss briefing and is in the process of

- 9 -

proving those claims in discovery.  *Id.*  Plaintiff has also diligently complied with its own discovery obligations by filing Rule 26 Initial Disclosures.  *Id.*  Further, as set forth in its declaration, Plaintiff: (i) understands the requirements and responsibilities of serving as a Class Representative; (ii) has reviewed key pleadings in this action; (iii) intends to continue to monitor and review the progress of this litigation; and (iv) intends to work with counsel to maximize the recovery to the Class.  Gill Decl., ¶¶6, 7.

INPRS has also demonstrated its adequacy by retaining attorneys with considerable experience in securities class actions.  *See U.S. Xpress*, 2021 WL 1410035, at \*8 ("[I]n determining whether the plaintiffs have established adequate representation, the Court considers whether the proposed class counsel are 'qualified, experienced and generally able to conduct the litigation.'").  Robbins Geller, a 200-attorney firm with an office in this District, regularly represents investors in nationwide securities litigation, including within the Sixth Circuit and this District.  *See* Wood Decl., Ex. C.  District courts throughout the country have noted Robbins Geller's reputation for excellence.  *See, e.g.*, *Livonia Emps.' Ret. Sys. v. Talmer Bancorp, Inc.*, 2016 WL 11549401, at \*3 (E.D. Mich. Sept. 14, 2016) ("Robbins Geller[] is a well-known firm with extensive experience in complex securities litigation."); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016) (ECF No. 567) (Sharp, J.) (in granting final approval of $215 million recovery, the largest securities class action recovery ever in Tennessee, Judge Sharp stated that attorneys with Robbins Geller "were gladiators" and "[l]ooking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this"); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2010 WL 1790763, at \*4 (M.D. Tenn. Apr. 30, 2010).  Indeed, Robbins Geller is  responsible for obtaining each of the three largest securities fraud class action recoveries ever obtained in this District.

- 10 -

Additionally, Robbins Geller has obtained the largest securities fraud class action recovery in this Circuit, as well as in the Fifth, Seventh, Eighth, Tenth and Eleventh Circuits. In short, Robbins Geller is qualified, experienced and able to prosecute this action.

### B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

This action also satisfies Rule 23(b)(3)'s requirements that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute. *See Amchem*, 521 U.S. at 615.

### 1. Common Factual and Legal Questions Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud" claims and exists where the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id*. at 623, 625. Plaintiff meets the predominance requirement by establishing that ***at least one*** factual or legal question "is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Importantly, Plaintiff "'need not prove that each element of a claim can be established by class wide proof: "What the rule does require is that common questions ***predominate*** over any questions affecting only individual [class] members."'" *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (emphasis in original). Nor does "Rule 23(b)(3) require[] a showing that ***questions*** common to the class . . . will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

As discussed above, the Class' claims are all premised on the same factual circumstances: Defendants' course of conduct that concealed from investors the true state of affairs regarding: (1) AAC's deceptive sales and marketing practices; and (2) AAC's falsified financial results. Plaintiff alleges this conduct caused AAC's stock price to be artificially inflated during the Class

- 11 -

Period, and that Plaintiff and the Class were harmed when the price of AAC's stock declined, when the true state of affairs was publicly disclosed.

Thus, the Class' claims will be proven through evidence common to the entire Class. With respect to the Class' §10(b) and Rule 10b-5 claims, the Supreme Court has held that questions of whether a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, the scienter, falsity and materiality elements) and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation) are all common questions. *Amgen*, 568 U.S. at 467-70, 474-76. Moreover, as described in the Dalrymple Rpt., damages in this case are capable of being measured on a class-wide basis, consistent with Plaintiffs' theory of the case. Dalrymple Rpt., ¶¶89-95.

These questions of Defendants' class-wide liability predominate over any individualized issues and are fundamental to all Class members' claims.

### a. INPRS is Entitled to a Presumption of Reliance Pursuant to *Basic*

Predominance is established with respect to reliance for the §10(b) claim as Plaintiffs are entitled to rely on the fraud-on-the-market presumption articulated by the Supreme Court in *Basic*, 485 U.S. 224; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263-64, 268-69 (2014) ("*Halliburton II*"); and *Amgen*, 568 U.S. at 460-62. The fraud on-the-market theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton II*, 573 U.S. at 268 (quoting *Basic*, 485 U.S. at 246-47).

- 12 -

To invoke the fraud-on-the-market presumption, a plaintiff must demonstrate: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Id.*, 573 U.S. at 268. "[W]ith the exception of materiality" – which is a question of fact reserved for the jury – the elements of publicity, market efficiency and market timing "must be satisfied before class certification." *Id.* at 276. Here, there is no dispute that the alleged misrepresentations in this case were publicly issued (*see* ¶¶63-127) or that Plaintiff traded in AAC common stock between the misrepresentations and the ultimate revelation of the truth (*see* ECF No. 27-2 (INPRS' Certification)). As described in the Dalrymple Rpt., AAC traded in an efficient market. Dalrymple Rpt.,VI .

Indeed, the market for AAC stock was open, active and efficient throughout the Class Period. Courts in this Circuit and others rely principally on the five *Cammer* factors, described below, when assessing market efficiency. *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989); *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990). Courts have also considered the *Krogman* factors, which look to: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the stock's float. *Krogman v. Sterritt*, 202 F.R.D. 467, 474, 478 (N.D. Tex. 2001); *Freeman*, 915 F.2d at 199. No single factor is determinative; nor are the factors to be applied as a "checklist." *Burges*, 2017 WL 2772122, at *8 n.10; *In re Accredo Health, Inc. Sec. Litig.*, 2006 WL 1716910, at *10 (W.D. Tenn. Apr. 19, 2006). As set forth below, these factors establish that AAC traded in an efficient market during the Class Period; thus, Plaintiffs are entitled to rely on the fraud-on-the-market presumption.

- 13 -

## (1) The *Cammer* Factors

**AAC Had a High Average Trading Volume**. An average weekly trading volume in excess of 2% is widely recognized as a sign of an efficient market.[6] On average, during the Class Period, approximately 760,000 shares of AAC common stock changed hands each week. Dalrymple Rpt., ¶34. This translated to an average weekly trading volume of 3.1% of shares outstanding (*id*.), supporting a strong presumption of an efficient market.

**A Substantial Number of Securities Analysts Followed the Company**. Analysts facilitate the flow and incorporation of information in the market. *Id*., ¶35. In this case, over 50 individual analyst reports discussing AAC were published during the Class Period, which included detailed coverage by Cantor Fitzgerald, Raymond James Financial, Inc. and William Blair & Company. *Id*., ¶37. This widespread analyst coverage of AAC supports a finding of efficiency. *See, e.g.*, *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514 (1st Cir. 2005) (one analyst sufficient for finding of market efficiency); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008) (three analysts sufficient under this factor), *aff'd*, 639 F.3d 623 (3d Cir. 2011). Moreover, over 100 media articles about AAC were published during the Class Period, adding to the rich flow of publicly available information. Dalrymple Rpt., ¶38. This media coverage of AAC further supports a finding of market efficiency. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 92 (S.D.N.Y. 2015) (fact that "'information concerning Barclays was widely

---

6   *See, e.g.*, *Cammer*, 711 F. Supp. at 1286 ("Such interest . . . implies . . . investors are executing trades on the basis of newly available . . . information."); *Accredo*, 2006 WL 1716910, at *7 n.3 ("'substantial presumption of an efficient market if the securities' average weekly trading volume is 1% or more of the total outstanding shares and an even greater presumption of market efficiency if the percentage is 2%'"); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1161 (N.D. Ohio 2013) (average weekly trading volume above 2% benchmark "warrant[s] a 'strong' presumption . . . [of] an efficient market") (citing *Cammer*, 711 F. Supp. at 1285).

- 14 -

disseminated throughout the Class Period through Bloomberg and other news services'" supported a finding of market efficiency).[7]

**AAC Was Listed on the NYSE, and There Were Market Makers for AAC Stock**. AAC's listing on the NYSE throughout the Class Period provides further evidence that it traded in an efficient market. *Freeman*, 915 F.2d at 199 ("[S]ecurities traded in national secondary markets such as the New York Stock Exchange . . . are well suited for application of the fraud on the market theory."). Under the NYSE's market model, each company with a listed security, including AAC, is allocated a designated market maker, which are subject to "various responsibilities and duties which compel them to maintain an orderly market and provide liquidity for covered securities." Dalrymple Rpt., ¶43; *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 654 (S.D. Ohio 2017) ("Transactions on the NYSE . . . go through a designated market maker . . . which has been found to satisfy this factor."). Moreover, at least 3 financial institutions disclosed they made a market for AAC stock over the course of the Class Period. Dalrymple Rpt., ¶42. AAC's listing on the NYSE and the broad array of market makers further supports a finding that the market for AAC common stock was efficient.

**AAC Was Eligible to File, and Did File, SEC Form S-3 Registration Statements**. Courts also consider eligibility to file an SEC Form S-3 registration statement in assessing market efficiency. *Cammer*, 771 F. Supp. at 1284 (SEC Form S-3 registration is "'predicated on the Commission's belief that the market operates efficiently for these companies'"). A company must meet certain float and other requirements to be eligible for S-3 registration with the SEC.

---

[7] Moreover, over 150 major institutions owned AAC common stock during the Class Period. Dalrymple Rpt., ¶47. AAC's considerable ownership by large institutions further supports a finding of market efficiency. *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008).

4838-1341-2336.v1

Dalrymple Rpt., ¶50.  Here, AAC was eligible for S-3 registration for most days in the Class period, and in fact filed an S-3 registration statement, which supports a finding of market efficiency. *Id*. ¶¶51-53.

**AAC's Stock Price Reacted to New, Company-Specific Information**.  The fifth *Cammer* factor focuses on whether AAC  stock responded to new, Company-specific information. *Cammer*, 711 F. Supp. at 1287.  To test the responsiveness of AAC's stock price to new information, Plaintiff's expert performed an event study – analyzing AAC stock price movements on days that the Company announced earnings or guidance revisions and comparing those events to all other days in the Class Period.  Dalrymple Rpt., ¶¶56-57.  An event study is "'a generally accepted technique for measuring how a security's price reacts to new, unexpected information about the issuing company.'"  *Willis v. Big Lots, Inc.*, 2017 WL 1074048, at *4 n.4 (S.D. Ohio Mar. 17, 2017) (quoting *Burns*, 967 F. Supp. 2d at 1151); *see also Halliburton II*, 573 U.S. at 280 (event studies are "regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events").  As explained in the Dalrymple Rpt., the event study identified a cause-and-effect relationship between the release of new AAC-specific information and the movement in AAC's stock price throughout the Class Period.  Dalrymple Rpt., ¶¶66-70.

### (2)    The *Krogman* Factors

**AAC Had a Sufficiently Large Market Capitalization**.  Courts have considered a large market capitalization to be indicative of market efficiency on the premise that investors have a greater incentive to invest in more highly capitalized corporations.  *Krogman*, 202 F.R.D. at 478. Here, AAC's market capitalization ranged from $131 million to $308 million during the Class Period, qualifying it for inclusion in the Russel 3000 Index and placing it among the 3,000 largest

- 16 -

publicly traded U.S. companies.  Dalrymple Rpt., ¶¶74-75.  This factor supports a finding of market efficiency.  *Id*.

**AAC Stock Had a Narrow Bid-Ask Spread**.  A narrow bid-ask spread – *i.e.*, a small difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares – indicates a more efficient market.  *See Krogman*, 202 F.R.D. at 478.  AAC's common stock had a very narrow bid-ask spread, averaging 0.14% during the Class Period. Dalrymple Rpt., ¶78.  This supports the finding that AAC traded in an efficient market.  *Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *4 (E.D. Mich. Nov. 19, 2020) (bid-ask spread between .2% and .29% supported finding of market efficiency).

**AAC Had a Large Public Float**.  Courts also consider public float – *i.e.*, the percentage of shares held by the public, rather than insiders and affiliated entities – in assessing market efficiency.  *Krogman*, 202 F.R.D. at 478.  AAC's public float ranged between 45.7% and 51.1% of all shares outstanding throughout the Class Period.  Dalrymple Rpt., ¶71. This factor supports a finding of market efficiency. ¶74.

### b.     Plaintiff is Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute*

With respect to reliance, predominance is also met because Plaintiff is entitled to a presumption of reliance under *Affiliated Ute*, 406 U.S. 128.  Plaintiff's claims are based, in part, on Defendants' scheme to artificially inflate the value of AAC securities and on their material omissions; *Affiliated Ute* applies to such scheme claims, as well as claims "involving primarily a failure to disclose."  *Id*. at 153; *see, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 288-90 (D. Minn. 2018) (certifying class and holding that plaintiffs could invoke the *Affiliated Ute* presumption for their scheme liability claims).  In such cases, "positive proof of reliance is not

- 17 -

a prerequisite to recovery." *Affiliated Ute*, 406 U.S. at 153-54. Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Id*. at 131. Moreover, because materiality itself is a common question, Plaintiff is not required to prove materiality at the class certification stage. *Amgen*, 568 U.S. at 467 ("[B]ecause '[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class."); *Halliburton II*, 573 U.S. at 281-83 (same).

Here, Plaintiff alleged that Defendants engaged in a scheme to defraud investors by, *inter alia*, utilizing various deceptive sales and marketing tactics. Accordingly, *Affiliated Ute*'s presumption of reliance also applies. *Burges*, 2017 WL 2772122, at \*10.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Courts have uniformly recognized that a class action is superior to other available methods for the fair and efficient resolution of securities class actions. Under Rule 23(b)(3), consideration of the following factors determines whether the "superiority" requirement is met: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Here, each factor weighs strongly in favor of class certification.

Most Class members' interests in individually prosecuting separate actions is minimal as the trouble and expense of doing so would be prohibitive when weighed against the potential recoveries. Additionally, the maintenance of a class action in this District ensures an efficient

- 18 -

expenditure of resources and consistent rulings on the Class' claims. *See Psychiatric Sols.*, 2012 WL 1071281, at *39 ("[C]ertification of this action as a class action is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency."). This District is a desirable forum for this class action: individual class members are most likely located in geographically dispersed areas, AAC is headquartered in this District and many of the acts and practices complained of occurred in substantial part in this District. Plaintiff does not foresee any management difficulties that preclude this action from proceeding as a class action. Consistent with the requirements of Rule 23(b)(3), certification of this action as a class action would not only be superior to other available methods, but appears to be the sole method for fairly and efficiently litigating the Class members' claims.

## IV.     CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion for Class Certification should be granted.

DATED:  July 6, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
fmejia@rgrdlaw.com

Lead Counsel for Indiana Public Retirement
System

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 6, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)

E-mail:  cwood@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Michael T. Harmon**
  michael.harmon@wallerlaw.com,TAPDocketingClerk-Nash@wallerlaw.com,shelli.dimarco@wallerlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **W. Travis Parham**
  travis.parham@wallerlaw.com,TAPDocketingClerk-Nash@wallerlaw.com,shelli.dimarco@wallerlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Case 3:19-cv-00407    Document 77    Filed 07/06/21    Page 28 of 28 PageID #: 1373