# EXHIBIT 3

**No.**

# In the
# United States Court of Appeals
## for the Sixth Circuit

CITY OF PALM BEACH GARDENS FIREFIGHTERS PENSION FUND,

*Respondent,*

v.

BANCORPSOUTH, INC.; JAMES D. ROLLINS, III; WILLIAM L. PRATER; JAMES V. KELLEY,

*Petitioners.*

———————————————————————

Appeal from the United States District Court
for the Middle District of Tennessee, Nashville Division, No. 3:14-cv-01564.
The Honorable **Waverly D. Crenshaw**, Judge Presiding.

## PETITION FOR PERMISSION TO APPEAL
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

JEFFREY B. MALETTA
NICHOLAS G. TERRIS
AMY J. ELDRIDGE
KRISTA CONSIGLIO
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006-1600
Phone:  (202) 778-9000
Fax:  (202) 778-9100
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com
amy.eldridge@klgates.com
krista.consiglio@klgates.com

R. BRUCE ALLENSWORTH
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Phone: (617) 261-3100
Fax: (617) 261-3175
bruce.allensworth@klgates.com

THOMAS A. WISEMAN, III
WISEMAN ASHWORTH
LAW GROUP
511 Union Street, Suite 800
Nashville, TN 37219-1743
Phone:  (615) 254-1877
Fax:  (615) 254-1878
tom@wisemanashworth.com

*Counsel for Petitioners BancorpSouth, Inc., James D. Rollins, III,*
*James V. Kelley, and William L. Prater*

 COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

BANCORPSOUTH, INC., et al.,      )
      )
*Defendants-Petitioners*,      )
      )
v.      )      CASE NO. _____
      )
CITY OF PALM BEACH GARDENS   )
FIREFIGHTERS PENSION FUND,   )      District Court
      )      Case No. 3:14-cv-01564
*Plaintiff-Respondent*.      )

## CORPORATE AFFILIATIONS & FINANCIAL INTERESTS

Pursuant to 6th Cir. R. 26.1, BancorpSouth, Inc., James D. Rollins, III, William L. Prater, and James V. Kelley ("Petitioners") make the following disclosure:

1. Are petitioners a subsidiary or affiliate of a publically owned corporation?

    Yes. BancorpSouth, Inc. is a publically traded company with no parent corporation. No publically held company owns ten percent or more of BancorpSouth, Inc.'s outstanding shares.

2. Is there a publically owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    No.

# TABLE OF CONTENTS

RELIEF SOUGHT AND OVERVIEW OF PETITION ………………………….. 1

PRELIMINARY STATEMENT ……………………………………………. 2

QUESTIONS PRESENTED ……………………………………………... 6

STATEMENT OF FACTS …………………………………………….. 7

REASONS THE APPEAL SHOULD BE ALLOWED ………………………. 11

I.    THIS COURT SHOULD REVIEW THE DISTRICT COURT'S MISINTERPRETATION OF HALLIBURTON'S "PUBLICLY KNOWN" REQUIREMENT ………………………………………... 11

II.   THIS COURT SHOULD REVIEW THE DISTRICT COURT'S ERRONEOUS PRICE IMPACT RULING ……………………………… 14

    A. There Was an Undisputed Lack of "Front-End" Price Impact ……….. 15

    B. The District Court Improperly Gave Conclusive Weight to a Mere Allegation of a "Corrective Disclosure" ……………………………… 15

    C. The District Court's Price Impact Analysis Again Failed to Address the Unrebutted Evidence Proving a Lack of Public Knowledge ……… 18

III.  THIS COURT SHOULD REVIEW THE DISTRICT COURT'S FAILURE TO APPLY FED. R. EVID. 301 ………………………………... 19

IV.   THIS COURT SHOULD REVIEW THE DISTRICT COURT'S MISINTERPRETATION OF AFFILIATED UTE ……………………… 20

CONCLUSION ……………………………………………………. 23

ii

# TABLE OF AUTHORITIES

**Cases:**

Affiliated Ute Citizens of Utah v. United States,
    406 U.S. 90 (1972)……………………………………………… *passim*

Amgen Inc. v. Conn. Ret. Plans & T. Funds,
    133 S. Ct. 1184 (2013)…………………………………………… 13

Aranaz v. Catalyst Pharm. Partners Inc.,
    302 F.R.D. 657 (S.D. Fla. 2014)……………………………….. 14

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)…………………………………………….. *passim*

Clayton v. Heartland Res., Inc.,
    754 F. Supp. 2d 884 (W.D. Ky. 2010)……………………………... 21, 22

Comcast Corp. v. Behrend,
    133 S. Ct. 1426 (2013)…………………………………………… 17

Cox v. Collins,
    7 F.3d 394 (4th Cir.1993)………………………………………… 21

Dodona I, LLC v. Goldman, Sachs & Co.,
    847 F. Supp. 2d 624 (S.D.N.Y. 2012)………………………………….. 20

Dodona I, LLC v. Goldman, Sachs & Co.,
    296 F.R.D. 261 (S.D.N.Y. 2014)……………………………………….. 20

Dura Pharm., Inc. v. Broudo,
    544 U.S. 336 (2005)……………………………………………… 16

Eckstein v. Balcor Film Inv'rs,
    58 F.3d 1162 (7th Cir. 1995)……………………………………… 23

Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I),
    131 S. Ct. 2179 (2011)…………………………………………...3, 14

Feit v. Leasco Data Processing Equip. Corp.,
      332 F. Supp. 544 (E.D.N.Y. 1971)…………………………………………... 23

Fridrich v. Bradford, 542 F.2d 307 (6th Cir. 1976) …………………………... 22

Goodman v. Genworth Fin. Wealth Mgmt., Inc.,
      300 F.R.D. 90 (E.D.N.Y. 2014)…………………………………………... 20

Greenberg v. Crossroads Sys., Inc.,
      364 F.3d 657 (5th Cir. 2004)………………………………………………… 16

Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II),
      134 S. Ct. 2398 (2014)………………………………………………….. passim

Hevesi v. Citigroup, Inc.,
      366 F.3d 70 (2d Cir. 2004)…………………………………………………. 6

IBEW Local 98 Pension Fund v. Best Buy Co., Inc.,
      818 F.3d 775 (8th Cir. 2016)............................................................. passim

In re BancorpSouth, Inc.,
      No. 16-0505, 2016 WL 5714755 (6th Cir. Sept. 6, 2016)………………… 1

In re BP p.l.c. Sec. Litig.,
      MDL No. 10-md-2185, 2013 WL 6388408
      (S.D. Tex. Dec. 6, 2013) …………………………………………………... 12, 19

In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig.,
      250 F.R.D. 137 (S.D.N.Y. 2008)………………………………………….. 17

In re Delta Air Lines,
      310 F.3d 953 (6th Cir. 2002) (per curium) ……………………………….. 11

In re Interbank Funding Corp. Sec. Litig.,
      629 F.3d 213 (D.C. Cir. 2010)…………………………………………... 20, 21

In re Lehman Bros. Sec. & ERISA Litig.,
      No. 09 MD 2017 LAK, 2013 WL 5730020
      (S.D.N.Y. Oct. 22, 2013) ………………………………………………... 20, 22

iv

In re N. Telecom Ltd. Sec. Litig.,
    116 F. Supp. 2d 446 (S.D.N.Y. 2010)…………………………………….. 17

In re Neustar, Inc. Sec. Litig.,
    No. 1:14CV885 (JCC/TRJ), 2015 WL 5674792
    (E.D. Va. Sept. 23, 2015) …………………………………………… 14

In re Polymedica Corp. Sec. Litig.,
    432 F.3d 1 (1st Cir. 2005)…………………………………………… 13

In re Red Hat, Inc. Sec. Litig.,
    261 F.R.D. 83 (E.D.N.C. 2009)……………………………………… 14

In re Yoder Co.,
    758 F.2d 1114 (6th Cir. 1985)…………………………………….. 19

In re Zonagen, Inc. Sec. Litig.,
    322 F. Supp. 2d 764 (S.D. Tex. 2003)……………………………. 15

Johnston v. HBO Film Mgmt., Inc.,
    265 F.3d 178 (3d Cir. 2001)…………………………………22, 23

Levinson v. Basic, Inc.,
    786 F.2d 741 (6th Cir. 1986), vacated on other grounds, 485 U.S. 224
    (1988)........................................................................................ 2, 22

Lupyan v. Corinthian Colls. Inc.,
    761 F.3d 314 (3d Cir. 2014)………………………………………. 19

Ockerman v. May Zima & Co., 27 F.3d 1151 (6th Cir. 1994) ………................. 22

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502 (1993)………………………………………………… 19

Wills v. Big Lots, Inc.,
    No. 2:12–cv–604, 2017 WL 1063479 (S.D. Ohio Mar. 17, 2017)……….. 15

**Statutes & Other Authorities:**

Securities Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5…….….…… 2

Securities Exchange Act of 1934 § 10(b)………………………………………. 2

Fed. R. Evid. 301…………………………………………………………… *passim*

Webster's Third New International Dictionary (1976)…………………………...12

Webster's Third New International Dictionary (1996)…………………………...12

vi

### RELIEF SOUGHT AND OVERVIEW OF PETITION

For the second time in this case, Defendants respectfully petition this Court to grant permission to appeal under Fed. R. Civ. P. 23(f).

This Court summarily vacated the district court's prior class certification order.  See Remand Order, RE 178.  It held that one of the relevant factors in evaluating 23(f) petitions—whether the petitioner is likely to succeed—"strongly militate[d] in favor" of permitting the appeal.  Id. at Page ID# 6435.  Due to multiple deficiencies in the order, this Court was "unable to determine if the district court abused its discretion." Id. at Page ID# 6436.  It therefore vacated and remanded for the district court to "undertake a rigorous analysis to ensure that plaintiffs meet all certification requirements."  Id. at Page ID# 6345–46.

The district court's second class certification opinion and order, entered June 26, 2017, failed to meaningfully comply.  Ex. A. The new opinion (the "Opinion") is longer.  But it contains almost identical cursory and erroneous analyses of the important issues raised in Defendants' prior petition.  These issues arise out of the landmark opinion reforming the "fraud-on-the-market" or "Basic" presumption, Halliburton v. Erica P. John Fund (Halliburton II), 134 S. Ct. 2398 (2014).

The Opinion also introduces a sweeping misinterpretation of the presumption of reliance for certain omissions cases recognized in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 90, 153–54 (1972).

Accordingly, this Court's review is even more clearly warranted than before.

## PRELIMINARY STATEMENT

This is a "fraud-on-the-market" case under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  It is based on two allegedly false representations and warranties concerning legal compliance that BancorpSouth, Inc. ("BancorpSouth" or the "Company") made in merger agreements annexed to lengthy SEC filings.

Unless a 10b-5 case qualifies for one of two presumptions of reliance, it "cannot proceed as a class action."  Halliburton II, 134 S. Ct. at 2416.  This time, the district court erroneously held that the case qualified for both presumptions.

**Fraud-on-the-Market Presumption**

As before, the Opinion certified a class based on the presumption recognized in Levinson v. Basic, Inc., 786 F.2d 741 (6th Cir. 1986), vacated on other grounds, 485 U.S. 224 (1988).

Halliburton II recalibrated the Basic presumption.  It underscored that a plaintiff seeking class certification bears the burden of satisfying a publicity prerequisite—"that the alleged misrepresentations were **publicly known**." Halliburton II, 134 S. Ct. at 2408 (emphasis added).  Even if a plaintiff meets that burden, defendants may rebut the Basic presumption by showing a lack of "price

2

impact," i.e., presenting "evidence that the misrepresentation did not in fact affect the stock price." Id. at 2414.

The district court again fundamentally misinterpreted these instructions in three principal ways:

First, as to the publicity prerequisite, the district court again applied the wrong legal standard. It adopted a conclusive rule that "SEC filings are sufficiently public to be 'publicly known.'" Ex. A at 15. The court therefore refused to address Defendants' unrebutted evidence that the alleged misrepresentations were **not** publicly known.

Contrary to the Opinion, if all plaintiffs need to prove is that an alleged misstatement was *public* or *publicly available*, it seems clear that the Supreme Court would have used only these words to describe the burden. Instead, it repeatedly mandated that a plaintiff must go further and prove that the alleged misrepresentations were "***publicly known***," i.e., that they were apprehended or perceived by some significant segment of the public, or at least by market intermediaries. "[E]lse how would the market take them into account?" Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I), 131 S. Ct. 2179, 2185 (2011).

Second, the district court again erred in holding that Defendants failed to sufficiently show a lack of price impact. Like the decision reversed by IBEW Local 98 Pension Fund v. Best Buy Co., Inc., 818 F.3d 775, 783 (8th Cir. 2016),

3

the Opinion erroneously gave controlling weight to Plaintiff's unsupported "price maintenance" theory—its conjecture that, but for the alleged misstatements, the price of the Company's shares would have declined on each of the dates those statements were made.

Similar to <u>Best Buy</u>, Defendants here provided unrebutted evidence that the alleged misstatements did not move the Company's stock price when they were made.  That alone met Defendants' burden.  <u>Cf.</u> <u>Best Buy</u>, 818 F.3d at 782 ("[O]verwhelming evidence of no 'front-end' price impact rebutted the <u>Basic</u> presumption.").

Unlike <u>Best Buy</u>, Defendants here also presented uncontroverted evidence that investors **did not** review or consider the subject representations.  This evidence clearly rebuts the <u>Basic</u> presumption, which is based on the theory that, even if many investors do not review and rely on a misrepresentation, it is generally absorbed into the market price through its consideration by a critical mass of other investors, especially analysts and other market intermediaries.  If such investors did not consider the obscure alleged misrepresentations, then manifestly they could **not** have "actually affect[ed] the stock's market price." <u>Halliburton II</u>, 134 S. Ct. at 2416.  The Opinion offers no explanation for concluding otherwise.

4

Third, the district court erroneously failed to apply Fed. R. Evid. 301 to the Basic presumption.

**The District Court Misinterpreted Affiliated Ute**

The district court also clearly misinterpreted Affiliated Ute.

Affiliated Ute only addresses certain cases "involving **primarily a failure to disclose**," Affiliated Ute, 506 U.S. at 153 (emphasis added).  The Opinion did not find that this was primarily a failure to disclose case, let alone provide any explanation how it possibly could be. The record conclusively demonstrates that it is not such a case.

Regardless, the Affiliated Ute presumption is plainly inapplicable here.  It is limited to omissions cases in face-to-face securities transactions involving a defendant-fiduciary who has a duty to disclose.  By contrast, this case involves impersonal open-market securities purchases and alleged affirmative misrepresentations.  Further, to benefit from the presumption, each putative class member must individually prove that he reviewed the filing in the first place. Otherwise, any omission could not have caused injury.  This precludes class-wide application of the Affiliated Ute presumption.

**Review Should Be Granted**

Each of the questions presented is a significant issue of first impression in this Circuit, and in most instances nearly all other Circuits.  And the meaning of

5

<u>Halliburton</u>'s "publicly known" requirement appears never to have been squarely addressed by any federal appellate court.  These important issues likely will evade later review, as securities fraud class actions are seldom litigated to final judgment. <u>See</u> <u>Hevesi v. Citigroup, Inc.</u>, 366 F.3d 70, 80 (2d Cir. 2004).  Further, as before, Defendants have shown the requisite likelihood of success, and the district court failed to conduct the necessary rigorous analysis.  <u>See</u> Remand Order, RE 178. Accordingly, this Court's interlocutory review is clearly warranted.

<b>QUESTIONS PRESENTED</b>

1.      Whether the <u>Basic</u> presumption's threshold requirement that a plaintiff prove that an alleged misrepresentation is "**<u>publicly known</u>**," <u>Halliburton</u> <u>II</u>, 134 S. Ct. at 2408 (emphasis added), is conclusively established by a plaintiff's mere showing that the alleged misrepresentation, however obscure, was **<u>publicly</u>** **<u>available</u>**—<u>i.e.</u>, that it appeared anywhere in an SEC filing in the public domain?

2.      Whether, when Plaintiff merely asserts a purely speculative "price maintenance" theory, Defendants have met their burden to show a lack of price impact under <u>Halliburton</u> when they present unrebutted evidence that there was no "front-end" price impact, and unrebutted evidence that the alleged misrepresentations were **<u>not</u>** publicly known?

3.      Whether the <u>Basic</u> presumption is governed by Fed. R. Evid. 301?

6

4.      Whether the <u>Affiliated Ute</u> presumption may be invoked in (a) an impersonal open-market securities case, (b) where the claims are not based primarily on omissions, but instead on affirmative statements that allegedly omitted certain information, and (c) where there is no evidence that most class members reviewed the subject SEC filings?

## STATEMENT OF FACTS

**Plainitff's Allegations and the District Court's Ruling on Actionability**

The operative complaint alleged two categories of misstatements, only one category of which survives.

The principal allegations concerned statements that BancorpSouth's acquisitions of two other banks were "expected . . . to close in the second quarter of 2014."  Motion to Dismiss Opinion, RE 72, Page ID# 3181, 3184.  Beginning with the first merger announcement in January 2014, these statements appeared in prominent formats such as press releases and Form 10-Ks.  Substantially granting Defendants' motion to dismiss, the district court found that these statements were nonactionable, forward-looking statements.  <u>Id.</u> at Page ID# 3183–3184.

The second category, which the district court allowed to proceed past the pleading stage, comprises two representations and warranties BancorpSouth made to its merger partner in the January 2014 merger agreements.  The agreements

were appended to lengthy registration and proxy statements and were filed with the

SEC in February and March 2014.  See id. at Page ID# 3184–3185.

These contractual representations are:

> (a) BancorpSouth and BancorpSouth Bank have complied in all material respects with and are not in material default or violation under any applicable law, statute, order, rule, regulation, policy and/or guideline of any Governmental Body relating to BancorpSouth or BancorpSouth Bank, including all Banking Laws . . . .

> (c) BancorpSouth has no Knowledge of any fact or circumstance relating to or any of its Subsidiaries that would materially impede or delay receipt of any required regulatory approval of the Merger . . . .

Complaint, RE 39, Page ID# 355–356, 371–372, 374, 376, 378.

Plaintiff alleges that the "truth" was revealed on July 21, 2014, when a

Company press release disclosed that, during routine supervisory activities, federal

regulators had identified concerns about its BSA/AML procedures and that

additional time would be required to obtain regulatory approvals for the mergers.

Id. at Page ID# 361–362.  Allegedly in response to these "corrective" disclosures,

BancorpSouth's stock price dropped approximately 8% on July 22, 2014, and 1.7%

on July 23.  Id. at Page ID# 363.

8

**The Relevant, Unrebutted Evidence Before the District Court**

In moving for class certification, Plaintiff invoked the Basic and Affiliated Ute presumptions.[1]  In opposition, Defendants submitted two expert reports—the report of Dr. Vinita Juneja and the report of Charles Porten, CFA.[2]

Dr. Juneja's report included empirical evidence that neither of the alleged misstatements still in the case had "front-end" price impact.[3]

Mr. Porten provided expert testimony that, while there was abundant information that analysts and other investors typically would have reviewed and considered about the mergers and the Company generally, the subject representations and warranties are a type of obscure, technical information that would not be reviewed or considered by investors.  Porten Report, RE 118-1, Page ID# 4044–4053, 4058–4063, 4069, 4072.  Mr. Porten also reviewed a wide array of public press reports, analyst reports, and related material and found that, although investors considered other merger-related disclosures, there was no indication that they discussed or considered the subject representations and warranties.  Id. at Page ID# 4045, 4054–4058, 4064–4069, 4069–4072.

---

[1]    Plaintiff submitted an expert report mainly addressing market efficiency. Initial Feinstein Report, RE 99-3, Page ID# 3639–3732.

[2]    Juneja Report, RE 122-1, 122-2, Page ID# 4676–4727; Porten Report, RE 118-1, Page ID# 4037–4086.

[3]    Juneja Report, RE 122-1, Page ID# 4691–4699.

9

In reply, Plaintiff offered no evidence of any statistically significant "front-end" price impact or that investors reviewed or considered the alleged misrepresentations.

**Class Certification Proceedings**

After the district court initially certified a class, Defendants petitioned this Court for review under Rule 23(f). This Court granted the Petition, vacating and remanding the class certification order. On June 26, 2017, based on the same record, the district court again certified the class. The Opinion concluded that the case qualified for the Basic presumption. Ex. A at 13–19.

It again rejected Defendants' interpretation of the "publicly known" requirement. Id. at 14–15. As before, the district court declined to apply Fed. R. Evid. 301. Id. at 18. The district court accepted Defendants' uncontroverted showing that the alleged misrepresentations lacked "front-end" price impact, but once more held this was legally insufficient. Id.

The Opinion further found that price impact of the alleged misrepresentations was sufficiently shown for class certification by Plaintiff's allegation of a corrective disclosure on July 21, 2014, coupled with drops in the Company's share price on the ensuing trading days. Id. at 19. In analyzing price impact, the Opinion did not address Defendants' unrebutted evidence that analysts

10

and other market intermediaries *did not* review or consider the subject representations in the merger agreements.

The Opinion also held that the <u>Affiliated Ute</u> presumption applied because Plaintiffs alleged both omissions and misrepresentations.  <u>Id.</u> at 20–21.

## REASONS THE APPEAL SHOULD BE ALLOWED

Rule 23(f) gives this Court unfettered discretion to permit an appeal from a class certification order.  <u>See</u> Remand Order, RE 178, Page ID# 6435; <u>In re Delta Air Lines</u>, 310 F.3d 953, 959 (6th Cir. 2002) (per curium).  Review should be granted here for the same reasons this Court articulated in the Remand Order and because the appeal turns on "novel or unsettled question[s]" of broad significance to securities fraud class litigation.  <u>Id.</u> at 960.

## I.   THIS COURT SHOULD REVIEW THE DISTRICT COURT'S MISINTERPRETATION OF <u>HALLIBURTON</u>'S "PUBLICLY KNOWN" REQUIREMENT

The district court again fundamentally misinterpreted <u>Halliburton</u>'s publicity prerequisite.

That a misrepresentation appears in an SEC filing may demonstrate it was *public* or *publicly available*.  But the Supreme Court repeatedly stated that a plaintiff must go further and prove that the "alleged misrepresentations were

11

*publicly known*."  Halliburton II, 134 S. Ct. at 2408 (emphasis added).[4]  A

"publicly known" statement is naturally understood as one that is actually

apprehended or perceived by the public.[5]  See, e.g., In re BP p.l.c. Sec. Litig., MDL

No. 10-md-2185, 2013 WL 6388408, at *14–15 (S.D. Tex. Dec. 6, 2013) (publicly

available regulatory filing accessed by approximately 22 persons did not meet

publicity requirement because it was not "known by the market").

Although the contours of the publicity prerequisite remain undeveloped, no

extended analysis is required here.  Plaintiff simply failed to offer any evidence to

meet its burden, or even to rebut Defendants' evidence that the alleged

misstatements were **not** publicly known.  The district court thought that irrelevant,

holding that, because SEC filings are "sufficiently public," the filing of a merger

---

[4]      See also id. at 2413 ("[A] plaintiff must prove that . . . the alleged
misrepresentations were publicly known . . . ."); id. (fraud-on-the-market
presumption is illogical "[i]f the misrepresentation was not publicly known").

[5]      Halliburton includes shorthand references to the publicity prerequisite that
employ the words "public" or "publicly."  E.g., Halliburton II, 134 S. Ct. at 2414
("[I]f a plaintiff shows that the defendant's misrepresentation was public and
material . . . .").  It seems clear that the Supreme Court would have used only such
words if it intended to allow plaintiffs to invoke the fraud-on-the-market
presumption merely by showing that an alleged misstatement was made "in a
manner observable by or a place accessible to the public."  Webster's Third New
International Dictionary (1976) at 1836 (defining "publicly").  Instead, by
repeatedly mandating in key passages articulating the presumption's prerequisites
that plaintiffs prove that the statements be "publicly known," the Supreme Court
required more, i.e., proof that statement be "apprehended or perceived" by the
public.  Webster's Third New International Dictionary (1976) at 1253 (defining
"known").

12

agreement with the SEC is conclusive proof of the "publicly known" requirement. Ex. A. at 15.

However, the need for proof that an alleged misstatement is not just "public" but also "publicly known" (or at least consideration of rebuttal evidence negating the possibility) is evident where, as here, the alleged misstatements are representations and warranties contained in lengthy merger agreements annexed to SEC filings. "[A] market may more readily process certain forms of widely disseminated and easily digestible information, such as public merger announcements, than information more difficult to acquire and understand, **such as obscure technical data buried in a filing with the Securities and Exchange Commission**." Amgen Inc. v. Conn. Ret. Plans & T. Funds, 133 S. Ct. 1184, 1197 n.6 (2013) (emphasis added).

Requiring proof that an alleged misstatement was "publicly known" (or at least allowing defendants to prove it was not) would not, as the Opinion found, "circumvent," Ex. A at 15, the fraud-on-the-market presumption. To the contrary, it is essential to the existence of the presumption, which is based on the "fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'" Halliburton II, 134 S. Ct. at 2410 (quoting Basic, 485 U.S. at 248 n.28). See also In re Polymedica Corp. Sec . Litig., 432 F.3d 1, 8 (1st Cir. 2005). If

13

Plaintiff cannot even show that a critical mass of analysts, market makers, arbitrageurs, or other market intermediaries knew of a misrepresentation and wrote about or took some other action in reliance on the statement,[6] there is no basis to infer that the misrepresentations would have affected the market price. Without such proof, any alleged misstatement cannot be said to be "publicly known" for purposes of establishing the presumption and "could not have distorted the stock's market price." Halliburton II, 134 S. Ct. at 2413. See also Halliburton I, 131 S. Ct. 2179, 2185 (2011) ("[P]laintiffs must demonstrate that the alleged misrepresentations were publicly known (else how would the market take them into account?) . . . . ").

## II.     THIS COURT SHOULD REVIEW THE DISTRICT COURT'S ERRONEOUS PRICE IMPACT RULING

Defendants presented compelling evidence that the obscure representations at issue lacked price impact. The district court again erroneously disregarded this evidence as legally irrelevant and imposed a nearly impossible burden on defendants.

---

[6]     Cf. Aranaz v. Catalyst Pharm. Partners Inc., 302 F.R.D. 657, 668 (S.D. Fla. 2014) ("Plaintiffs show that the alleged misrepresentation was contained in a [company] press release, which was the topic of several financial reports and news articles, and thus show that the misrepresentation was publicly known."). The Opinion cites two inapposite cases. Ex. A. at 15. Unlike here, the alleged misrepresentations in both were known to analysts, and neither case considered the distinction between "public" and "publicly known." In re Neustar, Inc. Sec. Litig., No. 1:14CV885 (JCC/TRJ), 2015 WL 5674792, at *7 (E.D. Va. Sept. 23, 2015); In re Red Hat, Inc. Securities Litigation, 261 F.R.D. 83, 91 (E.D.N.C. 2009).

**A. There Was an Undisputed Lack of "Front-End" Price Impact**

As in <u>IBEW Local 98 Pension Fund v. Best Buy Co., Inc.</u>, 818 F.3d 775, 782 (8th Cir. 2016), Defendants adduced unrebutted evidence that the challenged statements had no statistically significant impact on the price of the Company's stock when made.  (See <u>supra</u> at 9–10).

Contrary to the Opinion, Ex. A at 18, this lack of "front-end" price impact is dispositive.  <u>Halliburton II</u> makes clear that the <u>Basic</u> presumption "'could be rebutted by appropriate evidence,' including evidence that ***the asserted misrepresentation (or its correction)*** did not affect the market price of the defendant's stock." 134 S. Ct. at 2414 (emphasis added).  Evidence of no price impact either on the misstatement dates *or* the disclosure dates will suffice to rebut the presumption.[7]

**B. The District Court Improperly Gave Conclusive Weight to a Mere Allegation of a "Corrective Disclosure"**

Similar to the ruling reversed in <u>Best Buy</u>, the Opinion also erroneously relied on a speculative "price maintenance" theory.  <u>See</u> Ex. A at 18–19.

---

[7]    <u>See also</u> <u>Best Buy</u>, 818 F.3d at 782 (defendants' "evidence of no 'front-end' price impact rebutted the <u>Basic</u> presumption"); <u>In re Zonagen, Inc. Sec. Litig.</u>, 322 F. Supp. 2d 764, 780 (S.D. Tex. 2003).  The Opinion cited <u>Wills v. Big Lots, Inc.</u>, No. 2:12-cv-604, 2017 WL 1063479 (S.D. Ohio Mar. 17, 2017), which also expressly rejected <u>Best Buy</u>. <u>Id.</u> at *16.

15

The Opinion found a sufficient showing of price impact based merely on (1) Plaintiff's allegation that the Company's July 21, 2014 press release was a "corrective disclosure," id. at 18–19; and (2) the fact that the Company's stock price dropped on the two subsequent trading days. See id. at 19.

Even if a so-called "price maintenance" theory of price impact were cognizable in some cases,[8] it is insufficient here.

As the Opinion notes, id., Defendants contended that a mere decline in a company's stock price does not necessarily or even probably imply stock price inflation or maintenance resulting from an earlier specific alleged misstatement. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342–43 (2005).  In this case, such a decline likely reflected other factors, such as the materialization of the disclosed risk of a delay in the mergers, which the Company disclosed on multiple occasions in prominent, nonactionable statements.  See Motion to Dismiss Opinion, RE 72, Page ID# 3183–3184.  Cf. Best Buy, 818 F.3d at 783 ("[t]he allegedly 'inflated price' was established by [a] non-fraudulent press release" to which investors gave "great weight" that "was 'virtually the same'" but disseminated earlier than that alleged fraudulent statement).

---

[8]    But see Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 665–66 (5th Cir. 2004) (confirmatory information does not qualify for fraud-on-the-market presumption, which "is based upon actual movement of the stock price").

16

Plaintiff merely offered speculation that the alleged misrepresentations may have prolonged inflation in the Company's stock price—not evidence that they actually did.  See In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig., 250 F.R.D. 137, 145 (S.D.N.Y. 2008) ("[Plaintiff's] price maintenance theory [wa]s patently deficient . . . . [because it was] based not on facts but on speculation.").  Further, Plaintiff failed to "rule out causes for that maintenance other than the defendants' purported failure to disclose certain information."  In re N. Telecom Ltd. Sec. Litig., 116 F. Supp. 2d 446, 461 (S.D.N.Y. 2010).

Contrary to this Court's order, the district court failed to "choos[e] between [these] competing perspectives."  Remand Order, RE 178, Page ID# 6436.  It instead concluded that "[w]hether Defendants are correct" about the July 22 and July 23 stock price drops "involves merits issues as to causation."  Ex. A. at 19.  This was error.  Courts must "determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim."  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013).  See also Halliburton II, 134 S. Ct. at 2415, 2517 (defendants may rebut the Basic presumption by "[a]ny showing that severs the link between the alleged misrepresentations and . . . the price received (or paid) by the plaintiff" and "***even though such proof is also highly relevant at the merits stage***") (emphasis added) (internal quotation marks and citation omitted).

17

Indeed, the district court apparently adopted a rule requiring Defendants to "rebut[]" the back-end "change in the stock price[]," Ex. A at 19, i.e., to prove that there was no stock drop following a disclosure that Plaintiff merely alleges was corrective.  This all-but-impossible standard will preclude defendants from even offering relevant price impact evidence in many cases.

### C. The District Court's Price Impact Analysis Again Failed to Address the Unrebutted Evidence Proving a Lack of Public Knowledge

Unlike in Best Buy, Defendants made an additional critical showing that should have sufficed under any evidentiary standard, but that the district court again considered insufficient as a matter of law.  As noted above, Defendants presented unrebutted evidence that the subject representations and warranties were ***not*** reviewed or commented on by analysts or other significant market participants. See Porten Report, RE 118-1, Page ID# 4045, 4057–4058, 4068–4069, 4072.

For the reasons already discussed above, if market intermediaries and other investors did not review and consider the alleged misstatements, the misstatements could not have affected the price of the Company's stock.  Yet, for a second time, the district court failed to address Defendants' evidence.

This was improper.  "[D]efendants must be afforded an opportunity before class certification to defeat the presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock."

18

Halliburton II, 134 S. Ct. at 2417.  See also In re BP p.l.c. Sec. Litig., 2013 WL 6388408, at *15.

## III.    THIS COURT SHOULD REVIEW THE DISTRICT COURT'S FAILURE TO APPLY FED. R. EVID. 301

The Opinion failed to apply Fed. R. Evid. 301, improperly holding Defendants to a higher "preponderance of the evidence" standard. Ex. A at 18.

By its terms, Rule 301 governs the Basic presumption, just as it does all "presumptions in civil cases," "unless a federal statute or these rules provide otherwise."  Basic itself recognized it as the Rule "allocating the burdens of proof between parties."  485 U.S. 224, 245 (1988).  See also Best Buy, 818 F.3d at 782 (Rule 301 applies to the Basic presumption).

Under Rule 301, Defendants had only the "minimal" burden of producing such evidence as would be sufficient to survive a summary judgment motion showing that the alleged misstatements had no impact on the price of the Company's stock.  Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 320 (3d Cir. 2014).

As demonstrated above, Defendants clearly met this burden, and under the "bursting bubble" theory, the presumption disappears, and the burden remains with Plaintiff to establish the presumption by a preponderance of the evidence.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993); In re Yoder Co., 758 F.2d 1114, 1119–20 (6th Cir. 1985).  Plaintiff provided only speculation.

19

## IV.  THIS COURT SHOULD REVIEW THE DISTRICT COURT'S MISINTERPRETATION OF <u>AFFILIATED UTE</u>

The district court plainly misinterpreted <u>Affiliated Ute</u>.

The Opinion recognized that any omissions claims in this case are derivative of claims based on affirmative misrepresentations.  Plaintiff's claims were **not** based "on an independent, stand-alone duty" to disclose but instead on allegations that "Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false."  Ex. A at 20.

The district court then applied <u>Affiliated Ute</u> based on its conclusion that "Plaintiffs have alleged both omissions and misrepresentations."  <u>Id.</u> at 21.[9]

The district court's analysis was wrong.  It merely found that this was a "mixed" case involving both misrepresentations and omissions.  In such "mixed" cases, every court of appeals to address the question recognizes that the <u>Affiliated Ute</u> presumption may **not** be applied in a case that primarily alleges affirmative misrepresentations.  See <u>In re Interbank Funding Corp. Sec. Litig.</u>, 629 F.3d 213, 219–20 (D.C. Cir. 2010).  Consistent with the Supreme Court opinion itself,

---

[9]     Unlike here, the plaintiffs in <u>Dodona I, LLC v. Goldman, Sachs & Co.</u>, 296 F.R.D. 261 (S.D.N.Y. 2014), alleged no affirmative misrepresentations that were false on their own.  296 F.R.D. at 269–70; <u>see also</u> <u>Dodona I, LLC v. Goldman, Sachs & Co.</u>, 847 F. Supp. 2d 624, 645–46 (S.D.N.Y. 2012).  Assuming <u>Dodona</u> stands for the broad proposition for which the Opinion cited it, it is an outlier in its own circuit.  <u>Compare</u> <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, No. 09 MD 2017 LAK, 2013 WL 5730020, at *3 (S.D.N.Y. Oct. 22, 2013) (presumption inapplicable where there are affirmative statements); <u>Goodman v. Genworth Fin. Wealth Mgmt., Inc.</u>, 300 F.R.D. 90, 104 (E.D.N.Y. 2014) (similar).

20

moreover, the overwhelming weight of authority requires at least that the case involve "**primarily** a failure to disclose," Affiliated Ute, 506 U.S. at 153 (emphasis added).  See, e.g., Interbank Funding, 629 F.3d at 219; Clayton v. Heartland Res., Inc., 754 F. Supp. 2d 884, 895 (W.D. Ky. 2010); Cox v. Collins, 7 F.3d 394, 396 (4th Cir.1993) (no presumption when plaintiff alleges both nondisclosure and affirmative misrepresentations).

The district court did not find that this case primarily involves omissions— or even that it does not primarily involve affirmative representations—let alone provide a "rigorous analysis" of how this could be so.  Remand Order, RE 178, Page ID# 6436.

Nor could it.  The only alleged misstatements that survived Defendants' motion to dismiss are representations and warranties, such as that BancorpSouth had "complied in all material respects with and are not in material default or violation under any applicable law . . . including all Banking Laws."  See, e.g., Complaint, RE 39, Page ID# 371–73, 374–75, 376, 378.  The Complaint alleges that these statements were "materially false and misleading" due to alleged compliance issues.  Id. at Page ID# 372–73, 375, 376, 378.

Plaintiff cannot transform this into a case primarily involving omissions by (in the district court's words) alleging that a "failure to disclose certain information," Ex. A at 20, such as alleged evidence of compliance issues, made

21

these representations and warranties misleading.  "Every misrepresentation could be characterized as an omission if it were defined in terms of the absence of the information that would correct the misrepresentation."  In re Lehman Bros., 2013 WL 5730020, at *3.  See also Clayton v. Heartland Res., Inc., 754 F.2d at 895; Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 193 (3d Cir. 2001).

Even assuming *arguendo* that this case primarily involved omissions, the Affiliated Ute presumption still would not apply.

The rebuttable Affiliated Ute presumption is properly limited to face-to-face securities transactions involving a fiduciary.  See, e.g., Ockerman v. May Zima & Co., 27 F.3d 1151, 1159 (6th Cir. 1994) ("In face-to-face transactions, reliance on a defendant's failure to disclose material information may also be presumed where the defendant had a duty to disclose.").[10]

Even a broader view of the Affiliated Ute presumption does not assist Plaintiff.  It may be logical to presume that a particular plaintiff who read or who otherwise learned of the contents of an SEC filing would have been influenced had additional (omitted) material information been included in that filing.  But it is clearly inappropriate to make an **additional presumption** on a class-wide basis

---

[10]    See also Levinson, 786 F.2d at 750 (presumptions of reliance apply "[i]n two distinct situations . . . . One situation involves non-disclosure of material facts in face-to-face transactions") (citing Affiliated Ute, 406 U.S. at 153–54); Fridrich v. Bradford, 542 F.2d 307, 319–20 (6th Cir. 1976).

22

that most investors actually read the SEC filing in the first place.  See Johnston,

265 F.3d at 186 (rejecting plaintiffs' claims that "they, as investors, are presumed

to have read [the prospectuses]" where "plaintiffs' . . . allegations are unsupported,

and in some instances rebutted by, a well-developed record").[11]  In other words,

"[p]eople who did not did not rely on what was *in* the materials cannot have relied

on what was omitted; to them the public offering materials were so much waste

paper."  Eckstein v. Balcor Film Inv'rs, 58 F.3d 1162, 1171 (7th Cir. 1995)

(discussing Affiliated Ute).  Plaintiff therefore cannot show that the Affiliated Ute

presumption can be applied on a class-wide basis.

## CONCLUSION

The petition for permission to appeal should be granted.


Dated: July 10, 2017                        Respectfully submitted,

                                            __s/  Jeffrey B. Maletta_____

                                            Jeffrey B. Maletta
                                            Nicholas G. Terris
                                            Amy J. Eldridge
                                            Krista Consiglio
                                            **K&L Gates LLP**

---

[11]    The "great majority" of ordinary investors do not read prospectuses.  Feit v. Leasco Data Processing Equip. Corp., 332 F. Supp. 544, 565 (E.D.N.Y. 1971). Here, the alleged misrepresentations were not publicly known, and neither Plaintiff nor its investment adviser read the subject SEC filings, let alone the representations and warranties buried within.  See Sealed Ex. 2, RE 116 at 108:7–109:12; 113:23– 117:3.

23

1601 K Street, NW
Washington, DC 20006-1600
Phone: (202) 778-9000
Fax: (202) 778-9100
E-mail:jeffrey.maletta@klgates.com
         nicholas.terris@klgates.com
         amy.eldridge@klgates.com
         krista.consiglio@klgates.com

R. Bruce Allensworth
**K&L Gates LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Phone: (617) 261-3100
Fax: (617) 261-3175
Email: bruce.allensworth@klgates.com

Thomas A. Wiseman III
**WISEMAN ASHWORTH LAW GROUP**
511 Union Street, Suite 800
Nashville, TN  37219-1743
Phone: (615) 254-1877
Fax: (615) 254-1878
Email: tom@wisemanashworth.com

*Counsel for Petitioners BancorpSouth, Inc.,
James D. Rollins, III, James V. Kelley, and
William L. Prater*

24

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 5(c)(2), because this document contains 5,135 words, excluding the parts of the document exempted by Fed. R. App. P. 5(b)(1)(E) and Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font Times New Roman font.

Dated:  July 10, 2017

__s/ Jeffrey B. Maletta_____
Jeffrey B. Maletta
**K&L Gates LLP**
1601 K Street, NW
Washington, DC 20006-1600
Phone: (202) 778-9000
Fax: (202) 778-9100
E-mail: jeffrey.maletta@klgates.com

*Counsel for Petitioners BancorpSouth, Inc.,
James D. Rollins, III, James V. Kelley, and
William L. Prater*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2017, an electronic copy of

the Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure

23(f) was filed with the Clerk of the Court for the United States Court of Appeals

for the Sixth Circuit by e-mailing same to

ca06-ecf-petitionsforfiling@ca6.uscourts.gov.

The undersigned also certifies that on July 10, 2017, a paper copy of the

Petition was served via first class U.S. mail on the following attorneys, with a

courtesy copy via e-mail to the following parties:

Christopher M. Wood
Christopher H. Lyons
**Robbins Geller Rudman & Dowd LLP**
414 Union Street, Suite 900
Nashville, TN 37219
T: (615) 244-2203
F: (615) 252-3798
cwood@rgrdlaw.com
clyons@rgrdlaw.com

*Counsel for Respondent City of Palm Beach Gardens Firefighters Pension Fund*

Jack Reise
Maureen E. Mueller
Sabrina E. Tirabassi
**Robbins Geller Rudman & Dowd LLP**
120 E. Palmetto Park Rd., Suite 500
Boca Raton, FL 33432
T: (561) 750-3000
F: (561) 750-3364
jreise@rgrdlaw.com
mmueller@rgrdlaw.com
stirabassi@rgrdlaw.com

*Counsel for Respondent City of Palm Beach Gardens Firefighters Pension Fund*

26

Jerry E. Martin
Timothy L. Miles
**Barrett Johnston Martin &**
**Garrison, LLC**
414 Union Street, Suite 900
Nashville, TN 37219
T: (615) 244-2202
F: (615) 252-3798
jmartin@barrettjohnston.com
tmiles@barrettjohnston.com

*Counsel for Respondent City of Palm*
*Beach Gardens Firefighters Pension*
*Fund*

Pedro A. Herrera
**Sugarman & Susskind, P.A.**
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
T: (305) 529-2801
F: (305) 447-8115
pherrera@sugarmansusskind.com

*Counsel for Respondent City of*
*Palm Beach Gardens Firefighters*
*Pension Fund*

Clerk of Court
United States District Court
Middle District of Tennessee
801 Broadway, Room 800
Nashville, TN 37203
T: (615) 736-5498
F: (615) 736-2229
ann_g_frantz@tnmd.uscourts.gov


__s/ Jeffrey B. Maletta_____
Jeffrey B. Maletta
**K&L Gates LLP**
1601 K Street, NW
Washington, DC 20006-1600
Phone: (202) 778-9000
Fax: (202) 778-9100
E-mail: jeffrey.maletta@klgates.com

*Counsel for Petitioners BancorpSouth,*
*Inc., James D. Rollins, III, James V.*
*Kelley, and William L. Prater*

27

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WILLIAM E. BURGES, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **NO. 3:14-cv-1564** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **BANCORPSOUTH, INC., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court, for the second time, is a Motion to Certify the Class (Doc. No. 97), filed by Palm Beach Gardens Firefighters Pension Fund ("the Fund").[1] On April 28, 2016, this Court entered an Order granting the Fund's Motion to Certify the Class (Doc. Nos. 157-58.) The Sixth Circuit Court of Appeals vacated that Order and remanded the case to this Court for further proceedings. (Doc. No. 178.)

The parties have agreed, since that remand, that all discovery necessary to the determination of class certification is completed and no further briefing on class certification is necessary. (Doc. No. 197.) The Magistrate Judge has ordered a stay of merits discovery pending resolution of the class certification motion. (<u>Id.</u>)

## INTRODUCTION

In this federal securities fraud action, the Plaintiffs allege that Bancorpsouth, Inc. ("the Bank") and its Chief Executive Officer (James Rollins), its Chief Operating Officer and President

---

[1] The Court appointed Palm Beach Gardens Firefighters Pension Fund to be Lead Plaintiff in this action on October 22, 2014. (Doc. No. 31.) It found that the Fund, which possesses the largest financial interest in the relief sought by the class, would fairly and adequately represent the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B).

(James Kelley), and its Chief Financial Officer (William Prater) (collectively, "Defendants") made materially false and misleading statements and omissions regarding the Bank's compliance with federal laws and that those statements and omissions violated the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Amended Complaint (Doc. No. 39) alleges that Defendants made false, misleading statements and omissions regarding (1) the Bank's compliance with critical anti-money laundering and Bank Secrecy Act regulations as well as the Bank's fair lending practices and (2) the closing of two pending mergers/acquisitions. Plaintiffs allege that Defendants knew the Bank was not in compliance with the anti-money laundering and Bank Secrecy Act regulations, and yet they affirmatively stated that (1) they were in compliance with all banking laws and regulations, (2) they expected the two planned mergers to close in the second quarter of 2014, and (3) they expected to receive regulatory approval for those mergers.[2] (Doc. No. 39, ¶¶ 108-155.)

The Fund seeks to bring this action on behalf of all persons who purchased or otherwise acquired the common stock of the Bank from January 8, 2014, through July 21, 2014, and it asks the Court to certify a class of those persons pursuant to Fed. R. Civ. P. 23. Defendants maintain that the Fund has not met the requirements of Rule 23.

---

[2]   On July 10, 2015, this Court dismissed the alleged misrepresentations that were "forward looking" statements concerning the timing and the expected regulatory approvals of the two mergers at issue. (Doc. Nos. 72-73.) Federal securities law includes a "safe harbor" which excuses liability for statements containing projections of revenues, income, earnings or other financial items; statements of plans and objectives of management for future operations; and statements of future economic performance. 15 U.S.C. § 78u-5. The Court dismissed the forward-looking statements concerning what Defendants anticipated and/or expected to happen concerning the two mergers, finding they were protected by the Safe Harbor and were not false or misleading. (Doc. Nos. 72-73.)

In vacating this Court's prior Order certifying a class, the Sixth Circuit stated that this Court (1) did not set forth the standard requiring it to "rigorously analyze" Plaintiffs' claims before certifying the action as a class action, (2) did not address the bulk of Rule 23's requirements in its Order, and (3) did not define the class it certified. (Doc. No. 178.) The Court will address those concerns and further expand on why it is appropriate to grant Plaintiffs' Motion.

The Court adopts its prior Order granting the Motion to Certify the Class (Doc. No. 158) that specifically defines the class as:

> All persons who purchased or otherwise acquired the publicly traded common stock of BancorpSouth, Inc. between February 12, 2014 and July 21, 2014, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

(Doc. No. 158 at 2.)

## CLASS CERTIFICATION

In order to certify a class, the Court must be satisfied that the Fund has met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.[3] A class action will be certified only if, after rigorous analysis, the Court is satisfied that the prerequisites of Rule 23(a) have been met and also that the action falls within one of the categories under Rule 23(b). Castillo v. Envoy Corp., 206 F.R.D. 464, 467-68 (M.D. Tenn. 2002). The decision whether to certify a class is committed to the sound, broad discretion of the district judge and turns on the particular facts and circumstances of each individual case. In re Whirlpool Corp. Front-Loading Washers Product Liability Litigation, 722 F.3d 838, 850 (6th Cir. 2013); Ballan v. Upjohn Co., 159 F.R.D. 473, 479

---

[3]    As the Sixth Circuit noted, in contesting certification, Defendants challenged only some of Plaintiffs' allegations. (Doc. No. 178 at 3.)

3

(W.D. Mich. 1994). The party seeking class certification bears the burden of showing that the requirements for class certification are met. Bridging Communities Inc. v. Top Flite Financial Inc., 843 F.3d 1119, 1124 (6th Cir. 2016).

RULE 23(a)

Rule 23(a) establishes four requirements for class certification: the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative party are typical of those of the class; and the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Numerosity

Rule 23 (a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. While there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. In re Polyurethane Foam Antitrust Litigation, 314 F.R.D. 226, 237 (N.D. Ohio 2014) (citing Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006)). Numerosity is generally assumed to have been met in class action suits involving nationally traded securities. In re Direct General Corp. Securities Litigation, 2006 WL 2265472 at * 2 (M.D. Tenn. Aug. 8, 2006); Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 442 (S. D. Ohio 2009).

The Fund has adequately shown that the Bank's common stock is nationally traded, with more than 200 large institutional investors, and that there are most likely thousands of class members. (Doc. No. 98 at 8.) The Court finds that the numerosity requirement has been met in this case and that Defendants do not suggest otherwise. (Doc. No. 115.)

4

Commonality

Rule 23's second requirement for class certification is that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, the Fund must show that class members have suffered the same injury. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2555 (2011); Whirlpool, 722 F.3d at 851. Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Id.; Wal-Mart, 131 S.Ct. at 2551.

What matters to class certification is not the raising of common questions, but the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Wal-Mart, 131 S.Ct. at 2551. The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. In re American Medical Systems, Inc., 75 F.3d 1069, 1080 (6th Cir. 1996); see also Young v. Nationwide Ins. Co., 693 F.3d 532, 543 (6th Cir. 2012) (presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct).

The Fund asserts that common questions in this case include: (1) whether Defendants' alleged statements and omissions were materially false or misleading; (2) whether federal law was violated by Defendants' alleged acts; and (3) to what extent class members have sustained damages.

Defendants contest commonality based on the lack of reliance. The Court will address reliance and the Fund's reliance upon the "fraud-on-the-market presumption" in the discussion concerning Rule 23(b)(3) and predominance. See Halliburton Co. v. Erica P. John Fund, Inc., 134

S.Ct. 2398, 2404 (2014) (elements of the presumption have everything to do with the issue of predominance under Rule 23(b)(3)). In summary, as it relates to commonality, application of the "fraud-on-the-market presumption" allows the Court to presume that class members relied upon the alleged misstatements such that the question of liability is not an individualized issue.

The first two common questions posed by the Fund – whether the alleged misstatements and omissions are materially false or misleading and whether Defendants' alleged acts violated federal law – do arise from a single course of conduct by Defendants. The alleged misstatements and omissions were the same as relates to all potential class members. Determination of their truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke. In re Whirlpool, 722 F.3d at 852. If those misstatements and omissions violated federal law, they violated federal law as to all potential class members. Therefore, answering those questions will generate common, class-wide answers concerning liability. The Court finds that the commonality requirement is satisfied.

Typicality and Adequacy

Rule 23(a)(3) requires the Fund to show that its claims are typical of the claims of the proposed class. A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if its claims are based on the same legal theory. American Medical Systems, 75 F.3d at 1082. The Fund's interests must be aligned with those of the putative class and, in pursuing its own claims, the Fund must also advance the interests of the class members. Id.

Rule 23(a)(4) requires the Court to find that the Fund will fairly and adequately protect the interests of the class. In order to satisfy the requirement of adequacy, the class representative must

6

be part of the class and possess the same interest and suffer the same injury as the class members. Young, 693 F.3d at 543. In other words, the Fund must have common interests with unnamed members of the class and must be able to rigorously prosecute the interests of the class through qualified counsel.

The Fund has carried its burden of establishing that its claims are the same as those of the class. The Fund and the class both allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act and Rule10b-5 by making statements that misrepresented or omitted material facts. The claims of the Fund and the class involve the same security (BancorpSouth), the same alleged misstatements and omissions, the same legal theories, and the same evidence. Whether those allegations are true or not will be the same for the Fund as for the proposed class members.

Defendants argue that because the Fund failed to file the mandatory Reform Act Certification with its Amended Complaint (Doc. No. 39), it does not meet the typicality and adequacy requirements of Rule 23(a). Federal law provides that each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certificate with the complaint. 15 U.S.C. § 78u-4(a)(2)(A). The Fund filed a certification with its Motion for Appointment as Lead Plaintiff (Doc. No. 19-2) but not with its Amended Complaint.

A class representative need not file a new certification each time the complaint is amended. Thorpe v. Walter Investment Mgmt. Corp., 2016 WL 4006661 at * 10 (S.D. Fla. March 16, 2016); Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F.Supp.2d 474, 500 (S.D. N.Y. 2004) ("[W]e think such a requirement would be a useless burden"). The Court finds nothing improper about the Fund's certification in this litigation and Defendants have shown no prejudice because of the certification. The certification submitted by the Fund with its earlier motion is sufficient.

7

Defendants next argue that the Fund cannot adequately represent the class because of its lack of meaningful involvement in and understanding of its "lawyer-driven" litigation. Defendants contend that the Fund did not become a Plaintiff in this case on its own, but rather, Plaintiffs' counsel brought the case to the Fund's attention pursuant to a portfolio monitoring agreement between counsel and the Fund.[2] Defendants point out that some courts have criticized such agreements as raising conflicts of interest.

For example, in Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC, 616 F.Supp 2d 461, 464 (S.D. N.Y. 2009), the court held that the pension fund was in no position adequately to monitor the conduct of the litigation based, in part, on its monitoring agreement with counsel. In that monitoring agreement, the attorneys provided free monitoring of the pension fund's investments in exchange for the pension fund's agreement that, if the attorneys recommended bringing a securities class action, the pension fund would retain those same attorneys, on a contingency fee basis, to represent it in that action. Id. Defendants have not alleged such a provision in this case.[3]

On the other hand, the Fund relies on cases in which the courts have recognized the importance of such monitoring agreements and held that they present no bar to class certification. See, e.g., Willis v. Big Lots, Inc., __ F. Supp. 3d __, 2017 WL 1063479 at * 10 (S.D. Ohio March 17, 2017) (fact that plaintiff learned of case through monitoring agreement did not render plaintiff

---

[2]

Under such monitoring agreements, a law firm overlooks the specific fund and recommends to its administrators when the law firm believes a violation of the securities laws has occurred. Plumbers & Pipefitters Nat. Pension Fund v. Burns, 292 F.R.D. 515, 523 (N.D. Ohio 2013).

[3]

The Chairman of the Fund and representative designated by the Fund to testify in deposition, Richard Rhodes, testified that the Fund could have considered other counsel. (Doc. No. 118-3 at 63.)

8

inadequate to serve as class representative); <u>Plumbers & Pipefitters Nat. Pension Fund v. Burns</u>, 292 F.R.D. 515, 523 (N.D. Ohio 2013) (citing <u>United Food & Commercial Workers Union v. Chesapeake Energy Corp.</u>, 281 F.R.D. 641, 655 (W.D. Okla. 2012)).

In <u>Plumbers</u>, the court found that the fund was under no obligation to retain the law firm to pursue its claims identified through the monitoring agreement and, noting that other courts routinely reject attacks on the propriety of portfolio monitoring agreements, held that the monitoring agreement did not create a conflict or render the plaintiff inadequate to represent the class. <u>Plumbers</u>, 292 F.R.D. at 523. The court stated that at least one other court has held that such a monitoring agreement might actually favor adequacy of the counsel retained to monitor a fund because the firm's ongoing relationship with the fund would depend on its performance in the litigation. <u>Id</u>.

Similarly, in <u>United Food</u>, the court concluded that the monitoring agreement did not present a conflict of interest impacting the adequacy of the lead plaintiff's representation. <u>United Food</u>, 281 F.R.D. at 654-655. The court said that some courts have found that monitoring agreements actually illustrate a lead plaintiff's involvement in and awareness of the financial issues involved in the litigation. <u>Id</u>.

The Court finds that the monitoring agreement between the Fund and counsel in this case, which does not require the Fund to hire specific counsel for this purpose, does not render the Fund inadequate to be the class representative in this case. The agreement does not create a conflict of interest, impair the Fund's exercise of independent judgment, and most of all, does not render the Fund substantially different from other members of the class.

Defendants also contend that the Fund has ceded control of this litigation to counsel. According to Defendants, this fact is shown because the Fund's representative, Mr. Rhodes, knew

9

very little about the litigation. Both Defendants and the Fund cite excerpts from the testimony of Mr. Rhodes to support what he did and did not know about the litigation.[4] The Court has reviewed the deposition of Mr. Rhodes (Doc. No. 118-3) and finds the Fund representative's understanding of the litigation and commitment to it is adequate. It does not preclude the Fund from being Lead Plaintiff in this case.

Mr. Rhodes explained the allegations underlying this litigation and the specific misrepresentations allegedly made – that in connection with buying two banks, BancorpSouth made statements that they were in compliance with all the rules and regulations of banking when they were not. (Doc. No. 118-3 at 67.) He also explained why the Fund was asked to serve as lead plaintiff –  because it was the largest client and had the largest loss. (Id.) As noted above, Mr. Rhodes understood  that the Fund's role was to act as a fiduciary of the class and to maximize the recovery for the class and that the Fund would be required to answer depositions, provide records and hire counsel. (Doc. 118-3 at 71.) This understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet the adequacy requirement of Rule 23(a)(4). Plumbers, 292 F.R.D. at 520.

Defendants assert two additional arguments that the Fund is not typical or adequate in this case.  First, Defendants argue that the Fund is represented by outside counsel, the Sugarman firm, which will be able to participate in a share of any class recovery without Court approval. Any

---

[4]

For example, Defendants point out that Mr. Rhodes testified that the Fund would be required to answer depositions, provide records and hire counsel. (Doc. 118-3 at 71.)  But just before that, he also testified that the Fund's role was to act as a fiduciary of the class and to maximize the recovery for the class. (Id.)

attorneys' fee awards in this matter, however, will be determined by the Court, so they will not be without court approval.

In addition, the Sugarman firm is the Fund's regular outside counsel and represents the Fund, not the class. The Robbins Geller firm represents the class. The fact that both firms may eventually recover their fees out of the same settlement or judgment does not change their ethical or professional duties to their clients and to the proposed class. Plumbers, 292 F.R.D. at 523, n. 11. Furthermore, representation by the outside law firm will ensure that the Fund will fulfill its duty adequately to monitor class counsel. Id. at 523.

Second, Defendants claim that Plaintiffs' case depends in significant part on the testimony of a third party, David Michael Stamm, who was the Senior Vice-President Portfolio Manager of Dana Investment Advisors, the Fund's outside investment manager. Defendants contend that Mr. Stamm has a view of the facts that clashes with important allegations of the Amended Complaint.[5] If that is true, then Defendants will be able to challenge that testimony at trial, but it does not show that the Fund is not adequate or typical to represent the class. Defendants have not shown that statements of Mr. Stamm are binding on the Fund.

For all these reasons, the Court finds that the Fund has shown sufficient typicality and adequacy and meets the requirements of Fed. R. Civ. P. 23(a).

---

[5]
Mr. Stamm testified that the corrective disclosures in this case did not correct any "misunderstanding" he had about BancorpSouth. (Doc. No. 116 at 122.) The Amended Complaint alleges that the corrective disclosures "shocked investors." (Doc. No. 39 at 34.)

11

Rule 23(b)

As indicated above, if a plaintiff satisfies the requirements of Rule 23(a), then the Court looks to whether the proposed class action falls into any of the categories under Rule 23(b). Plaintiffs claim that their action satisfies the requirements of Rule 23(b)(3). Under that subsection, Plaintiffs must show that common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Plaintiffs assert that, as with their arguments concerning commonality, common questions of law and fact predominate in this case and the claims of all class members will be proved by the same evidence.  To recover damages for securities violations, the Fund must prove (1) a material misleading statement or omission by Defendants, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation.  Halliburton, 134 S.Ct. at 2407. Class members will be required to prove the same elements.

Defendants argue that Plaintiffs cannot show that common issues of fact or law predominate over individual issues here because there are individual issues concerning reliance. In order to recover damages in a private securities action such as this one, Plaintiffs must prove that they relied on Defendants' misrepresentations. Halliburton , 134 S.Ct. at 2405. Defendants argue that Plaintiffs' reliance is a predominant, but not common, issue in this case because each Plaintiff's reliance or lack thereof is an individual issue. Plaintiffs contend that, with regard to the alleged misrepresentations, they can show reliance by means of the fraud-on-the-market presumption.

12

<u>Fraud-On-The-Market Presumption</u>

The Supreme Court has found that investors may satisfy the reliance requirement by invoking a presumption known as the "fraud-on-the-market presumption." <u>Halliburton</u>, 134 S.Ct. at 2411-15;  <u>Basic Inc. v. Levinson</u>, 108 S.Ct. 978, 989-90 (1988). Without the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action because each plaintiff would have to prove reliance individually, so common issues would never predominate over individual ones as required by Rule 23(b)(3).  <u>Halliburton</u> at 2416.

The fraud-on-the-market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. <u>Basic</u>, 108 S.Ct. at 989; <u>Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.</u>, 280 F.R.D. 332, 342 (E.D. Mich. 2012). Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements because the market price of the stock was adversely affected by the misrepresentation. <u>Id</u>.

To demonstrate that the fraud-on-the-market presumption of reliance applies, a plaintiff must show that (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.[6] <u>Halliburton</u>, 134 S.Ct. at 2408. The theory is based on the premise that certain well-developed markets are efficient processors of public information. <u>Amgen Inc. v. Conn. Retirement Plans and Trust Funds</u>, 133 S.Ct. 1184, 1192 (2013). If a market is generally efficient in incorporating publicly available information into a security's

---

[6] Plaintiffs have in fact alleged that they and the proposed class members traded the stock between the time the misrepresentations were made and the time when the truth was revealed. (Doc. No. 39 at 60.) The Defendants do not dispute that allegation.

13

market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price. Id.

The presumption can be rebutted by appropriate evidence, such as proof that news of the truth entered the market and dissipated the effects of the prior misstatements. Amgen, 133 S.Ct. at1193 and 1204. Any showing that severs the link between the alleged misrepresentation and either the price received or paid by the plaintiff or his decision to trade at a fair market price will be sufficient to rebut the presumption. Halliburton,134 S.Ct. at 2408. For example, evidence that a plaintiff knew the company's statements were false but sold his shares nevertheless could rebut the presumption of reliance. Basic, 485 U.S. at 248.

### a) Publicly Known

Defendants argue that Plaintiffs cannot show that the misrepresentations at issue were publicly known.[7] If the misrepresentation was not publicly known, then it could not have distorted the stock's market price. Halliburton, 134 S.Ct. at 2413. Defendants assert that showing the alleged misrepresentations are in the public domain falls short of proof that they are "publicly known" as required for the presumption to apply. Defendants contend that the Fund must at least demonstrate that a critical mass of analysts, market makers or other market actors knew of the alleged misrepresentations and wrote about them or took some other action that would tend to affect the stock price. (Doc. No. 115 at 2.) Requiring Plaintiffs to show that certain people read and relied on

---

[7] A market may more readily process certain forms of widely disseminated and easily digestible information, such as public merger announcements, than information more difficult to acquire and understand, such as obscure technical data buried in a filing with the SEC. Amgen, 133 S.Ct. at 1197, n. 6. The information in the merger agreements here, however, was not obscure technical data or buried. It was information filed publicly with the SEC in which BancorpSouth represented that it was in compliance with all applicable laws, statutes, and regulations.

14

the alleged misrepresentations, however, would circumvent the presumption by requiring Plaintiffs to show reliance.

The misrepresentations at issue herein were found in Registration Statements, Proxy Statements, and Merger Agreements, public documents that were filed with the Securities and Exchange Commission ("SEC"). For example, the Bank's February 28, 2014 Registration Statement included, as Annex A, an Agreement and Plan of Reorganization in which BancorpSouth allegedly misrepresented that it was in compliance with all applicable laws, statutes, and regulations. (Doc. No. 39 at ¶ 127.)

Other courts have summarily recognized that SEC filings are sufficiently public to be "publicly known." See, e.g., In re Neustar, Inc. Securities Litigation, 2015 WL 5674798 at * 7 (E.D. Va. Sept. 23, 2015) and In re Red Hat, Inc. Securities Litigation, 261 F.R.D. 83, 91 (E.D. N.C. 2009). The Court agrees with these cases and finds that the merger agreements filed with the SEC in this case are sufficiently public to satisfy the Fund's obligation under the first element of the presumption for purposes of class certification.

### b) Materiality

Even though materiality is an element for invoking the fraud-on-the-market presumption, the Supreme Court has held that it should be left to the merits stage of the litigation because it does not bear on the predominance requirement of Rule 23(b)(3). Halliburton at 2416. In Amgen, the Court stated that proof of materiality is not a prerequisite to class certification, noting that materiality is a common question and the class will either prevail or fall in unison as to that issue. Amgen, 133 S.Ct. at 1191.[8]  Thus, the Court need not address materiality on this motion.[9]

---

[8]

Similarly, the Supreme Court has held that loss causation need not be proved at the class

15

c) Efficient Market

As noted above, the fraud-on-the-market theory rests on the premise that certain well-developed markets are efficient processors of public information. Amgen, 133 S.Ct. at 1192. In such markets, the market price of shares will reflect all publicly available information. Id. Here, the Fund asserts that because the stock was widely traded on the New York Stock Exchange ("NYSE"), the market is efficient. Defendants contend that the Fund has not carried its burden to prove an efficient market, relying upon price impact arguments and challenging the findings of the Fund's expert as inadequate.

A district court may consider five factors[10] in determining whether a security was traded on an efficient market: (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. Freeman v. Laventhol & Horwath, 915 F.2d 193, 197-98 (6th Cir. 1990); Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 605 (S.D. Ohio 2003). Defendants have not challenged or argued these

---

certification stage. Amgen, 133 S.Ct. at 1200 (citing Halliburton, 131 S.Ct. at 2184).

[9]

Defendants acknowledge that the materiality showing need not be made prior to class certification. (Doc. No. 115 at 15.)

[10]

Rather than apply these factors as a checklist, they are to be used as analytic tools by the court to assist in its market efficiency determination. In re Accredo Health, Inc. Securities Litigation, 2006 WL 1716910 at * 10 (W.D. Tenn. April 10, 2006). Here, as in Accredo, the stock was traded in a national security market that is widely regarded as efficient.

16

factors but instead rely on their price impact arguments to try to rebut the Plaintiffs' assertion of an efficient market. (Doc. No. 115 at 16-24.)

The Court finds that shares of the Bank's stock traded in an efficient market because they were traded on the NYSE. Certain markets, such as the NYSE, are well-suited for application of the fraud-on-the-market theory because "[a] well-developed and impersonal market, such as the New York or Pacific stock exchanges, will instantaneously incorporate all publicly available information about a given security into the market price of that security." Bovee, 216 F.R.D. at 606. Because the Bank's stock was traded on the NYSE during the class period (Doc. No. 39 at 9), the Court is satisfied that the Fund has established, for purposes of class certification, that the stock traded in an efficient market.

### d) Rebuttal - Price Impact

Defendants argue that they have rebutted Plaintiffs' allegations of an efficient market by showing that the alleged misrepresentations had no price impact. Plaintiffs are not required to present direct evidence to prove price impact in order to rely on the fraud-on-the-market presumption. Sterling Heights General Employees' Retirement Sys. v. Prudential Financial, Inc., 2015 WL 5097883 at * 12 (D. N.J. Aug. 31, 2015) (citing Halliburton, 134 S.Ct. at 2414). They can establish entitlement to the presumption through evidence of publicity and market efficiency, an indirect way of showing price impact. Sterling Heights at * 12; Halliburton, 134 S.Ct. at 2415.

Before Halliburton, courts around the country held that the presumption of reliance could be rebutted *at trial*. See, e.g., In re Accredo Health, Inc. at *11 (presumed reliance can be rebutted at trial); In re Polymedica, 432 F.3d at 17 (at the class certification stage, court will not address whether defendants can rebut the presumption of reliance). In Halliburton, however, the Court held

17

that defendants must be afforded an opportunity before class certification to demonstrate that an alleged misrepresentation did not actually affect the market price of the stock.[11] Willis at * 15. Price impact is the consideration of whether the alleged misrepresentations affected the market price. Id. at *16. The burden to prove lack of price impact by a preponderance of the evidence rests on the defendant in order to rebut the fraud-on-the-market presumption at this stage. Id. at 16; In re Goldman Sachs Group, Inc. Securities Litigation, 2015 WL 5613150 at * 4 and n. 3 (S.D. N.Y. Sept. 24, 2015).

Price impact is demonstrated by plaintiffs through either evidence that a stock's price rose in a statistically significant manner after a misrepresentation or evidence that the stock's price declined in a statistically significant manner after a corrective disclosure. Willis at 16. Defendants argue that the alleged misstatements in this case did not affect the stock price at the time those statements were made. They assert that this alone sufficiently demonstrates the absence of price impact. (Doc. No. 115 at 17.) To successfully rebut the fraud-on-the-market presumption, however, a defendant cannot simply show that a price did not rise after a misrepresentation. Willis at 16.

As explained in Halliburton, price impact (not *lack* of price impact) can be shown by the plaintiffs through evidence that the price was affected either at the time of the misrepresentation *or* at the time after a corrective disclosure. Willis at 16 (citing Halliburton at 2414). Analysis of the price impact usually focuses on stock price movement at the time the truth is disclosed. Goldman Sachs at * 6. "So the fact that there was no stock price increase when the statements were made does not suggest a lack of price impact." Id. In other words, in order to rebut the presumption for class

---

[11]

Halliburton held that the defendants may seek to defeat the presumption at the class certification stage through direct as well as indirect price impact evidence. Halliburton, 134 S.Ct. at 2417.

18

certification purposes, Defendants must show that the misrepresentation did not in fact affect the stock price; but "affecting the stock price" can occur at the time the misrepresentation is made or at the time the corrective disclosure is given. Willis at * 15.

The Fund contends that the price impact occurred at the time the corrective disclosure was made. The Amended Complaint alleges that when Defendants' "corrective disclosure" was made in July of 2014, the price of BancorpSouth stock tumbled more than 8% the first day and another 1.72% the second day. (Doc. No. 39 at ¶ 93.) Defendants have not rebutted this change in the stock prices at the time of disclosure.

Defendants assert that any decline in stock price after the corrective disclosure likely reflects other factors besides the corrective disclosure. Whether Defendants are correct, however, involves merits issues as to causation. The case cited by Defendants, Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627 (2005), dealt with a motion to dismiss, not a motion for class certification, and the Court was analyzing loss causation, not price impact. Loss causation is not price impact. Erica P. John Fund, Inc. v. Halliburton Co., 131 S.Ct. 2179, 2187 (2011). Price impact simply refers to the effect of a misrepresentation on a stock price. Id.

For all these reasons, the Court finds that Defendants have not rebutted the fraud-on-the-market presumption for purposes of this Motion, and Plaintiffs are entitled to rely on that presumption.

19

Affiliated Ute Presumption

Plaintiffs also contend that, with regard to the Defendants' failures to disclose (as opposed to misrepresentations), they are entitled to the "Affiliated Ute Presumption." In Affiliated Ute Citizens of Utah v. United States, 92 S.Ct. 1456 (1972), the Supreme Court held that in securities actions involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. Id. at 1473. "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." Id. More recently, the Supreme Court stated that if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S.Ct. 761, 769 (2008).

Defendants argue that Plaintiffs have admitted this case does not involve omissions. The sentence from Plaintiffs' Memorandum in Support of Motion to Dismiss (Doc. No. 64 at 21) that Defendants quote, however, is not such an admission: "Nowhere does Plaintiff allege that Defendants had a stand-alone duty to disclose the existence of [an FDIC investigation]." In context, that sentence begins an explanation of how Defendants, having chosen to speak, had a duty — not an independent, stand-alone duty, but a duty brought about by their choosing to speak — to disclose certain information. (Doc. No. 64 at 21.) Indeed, Plaintiffs allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false.

20

Plaintiffs have alleged both omissions and misrepresentations.[12] (Doc. No. 39.) Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the Affiliated Ute presumption as to the element of reliance with regard to alleged omissions. Dodona I, LLC v. Goldman, Sachs & Co., 296 F.R.D. 261, 270 (S.D. N.Y. 2014). The Court finds that, for purposes of class certification, the Fund is entitled to the Affiliated Ute presumption as to its failure to disclose claims.

Individualized Issues

Finally, Defendants maintain that individual issues concerning reliance and damages remain. Under the fraud-on-the-market and Affiliated Ute presumptions, for purposes of class certification, reliance will be presumed. Similarly, Defendants' argument concerning damages as an individualized issue will be addressed at trial. As noted above, the presence of questions peculiar to each individual member of the class is no bar when liability arose from a single course of conduct. Young, 693 F.3d at 543. There is a "battle of the experts" with regard to damages, and it is unnecessary for the Court to rule on that battle at this time because this is a motion for class certification. If, after class certification, Plaintiffs cannot show that damages are capable of measurement on a class-wide basis, the Court may bifurcate the issues of liability and damages or Defendants may move to decertify the class.

CONCLUSION

For all these reasons, the Court finds that the Fund's Motion to Certify the Class (Doc. No. 97) should be **GRANTED**.

---

[12] The Affiliated Ute Presumption applies to cases involving primarily a failure to disclose, which is not the same as *exclusively* a failure to disclose. Dodona I, 296 F.R.D. at 269.

21

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

22

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **WILLIAM E. BURGES, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **NO. 3:14-cv-1564** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **BANCORPSOUTH, INC., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, Lead Plaintiff's Motion

to Certify the Class (Doc. No. 97) is **GRANTED**, and the Court certifies a class as follows:

All persons who purchased or otherwise acquired the publicly traded common stock of BancorpSouth, Inc. between February 12, 2014 and July 21, 2014, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE