# EXHIBIT A

2022 WL 4598044
Only the Westlaw citation is currently available.
United States District Court, M.D.
Tennessee, Nashville Division.

ST. CLAIR COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and
on Behalf of All Others Similar, Plaintiff,

v.

ACADIA HEALTHCARE
COMPANY, INC., et al., Defendants.

No. 3:18-cv-00988
|
Filed September 30, 2022

**Attorneys and Law Firms**

Christopher M. Wood, Robbins Geller Rudman & Dowd
LLP, Nashville, TN, Danielle S. Myers, David C. Walton,
Robbins Geller Rudman & Dowd LLP, San Diego, CA,
Jerry E. Martin, Barrett Johnston Martin & Garrison, LLC,
Nashville, TN, Thomas C. Michaud, Vanoverbeke, Michaud
& Timmony, P.C., Detroit, MI, for Plaintiff.

Brandon R. Keel, Jessica Perry Corley, Lisa R. Bugni, Ronni
D. Solomon, King & Spalding LLP, Atlanta, GA, Elizabeth O.
Gonser, Riley, Warnock & Jacobson, Nashville, TN, Milton
S. McGee, III, Steven Allen Riley, Riley & Jacobson, PLC,
Nashville, TN, for Defendant.

**MEMORANDUM**

WILLIAM L. CAMPBELL, JR. UNITED STATES
DISTRICT JUDGE

 **\*1** Pending before the Court is the Motion for Class
Certification filed by Lead Plaintiffs Chicago & Vicinity
Laborers' District Council Pension Fund and New York Hotel
Trades Council & Hotel Association of New York City, Inc.
Pension Fund (collectively, "Plaintiffs"). (Doc. No. 112).
Defendants filed a response in opposition (Doc. No. 120),
and Plaintiffs filed a reply (Doc. No. 133). Defendants also
filed a Motion for Evidentiary Hearing on Plaintiffs' Motion
for Class Certification (Doc. No. 122), which Plaintiffs do
not oppose, and a Motion for Leave to File a Sur-Reply

(Doc. No. 140; sur-reply, Doc. No. 140-1; rebuttal expert
report Doc. No. 140-2), which Plaintiffs oppose, or in the
alternative, move for leave to file a response to the sur-
reply. (Doc. No. 146; response to sur-reply, Doc. No. 147-1;
reply expert report, Doc. No. 147-2). Defendants filed a
reply (Doc. No. 148) with a sur-rebuttal report from their
expert (Doc. No. 148-1). Defendants' Motion for Evidentiary
Hearing (Doc. No. 122) is **DENIED** as an inefficient use of
judicial resources and because the Court can decide the issues
based on the filings of the parties. Defendants' motion for
leave to file a sur-reply (Doc. No. 140) and Plaintiffs' motion
for leave to file a response to the sur-reply (Doc. No. 146)
are **GRANTED**. For the reasons set forth more fully below,
Plaintiffs' Motion for Class Certification will be **GRANTED**.

**I. BACKGROUND**

The alleged facts underlying this litigation are set forth
in detail in this Court's Memorandum Opinion denying
Defendants' motion to dismiss. *See St. Clair Cnty. Employees'
Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988,
2021 WL 195370 (M.D. Tenn. Jan. 20, 2021). Because the
factual allegations are well-known to the parties or otherwise
readily accessible, the Court assumes familiarity with them.

Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil
Procedure, Plaintiffs seek certification of the following Class:

> All persons who purchased or otherwise acquired the
> common stock of Acadia Healthcare Company, Inc.
> ("Acadia" or the "Company") between April 30, 2014
> and November 15, 2018, inclusive (the "Class Period").
> Excluded from the Class are Acadia, Joey A. Jacobs, Brent
> Turner, David Duckworth (collectively "Defendants") and
> members of their immediate families, any entity of which
> a Defendant has a controlling interest, and the legal
> representatives, heirs, predecessors, successors or assigns
> of any such excluded party.

(*See* Doc. No. 112-1; Doc. No. 113 at 7). Plaintiffs
also request that the Court appoint Plaintiffs as Class
Representatives and appoint the law firm of Robbins Geller
Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

**II. STANDARDS GOVERNING CLASS
CERTIFICATION**

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 1

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33-34 (2013). Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b), in turn, provides in pertinent part that when the requirements of Rule 23(a) are met a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

**\*2** The party seeking class certification bears the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). The decision whether to certify a class is committed to the sound discretion of the district judge and turns on the particular facts and circumstances of each individual case. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "Similarly, the Court has discretion to conduct an evidentiary hearing on a motion for class certification." *Desai v. Geico Cas. Co.*, 574 F. Supp. 3d 507, 527 (N.D. Ohio 2021).

### III. ANALYSIS

"In securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Halliburton II*"). This is precisely the issue here, as Defendants only challenge class certification as to predominance.

### A. Rule 23(a)
Plaintiffs submits that the four requisite elements of Rule 23(a) are readily established. For the reasons provided below, the Court agrees.

#### 1. Numerosity
Plaintiffs have met the numerosity requirement by demonstrating that the class is so numerous "that joinder of all members is impracticable." Fed. Rule Civ. P. 23(a)(1). Plaintiffs submit that, throughout the Class Period, Acadia stock traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ"). (Doc. No. 113 at 13 (citing Expert Report of W. Scott Dalrymple, CFA ("Dalrymple Report"), Doc. No. 114-3 ¶¶ 14, 29)). "Numerosity is generally assumed to have been met in class action suits involving nationally traded securities." *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 572 (M.D. Tenn. 2019). Plaintiffs further submit that the average weekly trading volume of Acadia stock was approximately 4.8 million shares and that at least 200 major institutions owned Acadia stock during the Proposed Class Period. (Doc. No. 113 at 13 (citing Dalrymple Report, Doc. No. 114-3 ¶¶ 35, 47 n.58)). Based on this volume of trading and the number of institutional shareholders, Plaintiffs assert that it is reasonable to conclude that thousands of individuals owned Acadia stock during the Proposed Class Period. (*See id.* at 114). Thus, Plaintiffs have met the standard for numerosity. *See Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 131 (M.D. Tenn. 2020) (class met standard for numerosity "considering that Tivity's common stock was traded on the NASDAQ and owned by 331 institutions during the class period"); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) ("number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1).").

#### 2. Commonality
Plaintiffs have shown that there are common questions of law and fact for purposes of Rule 23(a)(2), including whether Defendants were engaged in a scheme to defraud, whether Defendants misrepresented or omitted material facts about Acadia's U.S. and U.K. facilities, whether the alleged scheme, misstatements, or omissions caused the putative class to suffer damages, whether Defendants acted with scienter, and whether Defendants were "control persons" within the meaning of § 20(a) of the Exchange Act. *See Weiner*, 334 F.R.D. at 131.

#### 3. Typicality
**\*3** "Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). "This requirement insures that the representative's interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

also advocate the interests of the class members." *Weiner*, 334 F.R.D. at 128 (citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his claims are based on the same legal theory." *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Plaintiffs submit that their claims are typical of the proposed Class because they arise out of the same alleged course of conduct – that Defendants artificially inflated Acadia's share prices by engaging in a scheme to defraud and misrepresenting the true state of its U.S. and U.K. facilities. (Doc. No. 113 at 15). Plaintiffs assert that they and the putative Class have suffered from losses from the same course of conduct and share identical interests in holding Defendants accountable and maximizing the recovery of the Class. (*See id.*). The Court concludes Plaintiffs have met the typicality prerequisite of Rule 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Weiner*, 334 F.R.D. at 128 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Here, the proposed Class Representatives are defined benefit pension plans that provide retirement income benefits to their participants and collectively purchased or otherwise acquired more than 50,000 shares of Acadia common stock during the Class Period and suffered nearly $900,000 in losses. (Doc. No. 113 at 11 (citing Doc. Nos. 26-2, 26-3, 26-4)). Agents of Plaintiffs have submitted affidavits attesting to their diligent attention to the case and their understanding of their duties as lead plaintiffs to provide fair and adequate representation. (Doc. Nos. 114-1, 114-2). Plaintiffs have a financial interest in the outcome of this litigation that is representative of class members, as they were holders of Acadia securities during the Class Period and were allegedly injured by the same course of conduct by the Defendants. Thus, the Court concludes that the interests and incentives of Plaintiffs are representative and adequate of the class at large.

Plaintiffs submit they have also demonstrated their adequacy by retaining attorneys with considerable experience in securities class actions. (*See* Doc. No. 113 at 17). The Court agrees that Robbins Geller will adequately represent the class in this action. Robbins Geller is experienced in litigating securities class actions and, through this litigation, has competently briefed the motion to dismiss, and has provided competent briefing on the present class certification motion. Accordingly, the Court finds Plaintiffs have met the adequacy prerequisite of Rule 23(a)(4).

### B. Rule 23(b)

Plaintiffs submit that this action also satisfies Rule 23(b)(3)'s requirements that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute. (*See* Doc. No. 113 at 18). As noted above, Defendants disagree only as to the predominance. The Court agrees class action is superior to other available methods of fairly and efficiently adjudicating the controversy, and finds that Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement

Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"). "The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* at 809-10 (citations and internal quotations omitted).

**\*4** Plaintiffs contend that this action meets the predominance requirement of Rule 23(b)(3) because the core elements of Plaintiffs' §§ 10(b) and 20(a) claims are susceptible to common proof. Plaintiffs argue that the element of reliance can be presumed on a class-wide basis under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), "each of which allows a plaintiff to establish a 'rebuttable presumption of reliance,' without the need for individual information about each plaintiff." *Grae*, 330 F.R.D. at 493 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008)).

Defendants contend that predominance is not established as to reliance because they have rebutted the *Basic* presumption and because *Affiliated Ute* does not apply to Plaintiffs' claims. The Court will address Defendants' arguments in turn.

### 1. The *Basic* Presumption

"*Basic* assumes that buyers and sellers of stock in an efficient market rely on the market as an intermediary for setting the stock's price in light of all publicly available material information; accordingly, when one buys or sells the stock at the market price, one has, in effect, relied on all publicly available information, regardless of whether the buyer and/or seller was aware of that information personally." *Grae,* 330 F.R.D. at 493 (citing *Basic,* 485 U.S. at 243–44). "Fraud committed by artificially affecting a stock's price through public information, as contemplated by *Basic*, is known as 'fraud-on-the-market.' " *Id.*

"To invoke the *Basic* presumption, a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) that the stock traded in an efficient market; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.,* 141 S. Ct. 1951, 1958 (2021) (citing *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 268 (2014) ("*Halliburton II*")). Defendants do not dispute that the publicity and market timing prerequisites have been satisfied or that materiality need not be proven at the class certification stage. *See Amgen,* 568 U.S. at 459. Nor do Defendants dispute that Plaintiffs have shown Acadia stock traded in an efficient market over the course of the Class Period. (*See* Dalrymple Report, Doc. No. 114-3, ¶¶ 25-89). Therefore, the Court finds that Plaintiffs have made a showing sufficient to invoke the *Basic* presumption of reliance.

Defendants "may rebut the *Basic* presumption at class certification by showing 'that an alleged misrepresentation did not actually affect the market price of the stock.' " *Goldman,* 141 S. Ct. at 1959 (quoting *Halliburton II*, at 284). This is because "[i]n the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse." *Halliburton II,* 573 U.S. at 278. " 'Price impact' simply refers to the effect of a misrepresentation on a stock price." *Halliburton I,* 563 U.S. at 814. "[T]he defendant bears the burden of persuasion to prove a lack of price impact" and "the defendant must carry that burden by a preponderance of the evidence." *Goldman,* 141 S. Ct. at 1963. "The district

court's task is simply to assess all the *evidence* of price impact —direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Id.* (emphasis added).

**\*5** Here, Plaintiffs claim the alleged misrepresentations related to Acadia's U.K. facilities were corrected in a partial disclosure occurring in October 2017, and that the alleged misrepresentations related to Acadia's U.S. operations were corrected in partial disclosures occurring in October and November 2018. The Court will assess Defendants' rebuttal evidence as to each corrective disclosure.

### i. The October 2017 Corrective Disclosure

Defendants do not submit evidence to rebut the *Basic* presumption as to the corrective disclosure on October 24, 2017. Defendants' expert, Lilly Allen, did not analyze reactions in Acadia's stock price to the corrective disclosure on October 24, 2017. (*See* Allen Report, Doc. No. 121-1; *see id.* at 9 n.15 (stating that she "ha[s] not been asked to analyze price impact of the alleged misrepresentations regarding Acadia's U.K. operations.")). Thus, Defendants concede the October 2017 corrective disclosure had an impact on Acadia's stock price. In doing so, Defendants concede they cannot rule out price impact during the Class Period completely. "This concession dooms Defendants' attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *Monroe Cnty. Employees' Ret. Sys. v. S. Co.,* 332 F.R.D. 370, 395 (N.D. Ga. 2019); *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ,* 322 F. Supp. 3d 676, 687 (D. Md. 2018); *Waggoner v. Barclays PLC,* 875 F. 3d 79, 99-103 (2d Cir. 2017)). Nevertheless, the Court will consider Defendants' rebuttal evidence as to the two other corrective disclosures.

### ii. The October 2018 Corrective Disclosure – the Aurelius Value report

On October 11, 2018, *Aurelius Value* published a report and released a video documenting systemic patient abuse and neglect at dozens of Acadia facilities caused primarily by

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 4

understaffing. (Doc. No. 39 ¶¶ 9, 185). The price of Acadia securities declined from a close of $36.55 per share on October 10, 2018, to an intraday low of $32.37 per share on October 12, 2018, a decline of more than 11%. (*Id.* ¶¶ 10, 189).

Defendants rely on Allen's report to rebut the *Basic* presumption as to the *Aurelius Value* report published on October 11, 2018. (*See* Doc. No. 120 at 16-22). Defendants submit that event studies conducted by Allen and by Plaintiffs' expert, Dalrymple, show that there was no statistically significant reaction in Acadia's stock price on October 11, 2018, following the release of the *Aurelius Value* report. (*Id.* at 16-18 (citing Allen Report, Doc. No. 121-1 ¶ 29)). Defendants assert that the event studies showing that the *Aurelius Value* report had no statistically significant impact on Acadia's stock price prove the lack of price impact and rebut the *Basic* presumption as to the *Aurelius Value* report. (*See id.* at 18). Additionally, Defendants argue several other pieces of evidence confirm that there was no reaction in Acadia's stock price to the release of the *Aurelius Value* report. (*See id.* at 20-22 (citing Allen Report, Doc. No. 121-1 ¶¶ 30, 33, 34, 20, 48-53)). The four other pieces of evidence Defendants rely on to show lack of price impact are: (1) Allen's analysis of Acadia's stock price from 11AM to 1PM on October 11, 2018, (Doc. No. 120 at 20; Doc. No. 121-1 ¶ 30); (2) that 87% of analysts covering Acadia at the time did not issue reports following the *Aurelius Value* report, (Doc. No. 120 at 21; Doc. No. 121-1 ¶¶ 33-34); (3) the "generic nature" of the challenged statements, (Doc. No. 120 at 21-22; Doc. No. 121-1 ¶ 20); and (4) Allen's study of other news stories. (Doc. No. 120 at 22; Doc. No. 121-1 ¶¶ 48-53).

 **\*6** First, the Court addresses the "generic nature" of the challenged statements. In *Goldman*, the Supreme Court explained that:

> when the earlier misrepresentation is generic (e.g., 'we have faith in our business model') and the later corrective disclosure is specific (e.g., 'our fourth quarter earnings did not meet expectations').... it is less likely that the specific disclosure actually corrected the generic misrepresentation, which means that there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop.

141 S. Ct. at 1961. Thus, under *Goldman*, the generic nature of an alleged misrepresentation can be evidence of a lack of price impact "when there is a mismatch between the contents of the misrepresentation and the corrective disclosure[.]" *Id.* Here, neither Allen nor Defendants argue such a mismatch is present

between the contents of the alleged misrepresentations and the contents of the *Aurelius Value* report. Absent such analysis, Defendants' contention as to the generic nature of the alleged misstatements is not evidence showing a lack of price impact.

Next, the Court considers Defendants' event study evidence. Allen concedes there was a statistically significant reaction in Acadia's stock price on October 12, the day after the *Aurelius Value* report was issued. (Doc. No. 121-1 ¶ 32). Allen opines that there is no basis to conclude that the changes in Acadia's stock price on October 12 were in reaction to the *Aurelius Value* report published on October 11 because research has shown that stock prices in an efficient market react very quickly to new information in company announcements of earnings or dividends and in analyst recommendations. (*Id.* ¶ 31; *see also* Allen Rebuttal Report, Doc. No. 140-2 ¶¶ 17 n.23, 19-21). However, the Supreme Court has specifically not adopted "any particular theory of how quickly and completely publicly available information is reflected in market price." *Halliburton II*, 573 U.S. at 271–72 (quoting *Basic*, 485 U.S. at 248 n.28). Accordingly, the Court is not persuaded that the decline in Acadia stock price on October 12 was not in reaction to the *Aurelius Value* report published on October 11.

However, even if the Court were persuaded that October 11 alone was the appropriate time frame in which to consider price impact, Defendants have still not rebutted the presumption "because their price impact arguments rely on a statistical fallacy[;] [c]ontrary to Defendants' argument, the existence of non-statistically-significant stock price declines does not prove the absence of price impact." *Monroe Cnty. Employees' Ret. Sys.*, 332 F.R.D. at 393; *see id.* ("failure to find statistical significance does not prove that information had no role in the observed stock price adjustment. Rather, [n]on-significance means indeterminate with respect to finding the cause of a stock price movement; it does not mean that there was no decline or that the decline was necessarily caused by factors other than the corrective disclosure.") (internal quotations and citations omitted); *id.* at 394 ("An event study tests whether one can reject a null hypothesis. For price impact purposes, the null hypothesis under examination is that the stock price of the subject company was not impacted by the alleged misrepresentations. It is axiomatic that 'failure to rebut the null hypothesis does not necessarily mean that a misrepresentation had no price impact.' " (quoting Jill E. Fisch et al., *The Logic and Limits of Event Studies in Securities Fraud Litigation*, 96 Tex. L. Rev. 553, 611 (2018)); *see, e.g., Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019) ("A statistically significant

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price. The converse, however, is not true—the absence of a statistically significant price adjustment does not show the stock price was unaffected by the misrepresentation."); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019) ("The lack of statistically significant proof that a statement affected the stock price is not statistically significant proof of the opposite, i.e., that it did not actually affect the stock price."). Accordingly, the Court finds that Defendants have failed to prove a lack of price impact as to the *Aurelius Value* report published on October 11, 2018.

### iii. The November 2018 Corrective Disclosure – the Seeking Alpha article

**\*7** On November 16, 2018, at 8:57 a.m., *Seeking Alpha* published an article about operations in Acadia's U.S. facilities, which revealed that Acadia's rapid growth, as well as its revenue and margin increases, were attributed to cost-cutting and "reducing the quality of care." (Doc. No. 39 ¶¶ 11, 190). On the same day, Acadia's stock price declined by 26%. (*Id.* ¶¶ 11, 192).

Defendants do not dispute that Acadia's stock price declined on November 16. Instead, they argue the decline in Acadia's stock price on November 16 was caused by a CNBC report about negative news unrelated to the alleged fraud. (*See* Doc. No. 120 at 23-24 (citing Allen Report, Doc. No. 121-1 ¶¶ 35-39)). Defendants argue that four pieces of other evidence also demonstrate that the CNBC report caused Acadia's stock price movement on November 16. (*See id.* at 24-25 (citing Allen Report, Doc. No. 121-1 ¶¶ 43, 41, 40)). The other evidence Defendants rely on are: (1) an article by the same author as the *Seeking Alpha* article attributing Acadia's stock price decline on November 16 to the CNBC report and not his article, (*id.* at 24; Doc. No. 121-1 ¶ 43); (2) an investment advisor's email attributing Acadia's stock price decline on November 16 to "a press report saying PE buyout talks ha[s] stalled" without mention of the *Seeking Alpha* article, (Doc. No. 120 at 25; Doc. No. 121-1 ¶ 41); (3) four analyst reports attributing Acadia's stock price decline on November 16 to negative news about buyout without mention of the *Seeking Alpha* article, (Doc. No. 120 at 25; Doc. No. 121-1 ¶ 40); and (4) the "generic nature of the challenged statements" revealed through the *Seeking Alpha* article, (Doc. No. 120 at 25).[1]

Defendants' foregoing arguments that a CNBC report was the cause of Acadia's stock price decline on November 16 are arguments about loss causation. "In addressing both the prima facie *Basic* presumption and its rebuttal, the Court may not consider *arguments* about loss causation." *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 469 (E.D. Pa. 2021) (citing *Halliburton II*, 573 U.S. at 265, 282) (emphasis added). This is because "[l]oss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." *Halliburton I*, 563 U.S. at 812. Loss causation is a showing that the price impact was caused by "the correction to a prior misleading statement" and "that the subsequent loss could not otherwise be explained by some additional factors revealed then to the market." *Id.* "The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory." *Id.* at 813. Thus, at the class certification stage, the Court is required to consider Defendants' *evidence* related to loss causation, but only to the extent such evidence is relevant to the consideration of whether the alleged misrepresentations affected the market price in the first place, *i.e.*, price impact. *See id.* at 814; *Halliburton II* 573 U.S. at 279-280.

**\*8** Defendants' evidence related to loss causation that is relevant to the consideration of price impact is Allen's analysis of Acadia's intraday stock price during the first hour of trading on November 16, 2018, reflected in the chart below:

(Allen Report, Doc. No. 121-1 ¶ 39). Allen opines that her analysis of changes in Acadia's stock price during the first 13 minutes of trading on November 16 shows that Acadia's stock price did not react to the *Seeking Alpha* article. (*Id.* ¶ 37). Allen's opinion is premised on the same research previously addressed about the speed at which a market reacts to news. (*See* Allen Rebuttal Report, Doc. No. 140-2 ¶¶ 19-21). The Court is not persuaded that the market's reaction to the news in the *Seeking Alpha* article would be reflected within the first 13 minutes of trading on November 16. But even if it were so persuaded, Allen's analysis shows that Acadia's stock price declined by 1.16% during that time. (Doc. No. 121 ¶ 37). Thus, Allen's analysis does not show that the *Seeking Alpha* article had *no* impact on the price of Acadia's stock. *See Di Donato*, 333 F.R.D. at 444 ("The lack of statistically significant proof that a statement affected the stock price is

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

not statistically significant proof ... that it did not actually affect the stock price."). Accordingly, the Court finds that Defendants have failed to prove a lack of price impact as to the *Seeking Alpha* article published on November 16, 2018.

### 2. The *Affiliated Ute* Presumption

In *Affiliated Ute Citizens of Utah v. United States*, 92 S. Ct. 1456 (1972), the Supreme Court held that in securities actions involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. *Id.* at 1473 ("All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."). More recently, the Supreme Court stated that if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. *Stoneridge*, 128 S. Ct. at 769.

Plaintiffs contend they are entitled to *Affiliated Ute*'s presumption of reliance because their claims are based, in part, on Defendants' alleged material omissions and on Defendants' alleged scheme to artificially inflate the value of Acadia securities and defraud investors by, *inter alia*, the understaffing and widespread adverse patient issues at Acadia facilities. (*See* Doc. No. 113 at 24-25; Doc. No. 133 at 23-24). Defendants do not dispute the foregoing; rather, they argue the *Affiliated Ute* presumption does not apply because Plaintiffs *also* challenge affirmative misrepresentations. (*See* Doc. No. 120 at 28). Courts have acknowledged the applicability of the *Affiliated Ute* presumption where, as here, plaintiffs' claims are based on a combination of omissions and misstatements. *See, e.g., Burges v. Bancorpsouth, Inc.*, No. 3:14-CV-1564, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) (citing *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014)); *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005) ("[T]he theory behind the *Affiliated Ute* presumption ... is not undermined simply because a defendant makes misstatements at the same time it omits material information."). Further, Plaintiffs allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false. The Court finds that, for purposes of class certification, Plaintiffs are entitled to the *Affiliated Ute* presumption as to their claims failure to disclose claims, including their scheme claims. *See Burges*, 2017 WL 2772122, at *10.

**\*9** Thus, in summary, under the *Basic* and *Affiliated Ute* presumptions, for purposes of class certification, reliance will be presumed as to Plaintiffs' claims, including the scheme claims.[2] With that, Plaintiffs have carried their burden in establishing that their proposed class should be certified under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

Defendants' request to shorten the class period is denied. *See Strougo*, 2022 WL 2037966, at *9 ("To the extent [Defendants] believe[ ] [they are] entitled to shorten and limit the class period without showing a complete lack of price impact, the Court disagrees."); *see also Pelletier*, 338 F.R.D. at 477 ("During class certification, however, a class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market.") (cleaned up).

An appropriate order will enter.

**All Citations**

Slip Copy, 2022 WL 4598044

---

### Footnotes

1   Defendants' contention as to the generic nature of the alleged misstatements is not evidence showing a lack of price impact as it is unsupported by any pertinent analysis of the *Seeking Alpha* corrective disclosure. *See Goldman*, 141 S. Ct. at 1961 (generic nature of alleged misrepresentation can be evidence of a lack of price impact "when there is a mismatch between the contents of the misrepresentation and the corrective disclosure").

2   Accordingly, the Court does not reach Defendants' separate arguments against certification of the scheme claims, including their challenge to Dalrymple's damages model under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). (*See* Doc. No. 120 at III, 31-36). The Court also notes that, to the extent Defendants challenge the sufficiency of the scheme liability allegations (*see id.* at 30-35), such arguments are not properly before the Court.

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.