# Exhibit A

No. _____

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM,
individually and on behalf of all others similarly situated,

*Plaintiff-Respondent*,

v.

ACADIA HEALTHCARE COMPANY, INC.; JOEY A. JACOBS;
BRENT TURNER; and DAVID DUCKWORTH,

*Defendants-Petitioners.*

On Petition for Permission to Appeal from the
United States District Court for the Middle District of Tennessee,
No. 3:18-cv-00988, Hon. William L. Campbell, Jr.

## DEFENDANTS-PETITIONERS' PETITION FOR
## PERMISSION TO APPEAL PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Jessica P. Corley
Brandon R. Keel
Ronni D. Solomon
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
(404) 572-4600

Anne M. Voigts
Lisa R. Bugni
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
(415) 318-1200
avoigts@kslaw.com

Joshua N. Mitchell
David P. Mattern
Paige Tenkhoff*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500

Steven A. Riley
Milton S. McGee, III
Elizabeth O. Gonser
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700

*Counsel for Defendants-Petitioners*

October 14, 2022

*Admitted only in the state of Tennessee;
practice directly supervised by principals of the firm.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Defendants-Petitioners Acadia Healthcare Company, Inc. ("Acadia"), Joey A. Jacobs, Brent Turner, and David Duckworth make the following disclosure:

Acadia is a publicly traded company with no parent corporation. No publicly held company owns ten percent or more of Acadia's outstanding shares. Defendants-Petitioners Joey A. Jacobs, Brent Turner, and David Duckworth are individuals.

The following publicly owned corporations or their affiliates have a financial interest in the outcome of this litigation, by way of insurance: National Union Fire Insurance Company of Pittsburgh, Pa.; Allianz Global Risks US Insurance Company; Starr Indemnity & Liability Company; Allied World Specialty Insurance Company; RSUI Indemnity Company; Navigators Insurance Company; Berkley Insurance Company; Berkley Professional Liability; XL Specialty Insurance Company; Axis Insurance Company; and Endurance Risk Solutions Assurance Co.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

JURISDICTIONAL STATEMENT ..........................................................1

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE ................................................................4

      A.    Background....................................................................4

      B.    Plaintiffs' Suit .............................................................4

      C.    The Order .....................................................................6

QUESTIONS PRESENTED....................................................................8

SUMMARY OF ARGUMENT .................................................................9

RELIEF SOUGHT ................................................................................10

REASONS FOR GRANTING THE PETITION .....................................10

I.     This Court Should Grant Review To Reverse The District Court's Erroneous Ruling Concerning Class Certification Based On Multiple Theories of Liability .......................................11

II.    This Court Should Also Grant Review To Hold That The Absence Of A Statistically Significant Price Impact Rebuts The *Basic* Presumption ...............................................................15

III.   This Court Should Grant Review To Clarify This Circuit's *Affiliated Ute* Law ........................................................................22

CONCLUSION .....................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

ii

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States,*
406 U.S. 128 (1972) .................................................................. 22, 26

*Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.,*
879 F.3d 474 (2d Cir. 2018) ............................................................ 19

*Austin v. Loftsgaarden,*
675 F.2d 168 (8th Cir. 1982) ......................................................... 23

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) .................................................................... 1, 20

*Binder v. Gillespie,*
184 F.3d 1059 (9th Cir. 1999) ........................................................ 26

*Burges v. Bancorpsouth, Inc.,*
2017 WL 2772122 (M.D. Tenn. June 26, 2017) ................................. 24

*Cammer v. Bloom,*
711 F. Supp. 1264 (D.N.J. 1989) ..................................................... 18

*Cavalier Carpets, Inc. v. Caylor,*
746 F.2d 749 (11th Cir. 1984) ........................................................ 23

*City of Cape Coral Mun. Firefighters' Ret. Plan
v. Emergent Biosolutions, Inc.,*
322 F. Supp. 3d 676 (D. Md. 2018) ................................................. 14

*Clayton, Jr. v. Heartland Res., Inc.,*
2010 WL 4778787 (W.D. Ky. Nov. 16, 2010) .................................... 24

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ....................................................................... 12

*Cosby v. KPMG, LLP,*
2021 WL 1828114 (E.D. Tenn. May 7, 2021) .................................... 24

*Cox v. Collins,*
   7 F.3d 394 (4th Cir. 1993)......................................................................23

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   309 F.R.D. 251 (N.D. Tex. 2015) ................................................17, 19

*Finkel v. Docutel/Olivetti Corp.,*
   817 F.2d 356 (5th Cir. 1987)...............................................................23

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.,*
   141 S. Ct. 1951 (2021).........................................................................21

*Grae v. Corr. Corp. of Am.,*
   329 F.R.D. 570 (M.D. Tenn. 2019),
   *abrogated on other grounds,*
   330 F.R.D. 481 (M.D. Tenn. 2019).........................................24, 25, 26

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   573 U.S. 258 (2014).............................................................................20

*In re BancorpSouth, Inc.,*
   2017 WL 4125647 (6th Cir. Sept. 18, 2017).......................................24

*In re Delta Airlines,*
   310 F.3d 953 (6th Cir. 2002)......................................................*passim*

*In re EveryWare Glob., Inc. Sec. Litig.,*
   175 F. Supp. 3d 837 (S.D. Ohio 2016),
   *aff'd sub nom. IBEW Local No. 58 Annuity Fund*
    *v. EveryWare Glob., Inc.,* 849 F.3d 325 (6th Cir. 2017)....................13

*In re Finisar Corp. Sec. Litig.,*
   2017 WL 6026244 (N.D. Cal. Dec. 5 2017)........................................16

*In re Interbank Funding Corp. Sec. Litig.,*
   629 F.3d 213 (D.C. Cir. 2010) ...........................................................23

*In re Intuitive Surgical Secs. Litig.,*
   No. 5:13-cv-01920-EJD,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)...............................17, 19

iv

*In re Moody's Corp. Secs. Litig.*,
　　274 F.R.D. 480 (S.D.N.Y. 2011)........................................................16

*In re Volkswagen "Clean Diesel" Mktg.,*
　　*Sales Pracs., & Prods. Liab. Litig.*,
　　2 F.4th 1199 (9th Cir. 2021) ......................................................23, 26

*J & R Mktg. v. Gen. Motors Corp.*,
　　549 F.3d 384 (6th Cir. 2008)............................................................12

*James v. City of Dallas*,
　　254 F.3d 551 (5th Cir. 2001)............................................................12

*Johnston v. HBO Film Mgmt., Inc.*,
　　265 F.3d 178 (3d Cir. 2001) .......................................................23, 26

*Joseph v. Wiles*,
　　223 F.3d 1155 (10th Cir. 2000),
　　*abrogated on other grounds Cal. Pub. Emps.' Ret. Sys.*
　　*v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017); .................................23, 26

*Microsoft Corp. v. Baker*,
　　137 S. Ct. 1702 (2017)........................................................................2

*Molecular Tech. Corp. v. Valentine*,
　　925 F.2d 910 (6th Cir. 1991)............................................................24

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
　　332 F.R.D. 370 (N.D. Ga. 2019)...........................................6, 7, 14, 15

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
　　2018 WL 3861840 (N.D. Ohio, Aug. 14, 2018)...................................16

*Rikos v. Procter & Gamble Co.*,
　　799 F.3d 497 (6th Cir. 2012)............................................................11

*Rosen v. Tenn. Comm'r of Fin. & Admin.*,
　　288 F.3d 918 (6th Cir. 2002)............................................................12

*Rowe v. Maremont Corp.*,
　　850 F.2d 1226 (7th Cir. 1988)..........................................................23

v

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ........................................................ 15, 23

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) .................................................................. 11, 12

*Woodall v. Wayne County*,
  2021 WL 5298537 (6th Cir. Nov. 15, 2021) ..................................... 10

*Young v. Nationwide Mut. Ins. Co.,*
  693 F.3d 532 (6th Cir. 2012) ............................................................ 11

## Statutes & Rules

28 U.S.C. § 1292(e) ...................................................................... 1

Fed. R. App. P. 5(a) ...................................................................... 1

Fed. R. Civ. P. 23(f) ...................................................................... 1

## Other Authorities

Consol. Amended Compl.,
  *J & R Mktg. v. Gen Motors Corp.*,
  No. 06-10201(E.D. Mich. filed July 28, 2006),
  2006 WL 2430462 .............................................................................. 13

David H. Kaye & David A. Freedman,
  Fed. Jud. Ctr., Reference Guide on Statistics,
  *in* Reference Manual on Scientific Evidence 211
  (3d ed. 2011) ............................................................................ 17, 19

vi

## JURISDICTIONAL STATEMENT

Under Federal Rule of Civil Procedure 23(f), "[a] court of appeals may permit an appeal from an order granting … class-action certification." The district court granted certification on September 30, 2022. Order, R.177. This Court has jurisdiction over this timely petition. Fed. R. Civ. P. 23(f); Fed. R. App. P. 5(a); 28 U.S.C. § 1292(e).

## INTRODUCTION

Plaintiffs asserting class claims under Section 10(b) of the Securities Exchange Act must show that reliance can be proven on a classwide basis. The primary way to do that is through the fraud-on-the-market presumption recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)—a presumption defendants can rebut by showing that the alleged misrepresentations did not actually impact the company's stock price. Defendants did that here, but the district court certified Plaintiffs' class anyway. That was one of three fundamentally flawed reasons the court relied on to grant class certification, each of which warrants immediate review.

This Court favors interlocutory review of any certification order raising a novel question, resting on faulty reasoning, or potentially sounding the "death knell" of underlying litigation. *In re Delta Airlines,*

310 F.3d 953, 960 (6th Cir. 2002) (per curiam).  This petition raises all three reasons for granting review.[1]  The court addressed an open question in this Circuit, and its answer conflicts with that of every Circuit to have considered it.  More generally, the court's decision cannot be squared with Supreme Court or Circuit case law.  And its grant of class certification increases the size and scope of the class to such an extent that defendants "may find it economically prudent to settle and to abandon a meritorious defense" rather than litigate what plaintiffs contend are *billion-dollar* claims.  *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1708 (2017) (quotation marks omitted).

Three issues in particular warrant this Court's review.

*First,* the district court erred in ruling that because Defendants did not contest price impact from *one* category of challenged statements regarding Acadia's U.K. operations, class certification was appropriate for *all* the challenged statements—even though the rest of those statements were unrelated to the U.K. allegations and were allegedly corrected through entirely separate disclosures that did not impact

---

[1] It also presents one of the same issues as another currently pending Rule 23(f) petition.  *In re Tivity Health, Inc., et al.*, No. 22-502 (6th Cir. filed June 22, 2022).

2

Acadia's stock price.  Class certification is not buy-one-get-one-free.  As this Court has held, securities-fraud claims are properly considered on a statement-by-statement basis.  Any other approach would result in improperly overbroad classes and overlong class periods.  That's exactly what happened here.

*Second*, the court gave Plaintiffs the benefit of *Basic*'s presumption of classwide reliance even though Defendants showed there was *no* statistically significant price impact from the challenged statements concerning Acadia's U.S. operations.  The court reasoned that such evidence could not prove lack of price impact.  But statistical significance is the *sine qua non* of the price-impact inquiry.  The district court's approach would make *Basic*'s rebuttable presumption effectively irrebuttable.

*Third*, the court also gave Plaintiffs the benefit of the rarely applied *Affiliated Ute* presumption of classwide reliance even though Plaintiffs' claims rest on alleged affirmative misrepresentations, not omissions.  Every federal appellate court to consider the question has concluded that *Affiliated Ute* does *not* apply in such circumstances.  This Court should grant review to hold the same.

3

## STATEMENT OF THE CASE

### A.    Background

Acadia is a behavioral healthcare services provider headquartered in Tennessee. Acadia FY 2018 Form 10-K, R.121-2, PageID#3726, 3727. Acadia treated patients of all ages for a wide range of conditions at hundreds of facilities throughout the U.S. and U.K. during the putative class period. *Id.*, PageID#3727.

### B.    Plaintiffs' Suit

Plaintiffs' initial complaint and the associated eight-month class period (February 23 through October 24, 2017) related solely to allegations that Defendants made misleading statements about Acadia's operations in the U.K. Compl., R.1, PageID#2-3. Plaintiffs' amended complaint added purported misrepresentations regarding Acadia's U.S. operations that, they claimed, expanded the class period to four years and seven months. Am. Compl., R.39, PageID#759-86. That amended complaint alleges two sets of false statements. *Id.*, PageID#759, 786.

The first set (the "U.K. Statements") involved February 2017 financial guidance about Acadia's U.K. operations, the truth of which, Plaintiffs allege, was revealed on October 24, 2017, when Acadia's third-

4

quarter earnings release lowered that guidance.  *Id.*, PageID#728-29, 733-40.

The second set (the "U.S. Statements") concerned Acadia's U.S. operations, including its commitment to quality care, the adequacy of staffing levels at Acadia's U.S. facilities, and management's belief that Acadia was complying with U.S. regulations.  *Id.*, PageID#759-84. Plaintiffs contended that two separate corrective disclosures revealed the truth behind the U.S. Statements: (1) an October 11, 2018 *Aurelius Value* report and (2) a November 16, 2018 *Seeking Alpha* article.  *Id.*, PageID#730-31, 766-69, 780-81, 784-86, 800-02.  Those allegations are distinct from the U.K. Statements, which plaintiffs allege were already corrected by the time the U.S. Statements were allegedly corrected.

Plaintiffs moved to certify a class of all purchasers of Acadia common stock during the U.S. class period—April 30, 2014 through November 15, 2018.  *Id.*, PageID#728.  To prove classwide reliance, Plaintiffs sought to invoke two separate presumptions: *Basic*'s fraud-on-the-market presumption; and *Affiliated Ute*'s presumption for omission-based claims.  Defendants did not oppose certifying a class of purchasers who acquired Acadia stock during the U.K. class period—February 23,

5

2017 through October 24, 2017.  They did oppose certifying a class based on the alleged U.S. Statements and for the U.S. class period, contending that neither presumption applied to that class period.

## C.    The Order

The district court certified a class for the entire fifty-five-month period, applying both the *Basic* and *Affiliated Ute* presumptions to find classwide reliance for both sets of statements.    Order, R.177, PageID#5292-301.

*First*, the court ruled that Plaintiffs had sufficiently invoked the *Basic* presumption and that Defendants had failed to rebut it.   *Id.*, PageID#5292-93.   It then held that because Defendants had not submitted evidence to rebut the *Basic* presumption of reliance as to the U.K. Statements, that presumption applied to the entire class: "Defendants concede they cannot rule out price impact during the Class Period completely.  'This concession dooms Defendants' attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period ....'" *Id.*, PageID#5293-94 (quoting *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.,* 332 F.R.D. 370, 395 (N.D. Ga. 2019)).  In other words, the court applied an

6

all-or-nothing approach to class certification, reasoning that "whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations … is a loss causation analysis not appropriate at this stage." *Id.*, PageID#5294.

The court nonetheless considered pieces of Defendants' rebuttal evidence as to the two alleged corrective disclosures for the U.S. Statements. *Id.* The first concerned the October 11, 2018 *Aurelius Value* report. *Id.* Event studies showed no statistically significant price impact on Acadia's stock that day; instead, the first statistically significant price movement following the report did not occur until the day *after* the report was issued. *Id.* Noting that it was "not persuaded that the decline in Acadia stock price on October 12 was not in reaction" to the October 11 *Aurelius Value* report, the court concluded that even if it considered only October 11, Defendants had not rebutted the presumption because "the existence of non-statistically-significant stock price declines does not prove the absence of price impact." *Id.*, PageID#5296 (quoting *Monroe Cnty.*, 332 F.R.D. at 393).

The second alleged corrective disclosure, the November 16, 2018 *Seeking Alpha* article, came out about 45 minutes before a CNBC report

7

reporting unrelated bad news about private-equity talks stalling. *Id.*, PageID#5297. Despite evidence that there was no statistically significant impact on Acadia's stock following the *Seeking Alpha* report and that the unrelated CNBC report, which attracted widespread attention, in fact caused the subsequent stock-price decline, the court declined to consider that evidence, characterizing it as "arguments about loss causation." *Id.*, PageID#5298.

*Second*, the court concluded that Plaintiffs were entitled to *Affiliated Ute*'s presumption of reliance, even though Plaintiffs primarily challenged affirmative misrepresentations.[2] *Id.*, PageID#5300-01.

## QUESTIONS PRESENTED

1.     Did the district court err in ruling that because Defendants did not challenge certification as to the U.K. Statements, they could not rebut the *Basic* presumption as to the unrelated U.S. Statements?

2.     Did the court err in concluding that Defendants' evidence showing no statistically significant impact on Acadia's stock prices

---

[2] The court also declined to reach Defendants' challenges to (a) certification of Plaintiffs' scheme claim and (b) Plaintiffs' damages model, and denied Defendants' request to shorten the class period.

following the alleged corrective disclosures for the U.S. Statements was insufficient to rebut the *Basic* presumption?

3.      Did the court err in applying the *Affiliated Ute* presumption of classwide reliance even though Plaintiffs' claims are founded primarily on alleged affirmative misrepresentations, not omissions?

## SUMMARY OF ARGUMENT

The district court's order rests on three pillars.  None withstands scrutiny.

*First*, the court erred in concluding that because Defendants did not contest price impact from *one* category of challenged statements, certification was appropriate for *all* the challenged statements—even though the other statements were both unrelated and allegedly corrected through separate disclosures that did not impact Acadia's stock price. Allowing plaintiffs to add statements for which defendants can show a lack of price impact even when unrelated to those for which defendants cannot, improperly broadens classes, lengthens class periods, and multiplies claimed damages.  That is exactly what happened here.

*Second*, the court applied *Basic*'s presumption even though Defendants' evidence showed *no* statistically significant price impact

9

from the U.S. Statements, reasoning that such evidence could not prove lack of price impact. Not so. Where—as here—Defendants present evidence that post-corrective-disclosure price movements were *not* statistically significant, that rebuts *Basic*'s presumption.

*Third*, the court also applied the rarely invoked *Affiliated Ute* presumption of classwide reliance even though Plaintiffs' claims rest primarily on alleged affirmative misrepresentations, not omissions. Every federal appellate court to consider the question has concluded that *Affiliated Ute* does not apply in such circumstances. This Court should grant review to hold the same.

## RELIEF SOUGHT

Defendants ask this Court to grant their petition for permission to appeal.

## REASONS FOR GRANTING THE PETITION

This Court has "unfettered" discretion to grant Rule 23(f) petitions. *Woodall v. Wayne County*, 2021 WL 5298537 (6th Cir. Nov. 15, 2021). It should grant review here. This case involves "novel [and] unsettled question[s]," extreme "costs of continuing litigation" that will "hamper[]" later review, and "weakness" in "the district court's decision." *Delta*, 310

10

F.3d at 960. And the district court's answers to these and other questions conflict with those of other courts.

Review is particularly important because class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011). To fit within that exception, plaintiffs must satisfy Rule 23's requirements with evidence, not allegations. *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012). Courts must rigorously analyze that evidence to determine whether plaintiffs have met the rule's requirements. *Rikos v. Procter & Gamble Co.,* 799 F.3d 497, 504 (6th Cir. 2012). Neither Plaintiffs nor the court did so here.

**I.    This Court Should Grant Review To Reverse The District Court's Erroneous Ruling Concerning Class Certification Based On Multiple Theories of Liability.**

The district court concluded that because Defendants did not rebut the *Basic* presumption for the U.K. Statements, they could not rebut that presumption for the *unrelated* U.S. Statements. Order, R.177, PageID#5293. Plaintiffs do not allege that the *Aurelius Value* and *Seeking Alpha* disclosures—purportedly correcting the U.S. Statements—had anything to do with the U.K. Statements, which were

11

already allegedly corrected nearly a year before the alleged corrective disclosures for the U.S. Statements. Yet the district court lumped all the statements together, concluding that Defendants could not rebut the *Basic* presumption for any challenged statement without rebutting that presumption for all of them. *Id.*, PageID#5293-94.

That is not a "rigorous analysis" of the Plaintiffs' class-certification arguments. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (quoting *Wal-Mart*, 564 U.S. at 351). It is no analysis at all. Where a plaintiff's liability case is premised on multiple theories of injury, it is error for the court conducting a class-certification analysis to lump them together. *Id.*; *cf. Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) ("class certification must be addressed on a claim-by-claim basis" (quoting *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)). Even where plaintiffs assert an undifferentiated "count" complaining of multiple instances of unrelated conduct, courts must still conduct a statement-by-statement analysis of securities-fraud claims. *Compare J & R Mktg. v. Gen. Motors Corp.*, 549 F.3d 384, 397-98 (6th Cir. 2008) (separately analyzing alleged misstatements), *with* Consol. Amended Compl. ¶¶ 113-127, *J & R Mktg. v. Gen Motors Corp.*, No. 06-10201(E.D.

12

Mich. filed July 28, 2006), 2006 WL 2430462 (three counts divided by statutory section but undifferentiated by statement); *see also In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 870-74 (S.D. Ohio 2016), *aff'd sub nom. IBEW Local No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) (similar).

Plaintiffs allege two separate frauds: one—based on the U.K. Statements—that lasted for less than eight months, and another, based on the U.S. Statements, that lasted for well over four years. Plaintiffs' U.S. Statements theory was entirely separate from their U.K. Statements theory. Indeed, Plaintiffs alleged that the "truth" of these separate alleged misstatements was publicly revealed through separate, unrelated corrective disclosures a year apart. Order, R.177, PageID#5292-93 (quotation marks omitted).

The court cannot dodge the requisite price-impact analysis for the U.S. Statements merely because Defendants did not also challenge the price impact of the U.K. Statements (or their far narrower class period). Under that approach, plaintiffs could obtain certification of any class for any length of time based on any number of alleged misrepresentations so long as they could establish price impact for one such misrepresentation.

13

And allowing Plaintiffs to bootstrap allegations about one of those alleged misdeeds to obtain certification for one or more other, unrelated ones is a plain violation of Rule 23's certification requirements (and Defendants' due-process rights).  Applying the court's lump-sum reasoning would, in many cases (including this one), result in an overinclusive class and an overlong class period encompassing times during which defendants are not responsible for *any* injury to *anyone*.  This, again, is precisely why the Supreme Court has repeatedly emphasized the need for rigorous analysis at class certification.

The district court's analysis parted ways with this Court's precedents, but not even the out-of-circuit authorities it relied on support its approach.  Order, R.177, PageID#5293.  Those cases all involve a defendant's failure to show the absence of price impact from statements related to the *same conduct* underlying a surviving allegation of misrepresentation.  *Monroe Cnty.*, 332 F.R.D. at 395 (failure to address one of five corrective disclosures all related to same misstatement about progress of construction project); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 690 (D. Md. 2018) (failure to show lack of price impact related to misstatement about

14

"follow-on contract"); *Waggoner v. Barclays PLC*, 875 F.3d 79, 105 (2d Cir. 2017) (failure to show lack of price impact when evidence "merely suggest[ed] that another factor *also* contributed to an impact on a security's price"). None stands for the notion that price impact from one statement provides a blanket pass to certify a class of persons purportedly injured by other, different statements based on unrelated conduct.

This Court should grant review to clarify that class certification requires courts to engage in a rigorous analysis for *all* of Plaintiffs' theories of injury.

## II. This Court Should Also Grant Review To Hold That The Absence Of A Statistically Significant Price Impact Rebuts The *Basic* Presumption.

**A.** This Court should also grant review to determine the quantum of proof required to overcome the *Basic* presumption.

Here, the district court reasoned that "the existence of non-statistically-significant price declines does not prove the absence of price impact." Order, R.177, PageID#5296 (quoting *Monroe Cnty.*, 332 F.R.D. at 393).

15

Other courts have correctly rejected that proposition, ruling that defendants may rebut the *Basic* presumption by showing that a price change is statistically insignificant. *E.g.*, *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *13, *18 (N.D. Ohio, Aug. 14, 2018) (*Basic* presumption rebutted where "none of the 23 alleged misstatements caused any statistically significant change in Freddie Mac's stock price"); *In re Moody's Corp. Secs. Litig.*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011) (presumption rebutted where "there is no period within the proposed class period where the alleged misrepresentation caused a statistically significant increase in the price"); *see also In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *6-8 (N.D. Cal. Dec. 5 2017) (presumption rebutted when stock price changes following alleged misrepresentations were "not statistically significant").

Those courts have found the *Basic* presumption rebutted when an alleged misrepresentation or corrective disclosure failed to produce a statistically significant price impact at the accepted 95% confidence level.[3]  For example, in *Erica P. John Fund, Inc. v. Halliburton Co.*, 309

---

[3]  The Federal Judicial Center endorses the 95% confidence level as part of its *Reference Manual on Scientific Evidence* (3d ed. 2011), published by the Center to assist judges in managing cases involving

16

F.R.D. 251 (N.D. Tex. 2015), the court ruled that a showing "at a 90% confidence level" was "less than the 95% confidence level both experts require in their regression analyses," *id.* at 270, which corresponded with courts' requirement that "a party's expert … testify based on an event study that meets the 95% confidence standard," *id.* at 262. Because the linkage between the disclosure and the price moves was not statistically significant at the 95% confidence level, the court ruled "[d]efendants ha[d] rebutted the *Basic* presumption." *Id.* at 270; *see also In re Intuitive Surgical Secs. Litig.*, No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *15 (N.D. Cal. Dec. 22, 2016) (finding "lack of price impact" because neither expert "found a statistically significant price impact at the 95% confidence level"). This Court, though, has not yet addressed this important question. Granting this petition would give the Court the opportunity to answer it. *Delta*, 310 F.3d at 960.

**B.** The reason statistical significance is so critical is that stock prices fluctuate *all day, every day*, for numerous reasons—or no reason at all. Absent some generally agreed-upon standard, a plaintiff could get

---

complex scientific and technical evidence. David H. Kaye & David A. Freedman, Fed. Jud. Ctr., Reference Guide on Statistics 211, 251-52 (2011), *available at* http://bit.ly/2IoeMfy.

a class certified against a publicly traded company every time a dip or flutter of the stock price occurs in some temporal proximity[4] to a news item a stockholder alleges is a misrepresentation or a corrective disclosure—irrespective of whether the stock price movement had anything to do with the challenged statement.

Statistical science provides that generally agreed-upon standard: statistical significance at the 95% confidence level. Statistical studies of the type at issue here present two competing hypotheses. One is the default position—namely, that there is *no relationship* between one event (*Aurelius Value* or *Seeking Alpha*) and another (price fluctuations in

---

[4] Here, the district court also stretched the idea of temporal proximity to an extreme, ruling that stock price changes occurring *on a different day* from the disclosure at issue could still be evidence of price impact. Order, R.177, PageID#5295-96. The district court found—and Defendants do not dispute—that "Acadia stock traded in an efficient market." *Id.*, PageID#5292. And "the essence of an efficient market and the foundation for the fraud on the market theory" is "an *immediate* response in the stock price" to unexpected corporate events. *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989) (emphasis added). Plaintiffs' expert agreed that, at a minimum, "price movements … tend to be larger" "on days when new information that is relevant to the value of a company … becomes available" than "on days without such information." Dalrymple Expert Report, R.114-3, PageID#3211 ¶ 54. The court nevertheless was "not persuaded that the decline in Acadia stock price on October 12 was not in reaction to the *Aurelius Value* report on October 11." Order, R.177, PageID#5296.

18

Acadia's stock).  That hypothesis is called the *null hypothesis*.  The other hypothesis posits that there *is* a relationship between the two events— the *alternative hypothesis.*

In standard statistical practice, failing to prove the alternative hypothesis with the requisite level of certainty requires accepting the null hypothesis.  That is because statistical significance at the requisite confidence level is how an economist determines whether two events are correlated—whether, for example, a change in stock price is tied to a particular statement or just the result of "random fluctuations."  *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 481 n.5 (2d Cir. 2018) ("If the stock price movement is indistinguishable from random price fluctuations, it cannot be attributed to company-specific information announced on the event date.").

Courts and federal judicial reference materials provide that requiring statistical significance at the 95% confidence level is standard industry practice.  *Intuitive*, 2016 WL 7425926, at *15; *Halliburton*, 309 F.R.D. at 270; David H. Kaye & David A. Freedman, Fed. Jud. Ctr., Reference Guide on Statistics 211, 251-52 (2011), *supra* note 1.  And that is exactly what Defendants' expert used to conclude that there was no

19

price impact from the two alleged corrective disclosures for the U.S. Statements. Allen Expert Report, R.121-1, PageID#3646 n.60.

Accordingly, a defendant's event study showing a lack of statistical significance at the required confidence level means *there is no legally cognizable price impact.* There is, in other words, no demonstrable likelihood that any change in the stock price is tied to the purported misrepresentation or correction, and not to some other piece of news or to the random-walk fluctuations that cause stock prices to vary over the course of a day.

To overcome the *Basic* presumption, defendants need only prove a lack of price impact. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 279 (2014). Defendants can meet that burden by showing that a stock price's changes are *not* tied to the alleged misrepresentations or corrections in a manner that an economist would accept as plausibly correlated. *Basic*, 485 U.S. at 248 (finding "[a]ny showing that severs the link between the alleged misrepresentation and … the price received (or paid) by the plaintiff … sufficient to rebut the presumption of reliance").

The court's ruling here turns that usual burden on its head and sets an impossible bar for defendants. Statistics can *never* fully and

20

affirmatively prove some causal factor does not exist.[5]   Instead, statisticians and economists recognize that when the data fail to reject the null hypothesis (here, that Acadia's stock-price movement was not caused by the corrective disclosures), accepting the null hypothesis is proper.

Economists and statisticians would accept the null hypothesis in the absence of statistically significant proof of price impact.  Courts have no basis to require more, especially given Rule 301's minimal burden of production.  Nor would any more proof be required under Supreme Court precedent, which applies a preponderance-of-the-evidence standard for price impact—not absolute certainty.  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021) ("[t]he district court's task" is to evaluate all the evidence "and determine whether it is more likely

---

[5] The difficulty of proving lack of price impact is exacerbated where, as here, the court *also* refuses to consider other relevant and probative evidence of a lack of price impact.  Defendants presented non-statistical evidence about the lack of price impact from either of the purportedly corrective statements.  The district court listed that evidence—but offered no explanation for why it did not credit several key pieces of that evidence.  Order, R.177, PageID#5295-98.  Although that evidence readily confirmed a lack of price impact from any of the U.S. Statements, Defendants should have been able to rely on the statistical evidence alone.

than not that the alleged misrepresentations had a price impact"). This Court should grant review to hold that the court erred in converting *Basic*'s rebuttable presumption into an irrebuttable one. Granting review on this important question would correct that error and clarify an area of unsettled law in this Circuit. *Delta*, 310 F.3d at 960 ("The case that raises a novel or unsettled question may also be a candidate for interlocutory review.").

## III.   This Court Should Grant Review To Clarify This Circuit's *Affiliated Ute* Law.

Recognizing that plaintiffs might have difficulty proving reliance on pure omissions, *Affiliated Ute* held that if a plaintiff's claim "involv[es] primarily a failure to disclose," "positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972). Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important" in deciding whether to buy or sell stock. *Id.*

After *Affiliated Ute*, which was decided 50 years ago, plaintiffs asserting fraud claims based on both misrepresentations *and* omissions sought the benefit of that presumption. But every federal appellate court confronted with that question has held that plaintiffs may not expand the

22

*Affiliated Ute* presumption to cover claims that are not "primarily" omission-based. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1202 (9th Cir. 2021) ("Because we conclude the allegations in this case cannot be characterized primarily as claims of omission, we hold that the *Affiliated Ute* presumption of reliance does not apply."); *Waggoner*, 875 F.3d at 96 (similar); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010) (similar); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001) (similar); *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000) (similar), *abrogated on other grounds by Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2054 (2017); *Cox v. Collins*, 7 F.3d 394, 395-96 (4th Cir. 1993) (similar); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 n.4 (7th Cir. 1988) (similar); *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir. 1987) (similar); *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 757 (11th Cir. 1984) (similar); *Austin v. Loftsgaarden*, 675 F.2d 168, 178 n.21 (8th Cir. 1982) (similar).

23

That question remains open in this Court.[6] This Court should grant review and provide guidance to the district courts within this Circuit, which are split on this important question. *Compare, e.g., Grae v. Corr. Corp. of Am.*, 329 F.R.D. 570, 584 (M.D. Tenn. 2019), *abrogated on other grounds,* 330 F.R.D. 481 (M.D. Tenn. 2019) (following federal appellate courts and refusing to apply presumption to claims that were not primarily omissions); *Clayton, Jr. v. Heartland Res., Inc.*, 2010 WL 4778787, at *4 (W.D. Ky. Nov. 16, 2010) (similar); *with Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) ("Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions"); *Cosby v. KPMG, LLP*, 2021 WL 1828114, at *6 (E.D. Tenn. May 7, 2021) (similar).

---

[6] This Court has—as it must—followed *Affiliated Ute* in pure omissions cases. *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir. 1991). But *Molecular* does not control where plaintiffs allege both misrepresentations and omissions. *Clayton, Jr. v. Heartland Res., Inc.*, 2010 WL 4778787, at *3 (W.D. Ky. Nov. 16, 2010); *cf. In re BancorpSouth, Inc.*, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017) (denying leave to appeal class certification where district court applied *Affiliated Ute* in combination case without addressing issue).

24

The better reading of *Affiliated Ute* is the one every federal appellate court to consider the issue has adopted:  for the presumption to apply, plaintiffs must show they relied on an omission and not an affirmative misrepresentation.

Here, Plaintiffs' claims primarily rely on alleged affirmative misrepresentations, not omissions.  The core allegations concern the "false impression that [Acadia] gave to shareholders and potential shareholders about the quality and value of its services."  *Grae*, 329 F.R.D. at 584.  Plaintiffs claim that in making the alleged affirmative misstatements, Defendants omitted more accurate information about Acadia's facilities.  But as courts have acknowledged, "[s]ome version of that premise …, is true about *every* affirmative falsehood—every lie can be corrected by the truth.  In such cases, … it is still the initial misstatement that forms the primary basis for the fraud."  *Id*. (emphasis added).

Still, the district court agreed with Plaintiffs.  Adopting a minority position, it stated that courts may apply *Affiliated Ute* to "combination" allegations.  Order, R.177, PageID#5300-01.  In so doing, it declined to even make the "threshold determination" whether the alleged

25

misrepresentations are nondisclosures or positive misstatements. *Grae*, 329 F.R.D. at 583 ("Before applying *Affiliated Ute*, however, a court must make the threshold determination of whether the plaintiff's case involves 'primarily a failure to disclose' or whether, in the alternative, the case is primarily about the defendant's affirmative statements.") (citing *Affiliated Ute*, 406 U.S. at 153)); *see also Volkswagen*, 2 F.4th at 1204-05 (courts should "analytically characterize [the] action as either primarily a nondisclosure case … or a positive misrepresentation case" (quoting *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)).

The district court's approach converts every misrepresentation into an omission. *Johnston*, 265 F.3d at 193 ("This claim should not be transformed into an omission simply because the defendants failed to disclose that the allegedly misleading fact was untrue. Under an approach of that nature nearly any misrepresentation could become an omission ...."). That sweeping approach guts the requirement that plaintiffs show reliance. *Joseph*, 223 F.3d at 1163 ("We cannot allow the mere fact of this concealment to transform the alleged malfeasance into an omission rather than an affirmative act. To do otherwise would

26

permit the *Affiliated Ute* presumption to swallow the reliance requirement almost completely.").

Because the district court's decision rests in part on its minority view of the law, this case offers the Court an appropriate vehicle to also resolve this area of unsettled law within this Circuit. *Delta,* 310 F.3d at 960.

# CONCLUSION

For the reasons set forth above, review should be granted.

                                    Respectfully submitted,

                                    /s/ Anne M. Voigts

Jessica P. Corley                   Anne M. Voigts
Brandon R. Keel                     Lisa R. Bugni
Ronni D. Solomon                    KING & SPALDING LLP
KING & SPALDING LLP                 50 California Street, Suite 3300
1180 Peachtree Street NE            San Francisco, CA 94111
Atlanta, GA 30309                   (415) 318-1200
(404) 572-4600                      avoigts@kslaw.com

Joshua N. Mitchell                  Steven A. Riley
David P. Mattern                    Milton S. McGee, III
Paige Tenkhoff*                     Elizabeth O. Gonser
KING & SPALDING LLP                 RILEY & JACOBSON, PLC
1700 Pennsylvania Avenue NW         1906 West End Avenue
Washington, DC 20006                Nashville, TN 37203
(202) 737-0500                      (615) 320-3700

*Counsel for Defendants-Petitioners*

                    *Admitted only in the state of Tennessee;
                practice directly supervised by principals of the firm.*

October 14, 2022

28

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because it contains 5,087 words, excluding the parts of the Petition exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b).

This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word 365 MSO in 14-point Century Schoolbook font.

Date: October 14, 2022

/s/*Anne M. Voigts*
Anne M. Voigts

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, a copy of the foregoing

Defendants-Petitioners' Petition for Permission to Appeal Pursuant to

Fed. R. Civ. P. 23(f) was served via electronic mail and first-class mail on

the following:

Christopher M. Wood
ROBBINS GELLER
RUDMAN
& DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
cwood@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON
MARTIN
& GARRISON, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Jmartin
@barrettjohnston.com

Thomas C. Michaud
VANOVERBEKE,
MICHAUD
& TIMMONY, P.C.
79 Alfred Street
Detroit, MI 48201
(313) 578-1200
tmichaud@vmtlaw.com

Danielle S. Myers
David C. Walton
Darryl J. Alvarado
J. Marco Janoski Gray
Ting H. Liu
Timothy Alexander
Benwa Folkerth
ROBBINS GELLER
RUDMAN
& DOWD LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
danim@rgrdlaw.com
davew@csgrr.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
afolkerth@rgrdlaw.com

Michael Bauman
PITTA LLP
120 Broadway
28th Floor
New York, NY 10271
(212) 652-3890
mbauman@pittalaw.com

Justin J. Lannoye
DOWD, BLOCH,
BENNETT, CERVONE,
AUERBACH
& YOKICH LLP
8 South Michigan Avenue
19th Floor
Chicago, IL 60603
(312) 372-1361
Jlannoye
@laboradvocates.com

Matthew M. Guiney
Patrick Donovan
Regina M. Calcaterra
Thomas H. Burt
WOLF, HALDENSTEIN,
ADLER, FREEMAN
& HERZ LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600
guiney@whafh.com
donovan@whafh.com
calcaterra@whafh.com
burt@whafh.com

Paul Kent Bramlett
BRAMLETT LAW
OFFICES
P O Box 150734
Nashville, TN 37215
(615) 248-2828
pknashlaw@aol.com

*Counsel for Plaintiff-Respondent*

*/s/Anne M. Voigts*
Anne M. Voigts

# ADDENDUM

Pursuant to Fed. R. App. P. 5(b)(1)(E), Defendants-Petitioners

attach the following:

**R.177**      Memorandum Opinion, *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988 (M.D. Tenn. Sept. 30, 2022)

**R.178**      Order, *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988 (M.D. Tenn. Sept. 30, 2022)

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similar, | ) ) ) ) | |
| Plaintiff, | ) ) | NO. 3:18-cv-00988 |
| v. | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| ACADIA HEALTHCARE COMPANY, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM</u>**

Pending before the Court is the Motion for Class Certification filed by Lead Plaintiffs Chicago & Vicinity Laborers' District Council Pension Fund and New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund (collectively, "Plaintiffs"). (Doc. No. 112). Defendants filed a response in opposition (Doc. No. 120), and Plaintiffs filed a reply (Doc. No. 133). Defendants also filed a Motion for Evidentiary Hearing on Plaintiffs' Motion for Class Certification (Doc. No. 122), which Plaintiffs do not oppose, and a Motion for Leave to File a Sur-Reply (Doc. No. 140; sur-reply, Doc. No. 140-1; rebuttal expert report Doc. No. 140-2), which Plaintiffs oppose, or in the alternative, move for leave to file a response to the sur-reply. (Doc. No. 146; response to sur-reply, Doc. No. 147-1; reply expert report, Doc. No. 147-2). Defendants filed a reply (Doc. No. 148) with a sur-rebuttal report from their expert (Doc. No. 148-1). Defendants' Motion for Evidentiary Hearing (Doc. No. 122) is **DENIED** as an inefficient use of judicial resources and because the Court can decide the issues based on the filings of the parties. Defendants' motion for leave to file a sur-reply (Doc. No. 140) and Plaintiffs' motion for leave to

file a response to the sur-reply (Doc. No. 146) are **GRANTED**. For the reasons set forth more fully below, Plaintiffs' Motion for Class Certification will be **GRANTED**.

## I.    BACKGROUND

The alleged facts underlying this litigation are set forth in detail in this Court's Memorandum Opinion denying Defendants' motion to dismiss. *See St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021). Because the factual allegations are well-known to the parties or otherwise readily accessible, the Court assumes familiarity with them.

Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following Class:

> All persons who purchased or otherwise acquired the common stock of Acadia Healthcare Company, Inc. ("Acadia" or the "Company") between April 30, 2014 and November 15, 2018, inclusive (the "Class Period"). Excluded from the Class are Acadia, Joey A. Jacobs, Brent Turner, David Duckworth (collectively "Defendants") and members of their immediate families, any entity of which a Defendant has a controlling interest, and the legal representatives, heirs, predecessors, successors or assigns of any such excluded party.

(*See* Doc. No. 112-1; Doc. No. 113 at 7). Plaintiffs also request that the Court appoint Plaintiffs as Class Representatives and appoint the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## II.    STANDARDS GOVERNING CLASS CERTIFICATION

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33-34 (2013). Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of

those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b), in turn, provides in pertinent part that when the requirements of Rule 23(a) are met a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

The party seeking class certification bears the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). The decision whether to certify a class is committed to the sound discretion of the district judge and turns on the particular facts and circumstances of each individual case. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "Similarly, the Court has discretion to conduct an evidentiary hearing on a motion for class certification." *Desai v. Geico Cas. Co.*, 574 F. Supp. 3d 507, 527 (N.D. Ohio 2021).

### III.    ANALYSIS

"In securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Halliburton II*"). This is precisely the issue here, as Defendants only challenge class certification as to predominance.

### A.  Rule 23(a)

Plaintiffs submits that the four requisite elements of Rule 23(a) are readily established. For the reasons provided below, the Court agrees.

1.  Numerosity

Plaintiffs have met the numerosity requirement by demonstrating that the class is so numerous "that joinder of all members is impracticable." Fed. Rule Civ. P. 23(a)(1). Plaintiffs submit that, throughout the Class Period, Acadia stock traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ"). (Doc. No. 113 at 13 (citing Expert Report of W. Scott Dalrymple, CFA ("Dalrymple Report"), Doc. No. 114-3 ¶¶ 14, 29)). "Numerosity is generally assumed to have been met in class action suits involving nationally traded securities." *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 572 (M.D. Tenn. 2019). Plaintiffs further submit that the average weekly trading volume of Acadia stock was approximately 4.8 million shares and that at least 200 major institutions owned Acadia stock during the Proposed Class Period. (Doc. No. 113 at 13 (citing Dalrymple Report, Doc. No. 114-3 ¶¶ 35, 47 n.58)). Based on this volume of trading and the number of institutional shareholders, Plaintiffs assert that it is reasonable to conclude that thousands of individuals owned Acadia stock during the Proposed Class Period. (*See id*. at 114). Thus, Plaintiffs have met the standard for numerosity. *See Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 131 (M.D. Tenn. 2020) (class met standard for numerosity "considering that Tivity's common stock was traded on the NASDAQ and owned by 331 institutions during the class period"); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) ("number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1).").

2.  Commonality

Plaintiffs have shown that there are common questions of law and fact for purposes of Rule 23(a)(2), including whether Defendants were engaged in a scheme to defraud, whether Defendants

misrepresented or omitted material facts about Acadia's U.S. and U.K. facilities, whether the alleged scheme, misstatements, or omissions caused the putative class to suffer damages, whether Defendants acted with scienter, and whether Defendants were "control persons" within the meaning of §20(a) of the Exchange Act. *See Weiner*, 334 F.R.D. at 131.

### 3. Typicality

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). "This requirement insures that the representative's interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Weiner*, 334 F.R.D. at 128 (citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his claims are based on the same legal theory." *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Plaintiffs submit that their claims are typical of the proposed Class because they arise out of the same alleged course of conduct – that Defendants artificially inflated Acadia's share prices by engaging in a scheme to defraud and misrepresenting the true state of its U.S. and U.K. facilities. (Doc. No. 113 at 15). Plaintiffs assert that they and the putative Class have suffered from losses from the same course of conduct and share identical interests in holding Defendants accountable and maximizing the recovery of the Class. (*See id*.).  The Court concludes Plaintiffs have met the typicality prerequisite of Rule 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves

to uncover conflicts of interest between named parties and the class they seek to represent." *Weiner*, 334 F.R.D. at 128 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Here, the proposed Class Representatives are defined benefit pension plans that provide retirement income benefits to their participants and collectively purchased or otherwise acquired more than 50,000 shares of Acadia common stock during the Class Period and suffered nearly $900,000 in losses. (Doc. No. 113 at 11 (citing Doc. Nos. 26-2, 26-3, 26-4)). Agents of Plaintiffs have submitted affidavits attesting to their diligent attention to the case and their understanding of their duties as lead plaintiffs to provide fair and adequate representation. (Doc. Nos. 114-1, 114-2). Plaintiffs have a financial interest in the outcome of this litigation that is representative of class members, as they were holders of Acadia securities during the Class Period and were allegedly injured by the same course of conduct by the Defendants. Thus, the Court concludes that the interests and incentives of Plaintiffs are representative and adequate of the class at large.

Plaintiffs submit they have also demonstrated their adequacy by retaining attorneys with considerable experience in securities class actions. (*See* Doc. No. 113 at 17). The Court agrees that Robbins Geller will adequately represent the class in this action. Robbins Geller is experienced in litigating securities class actions and, through this litigation, has competently briefed the motion to dismiss, and has provided competent briefing on the present class certification motion. Accordingly, the Court finds Plaintiffs have met the adequacy prerequisite of Rule 23(a)(4).

## B. Rule 23(b)

Plaintiffs submit that this action also satisfies Rule 23(b)(3)'s requirements that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute. (*See* Doc. No. 113 at 18). As noted above, Defendants disagree only as to the predominance. The Court agrees class action is superior to other

available methods of fairly and efficiently adjudicating the controversy, and finds that Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement

Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"). "The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id*. at 809-10 (citations and internal quotations omitted).

Plaintiffs contend that this action meets the predominance requirement of Rule 23(b)(3) because the core elements of Plaintiffs' §§10(b) and 20(a) claims are susceptible to common proof. Plaintiffs argue that the element of reliance can be presumed on a class-wide basis under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), "each of which allows a plaintiff to establish a 'rebuttable presumption of reliance,' without the need for individual information about each plaintiff." *Grae*, 330 F.R.D. at 493 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008)).

Defendants contend that predominance is not established as to reliance because they have rebutted the *Basic* presumption and because *Affiliated Ute* does not apply to Plaintiffs' claims. The Court will address Defendants' arguments in turn.

1. The *Basic* Presumption

"*Basic* assumes that buyers and sellers of stock in an efficient market rely on the market as an intermediary for setting the stock's price in light of all publicly available material information; accordingly, when one buys or sells the stock at the market price, one has, in effect, relied on all publicly available information, regardless of whether the buyer and/or seller was aware of that information personally." *Grae*, 330 F.R.D. at 493 (citing *Basic*, 485 U.S. at 243–44). "Fraud committed by artificially affecting a stock's price through public information, as contemplated by *Basic*, is known as 'fraud-on-the-market.'" *Id*.

"To invoke the *Basic* presumption, a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) that the stock traded in an efficient market; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*")). Defendants do not dispute that the publicity and market timing prerequisites have been satisfied or that materiality need not be proven at the class certification stage. *See Amgen*, 568 U.S. at 459. Nor do Defendants dispute that Plaintiffs have shown Acadia stock traded in an efficient market over the course of the Class Period. (*See* Dalrymple Report, Doc. No. 114-3, ¶¶ 25-89). Therefore, the Court finds that Plaintiffs have made a showing sufficient to invoke the *Basic* presumption of reliance.

Defendants "may rebut the *Basic* presumption at class certification by showing 'that an alleged misrepresentation did not actually affect the market price of the stock.'" *Goldman*, 141 S. Ct. at 1959 (quoting *Halliburton II*, at 284). This is because "[i]n the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse." *Halliburton II*, 573 U.S. at 278. "'Price impact' simply refers to the effect of a misrepresentation on a stock price." *Halliburton I*, 563 U.S. at 814. "[T]he defendant bears the burden of persuasion to prove a lack of price impact" and "the defendant must carry that burden by a preponderance of the evidence." *Goldman*, 141 S. Ct. at 1963. "The district court's task is simply to assess all the *evidence* of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Id*. (emphasis added).

Here, Plaintiffs claim the alleged misrepresentations related to Acadia's U.K. facilities were corrected in a partial disclosure occurring in October 2017, and that the alleged misrepresentations related to Acadia's U.S. operations were corrected in partial disclosures occurring in October and November 2018. The Court will assess Defendants' rebuttal evidence as to each corrective disclosure.

### i.    The October 2017 Corrective Disclosure

Defendants do not submit evidence to rebut the *Basic* presumption as to the corrective disclosure on October 24, 2017. Defendants' expert, Lilly Allen, did not analyze reactions in Acadia's stock price to the corrective disclosure on October 24, 2017. (*See* Allen Report, Doc. No. 121-1; *see id*. at 9 n.15 (stating that she "ha[s] not been asked to analyze price impact of the alleged misrepresentations regarding Acadia's U.K. operations.")). Thus, Defendants concede the October 2017 corrective disclosure had an impact on Acadia's stock price. In doing so, Defendants concede they cannot rule out price impact during the Class Period completely. "This concession dooms

9

Defendants' attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019); *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018); *Waggoner v. Barclays PLC*, 875 F. 3d 79, 99-103 (2d Cir. 2017)). Nevertheless, the Court will consider Defendants' rebuttal evidence as to the two other corrective disclosures.

        *ii.     The October 2018 Corrective Disclosure – the Aurelius Value report*

On October 11, 2018, *Aurelius Value* published a report and released a video documenting systemic patient abuse and neglect at dozens of Acadia facilities caused primarily by understaffing. (Doc. No. 39 ¶¶ 9, 185). The price of Acadia securities declined from a close of $36.55 per share on October 10, 2018, to an intraday low of $32.37 per share on October 12, 2018, a decline of more than 11%. (*Id*. ¶¶ 10, 189).

Defendants rely on Allen's report to rebut the *Basic* presumption as to the *Aurelius Value* report published on October 11, 2018. (*See* Doc. No. 120 at 16-22). Defendants submit that event studies conducted by Allen and by Plaintiffs' expert, Dalrymple, show that there was no statistically significant reaction in Acadia's stock price on October 11, 2018, following the release of the *Aurelius Value* report. (*Id*. at 16-18 (citing Allen Report, Doc. No. 121-1 ¶ 29)). Defendants assert that the event studies showing that the *Aurelius Value* report had no statistically significant impact on Acadia's stock price prove the lack of price impact and rebut the *Basic* presumption as to the *Aurelius Value* report. (*See id*. at 18).  Additionally, Defendants argue several other pieces of evidence confirm that there was no reaction in Acadia's stock price to the release of the *Aurelius*

10

*Value* report. (*See id*. at 20-22 (citing Allen Report, Doc. No. 121-1 ¶¶ 30, 33, 34, 20, 48-53)). The four other pieces of evidence Defendants rely on to show lack of price impact are: (1) Allen's analysis of Acadia's stock price from 11AM to 1PM on October 11, 2018, (Doc. No. 120 at 20; Doc. No. 121-1 ¶ 30); (2) that 87% of analysts covering Acadia at the time did not issue reports following the *Aurelius Value* report, (Doc. No. 120 at 21; Doc. No. 121-1 ¶¶ 33-34); (3) the "generic nature" of the challenged statements, (Doc. No. 120 at 21-22; Doc. No. 121-1 ¶ 20); and (4) Allen's study of other news stories. (Doc. No. 120 at 22; Doc. No. 121-1 ¶¶ 48-53).

First, the Court addresses the "generic nature" of the challenged statements. In *Goldman*, the Supreme Court explained that:

> when the earlier misrepresentation is generic (e.g., 'we have faith in our business model') and the later corrective disclosure is specific (e.g., 'our fourth quarter earnings did not meet expectations')…. it is less likely that the specific disclosure actually corrected the generic misrepresentation, which means that there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop.

141 S. Ct. at 1961. Thus, under *Goldman*, the generic nature of an alleged misrepresentation can be evidence of a lack of price impact "when there is a mismatch between the contents of the misrepresentation and the corrective disclosure[.]" *Id*. Here, neither Allen nor Defendants argue such a mismatch is present between the contents of the alleged misrepresentations and the contents of the *Aurelius Value* report. Absent such analysis, Defendants' contention as to the generic nature of the alleged misstatements is not evidence showing a lack of price impact.

Next, the Court considers Defendants' event study evidence. Allen concedes there was a statistically significant reaction in Acadia's stock price on October 12, the day after the *Aurelius Value* report was issued. (Doc. No. 121-1 ¶ 32). Allen opines that there is no basis to conclude that the changes in Acadia's stock price on October 12 were in reaction to the *Aurelius Value* report

published on October 11 because research has shown that stock prices in an efficient market react very quickly to new information in company announcements of earnings or dividends and in analyst recommendations. (*Id.* ¶ 31; *see also* Allen Rebuttal Report, Doc. No. 140-2 ¶¶ 17 n.23, 19-21). However, the Supreme Court has specifically not adopted "any particular theory of how quickly and completely publicly available information is reflected in market price." *Halliburton II*, 573 U.S. at 271–72 (quoting *Basic*, 485 U.S. at 248 n.28). Accordingly, the Court is not persuaded that the decline in Acadia stock price on October 12 was not in reaction to the *Aurelius Value* report published on October 11.

However, even if the Court were persuaded that October 11 alone was the appropriate time frame in which to consider price impact, Defendants have still not rebutted the presumption "because their price impact arguments rely on a statistical fallacy[;] [c]ontrary to Defendants' argument, the existence of non-statistically-significant stock price declines does not prove the absence of price impact." *Monroe Cnty. Employees' Ret. Sys.*, 332 F.R.D. at 393; *see id.* ("failure to find statistical significance does not prove that information had no role in the observed stock price adjustment. Rather, [n]on-significance means indeterminate with respect to finding the cause of a stock price movement; it does not mean that there was no decline or that the decline was necessarily caused by factors other than the corrective disclosure.") (internal quotations and citations omitted); *id.* at 394 ("An event study tests whether one can reject a null hypothesis. For price impact purposes, the null hypothesis under examination is that the stock price of the subject company was not impacted by the alleged misrepresentations. It is axiomatic that 'failure to rebut the null hypothesis does not necessarily mean that a misrepresentation had no price impact.'" (quoting Jill E. Fisch et al., *The Logic and Limits of Event Studies in Securities Fraud Litigation*, 96 Tex. L. Rev. 553, 611 (2018)); *see, e.g., Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D.

12

Tex. 2019) ("A statistically significant price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price. The converse, however, is not true—the absence of a statistically significant price adjustment does not show the stock price was unaffected by the misrepresentation."); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019) ("The lack of statistically significant proof that a statement affected the stock price is not statistically significant proof of the opposite, i.e., that it did not actually affect the stock price."). Accordingly, the Court finds that Defendants have failed to prove a lack of price impact as to the *Aurelius Value* report published on October 11, 2018.

        *iii.*     *The November 2018 Corrective Disclosure – the Seeking Alpha article*

On November 16, 2018, at 8:57 a.m., *Seeking Alpha* published an article about operations in Acadia's U.S. facilities, which revealed that Acadia's rapid growth, as well as its revenue and margin increases, were attributed to cost-cutting and "reducing the quality of care." (Doc. No. 39 ¶¶ 11, 190). On the same day, Acadia's stock price declined by 26%. (*Id.* ¶¶ 11, 192).

Defendants do not dispute that Acadia's stock price declined on November 16. Instead, they argue the decline in Acadia's stock price on November 16 was caused by a CNBC report about negative news unrelated to the alleged fraud. (*See* Doc. No. 120 at 23-24 (citing Allen Report, Doc. No. 121-1 ¶¶ 35-39)). Defendants argue that four pieces of other evidence also demonstrate that the CNBC report caused Acadia's stock price movement on November 16. (*See id.* at 24-25 (citing Allen Report, Doc. No. 121-1 ¶¶ 43, 41, 40)). The other evidence Defendants rely on are: (1) an article by the same author as the *Seeking Alpha* article attributing Acadia's stock price decline on November 16 to the CNBC report and not his article, (*id.* at 24; Doc. No. 121-1 ¶ 43); (2) an investment advisor's email attributing Acadia's stock price decline on November 16 to "a press report saying PE buyout talks ha[s] stalled" without mention of the *Seeking Alpha* article,

13

(Doc. No. 120 at 25; Doc. No. 121-1 ¶ 41); (3) four analyst reports attributing Acadia's stock price decline on November 16 to negative news about buyout without mention of the *Seeking Alpha* article, (Doc. No. 120 at 25; Doc. No. 121-1 ¶ 40); and (4) the "generic nature of the challenged statements" revealed through the *Seeking Alpha* article, (Doc. No. 120 at 25).[1]

Defendants' foregoing arguments that a CNBC report was the cause of Acadia's stock price decline on November 16 are arguments about loss causation. "In addressing both the prima facie *Basic* presumption and its rebuttal, the Court may not consider *arguments* about loss causation." *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 469 (E.D. Pa. 2021) (citing *Halliburton II*, 573 U.S. at 265, 282) (emphasis added). This is because "[l]oss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." *Halliburton I*, 563 U.S. at 812. Loss causation is a showing that the price impact was caused by "the correction to a prior misleading statement" and "that the subsequent loss could not otherwise be explained by some additional factors revealed then to the market." *Id*. "The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory." *Id*. at 813. Thus, at the class certification stage, the Court is required to consider Defendants' *evidence* related to loss causation, but only to the extent such evidence is relevant to the consideration of whether the alleged misrepresentations affected the market price in the first place, *i.e.,* price impact. *See id*. at 814; *Halliburton II* 573 U.S. at 279-280.

---

[1]      Defendants' contention as to the generic nature of the alleged misstatements is not evidence showing a lack of price impact as it is unsupported by any pertinent analysis of the *Seeking Alpha* corrective disclosure. *See Goldman*, 141 S. Ct. at 1961 (generic nature of alleged misrepresentation can be evidence of a lack of price impact "when there is a mismatch between the contents of the misrepresentation and the corrective disclosure").

Defendants' evidence related to loss causation that is relevant to the consideration of price impact is Allen's analysis of Acadia's intraday stock price during the first hour of trading on November 16, 2018, reflected in the chart below:



(Allen Report, Doc. No. 121-1 ¶ 39). Allen opines that her analysis of changes in Acadia's stock price during the first 13 minutes of trading on November 16 shows that Acadia's stock price did not react to the *Seeking Alpha* article. (*Id.* ¶ 37). Allen's opinion is premised on the same research previously addressed about the speed at which a market reacts to news. (*See* Allen Rebuttal Report, Doc. No. 140-2 ¶¶ 19-21). The Court is not persuaded that the market's reaction to the news in the *Seeking Alpha* article would be reflected within the first 13 minutes of trading on November 16. But even if it were so persuaded, Allen's analysis shows that Acadia's stock price declined by 1.16% during that time. (Doc. No. 121 ¶ 37). Thus, Allen's analysis does not show that the *Seeking*

15

*Alpha* article had *no* impact on the price of Acadia's stock. *See Di Donato*, 333 F.R.D. at 444 ("The lack of statistically significant proof that a statement affected the stock price is not statistically significant proof … that it did not actually affect the stock price."). Accordingly, the Court finds that Defendants have failed to prove a lack of price impact as to the *Seeking Alpha* article published on November 16, 2018.

2.    The *Affiliated Ute* Presumption

In *Affiliated Ute Citizens of Utah v. United States*, 92 S. Ct. 1456 (1972), the Supreme Court held that in securities actions involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. *Id*. at 1473 ("All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."). More recently, the Supreme Court stated that if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. *Stoneridge*, 128 S. Ct. at 769.

Plaintiffs contend they are entitled to *Affiliated Ute*'s presumption of reliance because their claims are based, in part, on Defendants' alleged material omissions and on Defendants' alleged scheme to artificially inflate the value of Acadia securities and defraud investors by, *inter alia*, the understaffing and widespread adverse patient issues at Acadia facilities. (*See* Doc. No. 113 at 24-25; Doc. No. 133 at 23-24). Defendants do not dispute the foregoing; rather, they argue the *Affiliated Ute* presumption does not apply because Plaintiffs *also* challenge affirmative misrepresentations. (*See* Doc. No. 120 at 28). Courts have acknowledged the applicability of the *Affiliated Ute* presumption where, as here, plaintiffs' claims are based on a combination of omissions and misstatements. *See, e.g., Burges v. Bancorpsouth, Inc.*, No. 3:14-CV-1564, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) (citing *Dodona I, LLC v. Goldman, Sachs &*

16

*Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014)); *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005) ("[T]he theory behind the *Affiliated Ute* presumption ... is not undermined simply because a defendant makes misstatements at the same time it omits material information."). Further, Plaintiffs allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false. The Court finds that, for purposes of class certification, Plaintiffs are entitled to the *Affiliated Ute* presumption as to their claims failure to disclose claims, including their scheme claims. *See Burges*, 2017 WL 2772122, at *10.

Thus, in summary, under the *Basic* and *Affiliated Ute* presumptions, for purposes of class certification, reliance will be presumed as to Plaintiffs' claims, including the scheme claims.[2] With that, Plaintiffs have carried their burden in establishing that their proposed class should be certified under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

Defendants' request to shorten the class period is denied. *See Strougo*, 2022 WL 2037966, at *9 ("To the extent [Defendants] believe[] [they are] entitled to shorten and limit the class period without showing a complete lack of price impact, the Court disagrees."); *see also Pelletier*, 338 F.R.D. at 477 ("During class certification, however, a class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market.") (cleaned up).

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2]    Accordingly, the Court does not reach Defendants' separate arguments against certification of the scheme claims, including their challenge to Dalrymple's damages model under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). (*See* Doc. No. 120 at III, 31-36). The Court also notes that, to the extent Defendants challenge the sufficiency of the scheme liability allegations (*see id*. at 30-35), such arguments are not properly before the Court.

17

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ST. CLAIR COUNTY EMPLOYEES'** | ) | |
| **RETIREMENT SYSTEM, Individually** | ) | |
| **and on Behalf of All Others Similar,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 3:18-cv-00988** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE NEWBERN** |
| **ACADIA HEALTHCARE COMPANY,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Pending before the Court is Lead Plaintiffs' Motion for Class Certification (Doc. No. 112), which is fully briefed and ripe for the Court's consideration. (*See* Doc. Nos. 120, 133, 140-1, 147-1, 148). For the reasons set forth in the accompanying Memorandum, the Motion is **GRANTED**, and the Court certifies the following Class:

> All persons who purchased or otherwise acquired the common stock of Acadia Healthcare Company, Inc. ("Acadia" or the "Company") between April 30, 2014 and November 15, 2018, inclusive (the "Class Period"). Excluded from the Class are Acadia, Joey A. Jacobs, Brent Turner, David Duckworth (collectively "Defendants") and members of their immediate families, any entity of which a Defendant has a controlling interest, and the legal representatives, heirs, predecessors, successors or assigns of any such excluded party.

The Court hereby appoints Lead Plaintiffs as Class Representatives and the law firm of Robbins Geller Rudman & Dowd LLP as Class Counsel.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE