# Exhibit I

# Seek a Rule 502(d) Order to Protect Privileged Data from Inadvertent Disclosure

**ABA** americanbar.org/groups/litigation/committees/mass-torts/articles/2023/spring2023-seek-a-rule-502d-order-to-protect-privileged-data-from-inadvertent-disclosure



January 17, 2023 **Articles**

## Once the order is entered, the parties have a veritable "get out of jail free card" for mistaken review and disclosure of privileged materials.

By George W. Swoyer III

Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." The benefits of securing a Rule 502(d) order have been featured prominently in electronic discovery forums in recent years, including in the oft-cited *Sedona Conference Journal*'s "The Sedona Conference Commentary on Protection of Privileged ESI," 17 *Sedona Conf. J.* 95 (2016). Retired Magistrate Judge Andrew Peck, formerly of the U.S. District Court for the Southern District of New York and one of the country's foremost thought leaders on discovery, has espoused securing a 502(d) order, even declaring that "it is malpractice to not seek a 502(d) order from the court before you seek documents." Monica Bay, "On Stage," *Law Tech. News*, Apr. 1, 2013. But those late to the 502(d) party may still have questions about when and why to seek these orders and what other alternatives might exist.

## The Practical Benefits and Risks in Securing and Relying on a 502(d) Order

No litigator wants to have to inform a client of having inadvertently produced that client's privileged material. And yet, mistakes inevitably happen, especially in a large document review. Federal Rule 502(d) orders, and their state analogues, can provide anxious lawyers significant relief, giving them peace of mind that a mistaken disclosure will not result in a privilege waiver.

502(d) orders are typically uncontroversial as both plaintiffs and defendants share in the benefits the order provides. Once the order is entered, the parties have a veritable "get out of jail free card" for mistaken review and disclosure of privileged materials. Accordingly, some parties may choose an expected and less costly production process (e.g., deploying technology-assisted review, document sampling, or targeted searching to avoid a complete manual review of data for privilege). While a quick production time may lend itself to lower costs, there are associated risks of releasing privileged items. Will Rogers once famously said that letting the cat out of the bag is a whole lot easier than putting it back in, and that sentiment applies to litigation with or without a 502(d) order in place. After the opposing party has reviewed the disclosed information, counsel cannot "unlearn" the information, regardless of how promptly they may return and destroy the disclosed information.

Good lawyering requires balancing the benefits of 502(d), with its associated cost and time savings, against the incontrovertible negative effect of releasing privileged information to an opposing party. Because an expedited review effort is more likely to result in producing protected material, attorneys are well advised to receive a client's informed consent before embarking on a review strategy in which counsel will not review all produced documents. Indeed, Rule 1.6 of the American Bar Association's Model Rules of Professional Conduct effectively requires it, imposing an ethical duty to "not reveal information relating to the representation of a client unless the client gives an informed consent." Model Rules of Prof'l Conduct R. 1.6 (Am. Bar Ass'n 2019).

## The Uncertainty Inherent in the Default Rule 502(b)

In the absence of a Rule 502(d) order, the default rule governing privileged disclosures is Rule 502(b) itself, which provides that an inadvertent disclosure does not operate as a waiver in a federal or state proceeding if:

1. the disclosure is inadvertent;
2. the holder of the privilege or protection took reasonable steps to prevent disclosure; and
3. the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). *See Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2-11-cv-02082, 2013 WL 5332410, at *14 (D. Nev. Sept. 23, 2013) (Rule 502(b) "applies as a default in the event there is no agreement otherwise.").

While similarities exist between 502(b) and 502(d), there are stark differences. When Rule 502(b) is applied to disclosed information, a threshold test, set out in sections (1)–(3) above, is required to avoid privilege waiver. 502(d), on the other hand, provides litigants with protection regardless of the disclosure's circumstances.

Asserting and meeting the threshold test is the responsibility of the responding party and can require substantial effort and documentation. Moreover, given the multiple factors and the discretion of the court in applying the test, both waiver and its scope remain uncertain. "The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production," 19 *Sedona Conf. J.* 1 (2018), at 150.

Proving all three prongs of the test and avoiding waiver is a subjective analysis placing a heavy and potentially costly burden on the disclosing party. When an inadvertent disclosure has occurred, Federal Rule of Civil Procedure 26(b)(5)(B) requires that notice of the disclosure be provided. Once notification occurs, the party that received the privileged material must act "promptly" to rectify the error (e.g., return, sequester, or destroy the data). The term "promptly" is vague, and reasonable parties' definitions of how quickly an action must occur could vary significantly. A court will consider the reasonableness of precautions in place, the length of time involved in correcting the error, the scope of the inadvertent disclosure, and the overarching issue of fairness. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985).

Courts may also consider other factors they believe relevant. For example, in the matter of *Williams v. District of Columbia*, the court considered "how many documents [a party] reviewed relative to its overall production, the complexity of the review required, and the time it had to gather, review, and produce responsive documents." 806 F. Supp. 2d 44, 50 (D.D.C. 2011). Further, the use of "advanced analytical software applications and linguistic tools in screening for privilege and work product" tends to support the assertion that the party has taken "reasonable steps" to prevent the occurrence of an inadvertent disclosure. Fed. R. Evid. 502 explanatory note.

While courts generally discourage "discovery on discovery," it will be used to determine if a waiver of privileged materials occurred. *Gross v. Chapman*, No. 19-cv-2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020). A court will often consider how a party managed the collection, review, and production process while determining if a waiver occurred. It may also consider a litigant's process for removing privileged materials, the size of the potentially privileged review population, and the scope of overall document production. Given the highly subjective nature of applying the test factors, rulings are inconsistent among courts, leading to a lack of uniformity and general uncertainty.

In addition, a minority of courts have recognized the overall difficulty in applying the 502(b) test and have refused to apply the test factors at all, instead simply considering whether the "production was a mistake." *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2011 WL 3489828, at *5 (N.D. Ill. Aug. 9, 2011).

## Contrasting 502(b) with 502(d), Where No Inadvertence Is Required

Contrast the difficult-to-prove requirements of 502(b) with 502(d), which does not require that the disclosure be inadvertent or reasonable to be protected. For example, in _Rajala v. McGuire Woods, LLP_, No. 08-cv-2638, 2013 WL 50200 (D. Kan. Jan. 3, 2013), the defendants unsuccessfully sought to have privilege waived due to the plaintiff's failure to implement reasonable steps during review. The defendants claimed the plaintiff engaged in a "document dump" with "no preproduction review" during the production process. _Rajala_, slip op. at 3. U.S. Magistrate Judge David J. Waxse held there is no requirement of reasonable steps when a 502(d) order is in place and the production did not result in the occurrence of a waiver of privilege "pursuant to the plain language of the Protective Order." _Id._ at 9.

Courts and legal scholars have repeatedly and regularly encouraged the use of 502(d) orders. In _Ranger Construction Industries, Inc. v. Allied World National Assurance Co._, U.S. Magistrate Judge William Matthewman noted he was "frankly surprised that the sophisticated attorneys in this case did not enter a written 502 claw-back agreement early on in this litigation, either separately or as part of an ESI Protocol Agreement." No. 17-cv-81226, 2019, slip op. at 4 n.2 (S.D. Fla. Feb. 4, 2019). Judge Matthewman further noted that the "Court encourages counsel in all cases involving eDiscovery to consider the benefits of jointly entering into a 502(d) claw-back agreement and/or an ESI Protocol Agreement early on in the case." _Id._ at 4.

## Review of Recent 502(d) Case Decisions

Typically, the challenge in "clawing back" documents pursuant to a 502(d) order is whether the documents in question are privileged. It does not generally matter what reasons led to the production of privileged information when a 502(d) order is in effect. For instance, in _Brookfield Asset Management, Inc. v. AIG Financial Products Corp._, U.S. District Magistrate Judge Ronnie Abrams held that because a Rule 502(d) order had been entered, the defendant in the matter "has the right to claw back privileged meeting minutes, no matter what the circumstances giving rise to their production were." No. 1:09-cv08285, 2013 WL 142503, at *1 (S.D.N.Y. 2013).

While agreeing to seek a 502(d) order is not typically controversial, a court may enter a 502(d) order over a party's objection. In _In re Google RTB Consumer Privacy Litigation_, No. 21-cv-02155-YGR (VKD) (N.D. Cal. Aug. 10, 2022), for example, a 502(d) order was entered over the plaintiffs' objection. Northern District of California Magistrate Judge Virginia K. DeMarchi noted that Rule 502(d) was designed to enable a court to enter an order, whether on motion of one or more parties or on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery.

_Id._ at 2.

Similarly in *City of East St. Louis v. Monsanto Corp.*, No. 3:21-cv-00232-DWD(S.D. Ill. Aug. 17, 2022), the plaintiffs argued that the proposed 502(d) order contained boilerplate language relating to "good cause" and "best interests" but the defendants had not explained the necessity of such an order. *Id.* at 1. The plaintiffs further argued both parties are "automatically protected" from inadvertent disclosure of privileged information under Federal Rule of Evidence 502(b) and further protections are afforded under Federal Rule of Civil Procedure 26(b)(5)(B). *Id.* U.S. District Judge David W. Dugan agreed with the defendants, finding that good cause for entering a 502(d) order had been demonstrated and noting that when a party demonstrates good cause, "the Court may issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including an order specifying the terms for disclosures in discovery." *Id.* at 2.

## What Elements to Include in a 502(d) Order

A 502(d) order does not need to be complicated. All such orders should contain the following at minimum:

1. An affirmation that the production of documents or communications protected by attorney-client privilege or the work-product doctrine, inadvertently or otherwise, does not constitute a waiver.
2. An affirmation that the order applies to both hard-copy documents and electronically stored information.
3. A declaration that the order applies to both the case at issue and to any future federal or state proceedings.
4. An agreement that the order will not limit a party's right to perform a relevance and responsiveness review culling documents or communications protected by attorney-client privilege or the work-product doctrine prior to the production of responsive documents.
5. A clear disclaimer that Rule 502(b) is inapplicable. This is recommended because a minority of courts have ruled such language is required.

The order may also include rules governing the timing for applying the order, rather than risking the court applying 502(b) standards of reasonableness and promptness. In addition, an order need not be limited only to inadvertent disclosures. In fact, limiting to inadvertent disclosures is not recommended because doing so could lead a court to apply the default 502(b) test for intentional disclosures.

Parties sometimes debate whether to limit the total number of documents subject to claw back in a 502(d) order. Including an upper boundary could affect a client's future privilege waiver analysis if the party surpasses the set number of inadvertently privileged items permitted. However, placing a volume limit in an order may discourage unwanted "data dumps" of material unreviewed for privilege.

Courts have also considered whether a 502(d) order protects both "disclosed" material (e.g., document productions) and "used" material (e.g., introduced by counsel at a deposition). Because 502(b) and (d) specifically use the word "disclosure," some courts have refused to extend 502(d) to documents introduced during a deposition. *See, e.g.*, <u>*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*</u>, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (stating that a party's "subsequent failure to timely and specifically object to the use of that information—during a deposition for example—can waive any applicable privilege")

## Conclusion

What lawyer would refuse a "get out of jail free card" for a client? A 502(d) order provides that haven, and counsel should consider it when possible. Securing a 502(d) order will help both counsel and clients sleep easier knowing there exists a certain and objective standard governing disclosure of privileged information. The orders minimize the risks of waiver, reduce discovery costs, prevent drawn-out discovery disputes, avoid dreaded discovery on discovery, and speed the overall path to case resolution. In short, Judge Peck's advice to always seek a 502(d) order remains sound and should be followed without reservation.

<u>*George W. Swoyer III*</u> *is an attorney and litigation consultant with International Litigation Services (ILS) in New York, New York.*

<u>here.</u>

The material in all ABA publications is copyrighted and may be reprinted by permission only. Request reprint permission

Copyright © 2023, American Bar Association. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association. The views expressed in this article are those of the author(s) and do not necessarily reflect the positions or policies of the American Bar Association, the Litigation Section, this committee, or the employer(s) of the author(s).