INDIANA PUBLIC RETIREMENT SYSTEM,)     Civil Action No. 3:19-cv-00407
Individually and on Behalf of All Others )
Similarly Situated,                         )     <u>CLASS ACTION</u>
                                   )
                  Plaintiff, )     Judge Eli J. Richardson
                                   )     Magistrate Judge Alistair E. Newbern
    vs.                          )
                                   )
MICHAEL T. CARTWRIGHT, KIRK R. )
MANZ and ANDREW W. McWILLIAMS, )
                                   )
                Defendants. )
                                   )
_____ )

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE UNDER SEAL

Pursuant to Local Rule 5.03, Defendants Michael T. Cartwright, Kirk R. Manz, and

Andrew McWilliams (collectively, "Defendants") submit this response to Plaintiff's motion for

leave to file under seal Plaintiff's Response in Opposition to Defendants and Non-Party AAC

Holdings, Inc.'s Motion for Privilege Determination ("Response"), along with the twenty exhibits

attached thereto (the "Exhibits"). Dkts. 143-145.

As set forth below, the Response and Exhibits contain confidential and competitively

sensitive information concerning AAC's business practices, sensitive details about former

employees of the Company, and non-public information regarding an SEC investigation. This

information is substantially identical to that submitted with Defendants' and AAC's Motion for

Privilege Determination, which the Court already found to warrant filing under seal. *See* Dkt. 136.[1]

---

[1] Despite "taking no position" on Defendants and AAC's earlier motion to seal, Dkt. 131, Plaintiff
has now filed a frivolous motion for reconsideration of the Court's order granting that motion. But
Plaintiff presents no justification for the Court to revisit that appropriate ruling permitting sealing.

1

For the same reasons, and because of the harm that would result from unnecessary public disclosure, Defendants request that the Response and Exhibits 3-8, 13-16, and 20 remain under seal. To limit the scope of this sealing request, Defendants are also submitting proposed redacted versions of Exhibits 9-11 that could be filed publicly in the event the motion to seal is granted.[2] The remaining Exhibits, in Defendants' view, may be filed publicly.

## BACKGROUND

For the second time in this case, Plaintiff asks for the unfettered disclosure of sensitive information that was produced as confidential in accordance with the governing Stipulated Protective Order in this action. Plaintiff does so, not because it is actually concerned with the public's general right to access court filings, but because it hopes that the public disclosure of documents that were never meant to be made public will bother (or even embarrass) Defendants, AAC, or the Company's former employees.

At class certification, Plaintiff asked the Court to unseal "Exhibit C" to its reply brief, which included several instant messages between former AAC employees. Defendants opposed the public disclosure of Exhibit C because the messages included "discussions about employee terminations, salaries, unsatisfactory job performances, personal hygiene habits, [or] other topics best described as office gossip" that, if disclosed, "could be highly embarrassing to several innocent non-parties." Dkt. 104 at 4. Defendants further argued that the messages contained commercially sensitive information concerning AAC's business, accounting, and financial reporting practices. *Id.* The Court agreed that the chats contained "embarrassing disclosures of gratuitous (and at times unkind) co-worker banter" and ordered Plaintiff to apply redactions to

---

[2] Defendants' proposed redactions are highlighted in yellow in Exhibits 1-3 to this Response, which Defendants are filing under seal.

2

certain exchanges and all references to former AAC employees. Dkt. 128 at 4. And while the Court rejected Defendants' argument that the messages contained business secrets, it did so on the specific grounds that the "tidbits exchanged by the conversationalists in the Exhibit are too fragmented to give competitors much insight." *Id.* at 5.

Returning to this tactic, Plaintiff now asks the Court to unseal another brief, along with not one, but twenty of its supporting exhibits. Dkt. 143. After a series of failed meet and confers, Defendants filed a motion for privilege determination on February 16, 2023. Dkt. 130. Defendants' motion argues that two clawed-back documents concerning King & Spalding's defense of AAC in connection with the 2018 SEC investigation into short-pays should remain privileged. *Id.* The motion also addresses Plaintiff's stated position that because AAC produced documents and made presentations to the SEC in 2018, and because certain of those materials have been produced to Plaintiff in this litigation, AAC and Defendants have somehow waived all privilege and work product protection concerning the subject matter of short-pays or the SEC's investigation into the same. *Id.* Defendants asked the Court to seal the brief in support of their motion, along with the following supporting exhibits:

- Ex. B (King & Spalding's June 18, 2018 presentation to the SEC);

- Ex. C (King & Spalding's September 18, 2018 presentation to the SEC);

- Ex. D (December 31, 2020 SEC Declination Letter);

- Es. F (January 4, 2022 email from L. Bugni to Plaintiff's counsel concerning privilege dispute in this matter);

- Ex. G (March 2022 email thread between L. Bugni and Plaintiff's counsel concerning same); and

- Ex. H (May 2022 email thread between L. Bugni and Plaintiff's counsel concerning same).

3

Dkt. 131. The Court granted Defendants' sealing request on February 21, 2023. Dkt. 136.

Plaintiff filed its Response and Exhibits under seal pursuant to the Stipulated Protective Order, which requires parties to protect information designated as "Confidential." Exhibits 1 and 2 reflect confidentiality agreements between the SEC and AAC related to the agency's 2018 investigation. Exhibits 3 and 4 contain non-privileged communications between AAC and its outside counsel—Bass Berry Sims—related to the Company's treatment of short-pays. Exhibit 5 is the purported "whistleblower" complaint that prompted the SEC's 2018 investigation into AAC's accounting for short-pays. Exhibits 6-11 contain communications between former AAC employees regarding a variety of matters, including AAC's short-pay accounting. Notably, Exhibits 6-8 are near identical versions of the instant messages featured in "Exhibit C" to Plaintiff's class certification reply brief, which, as mentioned above, formed the basis of the parties' first sealing dispute—where the Court granted sealing over Plaintiff's objection (yet, Plaintiff apparently seeks to revisit that ruling again here, consistent with its practice in this case to date). Exhibit 12 is an explanatory note from the SEC concerning subpoenas. Exhibits 13 and 14 reflect AAC's presentations to the SEC on June 18, 2018 and September 18, 2018, respectively, which have already been filed under seal per Court order with Defendants' motion (and thus did not need to be filed again). Exhibits 15-20 reflect documents and communications regarding the parties ongoing dispute over the issue of the purported subject-matter waiver.

## ARGUMENT

The Court has ample discretion to place documents containing private or sensitive information under seal. Fed. R. Civ. P. 26(c); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978) ("[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files

4

might have become a vehicle for improper purposes."). To show good cause for sealing, a party generally must demonstrate that (1) a compelling interest warrants sealing the records; (2) the interest in sealing outweighs the public's interest in accessing the records; and (3) the request is narrowly tailored. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016).

The Response and Exhibits contain information falling into three categories: (1) AAC's accounting treatment of short-pays ("Short-Pay Exhibits"),[3] (2) the SEC investigation into AAC's accounting for short-pays ("SEC Investigation Exhibits"),[4] and (3) the ongoing privilege dispute in this matter ("Privilege Dispute Exhibits").[5]

### A. Short-Pay Exhibits

The Short-Pay Exhibits implicate the privacy interests of innocent nonparties and contain competitively sensitive information concerning AAC's business practices. As noted above, Exhibits 6-8 are nearly identical to the messages contained in Exhibit C to Plaintiff's class certification reply, which the Court has already approved to be filed under seal (in its unredacted form). The sealed versions of Exhibits 6-8 contain some of the Court's required redactions, but not all of them. Notably, Exhibits 6-8 still contain numerous references to AAC's former employees, which is improper under the Court's prior ruling.

Exhibits 9-11 likewise contain communications between former AAC employees concerning AAC's treatment of short-pays. Unlike Exhibits 6-8, Exhibits 9-11 have not been the subject of a previous sealing dispute. They do, however, contain unflattering gossip and disparaging comments concerning former AAC employees that is irrelevant to this discovery

---

[3] Exs. 3, 4, 6-11.
[4] Exs. 1, 2, 5, 12-14
[5] Exs. 15-20.

dispute. Guided by the Court's previous sealing order, Dkt. 128, Defendants do not seek to keep Exhibits 9-11 completely under seal. Rather, Defendants ask that the names of the referenced AAC employees in Exhibits 9-11 be redacted before the documents are publicly filed. *Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-CV-4262, 2021 WL 4841064, at *2 (S.D. Ohio Oct. 18, 2021) (granting seal of "private information," including the names of innocent non-parties); *Abraham, Inc. v. United States*, 2:18-cv-1306, 2020 WL 3173036, at *1 (S.D. Ohio, June 15, 2020) (granting seal of personal identifying information).

Exhibits 3-4 reflect communications between AAC and its outside counsel—Bass Berry Sims—concerning AAC's treatment of short-pays. Exhibit 3 is a memorandum drafted by outside counsel explaining certain industry trends relating to short-pays and steps AAC could take to enhance its collection from out-of-network payors. Exhibit 4 features email communications summarizing discussions between AAC, Bass Berry Sims, and AAC's auditor about the memorandum and AAC's approach to short-pay accounts. These exhibits are not privileged, as they were shared with AAC's auditor when provided to AAC, but they do contain commercially sensitive business information that warrants sealing. The detailed strategies for pursuing insurance claims are not matters of common knowledge. Moreover, the disclosure of such information could provide a leg-up to AAC's competitors, to the harm of the Company (and possibly innocent third parties). The ability to collect money from out-of-network insurers directly impacts the profitability of healthcare enterprises. For these reasons, Defendants ask that Exhibits 3 and 4 remain under seal. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2017 WL 4168290, at *2 (S.D. Ohio Sept. 20, 2017) ("[P]rotecting confidential information that would otherwise allow competitors an inside look at a company's business strategies is a compelling reason to restrict public access to filings.").

In short, Defendants ask the Court to seal Exhibits 6-8 and 3-4 and to redact references to AAC employees in Exhibits 9-11 (as reflected in the highlighted proposed redactions in the exhibits attached hereto). The need to protect this information outweighs the presumptive need for public access, particularly considering the limited relevance such exhibits have to the pending discovery dispute. The disclosure of such information could cause harm to Defendants, AAC, and former employees of the Company. On the other side of the coin, there is no public interest in having access to every exhibit supporting a non-dispositive privilege dispute. The exhibits are not "necessary for the public to evaluate any judicial decision or to understand the result of th[e] litigation" or to "view the conduct which gave rise to th[e] dispute." *Proctor & Gamble Co.*, 2017 WL 3537195, at *3. Defendants have therefore satisfied the second prong of the sealing analysis.

Defendants' request is also narrowly tailored. The messages in Exhibits 6-8 already appear on the docket in redacted form and it would be unnecessary to repeat that process. For Exhibits 3-4, the sensitive information contained therein is so prevalent that the redactions would leave nothing of substance for the public view. *See Price v. Hartford Life & Accident Ins. Co.*, No. 1:21-CV-656, 2022 WL 656613, at *1 (S.D. Ohio Mar. 4, 2022) (noting that the sensitive material is "so intertwined and pervasive that selective redactions would leave little of value to the public's interest"). Lastly, for Exhibits 9-11, Defendants are merely asking for redactions to the names of AAC employees in accordance with this Court's previous sealing order.

**B. SEC Investigation Exhibits**

There are compelling reasons for protecting information related to the SEC's 2018 investigation into AAC's treatment of short-pay accounts. Indeed, the details of government investigations are not typically disclosed to the public. And there is no reason to allow the public disclosure of those materials here.

7

The post-hoc disclosure of certain details about the investigation could cause significant harm. For one, it could expose AAC and individual employees to out-of-context and unnecessary criticisms. Take Exhibit 5 for example. That document is the purported "whistleblower" complaint filed by a former AAC employee which apparently prompted the SEC's investigation into AAC. The complaint levies several unfounded allegations against current and former employees of AAC and falsely accuses them of a conspiracy to commit fraud. In addition to being inflammatory, the allegations in the complaint have been squarely disproven, including by discovery in this case. Without the proper context, the release of Exhibit 5 could negatively impact AAC and the employees specifically referenced in the document. Further, Exhibit 5 was produced and designated confidential by the purported "whistleblower" himself, who would seemingly prefer to keep such matters out of the public eye. It should remain sealed.

Exhibits 13 and 14 are King & Spalding's presentations to the SEC on AAC's behalf. In addition to Defendants' concerns about releasing information about a non-public SEC investigation, these documents also contain a significant amount of competitive business information. The presentations provide factual details about AAC's methods and strategies for collecting payments from private insurers. If made publicly available, AAC's competitors could use this information to their own benefit. *See London Computer Sys., Inc. v. Zillow, Inc.*, No. 1:18-CV-696, 2019 WL 4110516, at *4 (S.D. Ohio Aug. 29, 2019) (finding compelling reason for non-disclosure where documents at issue contained "highly confidential business information, such as marketing strategies, revenue/sales data, and financial calculations"). Moreover, the Court recently granted Defendants' motion to seal the same two SEC presentations. Dkt. 136. The Court should do the same for Exhibits 13 and 14.

The need to seal Exhibits 5, 13, and 14 outweigh any public interest in viewing them. There

will be no harm if details about the SEC's 2018 investigation into AAC's short-pays remain protected. After conducting its investigation, the SEC issued a declination letter to AAC, stating that it was not going to pursue any charges and, in any event, there is no connection whatsoever between Plaintiff's claims and AAC's treatment of short-pays. As Defendants have explained in their pending motion, short-pays are entirely unrelated to the Company's restatement and thus have nothing to do with Plaintiff's claims.

Defendants' sealing request for the SEC Investigation Exhibits is also narrowly tailored. The confidential information in Exhibits 5, 13, and 14 is "is too pervasive to permit the use of other, narrower, means of protecting sensitive information (e.g., partial redaction)." *London Computer Sys.*, 2020 WL 4431478, at \*3. Moreover, Defendants do not oppose the public filing of unredacted versions of the remaining SEC Investigation Exhibits—Exhibits 1, 2, and 12, While such exhibits generally reveal the fact of the SEC investigation, they do not implicate the same heightened concerns as Exhibits 5, 13, and 14. Defendants are taking a careful approach. *See Marathon Petroleum Co.*, 2018 WL 3130945, at \*6 (finding "the scope of the seal [to be] appropriately narrow" where "[r]ather than requesting that their entire briefs and all exhibits be sealed, the parties have limited the scope of the seal to only the exhibits in question and the portion of their briefs that discuss them").

### C. Privilege Dispute Exhibits

There are compelling reasons for protecting communications between opposing counsel regarding the subject-matter waiver dispute, including to the extent such communications reveal information about the underlying 2018 SEC investigation. For the same reasons listed above in Section B, the disclosure of such information could subject AAC, Defendants, and/or former employees of the Company to reputational and competitive harm. It is also worth noting that the

9

Court has allowed, at Defendants' request, for similar communications to remain under seal. And the documents are relevant only to a pending non-dispositive discovery dispute over a privilege issue. As such, Defendants request that Exhibits 15, 16, and 20 remain under seal. However, for Exhibits 17-19, Defendants do not oppose such documents being filed publicly in unredacted form on the docket. Defendants' selective approach for the Privilege Dispute Exhibits is consistent with Sixth Circuit authority. *See Hardesty v. Kroger*, 2020 WL 3545676, at *2

### D. Response Brief

For the same reasons discussed above, Defendants request that Plaintiff's Response brief, which discusses and quotes extensively from the confidential exhibits, remain under seal. Redacting Plaintiff's Response in accordance with the analysis above would not be feasible or a more reasonable means of protecting this confidential information given the extent of the confidential information discussed therein—the redaction of which would leave nothing meaningful for public consumption. As such, Defendants ask the Court to keep the entire pleading under seal. *See* Price, 2022 WL 656613, at *1.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court maintain under seal Plaintiff's Response and Exhibits 3-8, 13-16, and 20, as well as permit redactions to Exhibits 9-11.

DATED:  March 16, 2023                    **HOLLAND & KNIGHT LLP**

s/ *W. Travis Parham*
W. TRAVIS PARHAM

511 Union Street, Suite 2700
Nashville, TN  37219
Telephone:  615/244-6380
615/244-6804 (fax)
travis.parham@hklaw.com

KING & SPALDING LLP
JESSICA P. CORLEY (admitted *pro hac vice*)
RONNI D. SOLOMON (admitted pro hac vice)
BRANDON R. KEEL (admitted pro hac vice)
LOHR A. BECK (admitted *pro hac vice*)
LOGAN R. HOBSON (admitted *pro hac vice*)
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone:  404/572-4717
404/572-5100 (fax)
jpcorley@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lohr.beck@kslaw.com
lhobson@kslaw.com

KING & SPALDING LLP
LISA BUGNI (admitted *pro hac vice)*
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone:  415/318-1234
415/318-1300 (fax)
lbugni@kslaw.com

*Attorneys for Defendants*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 16, 2023 a copy of the foregoing was filed electronically via the Court's Electronic Case Filing (ECF) system, which will serve notice of such filing on the following counsel of record:

Christopher M. Wood
Christopher H. Lyons
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2203
cwood@rgrdlaw.com
lyons@rgrdlaw.com

Christopher Stewart
Francisco J. Mejia
Jack Gephart
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
cstewart@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

Jerry E. Martin
Bank of America Plaza
BARRETT JOHNSTON MARTIN
& GARRISON, LLC
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2202
jmartin@barrettjohnston.com

J. Alexander Hood, II
Jeremy A. Lieberman
Jonathan Lindenfeld
Pomerantz LLP
600 Third Avenue
20th Floor
New York, NY 10016
Tel: (212) 661-1100
ahood@pomlaw.com
jalieberman@pomlaw.com
jlindenfeld@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
pdahlstrom@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
Nashville, TN 37215
Tel: (615) 248-2828
pknashlaw@aol.com
robert@bramlettlawoffices.com

*s/ W. Travis Parham*