UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM,) Individually and on Behalf of All Others Similarly Situated, ) ) ) <br><br> Plaintiff, ) ) <br> vs. ) ) <br> MICHAEL T. CARTWRIGHT, KIRK R. ) MANZ and ANDREW W. McWILLIAMS, ) ) <br><br> Defendants. ) ) ) ) | Civil Action No. 3:19-cv-00407 <br><br> CLASS ACTION <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern <br><br> JOINT DISCOVERY DISPUTE STATEMENT |

Pursuant to §H of the Initial Case Management Order (ECF 74) and Local Rule 37.01(b), Class Representative Indiana Public Retirement System ("Plaintiff") and Defendants Michael Cartwright, Andrew McWilliams, and Kirk Manz (collectively, "Defendants") submit this Joint Discovery Dispute Statement regarding their disagreement over certain discovery matters. As further discussed below, the parties have been unable to resolve this disagreement and seek the Court's assistance in resolving their dispute.

## I.    DISPUTE NO. 1

### A.    Plaintiff's Position

Plaintiff seeks an order compelling Defendants and AAC to produce all documents that fall within the scope of AAC's waiver of attorney-client privilege and work product privilege over documents regarding "short-pays" and the Securities and Exchange Commission's ("SEC") 2018 investigation of ACC. Much of the relevant facts pertaining to Defendants' and AAC's waiver are

- 1 -

set forth in Plaintiff's Opposition to Defendants' and Non-Party AAC Holdings, Inc.'s Motion for Privilege Determination, filed on March 2, 2023 (ECF 144) (the "Opposition").[1]  Plaintiff alleges, and has amassed overwhelming evidence demonstrating that, Defendants improperly booked revenue associated with services for which "'AAC had received partial payment from an insurance company but continued to pursue collections for remaining amounts AAC claimed it was owed,' so-called 'short-pays.'" ECF 144 at 2 (quoting ¶58)[2]; *id.* at 3-4.  The SEC began investigating AAC in 2018, and to avoid prosecution, AAC made several disclosures of privileged and work product information to the SEC regarding AAC's accounting.  AAC's disclosures to the SEC included two Power Point presentations regarding AAC's accounting practices, AAC's "interview memoranda and investigative working papers" from ACC's internal investigation of its accounting practices, and privileged communications regarding AAC's attempts to collect cash from commercial payors.  *Id.* at 5.  At the time of these disclosures to the SEC, AAC acknowledged the materials were protected by the attorney-client privilege, the attorney work product doctrine, or both.[3]

---

[1]  The Opposition was filed in response to Defendants' and AAC's motion seeking a privilege determination for two documents (ECF 130 at 1), and Plaintiff believes it is appropriate to address the broader scope of waiver dispute in accordance with Local Rule 37.01(b), §H of the Initial Case Management Order (ECF 74), and J. Newbern Practice and Procedure Manual III(D)(4).  Section 14 of the Protective Order addresses clawback motions filed by the "Producing Party" (not Plaintiff, the "Receiving Party"), while §§13 and 14 expressly permit parties to "intentionally waiv[e] any claims of privilege or protection," as well as to "argu[e] that a privilege or protection has been waived for reasons other than the production of a document or information subsequently clawed back in accordance with the" Protective Order.  ECF 82 at 14, 16.

[2]  All "¶_" and "¶¶_" references are to the Consolidated Complaint for Violations of the Securities Exchange Act of 1934 (ECF 45) ("Complaint"); "PEx. __" cites are to Plaintiff's exhibits attached hereto.  Citations are omitted and emphasis is added throughout unless otherwise noted.

[3]  *See* ECF 144 at 5, 8-15; ECF 145, Ex. 1 at -203 ("The Audit Committee believes that the Confidential Materials are protected by, at a minimum, the attorney work product doctrine and the attorney-client privilege."); ECF 145, Ex. 2 at -201-02 ("the Confidential Presentation Materials may be protected by . . . the attorney work product doctrine and the attorney-client privilege").

- 2 -

As set forth in the Opposition, disclosure of otherwise privileged information to the SEC functions as a waiver of that privilege. ECF 144 at 15-16. By disclosing privileged or work product information to the SEC, AAC and Defendants waived any and all attorney client or work product protections as to all parties, including Plaintiff. *See id.* "The appropriate inquiry to determine the scope of the waiver is whether the client's disclosure involves the same subject matter as the information sought." *In re OM Sec. Litig.*, 226 F.R.D. 579, 592 (N.D. Ohio 2005) (citing *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)). "Ultimately, the scope of the waiver must be based upon the facts of each case; and the court must be guided by fairness concerns." *Yarberry v. Gregg Appliances Inc.*, 2013 WL 4476681, at *3 (S.D. Ohio Aug. 19, 2013); F.R.E. 502(a) (addressing waivers of privilege and work produce arising from "disclosure . . . to a federal agency").[4]

The scope of Defendants' privileged disclosures was vast, and included: (i) legal advice AAC solicited in an attempt to justify its fraudulent accounting; (ii) AAC's internal investigation regarding short-pays; and (iii) AAC's attempts to defend itself against the SEC's investigation. ECF 144 at 16-17. These voluntary and intentional disclosures to the SEC and to Plaintiff were made as a "tactical decision." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 304 (6th Cir. 2002). By selectively disclosing certain documents, while withholding others, Defendants are employing privilege as "'both a sword and shield.'" *OM*, 226 F.R.D. at 593. For example, on March 9, 2023, Cartwright (AAC's former Chief Executive Officer and Chairman of AAC's Board of Directors throughout the Class Period) testified the SEC "absolutely investigated the heck out of us . . . and . . . didn't find anything," that AAC was "vindicated," "the SEC would have absolutely been all over our butt if we did something wrong," and the SEC "said we did everything right."

---

[4]     F.R.E. 502(a) applies where, as here, a person voluntary discloses information to the SEC.

PEx. 1 at 204:11-15, 206:5-7. In order to allow Plaintiff to see the "whole picture," Defendants must produce all "underlying documents relating to, referred to, or relied upon" in creating the documents disclosed to the SEC. *OM*, 226 F.R.D at 590, 593.

Moreover, AAC's accounting for short-pays is a substantial issue in this litigation. Indeed, Defendants never so much as sought to dismiss Plaintiff's scheme claims (*see* ECF 138 at 33 n.22), which expressly included AAC's short-pay accounting (¶58), and the Court has found short-pays and the SEC subpoena related thereto (which Defendants concealed from investors), were indeed relevant to Plaintiff's claims.[5] Defendants must not be allowed to take advantage of the "upside" of disclosing hand-picked privileged information in its attempt to rid itself of the SEC investigation while avoiding the "downside" of that tactical decision. *Columbia/HCA*, 293 F.3d at 304 (waiver to a government agency during an investigation applies equally to subsequent private litigation).

Defendants and AAC should produce all documents falling within the scope of the waiver, including: (i) the documents provided to the SEC as part of its investigation, or created as a result of the SEC investigation[6]; and (ii) any other "underlying documents relating to, referred to, or relied upon" in creating the documents disclosed to the SEC (*OM*, 226 F.R.D at 590).

## B. Defendants' Position

It is unclear why Plaintiff is insisting on submitting a joint discovery dispute statement on an issue that is already fully briefed and pending before the Court. As Plaintiff acknowledges above, in response to Defendants' and AAC's pending motion for privilege determination (ECF 130), Plaintiff

---

[5] ECF 62 at 15-16 (rejecting Defendants' contentions that the SEC subpoena was irrelevant to scienter); ECF 138 at 7-8 (describing Plaintiff's partial payments allegations as part of the "Restatement Claim" certified for class treatment). *See also* ECF 144 at 17-18.

[6] Plaintiff has identified for Defendants at least 151 documents that, according to Defendants' privilege log, were either provided to the SEC or otherwise created as a result of the SEC investigation. PEx. 2.

- 4 -

previously raised this argument that AAC purportedly waived the attorney-client privilege and work product protection over all documents concerning the subject matter of the SEC's investigation into AAC's accounting for "short-pays" by disclosing certain information to the SEC in connection with that investigation. *See* ECF 144. In light of that, Defendants' counsel explained to Plaintiff's counsel during the meet-and-confer process that it seemed completely unnecessary—and a waste of the parties' and Court's resources—to submit the same issue again via this discovery dispute statement. It is also contrary to the procedure outlined in the Protective Order entered by the Court for addressing privilege disputes—a process Defendants followed in filing their pending motion. ECF 82 § 14. But Plaintiff's counsel was adamant on presenting this submission anyway, perhaps in an effort to (once again) improperly present additional briefing on a dispute without leave of Court, which Plaintiff has already been admonished for doing in this case. *See, e.g.*, ECF 138 at 1 n.1 (finding that Plaintiff's "Notice of Supplemental Authority" was an "unauthorized brief" and "caution[ing] [Plaintiff] to seek leave to file supplemental briefing in the future"). As evidence of that intent, Plaintiff has included above additional "evidence" (Mr. Cartwright's deposition testimony) in support of its purported waiver argument that was not presented in the prior briefing.

Notwithstanding Plaintiff's additional unnecessary submission, there continues to be no merit to Plaintiff's contention of a subject matter waiver. Throughout its Opposition brief, and again here, Plaintiff ignores the governing standard under Rule 502 of the Federal Rules of Evidence for determining when the extreme finding of a subject matter waiver is appropriate. Subject matter waiver "is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502(a), adv. cmt. note; *see also Freedman v. Weatherford Intern. Ltd.*, No. 12 Civ. 2121(LAK)(JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (recognizing that subject matter waiver is an extreme remedy "reserved for

the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation"). That is simply not the scenario presented here.

Neither Defendants, nor AAC, have injected privileged information concerning short-pays into this case, let alone done so in an unfair and misleading manner that could possibly justify a finding of subject matter waiver. To the contrary, Defendants have resisted discovery concerning short-pays throughout this case because it is irrelevant to this dispute. In fact, Defendants objected to Plaintiff's initial demand that Defendants produce all documents provided to the SEC as part of the short-pay investigation because AAC's short-pay accounting is "unrelated to the restatement at issue in the Amended Complaint." ECF 148-2 at 15.

The Court has not held otherwise. Rather, the Court has acknowledged that Plaintiff's "Restatement Claim" is based on the allegation that shareholders were allegedly damaged when the truth of the alleged overstatements of accounts receivable was revealed through the Company's restatement in April 2019. *See* ECF 62 at 2. As Defendants have shown, that restatement was unrelated to the Company's accounting for short-pays—and Plaintiff does not demonstrate otherwise. *See* ECF 132 at 14-15. The fact that Plaintiff references short-pay accounting in 1 paragraph of its 174-paragraph Amended Complaint (*see* ECF 144 at 17 n.29 (citing ECF 45 ¶ 58) does not make that issue relevant when the restatement that forms the basis of Plaintiff's claim did not involve short-pays. Plaintiff's attempt to backdoor this short-pay issue through its "scheme claim," *see* ECF 144 at 17-18, likewise fails because that claim is based on the same conduct underlying the "Restatement Claim," as the Court has held. *See* ECF 138 at 3 n.8, 32.

Moreover, even if short-pay accounting was marginally relevant to this case (and it is not), there still would be no subject matter waiver under Rule 502 because AAC has not put these

- 6 -

privileged materials at issue in this case. Although it ultimately agreed to produce certain materials to Plaintiff concerning the SEC investigation, including the 2018 presentations provided to the SEC, the SEC's declination letter, and further agreed to run search terms across the SEC production, that was all done in an effort to resolve a discovery dispute concerning ***Plaintiff's requests***. Producing documents in response to the other party's requests is not the type of conduct that gives rise to a subject matter waiver. *See, e.g., Freedman*, 2014 WL 3767034, \*4 (finding no subject matter waiver where "there [wa]s no indication that [defendants] sought to use this disclosure to their advantage . . . . To the contrary, they resisted its production."). Indeed, per the express language of the governing Protective Order, the production of those documents in this case cannot amount to a subject matter waiver. ECF 82 at 13 ("The Parties shall not argue, in this forum or any other, that any privilege or protection was waived as a result of disclosure in this Action . . . .").[7] Mr. Cartwright's (non-privileged) testimony in response to questions from Plaintiff's counsel similarly fails to show that AAC has injected privileged information into this dispute in an unfair or misleading manner. AAC's position has always been that short-pay accounting is irrelevant to this dispute—the issue only comes up in this case because Plaintiff continuously insists on raising it.

These are only some of the deficiencies in Plaintiff's argument, which are further explained in Defendants' and AAC's briefing on the pending motion. *See* ECF 132; ECF 147. For all those reasons, there has been no subject matter waiver, and the Court should reject Plaintiff's argument.

## II.     DISPUTE NO. 2

### A.     Plaintiff's Position

Plaintiff seeks an order compelling Defendants and/or AAC to search for and produce responsive documents from AAC's "Slack" electronic-messaging program, and specifically: (1)

---

[7]     A similar agreement preventing a subject matter waiver was in place for the SEC investigation.

communications contained in Slack "channels"; and (2) "direct messages" involving any and all custodians in this case. "Slack is a cloud-based software system that allows a company to organize its electronic discussions into user-defined categories called 'channels." *Benebone LLC v. Pet Qwerks, Inc.*, 2021 WL 831025, at \*1 (C.D. Cal. Feb. 18, 2021). Users can communicate using "direct messages," including "one-to-one" messages, or messages that "include up to nine people." Users can also communicate in a group setting using Slack "channels," as well as "upload" files to "channels" for others to access.[8]

Since discovery commenced, it has been the mutual understanding of the parties that Slack was a potential source of relevant documents and, if Defendants or AAC utilized Slack, Defendants were required to search and produce Slack communications. For instance, in the July 8, 2021, Stipulated Order Regarding Discovery of Electronically Stored Information and Order (ECF 81), the parties expressly contemplated searching "ESI other than e-mail and e-documents . . . [including] Slack." *Id.* at 12 n.1.[9] Plaintiff learned AAC used Slack during a Rule 30(b)(6) deposition of AAC's corporate designee on December 2, 2021. PEx. 3 at 83:11. Upon discovering references to "Slack" messages in emails produced by Defendants, and having never received Slack communications from Defendants or AAC, Plaintiff emailed Defendants on January 18, 2023, requesting confirmation "AAC and Defendants have produced all responsive Slack documents and communications." PEx. 6 at 4.

---

[8]     https://slack.com/help/articles/212281468-Understand-direct-messages (last visited March 13, 2023).     Direct messages can also include persons from other companies.     *Id.*; https://slack.com/features/channels (last visited March 13, 2023); https://slack.com/document-sharing (last visited March 13, 2023). Channels may be "Public" ("open for anyone at your company to join or find in search") or "Private" (open to invitees). https://slack.com/features/channels (last visited March 13, 2023).

[9]     Plaintiff's first set of requests for production of documents to Defendants also sought, *inter alia*, "output resulting from the use of any software program, including . . . Slack [and] any other messaging application." PEx. 4 at 3.

Defendants did not respond to Plaintiff's January 18, 2023 email. Plaintiff emailed Defendants again on February 14, 2023, regarding the absence of Slack communications from the production. PEx. 6 at 3. The parties subsequently met and conferred on February 24, 2023, during which Defendants and AAC refused to provide information regarding AAC's Slack "channels," on the basis they refused to search Slack "channels." Following the discussion on February 24, 2023, it was Plaintiff's understanding that Defendants and AAC had agreed to produce "direct messages" from Slack, but were unwilling to identify potentially relevant Slack "channels" used at AAC, or search those "channels" for relevant information.

On March 13, 2023, Defendants identified five custodians whose job responsibilities were primarily related to marketing and whose Slack files contained responsive direct messages (the "Marketing Employees"). Defendants also identified five custodians (including Manz) whose job responsibilities were primarily related to accounting and whose Slack files contained responsive direct messages (the "Accounting Employees"). Defendants stated on March 13 they would only produce Slack direct messages for the Accounting Employees, and that producing the Marketing Employees' Slack messages would not be proportionate following the Court's Order denying certification as to Plaintiff's so-called "Marketing Claim."[10]

Based on Defendants' representations from March 13, 2023, it is Plaintiff's understanding that AAC possessed three Slack "channels" during the relevant time period: (1) an Information Technology ("IT") channel; (2) a "Marketing" channel; and (3) a channel entitled "Referral

---

[10] Although the Court's Order (ECF 138) denied certification of the "Marketing Claim and Scheme Claim predicated on Defendants' deceptive marketing practices" (ECF 150 at 1), those claims have not been dismissed, and Plaintiff has moved for reconsideration of the Court's February 24, 2023 Order. *Id.* Moreover, ***Defendants produced documents concerning the Marketing Claim before a class was even certified, and notwithstanding their position that this action was "not maintainable as a class action."*** ECF 73 at 26. While Defendants claim that producing the Marketing Employees' direct messages would not be proportionate, Defendants have not articulated the precise burden Defendants would bear in producing those messages.

Solutions." Although Defendants and AAC represented that they have not searched any channels for responsive documents, they maintain that the IT channel contains no relevant information, and that production of documents from the "Marketing" channel and "Referral Solutions" channel would not be proportionate for the same reasons described above. Accordingly, Defendants and AAC are refusing to search any Slack "channels."[11]

On March 15, 2023, Plaintiff agreed to Defendants' March 14 "proposal to review the [Marketing Employees'] 3,427 hits," (as opposed to all "15,714 [hits] with families") as well as families to responsive "hits," based on Defendants' statement this narrowed review would "help with our proportionality concern." PEx. 5. Defendants withdrew that offer on March 16 after Plaintiff noted it still intended to raise the dispute over "channels." Plaintiff maintains the Marketing Employees' direct messages should be produced. Indeed, while Defendants initially contended *any* production from Slack would be unduly burdensome, their March 14, 2023 production of the Accounting Employees' Slack messages appears to total less than 30 documents, or about 150 pages.

Defendants fail to show a compelling reason for producing "direct" Slack messages, but refusing to search AAC's Slack "channels." Defendants cannot dispute AAC's Slack "channels" contain relevant information – indeed, they have not searched them – and there is no reason to believe information conveyed in Slack "channels" is any less relevant than information in "direct messages." Moreover, Defendants and AAC have wholly failed to establish that producing communications from Slack "channels" would be unduly burdensome. Defendants and/or AAC

---

[11] Defendants stated on March 13, 2023 they did not know how many communications were available from AAC's Slack "channels," whether AAC's channels were "Public" or "Private" channels, who had access to AAC's Slack channels, or whether the Accounting Employees accessed or contributed to the discussions within AAC's Slack channels.

should run the agreed-upon search terms across AAC's Slack "channels" and produce the responsive documents and communications.[12]

### B.     Defendants' Position

Plaintiff is wrong to contend that "[s]ince discovery commenced, it has been the mutual understanding of the parties that Slack was a potential source of relevant documents and, if Defendants or AAC utilized Slack, Defendants were required to search and produce Slack communications." Nowhere in the governing ESI Protocol does it state as much, nor does that protocol even suggest that the parties had an obligation to collect, search, and produce Slack messages. Rather, the portion of the protocol Plaintiff cites merely lists the types of metadata to be supplied for documents that *are* produced and further states that the parties would confer to the extent such metadata was unavailable for particular sources from which documents would be produced. *See* ECF 81 at 12 n.1. The fact that Plaintiff identified Slack (and scores of other sources) as falling within its page-long definition of ESI in Plaintiff's requests for production is likewise of no event, as Defendants and AAC objected to those overbroad and burdensome requests.

Perhaps more importantly for the present motion, and consistent with the Federal Rules of Civil Procedure, the governing ESI Protocol specifies "that any discovery shall be proportional to the needs of the case" and that the "Parties desire to control and focus the production of documents and ESI to the needs of the case to promote a 'just, speedy, and inexpensive determination' of this action." ECF 81 at 2-3. Plaintiff's demand for Defendants/AAC to collect, search, review, and

---

[12]     *See Calendar Rsch. LLC v. StubHub, Inc.*, 2019 WL 1581406, at *4 (C.D. Cal. Mar. 14, 2019) (ordering production of "'all . . . Slack channels *and* messages'"); *Pet Qwerks*, 2021 WL 831025, at *3 (agreeing discovery "shall include Benebone's Slack messages," including Slack "channels"); *Red Wolf Energy Trading, LLC v. BIA Cap. Mgmt., LLC*, 2022 WL 4112081, at *7 (D. Mass. Sep. 8, 2022) (requiring search of Slack "channels"); *Mobile Equity Corp. v. Walmart Inc., LLC*, 2022 WL 36170, at *2 (E.D. Tex. Jan. 4, 2022) (ordering party "to produce relevant Slack channels").

- 11 -

produce Slack messages from 28 custodians, as well as from the Company's available Slack "Channels," at the close of fact discovery[13] is not proportionate to the needs of this case and should be denied accordingly. The lack of proportionality is particularly apparent for at least three reasons.

*First*, when evaluating the proportionality of Plaintiff's request, the Court must consider the extensive effort Defendants and AAC have already extended to collect, review, and produce documents in response to Plaintiff's requests for production. *See, e.g.*, *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (upholding denial of motion to compel where "additional discovery would not outweigh the proportionality concerns implicated by the delay and cost generated by continued discovery"). To date, Defendants/AAC have reviewed more than 281,000 documents to identify materials responsive to Plaintiff's requests, and from that review have produced approximately 59,000 documents (totaling more than 350,000 pages). All of that effort, of course, has come at a great expense—of which Plaintiff has borne none.

Defendants, moreover, conducted that review in accordance with the procedures specified in the governing ESI Protocol. Specifically, the protocol recognized that the parties would negotiate the scope of the search Defendants would perform to identify responsive documents, including the custodians and search terms for that review. The parties followed that process, and Defendants then implemented that protocol per the parties' agreement. Plaintiff now suggests that Defendants are required to collect and produce additional documents as long as they might be responsive to Plaintiff's requests—but that is not the law. Defendants are not required to identify and produce every scrap of paper responsive to a request for production—they are required to conduct a reasonable search that is proportionate to the needs of the case. They have already done so here.

---

[13] Interestingly, although Plaintiff attempts to suggest that Defendants unnecessarily delayed the presentation of this issue, the reality is the opposite. Plaintiff acknowledges that it learned of the use of Slack at AAC no later than December 2021, yet did not email Defendants/AAC's counsel concerning these requests for Slack communications until January 2023—more than a year later.

- 12 -

*Second*, Plaintiff cannot possibly justify its demand given that (i) AAC has already produced the responsive Slack messages for the agreed accounting custodians who might have information relevant to Plaintiff's Restatement Claim; and (ii) the Court has denied certification as to Plaintiff's "Marketing Claim." As a result of that ruling, the only Marketing Claim remaining in this case is that of the named Plaintiff—where its individual damages fall well short of justifying Defendants incurring additional expense to review Slack messages for the marketing custodians or marketing "channels" (and, as Defendants already informed Plaintiff, there is no "channel" for AAC's accounting department).

*Finally*, Plaintiff cannot justify the proportionality of its demand given its rejection of Defendants' reasonable offer to resolve this dispute. Specifically, in an effort to avoid burdening the Court (or incurring the expense of this dispute), Defendants offered to review the 3,427 Slack messages from the marketing custodians that hit on the agreed search terms, and to then only review the related "family members" of those messages if the initial hits were deemed responsive—rather than reviewing all 15,714 Slack messages for the marketing custodians that hit on search terms when including family members. That proposal would have provided Plaintiff any Slack messages from these custodians likely relevant to Plaintiff's Marketing Claim while addressing some of Defendants' proportionality concerns.

Plaintiff, however, refused that proposal and insisted that Defendants/AAC also collect, search, and review Slack messages contained in "channels" as opposed to direct messages for the marketing custodians. For all the reasons above, Plaintiff's demand is unreasonable and disproportionate to the needs of the case.

- 13 -

DATED: March 17, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
CHRISTOPHER D. STEWART
FRANCISCO J. MEJIA
JACK ABBEY GEPHART

<u>s/ Christopher D. Stewart</u>
CHRISTOPHER D. STEWART

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
cstewart@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
HENRY S. BATOR, #040431
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com
hbator@rgrdlaw.com

Lead Counsel for Indiana Public Retirement
System

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

- 14 -

DATED: March 17, 2023                KING & SPALDING LLP
LISA BUGNI (admitted *pro hac vice*)


<u>       s/ Lisa Bugni       </u>
LISA BUGNI

50 California Street, Suite 3300
San Francisco, CA  94111
Telephone:  415/318-1200
415/318-1300 (fax)
lbugni@kslaw.com

KING & SPALDING LLP
JESSICA P. CORLEY (admitted *pro hac vice*)
RONNI D. SOLOMON (admitted *pro hac vice*)
BRANDON R. KEEL (admitted *pro hac vice*)
LOHR A. BECK (admitted *pro hac vice*)
LOGAN R. HOBSON (admitted *pro hac vice*)
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone:  404/572-4600
404/572-5100 (fax)
jpcorley@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lohr.beck@kslaw.com
lhobson@kslaw.com

HOLLAND & KNIGHT LLP
W. TRAVIS PARHAM (TN #16846)
511 Union Street, Suite 2700
Nashville, TN  37219
Telephone:  615/244-6380
615/244-6804 (fax)
travis.parham@hklaw.com

Attorneys for Defendants

- 15 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 17, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher D. Stewart
CHRISTOPHER D. STEWART

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

Email: cstewart@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Lohr Alexandria Beck**
  lohr.beck@kslaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jack A. Gephart**
  jgephart@rgrdlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Brandon R. Keel**
  bkeel@kslaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,jkarsten@barrettjohnston.com,elusnak@barrettjohnston.com,jmartin@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **W. Travis Parham**
  travis.parham@hklaw.com,shelli.dimarco@hklaw.com,pat.grace@hklaw.com

- **Ronni D. Solomon**
  rsolomon@kslaw.com

- **Christopher Stewart**
  cstewart@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis(

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)