# PEx. 4

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM,) Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) vs. ) ) MICHAEL T. CARTWRIGHT, KIRK R. ) MANZ and ANDREW W. McWILLIAMS, ) ) Defendants. ) ) ) | Civil Action No. 3:19-cv-00407 <u>CLASS ACTION</u> Judge Eli J. Richardson Magistrate Judge Alistair E. Newbern LEAD PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS |

Pursuant to Federal Rules of Civil Procedure (the "Rule(s)") 26 and 34, Lead Plaintiff

Indiana Public Retirement System ("Lead Plaintiff"), by its counsel, hereby requests that defendants

Michael T. Cartwright, Kirk R. Manz and Andrew W. McWilliams respond to and produce for

inspection and copying the documents designated under the heading "Documents Requested," within

30 days of service to the offices of Robbins Geller Rudman & Dowd LLP, 655 West Broadway,

Suite 1900, San Diego, California 92101.

## I. DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "Action" refers to the class action captioned above.

2.      "All," "any" and "each" shall each be construed as encompassing any and all.

3.      "AAC" or the "Company" means AAC Holdings, Inc., American Addiction Centers,

and any of their direct or indirect parent companies, subsidiaries, divisions, affiliates, predecessors,

- 1 -

successors, present and former officers, directors (including the Board (defined below) acting collectively and all directors, individually), employees, agents, accountants, auditors, attorneys, representatives, advisors and all other persons (defined below) acting or purporting to act on its behalf.

4.      "BDO" means BDO USA, LLP and any affiliates, predecessors, successors, former officers, directors acting collectively and/or individually), employees, agents, accountants, auditors, attorneys, representatives, advisors and all other persons (defined below) acting or purporting to act on its behalf.

5.      "Board" means AAC's Board of Directors, including any formal or informal committee, subcommittee, subgroup or subset thereof.

6.      "Class Period" means the time period beginning March 8, 2017 through April 15, 2019, inclusive.

7.      "Communication(s)" means any transmittal of information (in the form of facts, ideas, inquires or otherwise) by any method or means, including, but expressly not limited to, in-person, virtual, video, phone, fax, text, e-mail and any analog, digital or electronic transmission.

8.      "Complaint" means the Consolidated Complaint for Violations of the Securities Exchange Act of 1934 filed in this Action on November 4, 2019 (ECF No. 45).

9.      "Concerning" shall be construed broadly as encompassing the concepts of relating to, referring to, describing, evidencing and/or constituting.

10.     "Defendants" means Michael T. Cartwright, Kirk R. Manz, and Andrew W. McWilliams.

11.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A).  A draft or

- 2 -

non-identical copy is a separate document within the meaning of this term. For avoidance of doubt, in these requests, "document(s)" expressly includes "communication(s)."

12.    "Electronically stored information" or "ESI" refers to any original and non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, analog, magnetic, digital or other programs, programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," text messages, video, WhatsApp, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, any other messaging application or program, Zoom, recording, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull-down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment. "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and copy.

13.    "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. "Identify," with respect to documents, means to give, to

- 3 -

the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s).

14. "Meeting(s)" refers to the contemporaneous presence of any natural persons (including by telephone, analogue, digital, virtual or electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal or occurred in connection with some other activity.

15. "NAATP" means the National Association of Addiction Treatment Providers.

16. "Persons" refers to any natural person or any legal entity, including, without limitation, any business, Government Entity or association.

17. "Policy" or "policies" means any rule, procedure, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, including any practice or training memoranda or manuals.

18. "Restated Financial Statements" refers to the financial statements that you identified in your current report filed with the SEC on Form 8-K on March 29, 2019.

19. "RSG" means Referral Solutions Group, LLC, and any affiliates, predecessors, successors, former officers, directors acting collectively and/or individually), employees, agents, accountants, auditors, attorneys, representatives, advisors and all other persons (defined below) acting or purporting to act on its behalf.

20. "SEC" means the United States Securities and Exchange Commission.

21. "SEC Letter" means the letter from the SEC's Division of Corporation Finance to AAC and Cartwright, dated August 29, 2019.

22. "You" or "your" includes AAC, Defendants and their direct or indirect parent companies, subsidiaries, divisions, affiliates, predecessors, successors, present and former officers,

- 4 -

directors (including the Board acting collectively and all directors, individually), employees, agents, accountants, auditors, attorneys, representatives, advisors and all other persons acting or purporting to act on their behalf.

23. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## II. INSTRUCTIONS

1. In responding to these requests, you shall produce all responsive documents that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants or any other representative. A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2. Pursuant to the Rules, you are requested to produce for inspection and copying by Lead Plaintiff, original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these requests.

3. In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Rule 26(e).

4. If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

- 5 -

5. If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise, as a ground for not producing any requested document or portion of a document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

    (a)    the privilege asserted;

    (b)    the person on whose behalf the privilege is asserted; and

    (c)    a precise statement of facts upon which the claim of privilege is based.

Identify any document for which the privilege is claimed, including:

    (a)    its nature, *e.g.*, letter, memorandum, tape, etc.;

    (b)    the date it was prepared;

    (c)    the date the document bears;

    (d)    the date the document was sent;

    (e)    the date it was received;

    (f)    the name of the person who prepared the document;

    (g)    the name(s) of the person(s) who received the document;

    (h)    the custodian or source of collection for the document;

    (i)    the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

    (j)    a statement of whom each identified person represented or purported to represent at all relevant times.

6. If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

- 6 -

7. You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8. The use of the singular form of any word includes the plural and vice versa.

## III. PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

1. Format: ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, photo or graphic images and documents with tracked changes reflected in the metadata, which should be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that

- 7 -

would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of e-mail messages should include the BCC line.

2.      Format – Native Files: If a document is produced in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate documents and e-mail thread suppression is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians

- 8 -

and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.      Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than e-mail and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

6.      Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.      Attachments: If any part of an e-mail or its attachments is responsive, the entire e-mail and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent e-mail.  The parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not

- 9 -

limited to, Google G Suite, Microsoft O365, etc.  Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

8.      Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.     Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

11.     Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12.     Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## V.      RELEVANT TIME PERIOD

Unless otherwise noted in a specific request, all documents requested herein refer to the period from January 1, 2015 through April 15, 2020 (the "Relevant Period"), and shall include documents and information that concern the Relevant Period, even if prepared, generated, revised or published outside of it.  If any document is undated, and the date of its preparation or modification is unknown, the document shall be produced if otherwise responsive to the request(s).

- 10 -

## VI. DOCUMENTS REQUESTED

REQUEST FOR PRODUCTION NO. 1:

All documents concerning your sales and marketing programs, including, but not limited to, documents concerning the methods, tactics and/or strategies you employed to generate and attract clients. Included within this request are all documents concerning your use of online websites and search engine optimization techniques to generate and attract clients.

REQUEST FOR PRODUCTION NO. 2:

All documents concerning your acquisition of RSG, including, but not limited to, documents concerning your reasons for the acquisition, the expected and actual benefits of the acquisition to AAC's business, finances and operations, any litigation involving RSG, and any due diligence conducted in connection with the acquisition.

REQUEST FOR PRODUCTION NO. 3:

All documents concerning your membership in NAATP, including, but not limited to, documents concerning your compliance (or non-compliance) with its code of ethics and/or other rules and regulations, as well as documents concerning the expected and actual benefits of your membership in NAATP. Included within this request are all documents concerning any instance where AAC was denied membership into NAATP or AAC's membership in NAATP was not renewed.

REQUEST FOR PRODUCTION NO. 4:

All documents concerning your use of Google Ads and/or any of its services to market AAC and or otherwise increase census, including, but not limited to, documents concerning any action by Google that restricted and/or prevented AAC's ability to use those services, the impact of any such actions on AAC's business, finances and operations, and your efforts to meet or otherwise satisfy any requirement that Google imposed in order to use its services.

- 11 -

REQUEST FOR PRODUCTION NO. 5:

All documents concerning any testimony you provided before any congressional committee or subcommittee during the Class Period regarding AAC, including, but not limited to, documents you prepared, reviewed or received in preparation for, during or after such testimony.

REQUEST FOR PRODUCTION NO. 6:

All documents concerning AAC's public statements alleged in the Complaint, including, but not limited to, drafts of such statements, documents reflecting the process for preparing, reviewing, and approving such statements and documents concerning your efforts to verify that those statements (where applicable) were accurate pursuant to the Sarbanes-Oxley Act of 2002.

REQUEST FOR PRODUCTION NO. 7:

All documents concerning AAC's use of call center(s) to increase census, including, but not limited to, documents concerning the volume of calls and web chats received, the compensation structure for AAC personnel who received and/or responded to any such calls and web chats, their training and the portion of AAC's revenues generated from these activities.

REQUEST FOR PRODUCTION NO. 8:

All documents concerning the content displayed on any website that AAC owned, operated, controlled or was affiliated with.

REQUEST FOR PRODUCTION NO. 9:

All documents concerning AAC's accounting policies and procedures relating to revenue recognition, accounts receivable and related allowances, and all documents concerning AAC's compliance with, or deviation from, any such policies or procedures.

- 12 -

<u>REQUEST FOR PRODUCTION NO. 10</u>:

All documents reflecting or concerning your accounting treatment of your revenue and accounts receivable, including, but not limited to, documents concerning collectability estimates and any revisions thereto, the basis of any such estimates, historical analyses of reimbursement data by facility, the impact of that treatment on revenues and losses, and any communications with, and documents provided to or received from, BDO regarding the same.

<u>REQUEST FOR PRODUCTION NO. 11</u>:

All communications with, and documents provided to, the SEC in connection with any subpoena or other request, including the one referenced in your quarterly report filed with the SEC on Form 10-Q on November 6, 2018.

<u>REQUEST FOR PRODUCTION NO. 12</u>:

All documents concerning the SEC Letter, including, but not limited to, documents concerning the topics of inquiry identified therein, as well as documents concerning AAC's response or non-response thereto.

<u>REQUEST FOR PRODUCTION NO. 13</u>:

All documents concerning any review or inquiry of AAC's accounts receivable and/or any component thereof, including, but not limited to, documents concerning the findings of any such review or inquiry, both preliminary and final, and any materials reviewed and/or relied upon in connection with any such review, and any memoranda or notes generated in connection with such review or inquiry.

<u>REQUEST FOR PRODUCTION NO. 14</u>:

All documents, including, but not limited to, any analyses and/or discussions, regarding the impact of AAC's adoption of Accounting Standards Codification Topic 606, as defined by the

- 13 -

Financial Accounting Standards Board (FASB), effective January 1, 2018, to AAC's public reporting of its revenue and accounts receivable.

REQUEST FOR PRODUCTION NO. 15:

All documents relating to your accounting for revenue and accounts receivable on or after January 1, 2018.

REQUEST FOR PRODUCTION NO. 16:

All documents concerning your aging policy applied in connection with evaluating the collectability of and accounting for your accounts receivable.

REQUEST FOR PRODUCTION NO. 17:

All documents concerning the Restated Financial Statements, including, but not limited to, documents concerning the discovery of the information found to be unreliable, their correction, and/or any materials reviewed or relied upon in connection therewith.

REQUEST FOR PRODUCTION NO. 18:

All documents exchanged, and communications with, BDO regarding the Restated Financial Statements.

REQUEST FOR PRODUCTION NO. 19:

All documents concerning all historical collection data related to your accounts receivable, including, but not limited to, documents relating to your analyses of historical collections and reimbursement data used to evaluate collectability of accounts receivable, the adequacy of the allowance for doubtful accounts and revenue recognition.

- 14 -

<u>REQUEST FOR PRODUCTION NO. 20</u>:

All documents concerning the "industry and other data" used to assess collectability of your accounts receivable, as referenced in your quarterly report filed with the SEC on Form 10-Q on November 6, 2018.

<u>REQUEST FOR PRODUCTION NO. 21</u>:

All documents concerning the accounting adjustments made in the third-quarter of 2018, relating to the change in estimate of collectability, as referenced in your quarterly report filed with the SEC on Form 10-Q on November 6, 2018.

<u>REQUEST FOR PRODUCTION NO. 22</u>:

All documents concerning AAC's days sales outstanding (DSO).

<u>REQUEST FOR PRODUCTION NO. 23</u>:

All documents concerning monthly, quarterly, annual or periodic accounting packages or analyses and supporting documentation, including, but not limited to:

      (i)      final consolidated and consolidating financial statements;

      (ii)      all adjusting, consolidating and eliminating entries and supporting documentation;

      (iii)      all analyses or reports related to provisions for doubtful accounts receivable; and

      (iv)      all analyses or reports concerning days sales outstanding (DSO).

<u>REQUEST FOR PRODUCTION NO. 24</u>:

All recurring accounting journals, including, but not limited to:

      (i)      final monthly trial balances;

      (ii)      final monthly detailed general ledgers;

- 15 -

(iii)        final monthly general journal (*i.e.,* listing of all journal entries);

(iv)        final monthly A/R aging reports, sorted by customer name;

(v)        final monthly A/R subledgers or reports, sorted by customer name, including reconciliation to the general ledger; and

(vi)        final monthly cash receipts reports.

REQUEST FOR PRODUCTION NO. 25:

All documents concerning management's assessments of AAC's internal control over financial reporting and management's evaluations of AAC's disclosure controls and procedures.

REQUEST FOR PRODUCTION NO. 26:

All documents concerning the material weaknesses and/or significant deficiencies in AAC's internal controls.

REQUEST FOR PRODUCTION NO. 27:

All documents concerning the resignation or termination of any AAC executive and/or director, including, but not limited to, documents concerning the reasons for any such resignation.

REQUEST FOR PRODUCTION NO. 28:

All documents concerning the market price of AAC common stock.

REQUEST FOR PRODUCTION NO. 29:

Organizational charts, directories and/or other documents sufficient to identify AAC's senior organizational structure, officers and employees, including all employees who reported to any of the Defendants at any time during the Class Period.

REQUEST FOR PRODUCTION NO. 30:

Documents sufficient to show your policy, whether formal or informal, related to the retention and destruction of documents.

- 16 -

<u>REQUEST FOR PRODUCTION NO. 31</u>:

All documents concerning any meeting of the Board and any committee thereof, including, but not limited, Board packages, meeting material, presentations, minutes and notes, agendas and other materials or correspondence sent to the Board or any committee thereof.

DATED:  June 9, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853

s/ Christopher H. Lyons
CHRISTOPHER H. LYONS

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
fmejia@rgrdlaw.com

Lead Counsel for Indiana Public Retirement System

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

- 17 -

## DECLARATION OF SERVICE BY E-MAIL

I, Casey Reis, not a party to the within action, hereby declare that on June 9, 2021, I served the attached LEAD PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS on the parties in the within action by e-mail addressed as follows:

**COUNSEL FOR PLAINTIFF:**

| NAME | FIRM | E-MAIL |
|---|---|---|
| Christopher M. Wood<br>Christopher H. Lyons | ROBBINS GELLER RUDMAN & DOWD LLP<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Telephone: 615/244-2203<br>615/252-3798 (fax) | cwood@rgrdlaw.com<br>clyons@rgrdlaw.com |
| Francisco J. Mejia | ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619/231-1058<br>619/231-7423 (fax) | fmejia@rgrdlaw.com |

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | E-MAIL |
|---|---|---|
| W. Travis Parham<br>Michael T. Harmon | WALLER LANDSEN DORTCH & DAVIS LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Telephone: 615/244-6380 | travis.parham@wallerlaw.com<br>michael.harmon@wallerlaw.com |
| Jessica P. Corley<br>Lisa R. Bugni<br>Logan R. Hobson | KING & SPALDING LLP<br>1180 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Telephone: 404/572-4600<br>404/572-5100 (fax) | jpcorley@kslaw.com<br>lbugni@kslaw.com<br>lhobson@kslaw.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 9, 2021, at Biloxi, Mississippi.

CASEY REIS

- 18 -