# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

INDIANA PUBLIC RETIREMENT
SYSTEM, Individually and on Behalf of All
Others Similarly Situated,

     Plaintiff,

vs.

MICHAEL T. CARTWRIGHT, KIRK R.
MANZ and ANDREW W. McWILLIAMS,

     Defendants.

Civil Action No. 3:19-cv-00407

<u>CLASS ACTION</u>

Judge Eli J. Richardson
Magistrate Judge Alistair E. Newbern

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION RULING

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     PLAINTIFF'S MOTION FOR RECONSIDERATION IMPROPERLY RE-
       ARGUES ISSUES ALREADY PRESENTED AND RESOLVED BY THE
       COURT. ........................................................................................................... 2

II.    PLAINTIFF PRESENTS NO BASIS FOR RECONSIDERATION OF THE
       COURT'S RULING. ......................................................................................... 5

       A.     The Court Committed No "Clear Error." ................................................. 5

              1.     Plaintiff Identifies No Controlling Authority Contrary To The
                     Court's Ruling. .............................................................................. 5

              2.     The Court Did Not "Patently Misunderstand" Plaintiff's Marketing
                     Claim Theory Or Dalrymple's Reports. ......................................... 6

              3.     The Court Correctly Held That Plaintiff Failed To Present A
                     Damages Model Consistent With Its Theory Of Liability For the
                     Marketing Claim. ........................................................................... 8

              4.     None Of The Non-Binding Authorities Plaintiff Cites Remotely
                     Justifies Reconsideration. ............................................................ 12

       B.     The Court's Ruling Does Not Cause "Harm" Or "Injustice" Justifying
              Reconsideration. ................................................................................... 17

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anders v. California State Univ., Fresno*,
No. 1:21-CV-179-AWI-BAM, 2022 WL 17156145 (E.D. Cal. Nov. 22, 2022).......................2

*Armstrong v. Weichert Realtors*,
No. 05-CV-3120 (PGS), 2006 WL 2241677 (D.N.J. Aug. 4, 2006) .....................................17

*Ball v. Kasich*,
No. 2:16-CV-282, 2018 WL 6437426 (S.D. Ohio Dec. 7, 2018)..............................................2

*Clark v. Creative Hairdressers, Inc.*,
No. CV DKC 2005-0103, 2006 WL 8457029 (D. Md. Mar. 16, 2006) .................................17

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)........................................................................................... *passim*

*Grae v. Corr. Corp. of Am.*,
329 F.R.D. 570 (M.D. Tenn. 2019) ................................................................................ 15-16

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) .........................................................................................16

*Grae v. Corr. Corp. of Am.*,
2021 WL 1100431 (M.D. Tenn. Mar. 17, 2021) ............................................................ *passim*

*Grae v. Corr. Corp. of Am.*,
2021 WL 1100799 (M.D. Tenn. Mar. 23, 2021) ...................................................................16

*Mulderrig v. Amyris, Inc.*,
340 F.R.D. 575 (N.D. Cal. 2021)..............................................................................12, 13, 14

*Ludlow v. BP, PLC*,
800 F.3d 674 (5th Cir. 2015) ................................................................................4, 12, 14, 15

*Markson v. CRST Int'l, Inc.*,
No. 5:17-CV-01261-SB-SP, 2022 WL 1585754 (C.D. Cal. Apr. 6, 2022) ..............................3

*Norman v. Nissan N. Am.*,
No. 3:18-cv-00966, 2022 WL 469076 (M.D. Tenn. Feb. 15, 2022)............................... *passim*

*Pettrey v. Enter. Title Agency, Inc.*,
242 F.R.D. 384 (N.D. Ohio 2007) .........................................................................................17

**Other Authorities**

Fed. R. Civ. 23 ................................................................................................................... *passim*

iii

## INTRODUCTION

After considering nearly 70 pages of briefing and more than 600 pages of exhibits, the Court issued a detailed, 53-page Memorandum Opinion and Order granting in part and denying in part Plaintiff's Motion for Class Certification (*see* ECF 138). The Court not only evaluated the parties' respective positions, briefing, and exhibits, but even conducted its own research on the matter, identifying additional case law relevant to the certification questions at issue. *See id.* at 46. Unhappy with the result, Plaintiff has now filed a Motion for Reconsideration ("Motion") asking the Court to revisit its ruling and to grant the Motion for Class Certification in full. *See* ECF 149. This is the third motion for reconsideration Plaintiff has filed in this case—apparently, Plaintiff's position is that the Court commits clear error any time it issues a ruling that is not in Plaintiff's favor (whether that be denying in part class certification or issuing routine rulings on sealing requests or a motion for leave to file a sur-reply). *See* ECF 110, 141, 149.

Just like in its prior motions, Plaintiff presents no valid basis for the Court to reconsider its class certification ruling. Rather, Plaintiff improperly uses the Motion to re-argue matters that were presented in the prior briefing and resolved by the Court. Indeed, Plaintiff's Motion presents identical arguments to those that Plaintiff and its expert, Scott Dalrymple, raised in their reply brief and rebuttal report, respectively. *Compare* ECF 150 *with* ECF 98 at 14-20 *and* ECF 99-2 at 18-26. Plaintiff identifies no controlling precedent that conflicts with the Court's ruling. Nor does it demonstrate that the Court "patently misunderstood" the parties' positions or expert testimony. To the contrary, the Court correctly characterized the parties' arguments as to whether Plaintiff had presented a damages model consistent with its theory of liability for the "Marketing Claim," as required for certification under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). The Court's finding that Plaintiff failed to do so was correct, well within the Court's discretion, and certainly not clearly erroneous or manifestly unfair. Accordingly, the Court should deny Plaintiff's Motion.

<u>**ARGUMENT**</u>

**I. PLAINTIFF'S MOTION FOR RECONSIDERATION IMPROPERLY RE-ARGUES ISSUES ALREADY PRESENTED AND RESOLVED BY THE COURT.**

This is not the first time the Court has encountered a motion for reconsideration (not even by Plaintiff in this case). When presented with such motions previously, the Court has stressed that "[a] motion for reconsideration is not an opportunity to merely re-argue a case" and "should not provide the parties with an opportunity for a proverbial second bite at the apple." *Norman v. Nissan N. Am.*, No. 3:18-cv-00966, 2022 WL 469076, at *2 (M.D. Tenn. Feb. 15, 2022). "Nor is a motion for reconsideration properly grounded on a request that a court rethink a decision already made." *Id.* (internal citation omitted). "District courts reviewing motions to reconsider interlocutory rulings 'at a minimum' require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available." *Id.* (internal citation omitted). And those limited circumstances justifying reconsideration serve an important purpose:

> [A party] has every right to disagree with the Court's decision and be frustrated by it, but [it] does not have the right to pull the Court's attention away from its hundreds of other cases merely because [the party] disagrees with the Court's decision. A motion for reconsideration is not a venue to see whether the Court will conclude that perhaps on balance it should have gone the other way the first time.

*Id.* at *3.[1]

---

[1] Contrary to Plaintiff's suggestion, ECF 150 at 3-4, the fact that the ruling at issue is one concerning class certification does not alter the relevant standard. Although a Court has an obligation to ensure that a class properly meets the requirements of Rule 23 throughout the life of the case, that does not mean a decision should be revisited under circumstances other than those typically justifying reconsideration. *See Ball v. Kasich*, No. 2:16-CV-282, 2018 WL 6437426, at *1 (S.D. Ohio Dec. 7, 2018) (denying motion for reconsideration and noting that courts may alter or amend a class definition only when the "progression of the case brings to light facts that were unknown at the time the class was certified or to address law that had changed since the time the class was certified"); *Anders v. California State Univ., Fresno*, No. 1:21-CV-179-AWI-BAM, 2022 WL 17156145, at *3 (E.D. Cal. Nov. 22, 2022) ("[C]ourts have held that Rule 23(c)(1)(C) does not provide a 'separate mechanism' for challenging certification orders . . . and that motions

2

Here, however, that is precisely what Plaintiff seeks through its Motion. Rather than identify an "intervening controlling decision or newly discovered evidence," *id.* at *2, Plaintiff improperly raises the same arguments it raised in prior briefing. Plaintiff, in fact, repeatedly cites to its prior briefing and previously submitted expert reports when explaining the purported basis for reconsideration. *See, e.g.*, ECF 150 at 10 (referring to arguments raised in Dalrymple's rebuttal report and "explained in [Plaintiff's] Reply"); *see also id.* at 11 ("As Plaintiff set forth in its Reply . . . ."); *id.* at 13-14 (referring to positions raised in Dalrymple's prior reports).

As shown in the chart below, any cursory comparison of Plaintiff's current Motion to its prior submissions reveals that Plaintiff is presenting the same arguments the Court already rejected.

| Pl.'s Motion for Reconsideration (ECF 150) | Pl.'s Reply Brief (ECF 98) |
|---|---|
| "Dalrymple Described a Damage Model Consistent with Plaintiff's Theory of Liability for its Marketing Claim." ECF 150 at 6. | "Plaintiff's Proposed Methodology for Calculating §10(b) Damages Plainly Satisfies *Comcast*." ECF 98 at 14. |
| "Dalrymple explained in his Rebuttal Report (and Plaintiff explained in its Reply) that the 'risk of AAC's deceptive marketing claims will be factored into Plaintiff's damages model' . . . in the same way Dalrymple did in [*Grae v. Corr. Corp. of Am.*, 2021 WL 1100431 (M.D. Tenn. Mar. 17, 2021)]." ECF 150 at 10.<br><br>The damages analysis Dalrymple employed in *Grae* "is exactly what Plaintiff established could be done in this case." ECF 150 at 12. | "Mr. Dalrymple explains he would measure the inflation in AAC's common stock resulting from Defendants' alleged misconduct." ECF 98 at 15.<br><br>"Mr. Dalrymple's Methodology Can Measure Inflation Associated with Defendants' Marketing Scheme." ECF 98 at 16.<br><br>"Mr. Dalrymple conducted this very analysis in [*Grae*] . . ." ECF 98 at 17. |
| Dalrymple sufficiently "explain[s] how the alleged [materialization of a risk] can be | "Defendants' contention that Mr. Dalrymple cannot isolate damages related to Plaintiff's |

contesting denial of class certification are properly treated as motions for reconsideration unless otherwise provided by court order."); *Markson v. CRST Int'l, Inc.*, No. 5:17-CV-01261-SB-SP, 2022 WL 1585754, at *2 (C.D. Cal. Apr. 6, 2022) (denying motion for reconsideration where plaintiffs "d[id] not identify any changed circumstances or new evidence as a basis for amending the Court's class certification order").

3

| | |
|---|---|
| factored into the damages model." ECF 150 at 13. | materialization of the risk theory is misplaced. . . . Mr. Dalrymple makes clear standard financial analysis and valuation techniques may be used to quantify the impact of changes in expectations and perceived risk associated with a business or earning stream." ECF 98 at 17. |
| The denial of class certification for the "pre-spill" claims in *Ludlow v. BP, PLC*, 800 F.3d 674 (5th Cir. 2015) is "inapposite because Plaintiff is not relying on a consequential damages theory, but rather, . . . an 'out-of-pocket damages model widely accepted in Section 10(b) cases.'" ECF 150 at 11. | "Defendants' reliance on *Ludlow* is also unavailing . . . . Here, Plaintiff is not proceeding under the damage theory at issue in *Ludlow* but under a standard out-of-pocket damages methodology routinely used to measure §10(b) damages." ECF 98 at 18. |

And the Court did not ignore those arguments. It expressly addressed these issues, and the parties' respective authorities/arguments, in its Opinion. *See* ECF 138 at 42-49 (discussing parties' respective arguments as to whether Plaintiff satisfied *Comcast* for its Marketing Claim, including Plaintiff's "attempts to distinguish *Ludlow* by arguing that it (Plaintiff) relies on the out-of-pocket damages model widely accepted in Section 10(b) cases. (Doc. No. 100 at 16–17); . . . . This model looks to the artificial inflation per share at the time of purchase less the artificial inflation at the time of the sale. (Doc. No. 100 at 16–17).").

The Court could end its analysis of the Motion there, as Plaintiff's submission is entirely improper. It presents no change in law, new evidence, or controlling authority the Court failed to follow. Plaintiff merely presents the same arguments it presented previously—hoping that the Court will conclude that it should have "gone the other way the first time." *Norman*, 2022 WL 469076, at *3. The Court should deny the Motion for that reason alone, as even entertaining it would allow Plaintiff a second bite at the apple.

## II. PLAINTIFF PRESENTS NO BASIS FOR RECONSIDERATION OF THE COURT'S RULING.

If the Court were nonetheless inclined to re-address the substance of Plaintiff's arguments (despite those arguments having been raised and resolved already), the Motion should still be denied. As Plaintiff concedes, a motion for reconsideration should only be granted "'when there is (1) an intervening change of controlling law, (2) new evidence available, or (3) a need to correct clear error or prevent manifest injustice.'" ECF 150 at 3 (quoting *Ratcliffe v. Food Lion, LLC*, 2019 WL 6242302, at *1 (M.D. Tenn. Nov. 20, 2019)); *accord Norman*, 2022 WL 469076, *2. In its Motion, Plaintiff relies exclusively on the third prong, arguing that the Court's ruling was a "clear error" of law and that the Court must certify a class for Plaintiff's Marketing Claim to prevent "manifest injustice." *See* ECF 150 at 3, 4-14. Plaintiff is wrong on both accounts.

### A. The Court Committed No "Clear Error."

A party must meet a "high standard" to show that the Court committed clear error justifying reconsideration of its own order. *See Norman*, 2022 WL 469076, at *2. "It is one thing to say that all things considered (and considering various cases that are not even binding on this Court), the Court should have come out the other way; it is quite another to say that it is 'clear[]' that the Court 'overlooked' law that is 'controlling' (surely meaning precedential and at least close to being squarely applicable)." *Id.* at *6. Only the latter showing, as the Court has indicated, represents a "cognizable ground for granting the Motion," *id.*, and no such showing is present here.

#### 1. *Plaintiff Identifies No Controlling Authority Contrary To The Court's Ruling.*

As an initial (and likely dispositive) matter, Plaintiff identifies no controlling authority that is contrary to the Court's ruling. The only controlling case the Motion even relies upon is *Comcast*, but Plaintiff does not argue that the Court misapplied *Comcast*. Plaintiff, to the contrary, acknowledges that the Court accurately cited the requirement from *Comcast* that, to obtain

5

certification under Rule 23, Plaintiff must present a damages model that is consistent with its theory of liability. *See* ECF 150 at 4 ("As the Court held, *Comcast* . . . requires that Plaintiff put forth a damage model 'consistent with its liability case.'") (quoting ECF 138 at 42). As the Court further acknowledged, under *Comcast*, "'courts must conduct a "rigorous analysis" to ensure at the class-certification stage that "any model supporting a plaintiff's damages case [is] consistent with its liability case," *i.e.*, that the model 'measure[s] only those damages attributable to that theory' of liability.'" ECF 138 at 42 (quoting *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 523 (6th Cir. 2015) and *Comcast*, 569 U.S. at 35). That is the controlling principle of law the Court relied upon for its ruling, and it is undisputed that the Court accurately cited that principle. Plaintiff fails to identify any binding authority that required the Court to reach a different result—and, therefore, has not demonstrated a clear error of law. *See Norman*, 2022 WL 469076, *2.

> 2. *The Court Did Not "Patently Misunderstand" Plaintiff's Marketing Claim Theory Or Dalrymple's Reports.*

Contrary to Plaintiff's contention (*see* ECF 150 at 4), the Court also did not "patently misunderstand" Plaintiff's theory of liability for its Marketing Claim, nor Dalrymple's proposed damages "model." As an initial matter, the Court correctly recognized that "Plaintiff pursues its Marketing Claim using a materialization-of-the-risk theory of loss causation." ECF 138 at 42. Plaintiff expressly adopted that theory in an effort to avoid dismissal of its Marketing Claim when Defendants explained that the Marketing Claim failed to allege loss causation, as the Amended Complaint identified no corrective disclosure ever publicly revealing the alleged truth of the challenged statements forming the basis of the Marketing Claim. *See* ECF 53 at 16-17; *see also* ECF 56 at 24 ("Defendants ignore the Sixth Circuit's endorsement of the 'materialization of the risk' theory of loss causation in contending that the alleged disclosures must 'correct prior statements . . . to allege loss causation adequately.'").

6

As the Court explained, the materialization-of-a-risk theory:

> "allows liability on a securities fraud claim even if the decline in a security's price is not caused by the market's reaction to a corrective disclosure revealing precisely the facts concealed by the fraud, as they existed at the time of the defendant's misstatements. Under the theory, the plaintiff may prove loss causation by showing, instead, that the materialization of a fraudulently concealed risk caused the price inflation induced by the concealment of that risk to dissipate." *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 726 (11th Cir. 2012). "Under the materialization of the risk theory, a misstatement or omission is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *See In re Envision Healthcare Corporation Securities Litigation*, No. 3:17-cv-01112, 2019 WL 6168254, at *24 (M.D. Tenn. Nov. 19, 2019). In other words, "the plaintiff must show that it was the very facts about which the defendant lied which caused its injuries." *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013).

ECF 138 at 42-43.

Plaintiff's tactic adopting this theory worked at the pleading stage, as it convinced the Court to deny Defendants' Motion to Dismiss for failure to allege loss causation on the basis that Plaintiff was proceeding solely on a materialization-of-a-risk theory. *See* ECF 62 at 23-24 ("[H]aving considered the relationship between the risks allegedly concealed (AAC's deceptive marketing strategies) and the risks that subsequently materialized (AAC's declining sales calls and its inability to use its deceptive marketing strategies), and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes Plaintiffs have plausibly alleged loss causation."). Even now, despite asserting that the Court misunderstood Plaintiff's theory and evidence, Plaintiff again acknowledges that its Marketing Claim relies solely on a materialization-of-a-risk theory of loss causation, consistent with the Court's certification ruling. *See* ECF 150 at 9 ("Proceeding on a materialization-of-the-risk theory, *like here*, plaintiff alleged that this disclosure was a 'real-world realization of the risk that a company's executives concealed or denied.'") (emphasis added) (internal citation omitted); *see also* ECF 138 at 32-33.

The Court similarly accurately characterized Plaintiff's and Dalrymple's proposed damages methodology. Indeed, the Court's Opinion excerpted the relevant portion of Plaintiff's reply and the Dalrymple rebuttal report describing how Dalrymple proposed to—at some point in the future—calculate damages:

> Plaintiff responds by asserting that in connection with its Marketing Claim, it is pursuing a materialization-of-the-risk liability theory and an out-of-pocket damages methodology. (Doc. No. 100 at 16–17). Quoting from its expert report, Plaintiff explains:
>
>> [u]nder [P]laintiff's liability theory, Defendants' scheme and misrepresentations and omissions of material facts caused AAC common stock to trade at artificially inflated prices between at least March 8, 2017 and November 5, 2018 by inducing artificial inflation in the price of AAC common stock and maintaining existing artificial inflation. According to Plaintiff, individual shareholders were harmed to the extent they experienced losses arising from such artificial inflation.
>
> (Doc. No. 100 at 16 (quoting Doc. No. 78-2 at 25)). Plaintiff's expert report, however, goes onto to explain:
>
>> The inflation in AAC's common stock, if any, can be measured using widely accepted valuation and economic techniques. Estimating share price inflation often begins by analyzing the impact of the curative events. When previously withheld information was disclosed to the market, artificial price inflation is removed from AAC's stock price. Curative events therefore indicate the extent to which the share price had been inflated by alleged material misrepresentations or omissions and, as a result, may be used to estimate share price inflation in semi-strong form efficient markets[.]
>
> (Doc. No. 78-2 at 26).

ECF 138 at 47-48. There was no misunderstanding. The Court described Dalrymple's proposed damages methodology precisely as Dalrymple did in his own report.

> 3. *The Court Correctly Held That Plaintiff Failed To Present A Damages Model Consistent With Its Theory Of Liability For the Marketing Claim.*

The Court did not error in finding that this proposed damages methodology failed to satisfy *Comcast* because it is inconsistent with Plaintiff's theory of liability. The Court identified two reasons why Dalrymple's description of his proposed methodology was inconsistent with

Plaintiff's materialization-of-the-risk theory, both of which are correct and either of which alone would be sufficient to deny certification under *Comcast*.

**First**, the Court noted that Dalrymple's description of how he would attempt to calculate damages focuses on "corrective disclosures rather than a materialization of a risk." ECF 138 at 48. As the Court has recognized throughout this case, and consistent with prior authority, these concepts are distinct. "A corrective disclosure *cures* a prior misleading or incorrect statement and it includes information previously withheld from the market, but a materialized risk is not curative in the same way that a corrective disclosure is curative; a materialized risk (once revealed) may 'cure' inflation in stock price by potentially removing the inflation, but it does not correct prior incorrect information." *Id.* As Defendants pointed out in their Motion to Dismiss, the Amended Complaint identifies no corrective disclosure for the Marketing Claim, *see* ECF 53 at 16-17, and the Court only allowed that claim to survive dismissal because Plaintiff said it was not relying on a corrective disclosure but rather a "materialization-of-a-risk" theory of loss causation. *See* ECF 62 at 24; *see also* ECF 138 at 43. By asserting that he would determine the alleged price inflation in AAC's stock price "by analyzing the impact of the *curative events*," Dalrymple thus proposed a methodology inconsistent with the only remaining theory for Plaintiff's Marketing Claim—as the Court properly found. *See* ECF 138 at 48.

Although Plaintiff now contends that Dalrymple did not mean what he said and "regrets the confusion," ECF 150 at 6, that does not demonstrate that the Court "patently misunderstood" Dalrymple or present any basis for reconsideration. The Court relied on Plaintiff's proposed damages methodology exactly how Dalrymple himself described it, *see* ECF 78-2 at 25-26, which by its very terms is inconsistent with Plaintiff's theory of liability.

***Second***, even if the Court were to accept Plaintiff's now-proposed explanation that Dalrymple's use of "curative events" and "corrective disclosures" was "intended to be inclusive" of the materialization-of-the-risk theory (*see* ECF 150 at 5), which itself would be inconsistent with the Court's prior rulings and case law,[2] that still would provide Plaintiff no relief. That is because the Court further held that Dalrymple's methodology is inadequate in that he "has provided no explanation as to how the risk of AAC's deceptive marketing claims will be factored into Plaintiff's damages model—that is, how Dr. Dalrymple expects to show that the risk affected AAC's stock price at the time the risk was concealed or after it materialized (revealed)." ECF 138 at 48. The Court was absolutely correct to find that Dalrymple "appears to omit any consideration of how to factor in the risk on which Plaintiff bases its materialization-of-the-risk theory." *Id.*

Dalrymple's opening report did not even reference the "materialization-of-the-risk theory," *see* ECF 78-2, and included nothing more than a boilerplate description about how Dalrymple would supposedly determine the amount of inflation in AAC's stock "by analyzing the impact of the curative events[] [w]hen previously withheld information was disclosed to the market," and (possibly) using "standard financial analysis and valuation tools." *Id.* ¶¶ 90, 92. After Defendants' expert pointed out the flaws and inconsistency with Dalrymple's damages methodology and Plaintiff's theory on the Marketing Claim, Dalrymple did nothing to fix the issue in his rebuttal report. Instead, he doubled down on his boilerplate damages methodology and referred to a different case—*Grae*—where he purports to have provided a model that addressed materialization of a risk. *See* ECF 99-2 ¶ 70. According to Dalrymple, the Court could trust that he will inevitably be able to do the same thing here using "standard economic and valuation techniques." *See* ECF 99-2 ¶ 70 ("By applying standard economic and valuation techniques, including the income and

---

[2] *See, e.g.*, ECF 138 at 43, 48; ECF 62 at 21-23.

market approaches, I separated [in *Grae*] the impact of the concealed information from confounding information (the materialization of disclosed risks that also became known at the same time as the corrective information) in order to estimate inflation in CCA's share price under the plaintiff's theory of liability."). As noted above, that was the same argument Plaintiff raised in its reply. *See* ECF 98 at 17 ("Mr. Dalrymple conducted this very analysis in *Grae* . . . to measure inflation.") (citing Dalrymple Report ¶¶ 70, 72). For that reason alone, this argument provides no basis for reconsideration.

But even setting that aside, Plaintiff's argument does not demonstrate clear error. As the Court found, Dalrymple provides no explanation as to how he would actually isolate damages attributable solely to Plaintiff's materialization-of-the-risk theory for its Marketing Claim. He offers nothing more than generic, boilerplate descriptions of supposedly "standard financial analysis and valuation tools" he supposedly could use to determine damages at some point later in this case. Dalrymple does not even specify what specific "analysis" or "tools" he would use—but rather attempts to provide a generic, non-exhaustive list of possibilities. *See, e.g.*, ECF 99-2 ¶ 75 ("Dr. Zurek ignores the availability of standard economic and valuation techniques that I discuss in the Dalrymple Report, which could be used (*if appropriate*) to estimate changing levels of inflation over time.") (emphasis added). At this stage, the Court cannot merely trust an expert's "say-so" that he will be able to reliably determine damages on a classwide basis, consistent with Plaintiff's theory of liability, later in the case. *Comcast*, 569 U.S. at 35 ("for purposes of Rule 23, courts must conduct a rigorous analysis to determine whether that is so"—*i.e.*, whether plaintiff's damages model is "consistent with its liability case"). *Comcast* requires Plaintiff to present a damages model now that is consistent with its theory of liability and that establishes that damages can be reliably determined on a classwide basis. *Id.* Plaintiff did not do so.

Nor can Plaintiff (or Dalrymple) side-step that requirement by saying that Dalrymple created such a damages model in a different case, *see* ECF 98 at 17. That model is not even before this Court. And, more importantly, "no two cases are the same," as Dalrymple concedes. *See* ECF 99-2 ¶ 72. Thus, even if Dalrymple did create an adequate damages model that was consistent with the plaintiff's theory of liability in *Grae*, he has not done so here. He has built no damages model, nor even identified the specific methodology he would apply in one.

4. *None Of The Non-Binding Authorities Plaintiff Cites Remotely Justifies Reconsideration.*

Despite asserting that reconsideration is warranted due to the Court's "clear error," Plaintiff's Motion presents no controlling precedent conflicting with the Court's ruling, as discussed above. Instead, Plaintiff discusses two district court cases and one out-of-circuit appellate ruling. *See* ECF 150 5-13 (discussing *Grae, Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575 (N.D. Cal. 2021), and *Ludlow*). None of those authorities could possibly support a finding of clear error for that reason alone. And although further discussion of these cases is unnecessary, none of these authorities remotely demonstrates that the Court should reconsider its ruling—to the contrary, they only support the Court's decision.

To start, the Court was absolutely correct that *Mulderrig* "confronted a set of circumstances strikingly similar to those before the Court here." ECF 138 at 46.[3] Just as in this case, the defendants in *Mulderrig* argued that plaintiffs' expert failed to present a damages methodology consistent with plaintiffs' materialization-of-the-risk theory of liability, thus requiring denial of certification consistent with *Comcast* and the "pre-spill" ruling in *Ludlow*. *See id.* Like here, the plaintiffs responded arguing that *Ludlow* was distinguishable because plaintiffs were proceeding

---

[3] The Court identified this case on its own. Defendants note that *Mulderrig* was decided after Defendants submitted their opposition brief (but before Plaintiff submitted its reply).

under an "out-of-pocket damages model in conjunction with their materialization-of-the-risk theory." *Id.* The *Mulderrig* court held that this generic appeal to an "out-of-pocket damages model" was of no event, as "plaintiffs' expert did not 'explain how the proposed [out-of-pocket] model calculate[ed] damages based on the materialization-of-the-risk theory,'" making that "model" insufficient to obtain certification under *Comcast. Id.* at 46-47 (quoting *Mulderrig*, 340 F.R.D. at 590). As this Court recognized, that is precisely the circumstance presented here.

In its Motion, Plaintiff argues that the Court's reliance on *Mulderrig* was misplaced because, unlike in that case, Dalrymple identifies "'the materialized risk'" at issue and "'explains how such risk would be factored into the damages model.'" ECF 150 at 13 (quoting *Mulderrig*, 340 F.R.D. at 590). That, however, is not what Dalrymple has done, as the Court has already concluded. His report does not demonstrate how his proposed damages methodology would account for Plaintiff's materialization-of-the-risk theory and isolate damages due solely to that theory. Instead, he offers generic references to potential "valuation tools" and refers to his analysis in a different case. That is not a damages model for this matter.

In fact, plaintiffs' expert in *Mulderrig* did effectively the same thing as Dalrymple did here. After defendants' expert explained how the proffered damages methodology was inconsistent with plaintiffs' materialization-of-the-risk theory in *Mulderrig*, plaintiffs' expert responded in a rebuttal report offering, like Dalrymple did here, generic assurances that "determining the inflation per share can be achieved through a common and well accepted methodology, consistent with Plaintiffs' theory," and that she would use "scientific principles and generally accepted valuation techniques" to do so. *See In re Amyris, Inc Sec. Litig.*, No. 4:19-cv-01765-YGR, ECF 95-5, ¶¶ 35, 37 (N.D. Cal. Filed Nov. 2, 2021) (attached as Exhibit A for the Court's convenience). Just like Dalrymple, plaintiffs' expert in *Mulderrig* also referred the court to a damages analysis used in a

different securities case in a misplaced effort to show that the same could necessarily be done in *Mulderrig*. *Id.* ¶ 36. The court appropriately rejected those arguments as insufficient to meet the plaintiffs' burden under *Comcast*, like the Court did here. *Mulderrig* is on all fours with this case—as the Court appropriately recognized.

The only argument Plaintiff raises as to *Ludlow* is the identical one it raised in the reply, which is that the denial of certification for the "pre-spill" class in that case "is inapposite because Plaintiff is not relying on a consequential damages theory, but rather, as the Court recognized, an 'out-of-pocket damages model widely accepted in Section 10(b) cases.'" ECF 150 at 11 (quoting ECF 138 at 45); *see also* ECF 98 at 10-11 (raising same argument in reply). The Court accurately characterized Plaintiff's purported distinction from *Ludlow* in its Opinion and found that Plaintiff still failed to satisfy *Comcast* as to its Marketing Claim. *See* ECF 138 at 45-49. Plaintiff cannot justify reconsideration by referencing the same argument it already made.

In any event, Plaintiff's appeal to an "out-of-pocket" damages methodology when pursuing a materialization-of-the-risk theory of liability does not solve the fundamental problems recognized in *Ludlow*. When the plaintiff's theory is effectively that (i) the event giving rise to the stock price decline would have occurred irrespective of the challenged statements, and (ii) the challenged statements impacted the perceived risk of that event occurring prior to its occurrence, the damages methodology necessarily would have to account for individual investors' varying levels of risk tolerance. Some investors may have refused to invest at all if they had known the "true" risk of the event occurring, while others may have still invested at the same price or at a lower one. Those investors cannot be treated the same—as doing so would either overcompensate some class members or undercompensate others. Either way, the model—like Dalrymple's here—

that proposes to use a uniform level of inflation for all class members would be inconsistent with the materialization-of-the-risk theory of liability.

*Ludlow* thus supports denying certification of the Marketing Claim. The Court, however, need not resolve that issue to deny Plaintiff's Motion, as the Order did not rely on *Ludlow* to deny class certification (and *Ludlow* is not controlling here, in any event). *See* ECF 138 at 43-49. Under either party's interpretation of *Ludlow*, it presents no authority that is contrary to the Court's holding.

Finally, Plaintiff's four-page-long appeal to *Grae* likewise demonstrates no clear error in the Court's ruling and presents no basis for reconsideration. **First**, Plaintiff already cited that case in its reply as purported support for granting class certification. *See* ECF 98 at 3, 9-11 (arguing that *Grae* shows that Plaintiff's "theory is easily capable of classwide resolution"). Dalrymple similarly discussed that case in his rebuttal report. *See* ECF 99-2 ¶ 70. And the Court even cited the case in its Order. *See* ECF 138 at 24-25. There was no oversight of this (non-controlling) authority.

**Second**, the *Grae* opinions Plaintiff cites in its Motion are irrelevant to the issue now before the Court as they were not addressing *Comcast*'s damages requirement on which the Court relied. In Plaintiff's lengthy excerpts from *Grae*, the court was discussing the separate issue of price impact—not a damages methodology. *See Grae v. Corr. Corp. of Am.*, 329 F.R.D. 570, 579 (M.D. Tenn. 2019). The key dispute at the class certification stage in *Grae* was whether the plaintiff could rely on the purported price impact of one alleged corrective disclosure (the "Yates Memorandum"), when there was no price impact from an earlier alleged corrective disclosure (the "OIG Report"). The court initially held that the OIG Report revealed the alleged truth of the challenged statements, such that any price movement from the subsequent Yates Memorandum

could not show price impact, and thus that defendants had rebutted the *Basic* presumption of reliance defeating certification. *Id.* at 577-82. After plaintiff presented new evidence not previously available to the court to show that the OIG Report did not reveal the full truth of the alleged fraud, the court reconsidered its ruling and granted certification, finding that—in light of the new evidence—the Yates Memorandum could support a finding of price impact. *See Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 499-500 (M.D. Tenn. 2019). The court did not address the damages issue here in either instance.[4]

Plaintiff is no doubt aware that those class certification rulings are inapplicable to the matters at issue in this case, so it tries to distract the Court from that reality. In its Motion, Plaintiff fails to even mention that these *Grae* rulings did not address the *Comcast* matters before this Court, nor does Plaintiff acknowledge that the excerpts quoted in the Motion address price impact, not damages. Plaintiff then tries to side-step certification entirely by citing the court's rulings in the merits stage of *Grae*, addressing motions for summary judgment and to exclude expert testimony under *Daubert*. *See* ECF 150 at 8-9 (discussing *Grae v. Corr. Corp. of Am.*, 2021 WL 1100799 (M.D. Tenn. Mar. 23, 2021) and *Grae v. Corr. Corp. of Am.*, 2021 WL 1100431 (M.D. Tenn. Mar. 17, 2021)).

There is no such motion before this Court, and neither of those opinions is relevant to determining whether Plaintiff met its burden in this case of presenting a model demonstrating that damages can be determined on a classwide basis, consistent with Plaintiff's theory of liability. Although irrelevant given that it was addressing a different question, the *Grae* court even indicated that meeting such burden would be no small task, as "[t]he calculation of damages in a case based

---

[4] In the reconsideration ruling, the court noted that defendants' expert raised certain critiques of plaintiff's damages methodology, but nothing in the opinion purported to address the deficiencies at issue here.

on the realization of a concealed risk is an inherently difficult task, because one must separate the damages caused by the concealed risk from the loss of value that would have accompanied the relevant adverse event, even if the pre-event risk had not been concealed." *Grae*, 2021 WL 1100431, at *10. Although the court concluded that Dalrymple eventually presented a model that "acknowledge[d] and addresse[d] this challenge," *id.*, Plaintiff presented no such model here.

For all these reasons, the Court was correct in finding that Plaintiff failed to present a damages model that is "'consistent with its liability case'" and that measures "damages [that] are 'attributable to that theory of liability.'" ECF 138 at 49 (quoting *Comcast*, 569 U.S. at 35). Plaintiff might be unhappy with that ruling, but the Motion presents no basis for finding that the Court committed clear error justifying reconsideration.

### B. The Court's Ruling Does Not Cause "Harm" Or "Injustice" Justifying Reconsideration.

Plaintiff also falls well short of establishing that the Court must reconsider its ruling to prevent "manifest injustice." Plaintiff's only argument in that regard is that "without certification of the Marketing Claim, class members lack any realistic opportunity to recover damages associated with this claim" because "[m]ost Class members' interests in individually prosecuting separate actions is minimal as the trouble and expense of doing so would be prohibitive when weighed against the potential recoveries." ECF 150 at 14 & n.13. Even if that were true (which Plaintiff has not shown), it would not present a justification for reconsideration. *See Pettrey v. Enter. Title Agency, Inc.*, 242 F.R.D. 384, 386 (N.D. Ohio 2007) (denying motion to reconsider and rejecting argument that failure to certify requested class would create manifest injustice); *Armstrong v. Weichert Realtors*, No. 05-CV-3120 (PGS), 2006 WL 2241677, at *3 (D.N.J. Aug. 4, 2006) (same); *Clark v. Creative Hairdressers, Inc.*, No. CV DKC 2005-0103, 2006 WL 8457029, at *6 (D. Md. Mar. 16, 2006) (same). Otherwise, reconsideration would be justified for

virtually every denial of class certification—where the plaintiff always argues that class treatment is superior due to the financial deterrents of bringing individual actions with smaller individual damages at issue. And, to be sure, Plaintiff cites no authority supporting the specious contention that the Court's ruling is manifestly unfair such that it must be reconsidered. Instead, Plaintiff appeals again to *Grae*, where the court reconsidered its class certification ruling based on new evidence, not manifest injustice. *See Grae*, 330 F.R.D. at 499-500.

In any event, the Court cannot circumvent the binding requirements for certification under Rule 23 and Supreme Court precedent in the interests of preventing "harm" to absent class members who may choose not to pursue an individual claim. When those standards are not met, the Court must deny class certification, as it has done here for the Marketing Claim. Holding a party to its burden for obtaining class certification is not manifestly unfair or unjust. Where the Court found that Plaintiff has carried its burden on class certification (*i.e.*, for the Restatement Claim), it certified the class.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Reconsideration.

18

DATED: March 27, 2023

**HOLLAND & KNIGHT LLP**

s/ W. Travis Parham

W. Travis Parham (TN BPR #16846)

511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615/244-6380
615/244-6804 (fax)
travis.parham@hklaw.com

**KING & SPALDING LLP**
JESSICA P. CORLEY (admitted *pro hac vice*)
RONNI D. SOLOMON (admitted *pro hac vice*)
BRANDON R. KEEL (admitted *pro hac vice*)
LOHR A. BECK (admitted *pro hac vice*)
LOGAN R. HOBSON (admitted *pro hac vice*)
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: 404/572-4717
404/572-5100 (fax)
jpcorley@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lohr.beck@kslaw.com
lhobson@kslaw.com

**KING & SPALDING LLP**
LISA BUGNI (admitted *pro hac vice)*
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: 415/318-1234
415/318-1300 (fax)
lbugni@kslaw.com

*Attorneys for Defendants*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2023, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to the following attorneys of record:

Christopher M. Wood
Christopher H. Lyons
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2203
cwood@rgrdlaw.com
lyons@rgrdlaw.com

Christopher Stewart
Francisco J. Mejia
Jack Gephart
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
cstewart@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

Jerry E. Martin
Bank of America Plaza
BARRETT JOHNSTON MARTIN
& GARRISON, LLC
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2202
jmartin@barrettjohnston.com

J. Alexander Hood, II
Jeremy A. Lieberman
Jonathan Lindenfeld
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: (212) 661-1100
ahood@pomlaw.com
jalieberman@pomlaw.com
jlindenfeld@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP
10 S LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
pdahlstrom@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
Tel: (615) 248-2828
pknashlaw@aol.com
robert@bramlettlawoffices.com

s/ W. Travis Parham