UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL T. CARTWRIGHT, KIRK R. MANZ and ANDREW W. McWILLIAMS,<br><br>Defendants. | Civil Action No. 3:19-cv-00407<br><br><u>CLASS ACTION</u><br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY .................................................3

III. THE SETTLEMENT WARRANTS FINAL APPROVAL....................................3

    A.  Legal Standards for Final Approval of Class Action Settlement............................3

    B.  The Rule 23 and Sixth Circuit Factors Support Approval ......................................5

        1.  The Class Was Adequately Represented .......................................................5

        2.  The Absence of Fraud or Collusion Favors Approval ................................7

        3.  The Relief Provided to the Class Is Adequate .............................................7

            a.  The Complexity, Expense, and Likely Duration of the Litigation.......................................................................................8

            b.  The Likelihood of Success on the Merits ....................................11

        4.  The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ...................................................14

        5.  Class Counsel and Plaintiff Endorse the Settlement.................................15

        6.  The Reaction of the Class Supports Final Approval.................................15

        7.  Public Interest Favors Approval of the Settlement ...................................16

        8.  Other Rule 23(e)(2) Factors Support Final Approval ...............................16

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................18

V.  THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS..................................................................19

VI. CONCLUSION..................................................................................................20

- i -

**Page**

**CASES**

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018)........................................................................7

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) ......................................................................15

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020)........................................................................13

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ..................................................................................15

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981).....................................................................................................................5

*Does 1-2 v. Déjà Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) ...................................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2015 WL 10714013 (5th Cir. Nov. 4, 2015)..........................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ......................................................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .................................................................................................12

*Gokare v. Fed. Express Corp.*,
2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013)..................................................................17

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .................................................................................................4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................................12

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006)..........................................................................................16

4857-4034-6236.v1

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .........................................................................11

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................................6, 8

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .....................................................................18

*In re Packaged Ice Antitrust Litig.*,
322 F.R.D. 276 (E.D. Mich. 2017) ..........................................................................................7

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015).........................................................................8

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)..................................................................11, 15

*In re: Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)....................................................................20

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011).....................................................................................12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................................12

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*,
2019 WL 7483663 (E.D. Ky. June 27, 2019) .........................................................................17

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ......................................................................................... *passim*

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) .........................................................................................15

*Karpik v. Huntington Bancshares Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021)................................................................7, 11, 15

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010)...................................................................................15

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006),
  *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)......................................................8

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016),
  *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
  2017 WL 6398014 (6th Cir. Nov. 27, 2017)...................................................................... *passim*

*Olden v. Gardner*,
  294 F. App'x 210 (6th Cir. 2008) ....................................................................................11

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)........................................................................18

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) .....................................................................................11, 15

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................................12

*Robinson v. Shelby Cnty. Bd. of Educ.*,
  566 F.3d 642 (6th Cir. 2009) ..........................................................................................3

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..................................................................................................16

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ..........................................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4 ........................................................................................................12, 19, 20
  §78u-4(a)(4) .................................................................................................1, 6, 17, 19
  §78u-4(a)(7) ..........................................................................................................20

4857-4034-6236.v1

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................. *passim*
    Rule 23(a)............................................................................................................20
    Rule 23(b)(3)........................................................................................................20
    Rule 23(c)(2)(B)............................................................................................19, 20
    Rule 23(e).............................................................................................................4
    Rule 23(e)(1)(B)..................................................................................................19
    Rule 23(e)(2) .................................................................................................3, 4, 16
    Rule 23(e)(2)(A) ...................................................................................................5
    Rule 23(e)(2)(B)....................................................................................................7
    Rule 23(e)(2)(C)....................................................................................................7
    Rule 23(e)(2)(C)(ii), (iii), & (iv)........................................................................17
    Rule 23(e)(2)(D) .................................................................................................17
    Rule 23(e)(3)..........................................................................................................4

4857-4034-6236.v1

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Class Representative Indiana Public Retirement System ("Plaintiff") respectfully submits this memorandum in support of its motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I.    INTRODUCTION

Plaintiff, through its counsel, has obtained a $3.75 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation.  As described below and in the Wood Declaration, submitted herewith, the Settlement was reached after four years of hard-fought litigation that entailed extensively investigating the claims, conducting comprehensive legal research to thwart Defendants' motion to dismiss, shepherding the Class's securities fraud claims through the bankruptcy of AAC Holdings, Inc. ("AAC"), pursuing and then scrutinizing over 430,000 pages of documentary evidence that AAC and numerous third parties produced, taking and defending 24 depositions of fact and expert witnesses, litigating the certification of the Class, and engaging in negotiations for a fair settlement over more than two years. *See generally* Wood Decl.  As a result of these efforts, Plaintiff was well-informed of the merits and defenses at issue, enabling it to secure a substantial and certain recovery for the Class that, when considering the significant risks of litigating a securities fraud class action such as this, is a commendable outcome.

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated May 17, 2023 (the "Stipulation") (ECF 170) or in the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and an Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Wood Declaration" or "Wood Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

- 1 -

The Court's order on February 24, 2023 granting in part and denying in part Plaintiff's class certification motion made plain the risks and uncertainties inherent in prosecuting this Litigation. ECF 138. Without certification of the so-called marketing claim, which accounted for the majority of the damages at issue, Class Members lacked any realistic opportunity to recover those damages. While Plaintiff's motion for reconsideration of the Court's class certification order was pending at the time this Settlement was reached, no assurance could be made that it would be granted, and even if granted, that Defendants would not seek an appeal or subsequently move to decertify the class.

These uncertainties facing the Class would only be exacerbated by continuing litigation, during which Plaintiff would face Defendants' anticipated summary judgment motion, pretrial motions seeking to exclude evidence and expert testimony, and trial. Additionally, AAC's bankruptcy added doubt and complication in securing any recovery for Class Members. While Plaintiff believes its claims had merit and that it would ultimately prevail, it also recognizes that at any of these points, its claims could be narrowed or dismissed entirely; by contrast, the Settlement secures a recovery for the Class without additional risk or delay.

In light of these considerations, Plaintiff and Class Counsel believe the $3.75 million Settlement is eminently fair, reasonable, adequate, satisfies the standards of approval under Rule 23, and provides a favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order[2] and, to date, not one Class Member has filed an objection. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to potential Class Members. This Plan of Allocation was prepared with the

---

[2]     *See generally* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith.

4857-4034-6236.v1
Case 3:19-cv-00407    Document 177    Filed 09/13/23    Page 8 of 30 PageID #: 3673

objective of distributing the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. It thus governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be distributed to Authorized Claimants. No objections have been filed to this method of allocation.

## II. FACTUAL AND PROCEDURAL HISTORY

The Wood Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's efforts on behalf of the Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

## III. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal Standards for Final Approval of Class Action Settlement

Rule 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled that "federal policy favor[s] settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*"). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

On December 1, 2018, amendments to Rule 23(e)(2) went into effect that provide the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;

4857-4034-6236.v1

(C)     the relief provided for the class is adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorney's fees, including timing of payment;

      (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure, Subdivision (e)(2). The Court considered these factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met. *See* ECF 175.

To evaluate the substantive fairness of a settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631; *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) ("*GMC*"), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). When

- 4 -

considering a settlement's fairness, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Thus, in assessing a settlement, the court determines "'"whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.'" An appropriate range of reasonableness 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *GMC*, 315 F.R.D. at 235.

Here, because the Settlement falls squarely "within the range of reasonableness," it satisfies the standards for final approval. *Id.*

**B.      The Rule 23 and Sixth Circuit Factors Support Approval**

**1.      The Class Was Adequately Represented**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have easily been met here. Plaintiff's claims are typical of and co-extensive with the claims of the Class, and it has no antagonistic interests with respect to the Class as a whole. Indeed, in certifying the Class following adversarial briefing, this Court previously

4857-4034-6236.v1

recognized that Plaintiff was an adequate class representative because it (i) "purchased AAC common shares during the class period" and was "alleged to have suffered losses as a result," establishing that its interests are in common with the unnamed Class Members; and (ii) has "shown that it will vigorously prosecute the interests of the class through counsel that is patently qualified." ECF 138 at 19. Since then, Plaintiff has amply demonstrated that it has an interest in obtaining the largest possible recovery in this Litigation, as do the other absent Class Members. *See In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 494 (E.D. Mich. 2008) (Plaintiffs "do not have any interests that are antagonistic to those of the Class and the record reflects that they have pursued this litigation and the settlement negotiations vigorously, sharing the common goal of maximizing recovery."). Additionally, as detailed in its declaration, Plaintiff was involved in each stage of the Litigation and worked closely with Class Counsel to achieve the best possible result for the Class. *See* Declaration of Jeffrey M. Gill in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of Allocation and for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Gill Decl."), submitted herewith.

Class Counsel have also adequately represented the Class. Class Counsel is highly experienced in securities litigation, with a long and successful track record representing investors in cases in courts throughout the country. *See* Wood Decl. As detailed in the Wood Declaration, given the amount of work done, Class Counsel had a strong appreciation of the strengths and weaknesses of the case before agreeing to the Settlement, and believes it is in the best interest of the Class. *See* Wood Decl., ¶¶71-74, 79-80. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "***was willing to, and indeed did, commit substantial 'resources . . . to represent[] the class'***").

- 6 -

### 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which concern whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 291 (E.D. Mich. 2017); *see also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

Here, the proposed Settlement was reached after four years of litigation, with both sides vigorously advocating their respective positions. Indeed, the Settlement was reached only after multiple arm's-length mediation sessions facilitated by an experienced and well-respected mediator, Gregory P. Lindstrom of Phillips ADR. Wood Decl., ¶¶76-78. The Settlement negotiations were prolonged, taking place intermittently over the course of more than two years, and involving several joint mediation sessions, the exchange of mediation briefs detailing the parties' positions, and numerous teleconferences with Mr. Lindstrom. *Id.* Although these efforts did not initially result in the Litigation's resolution, Mr. Lindstrom remained engaged as the parties proceeded litigating the claims. After a thorough evaluation of the parties' positions, Mr. Lindstrom made a mediator's proposal of $3.75 million to settle the Litigation, which the parties accepted. *Id.* As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'" *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3. The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors. Fed.

- 7 -

R. Civ. P. 23(e)(2)(C). This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense and likely duration of the litigation; and (ii) the likelihood of success on the merits. Each of these factors supports approval.

### a. The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *Delphi*, 248 F.R.D. at 497. Most class actions are "'inherently complex'" and "'settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (ellipsis in original), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to falsity, scienter, loss causation, and damages. The alleged securities fraud was characterized by the Court as involving two claims. ECF 62 at 2. First, the "restatement claim," asserting that Defendants conducted a fraudulent scheme and materially overstated AAC's account receivables, which resulted, in part, in a restatement of AAC's financial results for fiscal years 2016 and 2017 and the first three quarters of 2018. Second, a "marketing claim," alleging that Defendants had engaged in a deceptive marketing scheme and made false and misleading statements concealing AAC's deceptive marketing practices. Specifically, Plaintiff alleged that AAC operated misleading websites that were designed to appear to offer unbiased and reliable addiction treatment information when, in fact, they were lead generation tools to funnel patients to AAC's facilities. Plaintiff further alleged that to inflate web traffic to AAC's sites, AAC used "black hat" Search Engine Optimization ("SEO"), which refers to

- 8 -

improperly increasing a website's ranking in a search engine by employing practices in violation of the search engine's terms of service. Wood Decl., ¶¶6, 21-24.

Establishing the so-called restatement claim – that Defendants knowingly overstated AAC's accounts receivable – involved complicated issues of accounting and financial reporting, and required consultation and testimony from an accounting expert to prove. *See* Wood Decl., ¶70. And Defendants pressed this complexity in their defense. They argued that the allegedly false financial statements involved difficult accounting judgments and assumptions about cash collection trends, which negated scienter. Plaintiff also recognized that parsing out and proving that the restatement had caused AAC's stock to decline – as opposed to factors unrelated to the restatement causing the stock drop – would, at a minimum, be challenging, complex, and required significant analysis by an economic expert, particularly because AAC's stock price had already precipitously declined by the time AAC filed its restated financial results. *Id.*, ¶¶31, 73.

The marketing claim was no more straightforward. Based on Plaintiff's investigation and the evidence uncovered in discovery, Plaintiff believed it could prove that Defendants had made knowingly false and misleading statements when describing AAC's marketing programs as, for instance, a "best-in-class" and a "dominant sales and marketing force." *Id.*, ¶¶10, 22, 72. Yet Defendants repeatedly asserted that such statements were inactionable corporate puffery or opinions, or forward-looking statements protected by cautionary language, and that Plaintiff could not establish that Defendants made such statements with an intent to deceive. Defendants also challenged loss causation, asserting that there was no nexus between the marketing claim and the alleged disclosures, which related to changes in Google's algorithms that had caused AAC's lead generation websites – as well as many other companies' websites – to descend in the search engine's ranking. *Id.*, ¶¶31, 73. Disentangling these technologically esoteric issues and determining

- 9 -

their effect on AAC's stock price in order to prove loss causation would again require sophisticated expert analysis, whose opinions would inevitably be criticized by Defendants and their experts. *See id.*, ¶¶68-69. The complexity of these issues made victory at summary judgment or trial far from assured.

Moreover, the Court's order partially denying class certification in relation to the marketing claim significantly added to the difficulty and potential duration in securing a recovery for Class Members on this claim. Defendants argued – convincingly to the Court – that under a "materialization of the risk" theory of loss causation, Plaintiff had failed to adequately establish how damages could be reliably calculated on a class-wide basis. ECF 83 at 13-14; ECF 138 at 49. In an effort to revive this claim, Plaintiff filed a motion for reconsideration of the class certification order, which was pending when the Litigation settled. Wood Decl., ¶41. Had Plaintiff been successful, Defendants would likely appeal. Meanwhile, Plaintiff was also preparing to potentially appeal the class certification order. *See id.*, ¶84. Under either scenario, an appeal would prolong the Litigation, while the funds available for a future resolution would be further depleted.

Even if Plaintiff prevailed on the merits of either its restatement or marketing claims, the parties strongly disagreed about the amount of damages Class Members were entitled to recover. Such calculations are difficult, require expert opinion, and are prone to convoluted disputes. Thus, establishing each element of Plaintiff's claims required consideration of complex issues and voluminous evidence, often entailing the opinions of experts, who would provide reports and deposition testimony. *Id.*, ¶¶43, 68-70, 73, 76-77. Indeed, the Settlement was reached shortly before the parties were set to engage in merits expert discovery – a time-intensive and costly stage in litigation – and just months before Plaintiff anticipated facing Defendants' motion for summary judgment, and filing motions for partial summary judgment of its own. This Settlement avoids the

- 10 -

risks of any unfavorable rulings at summary judgment or on any motions to exclude Plaintiff's experts, a lengthy and uncertain trial, and the certain appeal by the non-prevailing party.[3] "As the Settlement provides an immediate, significant, and certain recovery for Class Members, this factor favors the Court's approval of the Settlement." *See GMC*, 315 F.R.D. at 236.

### b.  The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 WL 757123, at *5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).  In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement.  *UAW*, 497 F.3d at 631.

Plaintiff believes that the evidence establishes that: (i) Defendants conducted a fraudulent scheme and issued false and misleading financial statements inflating AAC's accounts receivable (Wood Decl., ¶¶6, 21) and (ii) Defendants conducted a fraudulent scheme and issued false and misleading statements portraying the strength of AAC's marketing platform, while concealing AAC's "black-hat" SEO techniques (*id.*, ¶¶6, 22), and that as a result of these misrepresentations and omissions, Plaintiff and the Class purchased AAC common stock at artificially inflated prices during

---

[3]     *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief.  In contrast, the settlement provides recovery without delay.").

- 11 -

the Class Period, and further, that Plaintiff and the other Class Members were damaged when the truth was disclosed. *Id.*, ¶¶7, 23-25. Nevertheless, Plaintiff is also cognizant of the fact that there was no guarantee that it would prevail at trial. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]

As detailed herein, and in the Wood Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Class. Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants have maintained that the evidence would have established at summary judgment (or trial) that their statements were not materially false or misleading, they had not conducted a fraudulent scheme, nor did they have scienter for the alleged misconduct. As to the restatement claim, Defendants argued that not until AAC developed financial database analytical tools did Defendants become aware, for the first time, that their provisioning of doubtful accounts based on industry trends had made their accounts receivable reporting inaccurate. *See* Wood Decl., ¶¶31, 73. Likewise, Defendants asserted that the marketing claim failed because

---

[4]     *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

- 12 -

the alleged misstatements were forward-looking statements protected by cautionary language, statements of opinion for which Defendants had a reasonable basis, or immaterial statements of corporate optimism. Defendants further contended that the fact that Google updated its algorithm affected multiple industries, including the substance use treatment industry as a whole, and was not evidence undercutting Defendants' belief that they had a "best in class" marketing engine or were intending to deceive investors. *Id.* Defendants further maintained that Plaintiff would be unable to prove loss causation because the disclosure of the restatement did not cause the stock price to react negatively, while the disclosure of Google's algorithm change was untethered to Plaintiff's marketing claim. *Id.* Moreover, in the order on class certification, the Court concluded that Plaintiff had not established that damages could be calculated on a class-wide basis under Plaintiff's "materialization of the risk" theory of loss causation as applied to the marketing claim. *Id.*, ¶40.

Class Counsel was therefore fully informed of the strengths and weaknesses of Plaintiff's case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Plaintiff's favor in order to achieve a successful result. In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Plaintiff obtained a favorable recovery. Accordingly, the proposed Settlement is a good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

- 13 -

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *GMC*, 315 F.R.D. at 236. Here, Class Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Plaintiff's claims. During the Litigation, Class Counsel had, among other things:

- researched and drafted the Complaint and its supplements;

- opposed Defendants' motion to dismiss;

- completed fact discovery, including reviewing and analyzing more than 430,000 pages of documentary evidence produced by Defendants and numerous third parties, and taking and defending 22 fact depositions;

- filed discovery motions related to privilege determinations and the production of Slack electronic messages;

- retained experts in the fields of accounting, SEO, and economics and damages to prepare opening and supplemental expert reports;

- deposed and defended experts on market efficiency, price impact, and class-wide damages, obtained partial class certification, and filed a motion for reconsideration of the Court's partial denial of class certification;

- engaged in extensive settlement negotiations with a well-respected mediator; and

- assessed the risks of prevailing on Plaintiff's claims at summary judgment and trial, the amount of damages to be awarded, and the Class's ability to collect on any judgment awarded.

Wood Decl., ¶5.

There can be no question that by the time the Settlement was reached, Plaintiff and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

- 14 -

### 5.     Class Counsel and Plaintiff Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider counsel's endorsement of the settlement, which "is entitled to significant deference." *Id.* at 238; *accord IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). This is especially true where, as here, the stage of the proceedings indicates that counsel and the Court are fully capable of evaluating the merits of Plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the prolonged negotiations to reach the Settlement, Class Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; the potential strengths of Defendants' defenses; and the risk, expense, and duration of continued litigation. Based on these considerations, Class Counsel concluded that the Settlement is not only fair and reasonable but is a favorable result for the Class. Wood Decl., ¶¶79-80; *Karpik*, 2021 WL 757123, at *6. Likewise, Plaintiff approves the Settlement. *See* Gill Decl., ¶4. "Their support also favors approval." *Karpik*, 2021 WL 757123, at *6. Accordingly, this factor supports final approval.

### 6.     The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *See Milk Antitrust Litig.*, 2013 WL 2155379, at *6; *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 783 (N.D. Ohio 2010) (small number of objections indicative of the adequacy of the

- 15 -

settlement).  Here, as detailed *infra*, Section V, as of September 11, 2023, the Claims Administrator has disseminated over 11,600 Notices to potential Class Members.  To date, not one Class Member has objected to any aspect of the Settlement.[5]  Thus, this factor favors approval of the Settlement.

### 7.  Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable," [while] settlement conserves judicial resources.'"  *GMC*, 315 F.R.D. at 241-42.  As discussed herein, the Settlement provides $3.75 million in cash, plus interest.  The Settlement puts an end to this four-year-old litigation, which, absent settlement would have continued in this Court and in the Sixth Circuit.  Thus, the Settlement also furthers public policy by conserving judicial resources.  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8.  Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.

---

[5]     As set forth in the Notice, the deadline to provide the Court and counsel with objections is September 27, 2023.

- 16 -

*See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D).  Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund.  The Court-appointed Claims Administrator will review and process the claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV.  *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

*Second*, as discussed in the accompanying fee and expense memorandum, Class Counsel is applying for an award of 17% of the common fund fee award as compensation for the services they rendered on behalf of the Class, as well as payment of litigation costs and expenses.  The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 17% award is considerably less than attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 2019 WL 7483663, at \*1 (E.D. Ky. June 27, 2019) (awarding 33% of a $20 million recovery); *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at \*4 (W.D. Tenn. Nov. 22, 2013) (collecting cases demonstrating 30.9% fee award was similar to or lower than the approved awards in other Sixth Circuit common fund cases).[6]  Notably, approval of the requested fees is separate from

---

[6]    Additional jurisprudence supporting this award is included in the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), submitted herewith.

- 17 -

consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF 170, ¶6.4.

**Third**, the parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves. Stipulation, ECF 170, ¶7.3. This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *8 (S.D.N.Y. Sept. 29, 2022); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

**Fourth**, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011). """Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.""" *Id.*

Here, the proposed Plan of Allocation is fair, reasonable, and adequate. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss. Wood Decl., ¶¶81-85. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act. Moreover, the Plan of Allocation was disclosed in the Notice mailed to potential Class Members and nominees and, to date,

there have been no objections to the Plan of Allocation. *See* Murray Decl., Ex. A. Thus, the Plan of Allocation is fair and reasonable.

## V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities fraud class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §78u-4(a)(4). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel*, 534 F.3d at 514. The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 11,600 copies of the Notice and Proof of Claim and Release via First-Class Mail to potential Class Members and nominees. *See* Murray Decl., ¶¶5-10, submitted herewith. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶11. In addition, a dedicated toll-free telephone number and website were established to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶12-13.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average

4857-4034-6236.v1

recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. A.

Plaintiff and its counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement"); *In re: Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) approve the Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

- 20 -

DATED: September 13, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
HENRY S. BATOR, #040431

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com
hbator@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART (*pro hac vice*)
CHRISTOPHER D. STEWART (*pro hac vice*)
FRANCISCO J. MEJIA (*pro hac vice*)
JACK ABBEY GEPHART (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
cstewart@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

Class Counsel

- 21 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

4857-4034-6236.v1

Case 3:19-cv-00407   Document 177   Filed 09/13/23   Page 28 of 30 PageID #: 3693

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)


Email:  cwood@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Lohr Alexandria Beck**
  lohr.beck@kslaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jack A. Gephart**
  jgephart@rgrdlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Brandon R. Keel**
  bkeel@kslaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,jkarsten@barrettjohnston.com,elusnak@barrettjohnston.com,jmartin@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **W. Travis Parham**
  travis.parham@hklaw.com,shelli.dimarco@hklaw.com,pat.grace@hklaw.com,EWard@KSLAW.com

- **Ronni D. Solomon**
  rsolomon@kslaw.com

- **Christopher Stewart**
  cstewart@rgrdlaw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)