UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>vs.<br><br>MICHAEL T. CARTWRIGHT, KIRK R. MANZ and ANDREW W. McWILLIAMS,<br><br>              Defendants. | Civil Action No. 3:19-cv-00407<br><br>CLASS ACTION<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern<br><br>MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   AWARD OF ATTORNEYS' FEES.....................................................................3

    A.   Class Counsel Is Entitled to a Fee from the Common Fund It Obtained.................3

    B.   The Court Should Award Attorneys' Fees Using the Percentage Approach...........4

    C.   The Requested Fee Award Is Below Awards Approved in Similar Cases..............6

    D.   The Fee Is Reasonable Under the Circumstances....................................................7

        1.   The Value of the Benefits Achieved.............................................................8

        2.   Public Policy Considerations......................................................................10

        3.   The Contingent Nature of the Fee...............................................................11

        4.   The Diligent Prosecution of the Litigation ................................................12

        5.   The Complexity of the Litigation ...............................................................13

        6.   The Quality of Representation.....................................................................15

    E.   Class Member Reaction .........................................................................................16

III.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................17

IV.   PLAINTIFF'S AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE ........................................................................................................19

V.    CONCLUSION...................................................................................................20

4888-0485-5421.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ..................................................................................................2

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)......................................................................................................4, 10

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ..............................................................4, 17

*Beach v. Healthways Inc.*,
No. 3:08-cv-00569, ECF 252 (M.D. Tenn. Sept. 27, 2010) .......................................................7

*Blum v. Stenson*,
465 U.S. 886 (1984).......................................................................................................4, 6

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996).................................................................................6

*Burges v. BancorpSouth, Inc.*,
No. 3:14-cv-01564, ECF 265 (M.D. Tenn. Sept. 21, 2018) ...................................................5, 6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .......................................................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885).......................................................................................................4

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ........................................................... *passim*

*Denney v. Phillips & Buttorff Corp.*,
331 F.2d 249 (6th Cir. 1964) .........................................................................................8

*Dougherty v. Esperion Therapeutics, Inc.*,
2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) .....................................................................20

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ...........................................................................................5

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015).................................................................5, 19

4888-0485-5421.v1

Case 3:19-cv-00407    Document 178    Filed 09/13/23    Page 3 of 30 PageID #: 3698

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ...................................................................................5

*Grae v. Corrs. Corp. of Am.*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ...............................................5, 6, 19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................................................8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .................................................................................12

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ......................................................................................5

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................................15

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2008) ..........................................................................16

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...................................................................................11

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .................................................................8, 15, 16

*In re Direct Gen. Corp. Sec. Litig.*,
No. 3:05-cv-0077, ECF 290 (M.D. Tenn. July 20, 2007) ..........................................7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .....................................................................15

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
2009 WL 1473975 (S.D. Ohio May 27, 2009) ......................................................7, 13

*In re Nationwide Fin. Servs. Litig.*,
2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ........................................................16

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) .........................................................................12

*In re Regions Morgan Keegan Sec.*,
2013 WL 12110279 (W.D. Tenn. Aug. 6, 2013)................................................................8

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013).....................................................5, 11, 17

*In re Sirrom Cap. Corp. Sec. Litig.*,
No. 3-98-0643, slip op. (M.D. Tenn. Feb. 4, 2000)...........................................................7

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. June 30, 2014).........................................................5, 7, 10

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)...............................................................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .............................................................................................5

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)...........................................................................................................4

*Jackson Cnty. Emps. Ret. Sys. v. Ghosn*,
No. 3:18-cv-01368, ECF 267 (M.D. Tenn. Oct. 7, 2022)...............................................5, 6

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ..............................................................6

*Miller v. Woodmoor Corp.*,
1978 WL 1146 (D. Colo. Sept. 28, 1978).....................................................................13, 14

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)...........................................................................................................6

*Morse v. McWhorter*,
No. 3:97-0370, slip op. (M.D. Tenn. Mar. 12, 2004) ........................................................6

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) .........................................................................................7, 8

*N. Port Firefighters' Pension-Loc. Option Plan v. Fushi Copperweld, Inc.*,
No. 3:11-cv-00595, ECF 143 (M.D. Tenn. May 12, 2014) ................................................5

4888-0485-5421.v1

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006),
  *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)......................................13, 17, 19

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc., et al.*,
  No. 3:11-cv-00433-ER-AEN, ECF 457 (M.D. Tenn. June 22, 2020) .....................................19

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors. Corp.*,
  315 F.R.D. 226 (E.D. Mich. 2016),
  *aff'd sub nom. Marro v. N.Y. State Tchrs.* .....................................................................4, 10, 13

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................................................................5

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018) .............................................................................................12

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ...................................................................................................7

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ..............................................................................................4, 5, 7, 8

*Schuh v. HCA Holdings, Inc.*,
  2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016).......................................................................5

*Skeete v. Republic Schs. Nashville*,
  No. 3:16-cv-00043, ECF 105, ECF 112 (M.D. Tenn. Feb. 26, 2018) ......................................7

*Smillie v. Park Chem. Co.*,
  710 F.2d 271 (6th Cir. 1983) .....................................................................................................8

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)....................................................................................................................4

*Stein v. U.S. Xpress Enters., Inc., et al.*,
  No. 1:19-cv-00098, ECF 248 (E.D. Tenn. July 12, 2023).......................................................19

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)......................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..........................................................................................................4, 10, 11

4888-0485-5421.v1
Case 3:19-cv-00407   Document 178   Filed 09/13/23   Page 6 of 30 PageID #: 3701

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010),
  *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ................................................................................5, 7

*Trs. v. Greenough*,
  105 U.S. 527 (1881)................................................................................................3, 4

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)....................................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................5

*Winslow v. BancorpSouth, Inc.*,
  No. 3:10-cv-00463, ECF 103 (M.D. Tenn. Oct. 31, 2012)....................................5, 7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ........................................................................................................1, 19
  §78u-4(a)(6) ...............................................................................................................4

## LEGISLATIVE HISTORY

  Private Securities Litigation Reform Act of 1995,
  Pub. L. No. 104-67, 109 Stat. 737 (1995)....................................................... *passim*

## SECONDARY AUTHORITIES

Stefan Boettrich & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*
  (NERA Jan. 29, 2018)..............................................................................................12

4888-0485-5421.v1

Class Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses, and for an award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

## I.       INTRODUCTION

After four years of hard-fought litigation, and following lengthy mediation efforts, Plaintiff and Class Counsel have succeeded in obtaining a $3.75 million cash recovery for the benefit of the Class.[1]  This substantial and definite recovery was achieved through the skill, hard work, and persistent advocacy of Class Counsel, who now respectfully move this Court for an award of attorneys' fees in the amount of 17% of the Settlement Amount and litigation expenses of $624,814.54 plus interest earned on both amounts.

The requested fee award is far below percentages routinely awarded in securities class actions in this District and in this Circuit, and is warranted in light of the significant recovery obtained for the Class under the circumstances, including the fact that AAC filed for Chapter 11 bankruptcy during the pendency of the Litigation.

The fee award is also reasonable in light of the significant risks involved in bringing and prosecuting the Litigation on behalf of the Class and the extensive effort of counsel in obtaining this result.  The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of

---

[1]     Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Brief").  The Court is also respectfully referred to the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and an Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Wood Declaration" or "Wood Decl.") for a more detailed history of the Litigation, the extensive efforts of Class Counsel, and the factors bearing on the reasonableness of the requested award of attorneys' fees and expenses.  All terms capitalized herein are defined in the Stipulation of Settlement dated May 17, 2023 (the "Stipulation") (ECF 170), unless otherwise indicated.  Unless otherwise noted, all emphasis in quotations is added and citations and footnotes are omitted.

- 1 -

1995 ("PSLRA"), which requires plaintiffs to "thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

In addition to the significant risks in prosecuting the Litigation under the PSLRA, the skill and effort required to achieve the Settlement was substantial. Class Counsel marshaled considerable resources and committed substantial amounts of time and expense to prosecuting the Litigation. As set forth in the Wood Declaration, the Settlement was not achieved until Class Counsel: (1) thoroughly researched and drafted Lead Plaintiff's Consolidated Complaint for Violations of the Securities Exchange Act of 1934 (the "Complaint"), as well as two supplements; (2) successfully opposed Defendants' motion to dismiss; (3) completed years of fact discovery, including reviewing and analyzing more than 430,000 pages of documents produced by Defendants and third parties, and taking and defending 22 fact depositions; (4) litigated discovery disputes; (5) retained experts in the fields of economics and damages, Search Engine Optimization ("SEO"), and accounting to prepare opening and rebuttal reports; (6) retained an economic consultant to assist with class certification, deposed and defended experts concerning market efficiency, price impact, and class-wide damages; (7) obtained an order partially granting and denying class certification, and moved for reconsideration of the class certification order; (8) engaged in extensive settlement negotiations with Defendants, assisted by a nationally-recognized, experienced mediator; and (9) assessed the risks of prevailing at summary judgment and trial. *See generally* Wood Decl.

Class Counsel undertook the representation of the Class on a fully contingent fee basis, and no payment has been made to it to date for its services or for the substantial litigation expenses incurred on behalf of the Class. Class Counsel firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as a firm that will not waver in its

- 2 -

dedication to the interests of class members, and that is committed to zealously prosecuting a meritorious case through trial and subsequent appeals. In litigation asserting claims based on complex legal and factual issues that were vigorously opposed by highly skilled and experienced defense counsel, Class Counsel succeeded in securing a favorable result for the Class. Significantly, Plaintiff supports the fee and expense request. *See* Declaration of Jeffrey M. Gill ("Gill Decl."), ¶5, filed herewith. Plaintiff was actively involved in the Litigation, including producing discovery and providing deposition testimony, as well as participating in and keeping informed about settlement discussions, and ultimately approving the Settlement. *Id.*, ¶¶3, 6. Because of this involvement, now, at the end of the case, Plaintiff is in a unique position to evaluate this result and assess whether the fee request is fair, reasonable, and should be awarded.

As discussed herein, and for the reasons detailed in the Settlement Brief and the Wood Declaration, the requested fee is fair and reasonable when considered under applicable Sixth Circuit standards and is below awards in securities class actions approved by courts in this Circuit. Moreover, as Class Counsel's previous submission detailed (ECF 174), the requested expenses and charges are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation. No objections to these requests have been received by Class Counsel.

## II. AWARD OF ATTORNEYS' FEES

### A. Class Counsel Is Entitled to a Fee from the Common Fund It Obtained

This Settlement has created a common fund. The Supreme Court has long recognized the "common fund" exception to the general rule that litigants bear their own attorneys' fees. *Trs. v. Greenough*, 105 U.S. 527 (1881). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*:

> [A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

- 3 -

whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

444 U.S. 472, 478 (1980). The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have small claims. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 n.4 (2013); *see also Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (noting that "[t]he Sixth Circuit has recognized the trend in adopting the percentage of the fund method of calculating attorney's fees in common fund cases") (*citing Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). This is particularly applicable to claims brought under the federal securities laws, as the Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).[2]

### B. The Court Should Award Attorneys' Fees Using the Percentage Approach

Class Counsel's efforts resulted in the creation of a $3.75 million common fund. Courts favor awarding fees from a common fund based on "a percentage of the fund bestowed on the class." *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939). Congress followed the Supreme Court's lead and endorsed the efficacy of the percentage-of-the-fund approach to fee awards in the context of common fund PSLRA cases. *See* 15 U.S.C. §78u-4(a)(6); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors. Corp.*, 315 F.R.D. 226, 243

---

[2]    *See also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (noting that the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

- 4 -

(E.D. Mich. 2016) ("*GMC*") ("[B]ecause the PSLRA refers to an award of attorneys' fees and expenses in relation to 'a reasonable percentage of the amount of any damages . . . actually paid to the class,' the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead Counsel's fee award.") (ellipsis in original), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

District courts in this Circuit overwhelmingly apply the percentage method, endorsed by the Sixth Circuit in *Rawlings*, 9 F.3d at 515-16, in awarding fees in common fund cases,[3] recognizing that "the percentage-of-the-fund approach more accurately reflects the result achieved [and] . . . has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *Skelaxin*, 2014 WL 2946459, at *1.[4] The percentage-of-the-fund method also "affords the Court

---

[3] *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022) (finding the percentage-of-the-fund approach "the preferred method where, as here, 'a substantial common fund has been established for the benefit of class members through the efforts of class counsel'"); *Jackson Cnty. Emps. Ret. Sys. v. Ghosn*, No. 3:18-cv-01368, ECF 267 at ¶3 (M.D. Tenn. Oct. 7, 2022) (Ex. 1) (using "'percentage-of-recovery'" to award class counsel fees in §10b-5 case); *Grae v. Corrs. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (same); *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, ECF 265 at ¶3 (M.D. Tenn. Sept. 21, 2018) (Ex. 2) (same); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (same); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (same); *N. Port Firefighters' Pension-Loc. Option Plan v. Fushi Copperweld, Inc.*, No. 3:11-cv-00595, ECF 143 at ¶3 (M.D. Tenn. May 12, 2014) (Ex. 3) (same); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, ECF 103 at ¶3 (M.D. Tenn. Oct. 31, 2012) (Ex. 4) (same); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

[4] The Sixth Circuit is not alone in its adoption of the percentage approach. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir.

- 5 -

greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

### C. The Requested Fee Award Is Below Awards Approved in Similar Cases

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of one-third of the recovery. *Blum*, 465 U.S. at 903 n* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

Courts in this District have often approved percentage awards of as much as one-third of the settlement amount, holding such an award is "'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.'" *Cosby*, 2022 WL 4129703, at *2 (awarding 33-1/3% of $35 million settlement); *Jackson Cnty. Emps.*, ECF 267 at ¶3 (Ex. 1) (awarding 33-1/3% of $36 million settlement, plus expenses); *Grae*, 2021 WL 5234966, at *1 (awarding 33-1/3% of $56 million settlement, plus expenses); *BancorpSouth*, ECF 265 at ¶3 (Ex. 2) (awarding 33-1/3% of $13 million settlement, plus expenses); *Morse v. McWhorter*, No. 3:97-0370, slip op. at 1 (M.D. Tenn. Mar. 12, 2004) (Ex. 5) (awarding a 33-1/3% fee, plus expenses); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999); *In re Sirrom*

---

1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

- 6 -

*Cap. Corp. Sec. Litig.*, No. 3-98-0643, slip op. at 6 (M.D. Tenn. Feb. 4, 2000) (Ex. 6) (awarding 33-1/3% of $15 million settlement); *Skeete v. Republic Schs. Nashville*, No. 3:16-cv-00043, ECF 105, ECF 112 at ¶14 (M.D. Tenn. Feb. 26, 2018) (Ex. 7) (approving 33-1/3% fee); *Skelaxin*, 2014 WL 2946459, at *5 ("The Court finds that the requested counsel fee of [33-1/3% of $73 million recovery] is fair and reasonable and fully justified.  The Court finds it is within the range of fees ordinarily awarded.").[5]  The fee award requested here is far below such awards.

### D.     The Fee Is Reasonable Under the Circumstances

The touchstone of an appropriate fee award in common fund cases is whether the award is reasonable under the circumstances.  *See Rawlings*, 9 F.3d at 517.  The Sixth Circuit grants a district court "'considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court.'"  *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).  In determining the reasonableness of attorneys' fees, the Sixth Circuit over the years has identified several relevant factors that District Courts "[o]ften, but by no means invariably," consider.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).  These factors include:

> "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in

---

[5]     *See also Winslow*, ECF 103 (Ex. 4) (awarding 30% of settlement, plus expenses); *Beach v. Healthways Inc.*, No. 3:08-cv-00569, ECF 252 (M.D. Tenn. Sept. 27, 2010) (Ex. 8) (awarding 30% of settlement, plus expenses); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-cv-0077, ECF 290 (M.D. Tenn. July 20, 2007) (Ex. 9) (awarding 30% settlement, plus expenses); *Thacker*, 695 F. Supp. 2d at 528 (awarding 30% of settlement and explaining "[u]sing the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit"); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%.").

- 7 -

order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Id.*; *see also Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Denney v. Phillips & Buttorff Corp.*, 331 F.2d 249, 251 (6th Cir. 1964) (describing relevant considerations as "the complexity of the legal questions involved, the results accomplished, the professional standing of [counsel], and the professional standing of [defendants'] lawyers," the effort expended, and the public policy aspect of the case). Here, the circumstances support the requested fee award.

### 1. The Value of the Benefits Achieved

Class Counsel has secured a recovery that provides for a substantial (and definite) cash payment of $3.75 million. Courts have consistently recognized that in making a fee award the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).[6] This Settlement was achieved as a direct result of the skill, effort, and tenacity of Class Counsel in prosecuting the Litigation. There is no question Class Counsel overcame numerous obstacles and took significant risks in obtaining this highly favorable result for the Class.

While Class Counsel believes Plaintiff's claims have substantial merit, if litigation were to proceed to trial there would be a meaningful risk that the Class could recover less than the amount of the Settlement or nothing at all. This risk was all the more an issue here because AAC filed for Chapter 11 bankruptcy protection early in the Litigation. *See* ECF 68. Thus, the sources for funding any recovery for the Class were limited.

---

[6]     *Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *8 (W.D. Tenn. Aug. 6, 2013) (finding "[t]he most important factor in determining the reasonableness of the requested attorney's fees . . . is the value of the benefit conferred on the Class," particularly given the complexity of the case and the fact that plaintiffs' likelihood of success was in question); *In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008) ("primary factor in determining a reasonable fee is the result achieved on behalf of the class").

Defendants consistently maintained that Plaintiff could not establish liability and/or damages, and challenged, or intended to challenge, virtually every factual and legal issue in the Litigation in an effort to defeat Plaintiff's claims. *See generally* Wood Declaration.

More specifically, Defendants argued, and were expected to continue to argue, that: (a) AAC's financial statements were not knowingly false because it was only when AAC developed financial database analytical tools did Defendants become aware, for the first time, that their provisioning of doubtful accounts based on industry trends had inflated their accounts receivable; (b) disclosure of AAC's restatement did not cause AAC's stock to react negatively; (c) Defendants had not engaged in any type of fraudulent scheme; (d) Defendants' statements regarding AAC's marketing platforms were either immaterial corporate optimism or opinions, or were protected forward-looking statements; and (e) the update in Google's algorithm had no nexus to Defendants' statements regarding AAC's marketing platform, and therefore could not serve as a basis for establishing loss causation. *Id.*, ¶¶31, 73.

Plaintiff also faced risks establishing that its damages were caused by Defendants' fraudulent scheme and misrepresentations, as well as proving the amount of damages. Indeed, the Court found in its order partially denying class certification (ECF 138) that as to Plaintiff's marketing claim, Plaintiff had not adequately set forth how class-wide damages would be calculated under its proposed "materialization of the risk" theory of loss causation. Even had the Court ruled favorably on Plaintiff's motion for reconsideration of the class certification order, which was pending at the time of the Settlement, Defendants would have persisted in arguing – whether on appeal, at summary judgment, or at trial – that Plaintiff's damages were not calculable under a "materialization of the risk" theory, and moreover, that any decline in AAC's stock price was unrelated to the alleged marketing claim and did not cause Plaintiff's damages. Likewise, as to the restatement claim,

Defendants would have argued that Plaintiff and the Class had suffered no damages because the announcement of the restatement did not cause AAC's stock to react negatively. Wood Decl., ¶73. In briefing class certification, determining the viability of calculating class-wide damages had already involved a hotly contested battle of the experts, which would have waged on through summary judgment and trial as the parties' experts disputed the calculation method and expressed vastly different opinions regarding the amount of damages, if any. *Id.*, ¶¶38-39. It is impossible to predict the outcome of such a battle or which expert's opinion would carry the day before a jury.

Faced with these substantial risks, and with a keen recognition of the delay and costs to the Class that would be involved in overcoming these risks, Class Counsel achieved a favorable settlement on behalf of the Class, justifying a fee award well "within the range of fees ordinarily awarded" in this District and Circuit. *Skelaxin*, 2014 WL 2946459, at *1.

### 2. Public Policy Considerations

The Supreme Court has emphasized that private securities actions such as this one provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310; *Tellabs*, 551 U.S. at 313. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. *Cosby*, 2022 WL 4129703, at *2. Without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and expensive class actions such as this one. *GMC*, 315 F.R.D. at 244 ("The federal securities laws are remedial in nature and adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors.").

Without the willingness of Class Counsel to assume the significant risks associated with litigation such as this one, members of the Class may not have recovered anything. Society benefits from strong advocacy on behalf of investors, and public policy favors the granting of reasonable fee

- 10 -

and expense applications such as this one. *See Tellabs*, 551 U.S. at 313 (the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions"); *Se. Milk*, 2013 WL 2155387, at *5 (Attorney fee awards "are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.").

### 3.     The Contingent Nature of the Fee

Class Counsel undertook the Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave counsel uncompensated. Wood Decl., ¶¶95-99. This risk encompasses not only the risk of zero payment but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992).

Unlike counsel for Defendants, who are typically paid an hourly rate and reimbursed for their out-of-pocket expenses on a regular basis, and thereby assumed no risk of non-payment, Class Counsel have not been compensated for any of their time or expenses since prosecution of this case began over four years ago. Courts have consistently and rightly recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Se. Milk*, 2013 WL 2155387, at *5 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.").

While high-stakes complex class actions are inherently difficult to prosecute, the PSLRA's mandatory discovery stay make securities class actions especially arduous. According to data from NERA Economic Consulting, motions to dismiss are granted, either in whole or in part, in 75% of all

- 11 -

securities class actions, sometimes years after a case is filed.[7]  Even when cases proceed past a motion to dismiss, the risk of no recovery is very real.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted in favor of defendants after eight years of litigation and after plaintiffs' counsel incurred over $6 million in expenses and worked over 100,000 hours), *aff'd*, 627 F.3d 376 (9th Cir. 2010).  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  For example, in *BankAtlantic*, the Eleventh Circuit upheld a lower court's decision overturning a jury verdict in favor of the lead plaintiff on the issue of loss causation.  *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).  The contingent nature of the representation supports the reasonable fee sought here.

### 4.    The Diligent Prosecution of the Litigation

As discussed in more detail in the Wood Declaration, the Litigation was highly contentious and involved disputes as to practically all elements of the case.  In order to obtain the $3.75 million recovery on behalf of the Class, Class Counsel: (1) researched and drafted the Complaint, including several supplements; (2) opposed Defendants' motion to dismiss; (3) completed years of fact discovery, including reviewing and analyzing more than 430,000 pages of documents produced by Defendants and third parties, and taking and defending 22 fact depositions; (4) filed discovery

---

[7]    Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*, at 19 (NERA Jan. 29, 2018), available at nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf.

motions and litigated discovery disputes related to privilege determinations and the production of Slack electronic messages; (5) retained experts in the fields of accounting, search engine optimization, and economics and damages, to prepare opening and supplemental reports; (6) deposed and defended experts on market efficiency, price impact, and class-wide damages, obtained partial class certification, and filed a motion for reconsideration of the Court's partial denial of class certification; (7) engaged in extensive settlement negotiations with Defendants, assisted by a well-respected mediator; and (8) assessed the risks of prevailing at summary judgment and trial. *See generally* Wood Decl.

The Settlement was achieved only by Class Counsel's tenacious advocacy and diligent prosecution. The significant resources devoted by Class Counsel reflect the effort required to bring this difficult Litigation to a successful conclusion and warrants approval of the requested fee.

### 5. The Complexity of the Litigation

The complexity of the issues is a significant factor to be considered in making a fee award. Courts have long recognized that securities class actions present inherently complex and novel issues. *Nat'l Century*, 2009 WL 1473975, at *4; *GMC*, 315 F.R.D. at 244; *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006) (the complexity of securities class action litigations "cannot be overstated"), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008). As Judge Finesilver noted over four decades ago in *Miller v. Woodmoor Corp.*, 1978 WL 1146 (D. Colo. Sept. 28, 1978):

> The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty of the case. . . .
>
> Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action. . . .

4888-0485-5421.v1

The complexity of a case is compounded when it is certified as a class action. . . . Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Id.* at \*4.

Judge Finesilver's comments ring even more true today and for this Litigation in particular. Although Plaintiff obtained an order partially certifying the Class, the fact that the Court was unwilling to certify in the first instance the Class as defined by Plaintiff in its motion (ECF 77) demonstrates the uncertain nature of litigating a class action. Further reconsideration by the Court, whether on its own or on Defendants' motion, could have altogether undermined this Litigation's class action status.

Moreover, despite the fact that Plaintiff believes it has uncovered sufficient evidence to sustain a jury verdict in Plaintiff's favor, Defendants believe they have countering evidence to defend each of Plaintiff's claims. Likewise, the complexity of proving and recovering full damages here cannot be overstated. The Court did not grant class certification of the marketing claim because of the perceived difficulties in calculating class-wide damages. Although Plaintiff sought reconsideration of that order, if the arguments asserted by Defendants in opposing Plaintiff's motion were persuasive, Class Members would be unable to recover damages associated with that claim, which accounted for the majority of the damages at issue in the Litigation. Likewise, if Defendants were successful in disputing that the restatement's full disclosure caused AAC's stock price to decline, that could have eliminated or significantly reduced the amount of damages recoverable by the Class. Wood Decl., ¶73. Thus, proving damages was a substantial risk. *Id.*

These legal and factual complexities required skill and resources to deal with efficiently, and made the case more difficult and unpredictable. These complexities support the requested award.

4888-0485-5421.v1

### 6. The Quality of Representation

Class Counsel include locally and nationally known leaders in the fields of securities class actions and complex litigation. Robbins Geller served as sole lead counsel in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. H-01-3624 (S.D. Tex.), in which it secured the largest recovery ever obtained in a shareholder class action. Specifically, commenting on counsel's "clearly superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide," the court in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008), stated, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *Id*. at 789-90, 797. Robbins Geller served as sole lead counsel in *In re Cardinal Health Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio), obtaining the largest securities settlement in the Sixth Circuit. In approving the requested attorneys' fees, the court noted that "[t]he quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). Robbins Geller also served as sole lead counsel in *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.), obtaining a $215 million recovery on behalf of the class – the largest securities class action recovery ever in Tennessee.

Achieving these types of settlements are not the product of one-off endeavors, but are the result of consistently providing aggressive and dedicated representation to harmed investors – even in the most difficult cases. Here, Class Counsel used its considerable skill, experience, and reputation for tenacity to negotiate a favorable result for the Class under the circumstances that eliminates the substantial delay and risk associated with summary judgment, trial, and inevitable appeal.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See Delphi*, 248 F.R.D. at 504 ("The ability of [Class] Counsel to

- 15 -

negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Defendants were represented by extremely capable attorneys from King & Spalding LLP and Holland & Knight LLP, with reputations for vigorous advocacy in the defense of complex civil cases. As detailed herein, and in the Wood Declaration, Defendants' Counsel asserted an arsenal of arguments and litigation strategies in an attempt to obtain the dismissal of this case and to minimize their clients' exposure. The ability of Class Counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of their work.

### E.    Class Member Reaction

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award.").[8]   Over 11,600 individual notices have been mailed to potential Class Members and nominees, and a summary notice was published in *The Wall Street Journal* and over *Business Wire*. Murray Decl., ¶¶10-11.  To date, there have been no objections to the fee request.[9]  Even a small number of objections by class members is evidence that the requested fee is fair given "the Class's overwhelming favorable response." *Delphi*, 248 F.R.D. at 504.

---

[8]    *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("absence of objection is remarkable," particularly among "sophisticated" class members, and such a "favorable response lends further support" to the conclusion that the requested fee is reasonable and fair).

[9]    As set forth in the Notice, the deadline to provide the Court and counsel with objections is September 27, 2023. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A.

- 16 -

There can be no dispute that all of the factors discussed above weigh in favor of the requested fee award.

**III.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Class Counsel also requests payment of litigation expenses and charges of $624,814.54. *Se. Milk*, 2013 WL 2155387, at *8 ("'Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.'"); *see* accompanying Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl.") and Declaration of Jerry Martin Filed on Behalf of Barrett Johnston Martin & Garrison, PLLC in Support of Application for Award of Attorneys' Fees and Expenses ("Barrett Johnston Decl."), attesting to the accuracy of Class Counsel's expenses. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *New Eng. Health Care*, 234 F.R.D. at 635 ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'"); *Comerica Bank*, 2013 WL 12239522, at *7 (finding expenses incurred in connection with, for example, experts, computerized research, travel, mediation, photocopying, and court filing to be "the type of expenses routinely charged to hourly clients"). Because the categories of expenses for which counsel seek payment here are the type of expenses routinely charged in similar cases, they are properly awarded from the common fund. *See Cosby*, 2022 WL 4129703, at *3 (Counsel "'is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with

document productions, consulting with experts and consultants, travel and other litigation-related expenses.'").

A significant component of counsel's expenses are the costs of experts and consultants. Class Counsel engaged an economics and damages expert to consult on issues relating to class certification, specifically market efficiency, price impact, and the calculation of class-wide damages. This expert prepared written reports, was deposed by Defendants, assisted Class Counsel in the deposition of Defendants' expert, and actively participated in the mediation process. Additionally, this expert, along with experts in accounting and search engine optimization, were consulted on various matters relating to Plaintiff's claims and had begun developing their respective reports on the merits. Each of these experts were essential to understanding the relevant issues and aiding Class Counsel in developing its litigation strategy and proving its claims. *See* RGRD Decl., ¶12(e).

The engagement of outside bankruptcy counsel also formed a portion of Class Counsel's expenses. This expense was necessary to protect Class Members' interests during the course of AAC's bankruptcy proceedings. Bankruptcy counsel helped to ensure that claims against the individual defendants were not extinguished during the bankruptcy process, and that relevant AAC documents were preserved and available for use in this Litigation. *Id.*, 12(d).

Other expenses and charges that were necessarily incurred in the prosecution of the Litigation include expenses for mediation fees, filing and witness fees, transcripts, travel, and document retrieval. *Id.*, 12.

Because these were all necessary expenses incurred by counsel, they should be paid from the Settlement Fund. These expenses are described in detail in the accompanying declarations of counsel (*see generally* RGRD Decl. and Barrett Johnston Decl.), and were described in Class

Counsel's response to the Court's May 30, 2023 Order requesting additional information concerning these expenses.  ECF 174.

## IV. PLAINTIFF'S AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Finally, Plaintiff respectfully suggests that the time and expenses that it directly and reasonably incurred for its services to the Class in connection with this Litigation should be reimbursed, as provided for by the PSLRA.  *See* 15 U.S.C. §78u-4(a)(4) (class representatives may recover the "reasonable costs and expenses (including lost wages) directly relating to the representation of the class"); *see New Eng. Health Care*, 234 F.R.D. at 635 ("'Courts . . . routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages . . . .'") (first ellipsis in original).  The Notice advised that Plaintiff may seek reimbursement for its time and expenses directly related to its representation of the Class.  *See* Murray Decl., Ex. A. at 7.

Plaintiff's declaration supports its $11,350 request for reimbursement of its time and expenses incurred in its role as Class Representative.  *See* Gill Decl., ¶6.  Consistent with district courts across the country, Judges of this Court have approved similar awards to class representatives for their time and effort expended on behalf of shareholder classes.  *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc., et al.*, No. 3:11-cv-00433-ER-AEN, ECF 457 (M.D. Tenn. June 22, 2020) (Ex. 10) (awarding $163,275 to lead plaintiff); *Grae*, 2021 WL 5234966, at *1 (awarding $17,525 to lead plaintiff); *Garden City Emps.' Ret. Sys.*, 2015 WL 13647397, at *1 (lead plaintiff award of $20,000 for time spent representing the class); *see also Stein v. U.S. Xpress Enters., Inc., et al.*, No. 1:19-cv-00098, ECF 248 (E.D. Tenn. July 12, 2023) (Ex. 11) (awarding a total of $32,000 to the representative plaintiffs); *Cosby*, 2022 WL 4129703, at *3 (plaintiff awards of $25,000, $10,000, and $10,000).

As set forth in its declaration, Plaintiff actively prosecuted this Litigation by regularly communicating with Class Counsel, responding to Defendants' discovery requests, preparing for and providing deposition testimony, reviewing documents filed in the case, discussing settlement strategy with Class Counsel, and ultimately approving the Settlement. Gill Decl., ¶¶3, 6. *See Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *8 (E.D. Mich. Nov. 19, 2020) ("Lead Plaintiffs have 'vigorously prosecute[d] the interests of the class.'"). Accordingly, Plaintiff's requested reimbursement award is reasonable and justified under the PSLRA.

## V. CONCLUSION

Counsel obtained a good result for the Class under the circumstance of this case. Therefore, for all of the foregoing reasons, Class Counsel respectfully requests that the Court approve its motion for an award of attorneys' fees and expenses, and award to Plaintiff in connection with its representation of the Class.

DATED: September 13, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
HENRY S. BATOR, #040431

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com
hbator@rgrdlaw.com

- 20 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART (*pro hac vice*)
CHRISTOPHER D. STEWART (*pro hac vice*)
FRANCISCO J. MEJIA (*pro hac vice*)
JACK ABBEY GEPHART (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
cstewart@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

Class Counsel

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/252-3798 (fax)

Email: cwood@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Lohr Alexandria Beck**
  lohr.beck@kslaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jack A. Gephart**
  jgephart@rgrdlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Brandon R. Keel**
  bkeel@kslaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,jkarsten@barrettjohnston.com,elusnak@barrettjohnston.com,jmartin@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **W. Travis Parham**
  travis.parham@hklaw.com,shelli.dimarco@hklaw.com,pat.grace@hklaw.com,EWard@KSLAW.com

- **Ronni D. Solomon**
  rsolomon@kslaw.com

- **Christopher Stewart**
  cstewart@rgrdlaw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)