# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **IRIKA SKEETE,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:16-cv-0043** |
| | ) | |
| **v.** | ) | **District Judge Waverly Crenshaw** |
| | ) | |
| **REPUBLIC SCHOOLS NASHVILLE,** | ) | **Magistrate Judge Joe Brown** |
| | ) | |
| **Defendant.** | ) | **JURY DEMAND** |
| | ) | |

## REPRESENTATIVE PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS

Irika Skeete and Allison Baird (the "Representative Plaintiffs"), on behalf of themselves and on behalf of a preliminarily certified Class, respectfully submit this Memorandum in support of their Motion for Attorney's Fees, Costs, and Incentive Awards. For the reasons explained herein, the Representative Plaintiffs respectfully request that the Court issue an order: (1) awarding attorney's fees to counsel for the Class ("Class Counsel") in the amount of one-third of the $2,200,000 Settlement Fund, or $733,333.33; (2) reimbursing Class Counsel for costs and expenses;[1] and (3) approving a $7,500 incentive award to each Representative Plaintiff.

## INTRODUCTION

This case is a certified class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), against the defendant, RePublic Schools Nashville ("RePublic"), for sending unsolicited robo-texts to over 5,300 cell phone numbers between August 2015 and January 2016. After defeating a Rule 12 motion, conducting full discovery

---

[1] As of the date of filing, those costs are $15,995.96. To the extent that Class Counsel incurs any additional costs in bringing this case to resolution, the Representative Plaintiffs respectfully request that the Court award payment of those costs and expenses as well.

(both as to class certification and the merits), obtaining certification of the Class under Rules 23(b)(2) and 23(b)(3), and defeating RePublic's petition for interlocutory appeal to the Sixth Circuit under Rule 23(f), Class Counsel and the Representative Plaintiffs negotiated a non-reversionary $2,200,000 settlement and a prohibition on RePublic from sending unsolicited robo-text messages in the future absent consent.

Class Counsel requests a fee award of one-third of this Settlement Fund, which is well within the range of acceptable fee awards in similar common fund cases (including TCPA class actions) and is objectively reasonable under the relevant factors articulated by the Sixth Circuit. The Settlement reflects one of the most favorable – if not the most favorable – monetary settlements in a TCPA robo-texting case ever achieved for a class of this size. A lodestar cross-check reflects a multiplier of only 1.33, which is on the low end of multipliers that this Court and others have found to reflect a reasonable fee award. Furthermore, Class Counsel took this case on a contingency fee basis with no guarantee of recovery, successfully litigated the action (which involved complex issues pertaining to liability and class certification) before this Court and before the Sixth Circuit against sophisticated and skilled defense counsel, and achieved excellent results for Class Members who likely would have had no legal recourse but for consolidation of their claims as a class action. These factors all confirm that the requested award is justified.

The Representative Plaintiffs also seek incentive awards of $7,500 each, which is reasonable in light of their active participation in this case for the benefit of the Class.

## BACKGROUND

I. **The Complaint and Representative Plaintiff Irika Skeete's Defeat of the Defendant's Motion to Dismiss**

On January 15, 2016, Plaintiff Irika Skeete filed this action on behalf of herself and a putative class, naming RePublic as a defendant and alleging that it violated the TCPA by sending

2

unsolicited, mass robo-texts to Ms. Skeete and class members without their prior express consent.[2]  On March 18, 2016, RePublic filed a motion to dismiss the Complaint for failure to state a claim upon which relief could be granted.[3]  On May 4, 2016, after full briefing, the Court denied the motion.[4]

## II.  <u>The Parties Engaged in Extensive Discovery</u>

The parties engaged in full discovery.  This included the production of documents, answering interrogatory and document requests, issuing a third-party subpoena to the entity through which RePublic sent the offending texts (CallMultiplier) and reviewing responsive records, issuing Public Records Act requests of Metropolitan Nashville Public Schools and reviewing the responses thereto, serving and responding to requests for admission, and conducting depositions of multiple party witnesses.  The Representative Plaintiffs each sat for a full deposition and timely responded to all written discovery served on them.

On June 1, 2016, Representative Plaintiff Skeete filed a motion for leave to amend to file a First Amended Complaint against RePublic (the "First Amended Complaint"),[5] which the Court granted on June 10, 2016.[6]  The First Amended Complaint added an additional named Representative Plaintiff, Allison Baird, and included a sub-class of individuals who indicated their desire to stop receiving unsolicited text messages from RePublic.[7]

---

[2] Dkt. No. 1.

[3] Dkt. No. 11.

[4] Dkt. No. 30.

[5] Dkt. No. 32.

[6] Dkt. No. 34.

[7] The Court did not certify the Subclass, but both Representative Plaintiffs are Class Members of the certified Class.

### III. The Representative Plaintiffs Prevailed on Class Certification

On August 1, 2016, Plaintiffs filed a motion for class certification, which RePublic vigorously contested, and with respect to which the parties made extensive written submissions.[8] On March 14, 2017, the Court held a hearing on the Motion for Class Certification. On March 21, 2017, the Court granted in part and denied in part the motion for class certification.[9] Under Rule 23(b)(3) and Rule 23(b)(2), the Court certified a class of "[a]ll individuals who were sent and received a text to their cellular telephones by RePublic Schools Nashville ('RSN') from the number (615) 270-4554 during the time period August 17, 2015, through January 15, 2016, and whose cellular phone number was obtained by RSN from the Metropolitan Nashville Public Schools database." The Class consisted of over 5,300 cell phone numbers. The Court also ordered the parties to participate in alternative dispute resolution under Local Rules.[10]

### IV. The Representative Plaintiffs Defeat RePublic's Petition to the Sixth Circuit for Interlocutory Appeal of the Rule 23 Certification Order

On April 4, 2017, RePublic filed a Fed. R. Civ. P 23(f) petition with the Sixth Circuit, seeking permission to appeal the Court's class certification order.[11] On May 12, 2017, after full briefing the Sixth Circuit issued an order denying RePublic's petition.[12]

### V. After Denial of the Rule 23(f) Petition, the Parties Engage in a Successful Mediation through a Distinguished Third-Party Neutral Mediator.

On May 31, 2017, the Parties participated in a full-day mediation through a third-party neutral mediator, the Honorable Judge Wayne Andersen (Ret.) of JAMS (the "Mediator"). Judge Andersen served as U.S. District Judge for the Northern District of Illinois for 19 years and as a

---

[8]Dkt. Nos. 37-43, 51-52, 58-64, 66-67, 77, and 79.

[9] Dkt. No. 81.

[10] *Id.*

[11] Dkt. No. 88.

[12] *Id.*

state court trial judge for seven years. The mediation and subsequent negotiations resulted in a settlement in principle for the Class (the "Settlement"), as reflected in the settlement agreement that this Court preliminarily approved (the "Settlement Agreement").[13] The parties did not negotiate attorney's fees until they had resolved all other material terms of the Settlement.[14]

As explained in the Motion for Preliminary Approval (and as will be explained in forthcoming Motion for Final Approval), the Settlement involves both monetary relief and contractual relief against future violations. The Settlement requires RePublic to pay **$2,200,000** into a non-reversionary Settlement Fund (Settlement Agreement, ¶¶ II.23 and III.A), from which Class Members can recover *pro rata* cash payments (net of attorney's fees and expenses, claims administration costs, and the Representative Plaintiffs' Incentive Awards) on a claims-made basis. As a condition of the Settlement, RePublic has also agreed to cease sending any text messages using an automatic telephone dialing system without prior express consent, either directly or by authorizing another entity to do so. (*Id*. at ¶ II.A.)

The Settlement provides that Class Counsel will apply to the Court for an award of attorney's fees up to one-third of the Settlement Fund, as well as for out-of-pocket expenses incurred in pursuing the litigation through final approval. (*Id*. at ¶ III.G.) As part of the Settlement, Defendants also agree not to object to the application for a payment of up $7,500 from the Settlement Fund as an incentive award to each of the Representative Plaintiffs, subject to Court approval. (*Id.* at ¶ III.F.). The Settlement is not conditional on the Court's approval of the requested attorney attorneys and costs or the requested incentive awards. (*Id.* at ¶¶ III.G and III.F.)

---

[13] Dkt. No. 102-1 (Ex. A to Notice).
[14] Stranch Decl., ¶ 18.

## VI. Preliminary Approval

On September 15, 2017, the Representative Plaintiffs filed a Motion for Preliminary Approval, Approving Notice, Setting Objection and Opt-Out Deadlines, and Scheduling Final Approval Hearing ("Motion for Preliminary Approval").[15] The Court held a hearing on the motion on September 18, 2017,[16] the Representative Plaintiffs (with RePublic's assent) filed a revised Settlement Agreement thereafter for the Court's approval.[17]

On November 7, 2017, the Court issued an Order (1) Preliminarily Approving Class Action Settlement, (2) Approving Notice Plan, and (3) Setting Final Approval Hearing ("Preliminary Approval Order").[18] The Court found that the proposed Settlement Agreement is "fair, reasonable, and adequate, and within the range of possible approval" (*id.* ¶ 4), was "negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator" (*id.*), and (c) that the form of notice and associated class notification procedures were "appropriate and reasonable" (*id.*). The Order set deadlines for objections and opt-out notices, and set a final approval hearing for February 26, 2018.

## VII. Class Counsel Oversees the Claims Administrator and Expands Class Notice

Following the Preliminary Approval Order, Class Counsel has worked with the Claims Administrator, Dahl Administration, to facilitate notice to the Class. These efforts have included reviewing and cross-checking a master list of numbers provided by RePublic to link addresses to particular Class Members, handling questions from the Claims Administrator about class notice

---

[15] Dkt. Nos. 95-98.
[16] Dkt. Nos. 100 and 101.
[17] Dkt. No. 102.
[18] Dkt. No. 103.

procedures, and analyzing updates from the Claims Administrator about the status of class notice.

In an exercise of diligence and good faith, Class Counsel expanded Class notice procedures beyond those previously approved by the Court as consistent with due process. First, after the Claims Administrator alerted Class Counsel that mailings relative to approximately 900 numbers in the Class were returned as undeliverable, Class Counsel worked with the Claims Administrator to set up two rounds of live calls to those numbers to provide notice of the Settlement and to explain claims procedures, and the Claims Administrator was able to speak with a live person and/or leave voicemails for most of those numbers.[19] According to the Claims Administrator, additional Class Members received notice of the Settlement and filed valid claims as a result of these extra notification efforts. Second, Class Counsel directed the Claims Administrator to send an additional round of mailings to Class Members who had not yet submitted a claims form as of January 17, 2018. The Claims Administrator has informed Class Counsel that these efforts have also resulted in the submission of additional claims. Finally, Class Counsel also engaged in social media efforts to publicize the Settlement, including multiple posts to the firm's website, Facebook page, and Twitter account.

Class Counsel undertook these efforts for the benefit of the Class. Class Counsel has sought to ensure that as many Class members as possible – including at least every Class Member with either a valid address in RePublic's records or a functioning cell phone number – received notice of the Settlement. At Class Counsel's direction, the vast majority of Class

---

[19]As will be explained in connection with the final approval papers, (1) in some cases, the Claims Administrator contacted a particular number twice (through a direct conversation and/or voicemail); and (2) holders of certain cell phone numbers in the Class could not be reached at all for one of several reasons (*e.g.*, the number was disconnected or the number simply rang through without going to voicemail).

Members have receiveds noticed twice, participation in the Settlement has increased as a result, and no Class Members have filed any objections or exclusion requests as of the date of filing.

**LEGAL STANDARD FOR FEE AWARDS**

**I.     Class Counsel is Entitled to a Reasonable Fee from the Settlement Fund**

The Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[20]  This doctrine, often referred to the as "common fund doctrine," "rests on the on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."[21]

Reasonableness is the ultimate standard for setting fees in a common fund case.  "In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."[22]  When awarding fees, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.[23] Several factors may affect the reasonableness of an award: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.[24]

---

[20] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).
[21] *Boeing*, 444 U.S. at 478.
[22] *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *accord Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).
[23] *Rawlings*, 9 F.3d at 516.
[24] *Moulton*, 581 F.3d at 352 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)); *accord Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

## II. The Percentage-of-the Fund Method of Assessing the Reasonableness of the Plaintiff's Fee Request is Appropriate in This Case

Trial courts have discretion to award fees based on either (1) a percentage-of-the-fund calculation, or (2) a lodestar/multiplier approach.[25]  Under the "percentage-of-fund" method, the court determines a percentage of the settlement to award class counsel.[26]  In the "lodestar/multiplier approach," "the court calculate[s] the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates," which the Court then increases using a "multiplier" to account for, *inter alia*, the costs and risks involved in the litigation.[27]

The percentage-of-the fund method is the preferred method in common fund cases within the Sixth Circuit.[28]  As the Sixth Circuit has explained, this method "more accurately reflects the results achieved," and "has a number of advantages: it is easy to calculate, it establishes more reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation."[29]  Courts within the Sixth Circuit have agreed that this method promotes efficiency, aligns the interests of class counsel

---

[25] *Rawlings*, 9 F.3d at 516.

[26] *See In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 1029, 1041 (S.D. Ohio 2001).

[27] *Id.* at 104 (citing *Newberg*, § 12.55 (3d ed. 1992).

[28] *See In Re Se. Milk Antritrust Litig.*, Master File No. 2:08-MD-1000, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("[T]he trend in the Sixth Circuit is towards adoption of a percentage of the fund method in common fund cases") (internal quotation omitted); *In re Skelaxin (Metaxalone Antitrust Litig.)*, No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (observing trend and adopting percentage of the fund approach); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ. A 3-98-0266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 10, 1999) ("The preferred approach to calculating attorney's fees to be awarded in a common benefit case is as a percentage of the class benefit"); *see also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. Feb. 16, 2017) (approving 38% of fund award in common fund class action settlement).

[29] *Rawlings*, 9 F.3d at 516; *see also in Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("The percentage of the fund . . . method . . . most closely approximates how lawyers are paid in the private market and incentivizes lawyers to maximize the Class recovery, but in an efficient manner.").

Case 3:19-cv-00407 Document 178-7   Filed 09/13/23   Page 10 of 27 PageID #: 3759
Case 3:16-cv-00043 Document 1105   Filed 01/26/18   Page 9 of 21 PageID #: 2403

with the class, and conserves judicial resources.[30]  Indeed, the Supreme Court has suggested that the percentage-of-the-fund approach is part and parcel of a common fund award.[31]

**APPLICATION**

I.  **The Requested Fee Falls Within the Range of Percentage Fees Considered Reasonable and Fair by Courts within the Sixth Circuit.**

Courts in this Circuit routinely cite 20 to 50 percent as a reasonable range for attorney's fees in common fund cases.[32]  Thus, a request for one-third of a common fund "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."[33]  Furthermore, even in cases involving circumstances less compelling than those presented here, courts in TCPA class action litigation have consistently awarded fees consisting of one-third or more of the settlement.[34]  The fee requested here is therefore well within the

---

[30] *In re Skelaxin*, 2014 WL 2946459, at *1. By contrast, the lodestar method has been criticized as wasting judicial resources by requiring courts to "pore over time sheets," as not appropriately correlating a fee award with results achieved, and as creating a disincentive for class counsel to handle a case efficiently. *Id.* Courts have thus re-embraced the percentage-of-fund method after a "period of experimentation with the lodestar method." *Manual for Complex Litigation (Fourth)* § 14.121, at 187 (2004). The lodestar method is now used to award fees in only a small number of class actions, usually when the settlement calls for substantial non-monetary relief.

[31] *See Blum*, 465 U.S. at 900 n. 16 ("Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.")

[32] *See Broadwing*, 252 F.R.D. at 380; *New England Health Care Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627, 633 (W.D. Ky. 2006); *Manners*, 1999 WL 33581944, at *29; *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993).

[33] *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (awarding one-third of common fund); *see also Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding one-third of common fund and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery"); *In Re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the common fund).

[34] *See, e.g.*, *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953 (N.D. Ill. Nov. 1, 2010), Dkt. No. 146, Final Approval Order (attached as **Exhibit A** hereto) (approving fee award of one-third of settlement fund in a TCPA case); *Martin v. JTH Tax, Inc.*, Case No. 1:13-cv-6923 (N.D. Ill. Sept. 23, 2015), Dkt. No. 86 (attached as **Exhibit B** hereto) (approving fee award of 1/3 of

10

range of fees considered to reasonable in a common fund case generally and a TCPA common fund case in particular.

## II. Application of Relevant Factors Identified by the Sixth Circuit Confirms that the Requested Fee is Reasonable

### A. The Benefits Conferred on the Class are Extraordinary

The primary factor in determining a reasonable fee is the result achieved on behalf of the class.[35] Here, Class Counsel have procured a $2,200,000 non-reversionary Settlement Fund and relief against future violations. As previously explained in support of the Motion for Preliminary Approval (and as will be reinforced in the final approval papers), the prospective monetary recovery for each Class Member is extraordinary. To the best of Class Counsel's knowledge, for a case of this magnitude this is one of the largest – if not the largest – TCPA robo-texting class settlements ever reached on a per-Class Member basis.[36] Class Members stand to recover hundreds or even thousands of dollars per text. The Settlement also contractually binds RePublic not to send robo-texts in the future using an auto-dialer without prior express consent, which protect Settlement Class Members against further violations. That relief is also significant, given

common fund and $10,000 incentive payment to class representative in a TCPA case); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 2015 WL 4498741 (N.D. Ill. July 23, 2015) (approving award of one-third of the common fund in a TCPA case, because "the one-third contingency fee is well within the normal range in common fund cases"); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. Nos. 87 (without attachments) and 91) (awarding one-third of common fund) (attached as collective **Exhibit C** hereto); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Dkt. Nos. 79 and 87) (attached as collective **Exhibit D** hereto) (reflecting fee award of one-third of settlement fund).

[35] *In re Delphi Corp. Sec. Derivative & ERISA Litigation*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *see also Rawlings*, 9 F.3d at 517 ("[O]ne of the primary determinants of the quality of work performed in the result of obtained."); *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983) (noting that the most critical factor in awarding fees is the result achieved by counsel).

[36] *See* Dkt. No. 96 at p. 12 and p. 12 n. 36 (collecting cases). As explained therein, the monetary recovery in this case dwarfs recoveries in other TCPA class actions, which often amount to under $3.00 per class member on average.

Case 3:19-cv-00407-43 Document 178-7 Filed 09/13/23 Page 12 of 27 PageID #: 3761
Case 3:18-cv-00043 Document 105 Filed 01/26/18 Page 11 of 21 PageID #: 2403

that, notwithstanding numerous complaints from text recipients, RePublic had continued to send waves of unsolicited texts to Class Members until the day that this lawsuit was filed.

As this Court has already acknowledged, individual Class Members likely would have received no relief at all absent a Class settlement. Furthermore, Class Counsel faced substantial obstacles to achieving a recovery in this case, including a Rule 12 motion, class certification, a Rule 23(f) petition to the Sixth Circuit, a potential Class-wide defense in light of the Federal Communications Commission's intervening *Blackboard* decision, and a potential Class-wide defense that CallMultiplier did not constitute an "automatic telephone dialing system" under the TCPA. The risks and complexities inherent in this litigation therefore reinforce the value of the benefits conferred on the Class. Finally, the overall value of the Settlement is reinforced by the lack of any objections from Settlement Class Members as of the date of this filing.

This factor therefore supports the requested fee.

**B.  The Value of the Services on an Hourly Basis as a Lodestar Cross-Check**

Courts may use the lodestar method as a "cross-check" on the reasonableness of the requested fee. To do so, the Court calculates the lodestar (the hours reasonably expended on the litigation multiplied by reasonable hourly rates), and then calculates a "multiplier" by comparing the lodestar to the amount of fees requested.[37] A reasonable multiplier above the lodestar reflects a reasonable fee, because it accounts for factors such as the contingency risk of the litigation and the quality of the work performed.[38] Courts within the Sixth Circuit typically approve lodestar

---

[37] *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007); *Broadwing*, 252 F.R.D. at 381.
[38] *See New York State Teacher's Retirement Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243-44 (E.D. Mich. 2016).

12

multipliers of up to 4.5, and even as high as 10.[39]  In contrast to a full lodestar analysis, a lodestar

cross-check does not call for exhaustive scrutiny of the hours recorded by counsel.[40]

Here, as supported by the accompanying Stranch Declaration, Class Counsel already has

spent over 835 combined hours on this litigation (exclusive of fees associated with this petition

itself).  These hours were reasonable and the necessary to prosecuting the claims of the

Representative Plaintiffs and the Class, relating to such tasks as drafting pleadings, briefing (and

defeating) a Rule 12 motion, conducting written and deposition discovery, analyzing voluminous

records and spreadsheets of information produced by the defendant and CallMultiplier,

responding to written discovery from the defendant, preparing clients for deposition and

defending depositions, taking depositions of multiple witnesses, briefing and arguing a disputed

motion for class certification, drafting preliminary approval papers, participating in a mediation

and settlement negotiations, and overseeing the notice process.

At reasonable and customary complex litigation rates, this results in a lodestar figure of

approximately **$550,000**.[41]  Measured against the requested fee of $733,333.33, the current

---

[39] *See, e.g.*, *Manners*, 1999 WL 33581944, at *31 ("[p]laintiffs' counsel's request for a multiplier of 3.8 is fully warranted.  This multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10."); *In Re Se. Milk*, 2013 WL 2155387, at *4 (lodestar multiplier of 1.9 was "within, but in the bottom half of, the range of typical lodestar multipliers"); *Lowther v. AK Steel Corp.*, No. 1::11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (finding that 3.06 multiplier was "very acceptable . . . especially in light of the extraordinary service rendered by counsel on behalf of the Class").

[40] *Cardinal*, 528 F. Supp. 2d at 767.

[41] The rates for this calculation are Branstetter's usual and customary complex litigation rates, which are equivalent to rates customarily charged for comparable attorney services in non-contingent matters. *See* Stranch Decl. at ¶ 27; *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 793-94 (N.D. Ohio 2010) (accepting as reasonable rates of $825 per hour and $650 for attorneys and $215 per hour for staff); *Gilbert v. Abercrombie & Fitch, Co.*, No. 15-cv-2854, 2016 WL 4159682, at *16-17 (S.D. Ohio Aug. 5, 2017) (accepting attorney rates as high as $850 per hour as reasonable). The rates reflect the firm's expertise and pre-eminent nationwide success in complex, consumer protection, and class action litigation.  It is proper to use current rates, rather than historical rates, to compensate counsel for delay by using current

lodestar multiplier is therefore **just 1.33**. This low multiplier reinforces the reasonableness of the requested fees, as it is substantially lower than multipliers approved as reasonable in common fund cases within the Sixth Circuit [42] and in TCPA common fund settlements.[43]

Of course, this multiplier and the associated lodestar do not account for additional fees that Class Counsel reasonably will incur, including further time spent overseeing claims administration, preparing final approval papers, participating in a final approval hearing, and handling any post-approval proceedings. The multiplier therefore will drop even further.

Accordingly, the lodestar cross-check confirms that the requested fee is reasonable.

### C. Class Counsel Undertook this Case on a Contingency Fee Basis

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorney's fees. When counsel brings a putative class action on a contingency fee basis, counsel assumes "a substantial risk of non-payment for legal work and reimbursement of out-of-pocket expenses advanced."[44] This factor therefore "accounts for the substantial risk an attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed."[45] Thus, the "[f]ailure to make any provision for risk of loss may result in systemic

---

hourly rates in examining the lodestar. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *Broadwing*, 252 F.R.D. at 381; *see also Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1984) (indicating that use of current rates is appropriate in lodestar analysis).

[42] *See supra* FN 36; *see also Huyer*, 849 F.3d at 399-400 (approving lodestar multiplier of 1.82 as "well within the range of multipliers awarded in this and other circuits").

[43] *See, e.g., Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal.) (approving fee award of 1/3 of settlement fund that reflected a lodestar multiplier of 2.52); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, Civil Action No. 08CV3610 (CLW), 2015 WL 2383358, at * 8 (D.N.J. May 18, 2015) (approving one-third fee award reflecting a lodestar multiplier of approximately two, which was "well within the acceptable range").

[44] *In Se. Milk*, 2013 WL 2155387, at *5.

[45] *Lonardo*, 706 F. Supp. 2d at 796.

undercompensation of plaintiffs' counsel in a class action case, where . . . the only fee that counsel can obtain is, in the nature of the case, a contingent one."[46]

Here, Class Counsel undertook this litigation on a contingent fee basis. Class Counsel therefore assumed a significant risk that the litigation would yield no recovery, thereby leaving counsel entirely uncompensated for its time and its out-of-pocket expenses. Indeed, Class Counsel brought this case in January 2016, has devoted over 835 hours of time on the case already, and has incurred almost $16,000 of reasonable and necessary expenses. Because the fee in this matter is entirely contingent, Class Counsel has faced a real risk that it could recover nothing for its efforts. Nevertheless, as reflected on the docket and as supported by the Stranch Declaration, Class Counsel committed substantial time and money to the vigorous – and ultimately successful – prosecution of this litigation for the benefit of the Class. Accordingly, the contingent nature of the Class Counsel's representation strongly favors approval of the requested fee.

### D. Public Policy Favors the Requested Award

"Adequate compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of" law.[47] Accordingly, "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."[48] Here, the Court has already held in this case that, "[g]iven the limited statutory damages available, individual class members would likely not file their own actions against

---

[46] *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992); *see also Blum*, 465 U.S. at 902 (Brennan, J., concurring) (noting "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee").

[47] *In re Broadwing*, 252 F.R.D. at 381 (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985)).

[48] *In re Cardizem*, 218 F.R.D. at 534.

RSN, simply because of the expense."[49] Class Counsel therefore undertook a difficult and time-consuming class action case – which has already spanned over two years of litigation – to pool the claims of numerous class members who otherwise would not have vindicated their TCPA rights. Awarding an appropriate fee will continue to encourage highly qualified counsel to undertake time-consuming class action litigation (at substantial monetary risk) to vindicate the rights of Class members who otherwise might have no practical means of redress. This factor therefore also supports the requested fee award.

### E. Complexity of the Litigation

The complexity and novelty of the factual and legal issues presented, and the settlement negotiations necessary to resolve those issues, are factors to be considered in the approval of a fee request.[50] To the best of Class Counsel's knowledge, this case involved the first (and perhaps only) lawsuit against a charter school for sending recruitment texts using robo-texting technology. From the outset, it therefore involved a novel factual posture and the likelihood of novel liability defenses. Indeed, on August 4, 2016, during the pendency of this case, the FCC released a declaratory ruling in *Blackboard* (FC16-88, CG Docket No. 02-278), defining certain special exceptions to the application of the TCPA relative to public schools. RePublic cited this ruling as reinforcing a novel Class-wide defense to liability in this case. This case also involved difficult issues regarding class certification, including whether individualized issues of consent would predominate over Class issues (as RePublic strenuously argued). Class Counsel therefore faced many hurdles in prosecuting this litigation, including the real possibilities that (1) the Court would deny class certification, (2) the Sixth Circuit would overrule any class certification

---

[49] Dkt. No. 80 at p. 10.

[50] *See Sulzer Hip Prosthesis & Knee Prosthesis*, 268 F. Supp. 2d 907, 939 (N.D. Ohio June 12, 2003).

order in response to the petition for interlocutory appeal, or (3) the Court would grant class certification but dismiss the claims on the merits in their entirety in light of the *Blackboard* ruling or on some other basis. Accordingly, this factor also strongly supports Class Counsel's fee and expense request.

### F. Class Counsel Are Qualified Complex Litigation Practitioners Who Prevailed Against Against Skilled Defense Counsel

Class Counsel submits that it has significant legal expertise, which it brought to bear in successfully prosecuting this class action and in securing the settlement. As detailed in the accompanying Stranch Declaration, Class Counsel has substantial expertise and decades of success nationwide in class actions, consumer rights, TCPA matters, and other forms of complex civil litigation.[51] A firm resume, which identifies some of the firm's most notable accomplishments, is attached as Exhibit A to the accompanying Stranch Declaration.

---

[51] For example, J. Gerard Stranch, IV was appointed to the Plaintiffs' Steering Committee in the *In re: Volkswagen "Clean Diesel" Multi-District Litigation*, in which the district court recently approved a settlement of $15 billion (including a buyback fund of over $10 billion to eligible class members). This settlement was reported as the largest auto scandal payout in U.S. history. Similarly, in *In re Wellbutrin XL Antitrust Litigation*, in its role as co-lead counsel, the firm also successfully petitioned for certification of a class of indirect purchasers for a brand and generic version of a pharmaceutical antidepressant, achieved a $12 million settlement for that class, and received praise from the presiding district court judge for its work. The Firm also served on the Plaintiffs' Executive Committee in *Dahl v. Bain Capital Partners, LLC*, a federal antitrust case challenging bid rigging and market allocation in the private equity/leveraged-buyout industry, which reached a $590.5 million settlement approximately two months before trial and was finally approved in 2015. J. Gerard Stranch IV also currently serves on the Plaintiffs' Steering Committee in the *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, a mass-tort MDL proceeding stemming from the 2012 fungal meningitis catastrophe caused by tainted pharmaceuticals that resulted in the deaths of over 60 people and 700 fungal infections across the country. Although the compounding pharmacy ultimately filed for Chapter 11 bankruptcy protection, Branstetter (along with the rest of the Plaintiffs' Steering Committee) secured over $230 million for victims in settlements with the compounding pharmacy, its vendors, and its health-care facility customers. Finally, Class Counsel also recently obtained final approval of a $1.6 million class settlement in a TCPA "junk fax" class action in *Davis Neurology, P.A. v. Dental Equities, LLC, et al.* (E.D. Ark.).

The quality of opposing counsel is also important when the Court evaluates services provided by plaintiffs' counsel.[52] Here, RePublic is represented by qualified counsel from the law firm of Bass, Berry & Sims, which has a well-deserved reputation for vigorous advocacy in defending complex civil actions. Defense counsel mounted formidable opposition in this case throughout, including a Rule 12 motion, opposition to the Rule 23 certification motion, and a petition for interlocutory appeal under Rule 23(f). Class Counsel defeated each of these efforts and thereafter obtained an extraordinary settlement for the Class. The ability of Class Counsel to obtain these extraordinary results in the face of determined, skilled opposition attests to the quality of Class Counsel's work.[53]

This factor therefore also strongly favors the requested fee award.

### G. Summary

All six factors strongly favor the requested fee award of one-third of the Settlement Fund.

### III. The Court Should Approve Class Counsel's Request for Expenses

"Expense awards are customary when litigants have created a common settlement fund for the benefit of a class."[54] These expenses are typically awarded so long as they were "fair and

---

[52] *See Dick v. Sprint Commc'ns Co., L.P.*, 297 F.R.D. 283, 301 (W.D. Ky. 2014) ("Counsel for both sides are skilled attorneys who brought extensive experience and knowledge to their motion practice, the fairness hearing, and the bargaining table."); *see also In re Delphi*, 248 F.R.D. at 504 ("The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested.");

[53] *See In re Se. Milk*, 2013 WL 2155387, at *4 ("Class counsel, have efficiently and competently managed their enormous tasks and have vigorously and effectively prosecuted the case on behalf of the class. They have also been opposed by equally experienced and highly competent counsel for defendants and have achieved an excellent result for their clients.")

[54] *Id*. at *8; *Broadwing,* 252 F.R.D. at 382 (awarding requested expenses as "reasonable and necessary expenses, including photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, deposition expenses, and expert fees and expenses"); *Delphi*, 248 F.R.D. at 504.

18

reasonable."[55] Here, Class Counsel respectfully requests that the Court reimburse expenses of $15,995.96, reflecting the out-of-pocket expenses incurred in this case. These include costs and expenses for filing fees, service of process, transcript fees, expert fees, mediation fees, and travel expenses associated with the mediation (which took place in Chicago, Illinois). Class Counsel incurred these charges with no guarantee of reimbursement. These charges were fair, reasonable, and incurred for the benefit of the Class, and therefore should be reimbursed.[56]

### IV.    The Requested Incentive Awards to Plaintiffs are Reasonable

Courts routinely approve service payments to recognize individuals' service to the Class and to reward them for contributing to the enforcement of laws through the class action mechanism.[57] These awards are "intended to compensate class representatives for work done on behalf of the class, to make up for the financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[58]

Here, the Representative Plaintiffs initiated this litigation and were instrumental to its successful outcome. They reviewed pleadings, provided timely written discovery responses, sat for full depositions, and were actively involved in settlement negotiations. They remained apprised of the status of the litigation throughout this case, including regular correspondence with undersigned counsel. They also reviewed and agreed to all terms of the Settlement before it was executed. Accordingly, the Representative Plaintiffs respectfully request service awards of $7,500 each. This reward is well within the reasonable range for a case of this size and

---

[55] *In re Se. Milk*, 2013 WL 2155387 at \*8.

[56] Class Counsel also respectfully requests that the Court authorize payment of any additional costs and expenses that will be reasonably incurred by Class Counsel through the final resolution of this lawsuit.

[57] *See, e.g.*, *Fruit of the Loom, Inc.*, 234 F.R.D. at 635 (approving reimbursement payments exceeding $27,000 to four lead plaintiffs in a class action).

[58] *In re Se. Milk*, 2013 WL 2155387 at \*8 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

complexity,[59] and awarding these amounts to the Representative Plaintiffs will still result in extraordinary monetary compensation to participating Class Members.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court (1) award attorney's fees in the amount of $733,333.33, (2) award payment of litigation expenses of $15,995.96 plus any further expenses accrued through final resolution of this lawsuit, and (3) award $7,500 to each Representative Plaintiff.

Dated: January 26, 2018

Respectfully submitted,

*/s/* **J. Gerard Stranch, IV**
Joe P. Leniski, Jr., BPR# 22891
J. Gerard Stranch, IV, BPR# 23045
Anthony A. Orlandi, BPR# 33988
BRANSTETTER, STRANCH &JENNINGS, PLLC
The Freedom Center
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
jleniski@bsjfirm.com
gstranch@bsjfirm.com
aorlandi@bsjfirm.com

*Attorneys for Representative Plaintiffs*

---

[59] *See In re Se. Milk*, 2013 WL 2155387, at *8 (approving $10,000 incentive awards and referencing incentive awards in other cases up to $50,000); *Landsman & Funk*, 2015 WL 2383358, at *8-*9 (issuing $10,000 incentive award to representative plaintiff in TCPA class action).

CERTIFICATE OF SERVICE
# CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on January 26, 2018 a true and correct copy of the foregoing has been served on the following counsel of record via the Court's electronic filing system:

David R. Esquivel
Elaina Al-Nimri
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
desquivel@bassberry.com
eal-nimri@bassberry.com

*/s/* **J. Gerard Stranch, IV**_____
J. Gerard Stranch, IV

21

Case 3:19-cv-00407 Document 178-7 Filed 09/13/23 Page 22 of 27 PageID #: 3771
Case 3:18-cv-00043 Document 105 Filed 01/26/18 Page 21 of 21 PageID #: 413

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **IRIKA SKEETE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:16-cv-00043** |
| | ) | **JUDGE CRENSHAW** |
| **REPUBLIC SCHOOLS NASHVILLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## FINAL APPROVAL ORDER AND JUDGMENT

The Court having held a final approval hearing on February 26, 2018, notice of the hearing having been duly given in accordance with this Court's Order (1) Preliminarily Approving Class Action Settlement, (2) Approving Notice Plan, and (3) Setting Final Approval Hearing (the "Preliminary Approval Order"), under Fed. R. Civ. P. 23(c)(2), and having considered all matters submitted to it at the final approval hearing and otherwise, and finding no just reason for delay in entry of this Final Approval Order and Judgment.

It is hereby ORDERED AND DECREED as follows:

1. The Settlement Agreement dated October 30, 2017, including its Exhibits (the "Agreement"), and the definition of words and terms contained therein are incorporated by reference and are used hereafter. The terms and definitions of this Court's Preliminary Approval Order (Dkt. No. 103) are also incorporated by reference in this Final Approval Order and Judgment.

2. This Court has jurisdiction over the subject matter of the Action and Over the Parties, including all Settlement Class Members with respect to the following Class certified under Rules 23(a), 23(b)(2) and 23(b)(3):

1

All individuals who were sent and received a text to their cellular telephones by RePublic Schools Nashville ("RePublic") from the number (615) 270-4554 during the time period August 17, 2015 through January 15, 2016, and whose cellular phone number was obtained by RePublic from the Metropolitan Nashville Public Schools database.

Excluded from the Class are RePublic, and any affiliate, subsidiary or division of RePublic, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt-out of the Class.

3. The Court here by finds that the Settlement Agreement is the product of arm's length settlement negotiations between the Parties facilitated by a third-party neutral mediator.

4. The Court hereby finds and concludes that Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement.

5. The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best means of providing notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement Agreement and this Final Approval Order and Judgment.

6. The Court hereby fully and finally approves the Settlement Agreement and finds that the terms constitute, in all respects, a fair, reasonable and adequate settlement as to all Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure.

7.     The Court, consistent with the provisions of the Settlement Agreement between the parties, hereby enjoins RePublic from sending any text messages using an automatic telephone dialing system without the prior express consent of the recipient, either directly or by authorizing another entity to do so.  This Court hereby dismisses this Action, with prejudice, without costs to any party, except as expressly provided for in the Agreement.

8.     On final approval of this settlement (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this Final Approval Order and Judgment), the Plaintiffs and each and every one of the Settlement Class Members unconditionally, fully and finally release and forever discharge the Released Parties from the Released Claims.

9.     Plaintiffs and each and every Settlement Class Member, and any person actually or purportedly acting on behalf of Plaintiffs or any Settlement Class Member, are hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral or other forum, against the Released Parties. This permanent bar and injunction is necessary to protect and effectuate the Agreement, this Final Approval Order and Judgment and this Court's authority to effectuate the Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

10.     The Settlement Agreement (including, without limitation, its Exhibits), and any and all negotiations, documents and discussions associated with it, including, but not

limited to, confirmatory discovery, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, or of any liability or wrongdoing by RePublic, or of the truth of any of the claims asserted in the Action, and evidence relating to the Settlement Agreement shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of enforcing the terms and conditions of the Settlement Agreement, the Preliminary Approval Order and/or this Final Approval Order and Judgment.

11. If for any reason the Settlement Agreement is terminated or the Effective Date does not occur, the Settlement Agreement and all proceedings in connection with the Agreement shall be without prejudice to the right of the Released Parties, including RePublic or Plaintiffs, to assert any right or position that could have been asserted if the Settlement Agreement had never been reached or proposed to the Court, except insofar as the Settlement Agreement expressly provides to the contrary. In such an event, the Parties shall return to the status quo ante in the Action. In addition, in such an event, the Settlement Amount, including any monies advanced prior to final approval for settlement administration but not yet spent, shall be returned to RePublic with all applicable interest.

12. In the event that any provision of the Settlement Agreement or this Final Approval Order and Judgment is asserted by the Released Parties, including RePublic, as a defense in whole or in part to any claim, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action or proceeding brought by a Settlement Class Member or any person actually or purportedly acting on behalf of any Settlement Class Member(s), that suit, action or other proceeding shall be immediately

4

stayed and enjoined until this Court or the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion. Solely for purposes of such suit, action or other proceeding, to the fullest extent they may effectively do so under applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum. These provisions are necessary to protect the Settlement Agreement, this Final Approval Order and Judgment and this Court's authority to effectuate the Agreement, and are ordered in aid of this Court's jurisdiction and to protect its judgment.

13. By incorporating the Settlement Agreement and its terms herein, the Court determines that this Final Approval Order and Judgment complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

14. The Court approves Class Counsel's application for $733,333.33, in attorneys' fees, reimbursement of expenses incurred in the prosecution of the case in the amount of $15,995.96 and incentive award for each Representative Plaintiff in the amount of $7,500.00.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE