UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>MICHAEL T. CARTWRIGHT, KIRK R. MANZ and ANDREW W. McWILLIAMS,<br><br>        Defendants. | Civil Action No. 3:19-cv-00407<br><br>CLASS ACTION<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern<br><br>DECLARATION OF CHRISTOPHER M. WOOD IN SUPPORT OF: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

# TABLE OF CONTENTS

**Page**

I.     Summary of Litigation and Reasons for Settlement ...................................................1

II.    Factual Background of the Litigation .......................................................6

III.   Procedural History ...........................................................8

     A.     Plaintiff Is Appointed Lead Plaintiff and Defeats Defendants' Motion to Dismiss.........................................................................9

     B.     Defendants' Answer to the Complaint..................................................10

     C.     Bankruptcy Proceedings .........................................................10

     D.     Plaintiff Moves for Class Certification .....................................11

     E.     Fact Discovery ...............................................................13

          1.     Document Requests ....................................................13

               a.     Document Requests Directed at Defendants..................................13

               b.     Document Requests and Related Discovery Directed at Plaintiff ........................................................14

          2.     Interrogatories.......................................................14

          3.     Discovery Disputes with Defendants..........................................14

               a.     Disputes over Defendants' Assertions of Attorney-Client Privilege and Work Product Protection ........................................15

               b.     Disputes over Production of Slack Messages ...............................17

          4.     Discovery from Third Parties.................................................17

               a.     SEC ..................................................................17

               b.     BDO USA, LLP ........................................................17

               c.     Bass Berry & Sims PLC ...............................................18

               d.     Clermont Partners, LLC...............................................18

               e.     Former AAC Directors ...............................................18

4860-9918-8854.v1

f. Analysts.................................................................................................18

5. Fact Depositions....................................................................................19

F. Investigators, Experts, and Consultants Assisting the Litigation ..........................19

1. Investigators..........................................................................................19

2. Marketing and SEO Expert....................................................................20

3. Market Efficiency and Damages Expert.................................................20

4. Accounting Expert ................................................................................21

IV. Strengths and Weaknesses of the Case ........................................................................21

V. Nature and Adequacy of Settlement .............................................................................23

A. History of Settlement Negotiations.........................................................24

B. The Settlement Is in the Best Interests of the Class and Warrants Approval ........25

VI. Plan of Allocation .......................................................................................................26

VII. Class Counsel's Application for Attorneys' Fees and Expenses Is Reasonable................27

A. The Requested Fee Is Reasonable............................................................28

B. The Requested Fee Is Supported by Plaintiff ..........................................28

C. The Requested Fee Is Supported by the Effort Expended and Results Achieved .....................................................................................................29

D. The Risk of Contingent Class Action Litigation Supports the Requested Fee Award ..............................................................................................29

VIII. Conclusion ...............................................................................................................30

4860-9918-8854.v1

I, CHRISTOPHER M. WOOD, declare as follows:

1. I am a member of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Class Counsel"). I was actively involved in the prosecution of this action (hereinafter the "Litigation"), am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision of, and participation in, all material aspects of this Litigation.[1]

2. I submit this Declaration in support of Lead Plaintiff and Class Representative Indiana Public Retirement System's ("Plaintiff") application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for approval of: (a) the Stipulation for a cash settlement of $3.75 million for the benefit of the Class; (b) the proposed Plan of Allocation of the Settlement proceeds; and (c) the application for attorneys' fees and expenses and an award to Plaintiff.

3. The Class, preliminarily certified by the Court in its Order Preliminarily Approving Settlement and Providing for Notice (ECF 175), is defined as:

> [A]ll Persons who purchased or otherwise acquired the common stock of AAC Holdings, Inc. between March 8, 2017 and April 15, 2019, inclusive (the "Class Period"). Excluded from the Class are AAC, Michael T. Cartwright, Kirk R. Manz, Andrew McWilliams and members of their respective immediate families, any entity of which any of them has a controlling interest and the legal representatives, heirs, predecessors, successors or assigns of any of them. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court.

## I. Summary of Litigation and Reasons for Settlement

4. This action was brought against AAC,[2] Michael T. Cartwright ("Cartwright"), Kirk R. Manz ("Manz"), and Andrew McWilliams ("McWilliams") (collectively, "Defendants") on

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Stipulation of Settlement, filed on May 18, 2023 (ECF 170) (the "Stipulation").

[2] AAC filed for bankruptcy on June 20, 2020. ECF 60. Subsequently, Plaintiff moved to voluntarily dismiss AAC as a Defendant on April 21, 2021. ECF 68. The Court granted Plaintiff's motion on April 29, 2021. ECF 69.

- 1 -

behalf of the Class for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5) by the U.S. Securities and Exchange Commission ("SEC"). This case was vigorously litigated until the proposed settlement agreement was reached on April 5, 2023.

5. The Settlement was not achieved until Plaintiff, *inter alia*: (a) investigated and drafted the Consolidated Complaint for Violations of the Securities Exchange Act of 1934 ("Complaint"), filed on November 4, 2019 (ECF 45), and two supplements; (b) successfully opposed Defendants' motion to dismiss; (c) completed fact discovery, including the review of over 430,000 pages of evidence produced by Defendants and various third parties; (d) took or defended 24 fact and expert depositions; (e) engaged in protracted negotiations with Defendants regarding the production of relevant and responsive documents, and filed discovery motions related to privilege determinations and the production of Slack electronic messages; (f) retained experts in the fields of Search Engine Optimization ("SEO"), economics, and accounting to prepare expert reports; (g) obtained partial class certification over Defendants' strenuous objections; (h) filed a motion for reconsideration of the Court's partial denial of class certification; (i) began preparing for summary judgment briefing and trial; and (j) engaged in protracted settlement negotiations with a well-respected mediator.

6. Plaintiff alleged, *inter alia*, that Defendants falsified AAC's financial results and oversaw a deceptive marketing scheme that deliberately inflated AAC's financial results. Plaintiff intended to prove at trial that Defendants perpetrated this fraud by:

- knowingly employing more than 100 deceptive websites that were intentionally designed to appear to provide unbiased and reliable addiction treatment advice and directories of treatment facilities but were, in fact, thinly veiled lead-generation mechanisms that operated by connecting individuals struggling with substance abuse to commission-based salespersons located in AAC's Brentwood, Tennessee call center;

4860-9918-8854.v1

- claiming to investors that AAC's marketing practices were "best-in-class" when, in reality, its deceptive patient recruitment scheme ultimately crippled AAC's business, causing it to be banned from Google's advertising platforms, denied membership into key industry groups, and called before congressional committees to testify in defense of its practices; and

- fraudulently overstating its financial results with respect to so-called "zero pay" and "partial pay" accounts receivable.

7. Plaintiff contends these actions caused AAC's stock to trade at inflated prices, thereby causing economic harm to Class Members when the risks and conditions concealed by Defendants' misrepresentations and omissions, or the economic consequences thereof, materialized.

8. The settlement of this Litigation was negotiated with the assistance and oversight of Gregory P. Lindstrom of Phillips ADR, a respected mediator with substantial experience in mediating claims arising under the federal securities laws. The parties engaged in several joint mediation sessions and participated in numerous teleconferences with Mr. Lindstrom, during which Plaintiff and Defendants vigorously advanced and thereafter defended their positions. The parties did not reach a settlement during these sessions; however, Mr. Lindstrom thereafter remained apprised of the Litigation's status. After careful consideration of the parties' positions, on March 31, 2023, Mr. Lindstrom made a mediator's proposal of a settlement based upon a cash payment of $3.75 million. Both sides accepted the mediator's proposal and agreed to the material terms of the Settlement shortly thereafter.

9. The proposed settlement is the result of hard-fought and contentious litigation pursued by zealous advocates on both sides and takes into consideration the significant risks specific to the case. It was negotiated by experienced counsel for Plaintiff and Defendants with a comprehensive understanding of both the strengths and weaknesses of their respective positions.

10. Class Counsel and Plaintiff are pleased with the proposed settlement and believe it is fair, reasonable, and adequate. Based upon the evidence obtained in discovery, as well as the

4860-9918-8854.v1

investigation, research, analysis, and motion practice conducted, Plaintiff believed its case had significant merit. Plaintiff also recognized there were significant risks that had to be carefully evaluated in determining what course (*i.e.*, whether to settle and on what terms or whether to continue to litigate through trial and beyond) was in the best interest of the Class. As set forth in further detail below, the specific circumstances involved here presented many risks and uncertainties in Plaintiff's ability to prevail if the case proceeded to trial and to collect any judgment awarded.

11. Plaintiff's perseverance through four years of litigation resulted in the discovery of substantial evidence supporting the alleged claims. Class Counsel believed discovery had revealed evidence sufficient to sustain a jury verdict in Plaintiff's favor, including evidence that Class Members were harmed because they bought shares of AAC common stock at inflated prices due to Defendants' material misrepresentations, omissions, and fraudulent business practices.

12. Despite the strength of the evidence developed in discovery, there were substantial risks to Plaintiff's ability to obtain, protect, and ultimately recover a favorable judgment after trial. For example, on February 24, 2023, the Court issued a Memorandum Opinion and Order (ECF 138) granting in part and denying in part Plaintiff's motion for class certification (ECF 76). Without certification of the so-called "marketing claim," Class Members lacked any realistic opportunity to recover damages associated with that claim, which accounted for the majority of the damages at issue in this Litigation. Plaintiff's motion for reconsideration of the Court's class certification order was pending when this Settlement was reached.

13. Moreover, a continuation of the litigation, which would have entailed completing expert discovery, summary judgment, trial, and any appeals, would have been extremely expensive and time consuming. In accepting the mediator's proposal to settle, Plaintiff was also cognizant of

4860-9918-8854.v1

the inherent risks involved in trial, where Plaintiff would have had the burden of proving each of the elements of its claims in order to succeed.

14. In reaching the determination to settle, Plaintiff and Class Counsel have evaluated the documentary evidence, deposition testimony, expert reports, and legal authority that weigh in favor of and against the claims. All of these factors, together with the other factors discussed herein, were considered by Plaintiff and Class Counsel in concluding that the mediator's proposal to settle the Litigation for $3.75 million provided fair, reasonable, and adequate consideration in light of the risks and uncertainties inherent in continuing to litigate.

15. The fee application for 17% of the Settlement Fund is fair to both the Class and Class Counsel, is supported by Plaintiff, and warrants this Court's approval. This fee request is well below similar fee requests approved by courts in this Circuit and is justified in light of the risks undertaken by Class Counsel, the quality of representation, and the nature and extent of the legal services performed. Class Counsel, as described below, vigorously prosecuted this Litigation on a wholly contingent basis for four years and advanced or incurred significant litigation expenses. Class Counsel has long borne the risk of an unfavorable result. It has not received any compensation for its substantial efforts, nor have its expenses been reimbursed.

16. Class Counsel should also be awarded its expenses of $624,814.54 as the costs and expenses incurred in prosecuting this Litigation were reasonable and necessary in order to achieve the result obtained on behalf of the Class. Class Counsel advanced fees and expenses in relation to: (a) the procurement of experts and consultants whose services Class Counsel required for a successful prosecution, analysis, and resolution of this case; (b) stenographic and videographer services for depositions; (c) transportation, hotels, and meals when Class Counsel was required to travel; (d) factual and legal research, as well as photocopying, imaging, and printing thousands of

- 5 -

pages of documents; (e) litigation database costs for serving, cataloguing, and facilitating the review and analysis of more than 430,000 pages of documents; (f) court and witness fees; and (g) fees for outside bankruptcy counsel.

17.     As described in detail below, these expenses were reasonably and necessarily incurred to, *inter alia*, plead Plaintiff's claims with particularity, brief the motion to certify the Class, complete discovery, and obtain a settlement on the terms proposed.  It is therefore respectfully submitted that: (a) the Settlement should be approved as fair, reasonable, and adequate; (b) Class Counsel should be awarded attorneys' fees in the amount of 17% of the Settlement Amount and expenses in an amount of $624,814.54, plus interest on both amounts; (c) the Plan of Allocation should be approved; and (d) Plaintiff should be awarded $11,350 for its time and expenses in representing the Class.

## II.     Factual Background of the Litigation

18.     The following is a summary of the nature of the Class' claims, the principal events that occurred during the course of this Litigation, and the legal services provided by Class Counsel.[3]

19.     This securities fraud class action was brought on behalf of a Class of investors who purchased or otherwise acquired AAC common stock between March 8, 2017 and April 15, 2019, inclusive, against AAC and certain of its officers.  ¶1.

20.     AAC, based in Brentwood, Tennessee, is and was a for-profit healthcare company that operates addiction treatment centers, transitional "sober living" services, and drug testing services at facilities located around the country.  ¶¶2, 14.

---

[3]     The information in this section is based on the allegations in the Complaint, the evidence produced in discovery, and other sources of information believed to be accurate.  However, I do not have personal knowledge of the conduct of AAC's business other than what I have reviewed during the course of discovery.  Unless otherwise indicated, references to "¶_" or "¶¶_" are to the Complaint (ECF 45), filed with the Court on November 4, 2019, and its two supplements (ECF 48, 51), filed on January 13, 2020, and February 5, 2020, respectively.

4860-9918-8854.v1

21. The Complaint alleged that AAC made material misrepresentations and omissions and engaged in a fraudulent scheme with respect to the Company's marketing and accounting practices and in so doing artificially inflated the value of AAC common stock. The Complaint alleged that AAC's executives, including the CEO and two consecutive CFOs, falsified the Company's reported financial results. ¶3. As part of Defendants' alleged scheme and wrongful course of business, the Complaint maintained that AAC and the Individual Defendants fraudulently inflated AAC's accounts receivable, overstating net income and/or understating the net losses reported to investors during the Class Period, *inter alia*, by ignoring AAC's own historical revenue data and instead relying on "industry and other data." ¶5.

22. In addition to fraud related to AAC's accounting and revenue recognition, the Complaint alleged that the Company engaged in a deceptive sales and marketing scheme. ¶3. A significant aspect of AAC's business was its operation of more than 100 websites designed to appear to provide unbiased and reliable addiction advice. ¶4, 30. The Complaint alleged these websites were designed instead to serve an important lead generation function for AAC. ¶¶4, 28-32. According to the Complaint, when people seeking help with drug and alcohol addiction visited AAC's websites to obtain counseling and advice, they were directed to call a toll-free number connecting them to paid AAC salespersons who were paid bonuses when they induced callers to be admitted to AAC facilities. *Id.* The Complaint further alleged these deceptive marketing practices ultimately hindered AAC's ability to operate, causing the Company to be banned from advertising on Google and denied membership in important professional societies. *Id.* Nonetheless, Defendants touted AAC's marketing apparatus as "best-in-class" and a "dominant sales and marketing force." ¶¶27-28.

4860-9918-8854.v1

23. The truth regarding AAC's misrepresentations and omissions was not revealed at once but rather leaked out over time. For instance, on November 6, 2018, AAC announced 3Q18 financial results and FY18 guidance well below Wall Street analyst expectations. ¶129. Cartwright attributed this substantial miss and guidance reduction to "'a significant decline in call volume'" and "'lower census'" due to a diminished ability of AAC websites to perform well in Google searches. ¶¶129-130. On this news, the price of AAC common stock declined by more than 44%, from a close of $5.31 on November 5, 2018, to a close of $2.96 on November 6, 2018.

24. On April 15, 2019, AAC filed with the SEC its 2018 Form 10-K, which disclosed that the Company had restated its historical financial results and had a material weakness in its internal controls, resulting in misstatements in its financial results. ¶¶8, 132-136. On April 16, 2019, AAC issued a press release reporting an adjusted loss per share of $0.85 and adjusted EBITDA of negative $12.4 million for 4Q18, as well as FY19 projections well below what Defendants had led the market to expect. Again, Cartwright attributed the miss to the continuing fallout from the reduced call volume and lower census, which had impacted the Company's 3Q18 results. ¶¶134-136.

25. Following these disclosures, the price of AAC common stock declined over 18% on very high trading volume to close at $1.74 per share on April 16, 2019. ¶137.

## III. Procedural History

26. Litigating this case was highly contentious, involving significant disputes at all phases of the case. Defendants mounted vigorous challenges at the pleading and class certification stages, and the parties had numerous disputes over the scope and adequacy of the substantial discovery produced. Thousands of hours of attorney and staff time were required to obtain and review the documents responsive to discovery requests and to prepare for depositions.

27. Voluminous communications were exchanged between Class Counsel and Defendants' Counsel regarding the scores of disputes that arose during the pendency of the case,

- 8 -

including numerous disputes over discovery. Extensive meet and confers were held regarding Defendants' productions of documents responsive to Plaintiff's discovery requests, as well as regarding disputes concerning the scope of privilege and other protections asserted over information sought in discovery.

28. These efforts, described in more detail below, contributed to the thousands of hours of attorney and staff time needed to complete discovery and develop Plaintiff's claims in the manner that led the mediator to propose, and the parties to agree to, the Settlement now before the Court for approval.

### A. Plaintiff Is Appointed Lead Plaintiff and Defeats Defendants' Motion to Dismiss

29. On May 16, 2019, David Brown Caudle initiated this action by filing a complaint against AAC in this District. On August 13, 2019, this Court appointed Plaintiff as Lead Plaintiff and approved its selection of Robbins Geller as Lead Counsel. ECF 37.

30. Based on an extensive analysis of the Company's SEC filings and public statements, media articles, and documents related to the Company's previous litigation concerning the websites of Referral Solutions Group, LLC ("RSG"), which AAC had acquired, as well as interviews with numerous former AAC employees, Plaintiff filed its Complaint on November 4, 2019, alleging claims arising under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5). ECF 45. Plaintiff filed supplements to the Complaint on January 13, 2020 (ECF 48) and February 5, 2020 (ECF 51).

31. On February 12, 2020, Defendants moved to dismiss the Complaint on numerous grounds, including that the Complaint had not adequately alleged facts supporting a strong inference of scienter and the alleged statements regarding AAC's marketing practices were protected by the

- 9 -

PSLRA safe harbor and were inactionable statements of opinion and corporate optimism. ECF 53.[4] Specifically, to refute scienter with regard to the restatement claim, Defendants further argued that only when they had developed financial database analytical tools did they become aware, for the first time, that their provisioning of doubtful accounts based on industry trends had inflated their accounts receivable. Plaintiff filed its opposition on April 10, 2020, arguing, *inter alia*, that Defendants: (i) had not contested the allegations under Rule 10b-5(a) and (c); (ii) had operated a scheme and course of conduct that misled investors; and (iii) had made actionably false misstatements or omissions with scienter. ECF 56. On May 12, 2020, Defendants filed a reply in support of their motion to dismiss. ECF 59.

32. On April 8, 2021, the Court issued a Memorandum Opinion and Order denying Defendants' motion to dismiss the Complaint in its entirety, holding Plaintiff had alleged actionable claims under §§10(b) and 20(a). ECF 62-63.

**B.** **Defendants' Answer to the Complaint**

33. On May 6, 2021, Defendants filed an answer to the Complaint, in which they denied all of Plaintiff's substantive allegations and asserted 43 separate affirmative defenses. ECF 73.

**C.** **Bankruptcy Proceedings**

34. On June 20, 2020, while the motion to dismiss was pending in this Litigation, AAC and 48 of its affiliates filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. ECF 60. On June 26, 2020, Defendants suggested to the Court that this action was required to be stayed during the pendency of AAC's bankruptcy proceedings under §362 of the Bankruptcy Code. *Id*. Plaintiff filed a response on June 30, 2020 opposing the stay as to the Individual Defendants. ECF 61. On October 20, 2020, the Bankruptcy Court entered an order, *In re*

---

[4]  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendants' motion stayed all discovery in this matter.

*AAC Holdings Inc.*, No. 20-BK-11648 (JTD) (ECF 695) (the "Confirmation Order"), confirming the Debtors' second amended Chapter 11 plan of reorganization (the "Plan"). ECF 68.

35. In order to protect and preserve its rights and the rights of all members of the proposed class in connection with this Litigation, Plaintiff participated in the bankruptcy proceedings and negotiated several significant concessions in the Plan and Confirmation Order, including:

- language in the Confirmation Order conclusively deeming Plaintiff and each member of the proposed class to have opted out of the "third-party release" contained in the Plan, which otherwise could have released their claims against Defendants Cartwright, Manz, and McWilliams (the "Individual Defendants");

- language in the Confirmation Order expressly providing that Plaintiff and each member of the proposed class is not a releasing party under the Plan and the claims asserted or to be asserted in this case are not impacted by the third-party release in the Plan; and

- a provision of the Plan affirmatively requiring AAC to preserve documents relevant to this Litigation until the conclusion thereof.

*Id.* Plaintiff also successfully negotiated to preserve the claims of Plaintiff and the proposed class against AAC itself to the extent AAC had any insurance coverage remaining under its directors' and officers' liability insurance policies. *Id.*

36. In order to facilitate its negotiated treatment of its claims in AAC's bankruptcy proceedings, Plaintiff, according to the terms of the Confirmation Order, filed Lead Plaintiff's Unopposed Motion for Dismissal of Defendant AAC Holdings, Inc. on April 21, 2021. *Id*.

37. The Court dismissed AAC as a Defendant on April 29, 2021. ECF 69.

**D.      Plaintiff Moves for Class Certification**

38. On July 6, 2021, Plaintiff moved to certify this action as a class action, appoint Plaintiff as Class Representative, and appoint Robbins Geller as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure. ECF 76-77. Class Counsel retained the services of W. Scott Dalrymple to provide economic analysis in support of this motion, opine as an expert on

market efficiency, and explain that there was a reliable methodology to calculate damages on a class-wide basis.  *See* ECF 78-2, 99-2.  Defendants deposed Mr. Dalrymple regarding those opinions and Class Counsel, in turn, deposed Defendants' rebuttal expert proffered for opinions on price impact and the calculation of class-wide damages.

39.  On September 7, 2021, Defendants filed their response in opposition to Plaintiff's motion for class certification, arguing reliance could not be demonstrated on a class-wide basis because the alleged corrective disclosures did not impact AAC's stock price and Plaintiff's marketing and scheme claims did not meet the Rule 23(b)(3) requirement of predominance.  ECF 83. On June 13, 2022, Plaintiff filed a reply in support of its motion for class certification; and on July 20, 2022, Defendants filed a sur-reply in further opposition.  ECF 98, 109.

40.  On February 24, 2023, the Court granted in part and denied in part Plaintiff's motion for class certification.  ECF 138.  The Court held that Plaintiff had established the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  *Id.* at 16-19.  The Court also found that the predominance requirement of Rule 23(b)(3) was satisfied with respect to the restatement claims and the scheme claims related to conduct regarding AAC's restatement of its historical financial results.  *Id.* at 23-41.  However, the Court found that predominance was not shown with respect to the marketing claims or the scheme claims related to the marketing claims.  *Id.* at 22, 32, 42-48.

41.  Plaintiff moved for reconsideration of the class certification order on March 10, 2023. ECF 149-150.  Plaintiff contended that the marketing claims did satisfy the Rule 23(b)(3) predominance requirement and argued that Plaintiff and its expert had adequately addressed these requirements using a materialization-of-risk damages model.  ECF 150.

4860-9918-8854.v1

42.     Defendants opposed that motion on March 27, 2023 (ECF 162), and Plaintiff filed its reply on April 3, 2023 (ECF 164).  The motion remained pending when the parties notified the Court on April 5, 2023 that they had reached a settlement in principle (ECF 165).  In the event that the Court ruled negatively on Plaintiff's motion, Plaintiff was also preparing to potentially appeal the class certification order.

## E.     Fact Discovery

43.     Plaintiff undertook fact discovery for almost two years – from June 2021 to March 2023 – obtaining and analyzing more than 353,000 pages of documents from Defendants and more than 77,000 additional pages from third parties.  Class Counsel deposed 22 fact witnesses in Tennessee and California, as well as remotely, during the course of discovery.

### 1.     Document Requests

#### a.     Document Requests Directed at Defendants

44.     On June 9, 2021, Plaintiff served its First Set of Requests for Production of Documents to Defendants containing 31 requests regarding all aspects of its claims.  Defendants and AAC served their respective responses to Plaintiff's first set of requests on July 13, 2021, objecting to the requests as overbroad and unduly burdensome and agreeing to produce documents pursuant to some requests.

45.     Ultimately, after ongoing negotiations to obtain documents responsive to the discovery requests, Defendants and AAC produced 26 volumes of electronic documents, totaling over 353,000 pages.  Plaintiff expended significant time reviewing, organizing, and analyzing the documents produced.

- 13 -

### b. Document Requests and Related Discovery Directed at Plaintiff

46. On June 9, 2021, Defendants served discovery requests on Plaintiff. Defendants' requests included both document requests and interrogatories, seeking not only information relevant to class certification but also information related to Plaintiff's investigation of the Complaint. On July 13, 2021, Plaintiff served its responses and objections. Plaintiff also searched for and produced certain trading records, brokerage statements, and monthly and annual account statements related to its investment in AAC common stock, as well as relevant investment management agreements and statements of financial condition, among other responsive documents.

47. On August 5, 2021, Defendants served a Notice of Videotaped Rule 30(b)(6) Deposition of Indiana Public Retirement System regarding topics, including Plaintiff's investments, the information upon which it relied in making its purchasing and selling decisions, communications with investment managers and other stockholders, its decision to serve as Lead Plaintiff, its discovery responses, and its litigation history. On August 30, 2021, Plaintiff's Director of Public Equity, David Stelsel, testified as the Rule 30(b)(6) representative for Plaintiff.

### 2. Interrogatories

48. On December 7, 2021, Plaintiff served its First Set of Interrogatories to Defendants. On January 6, 2022, Defendants provided objections and responses.

### 3. Discovery Disputes with Defendants

49. During the course of the litigation, the parties met and conferred on numerous occasions to discuss the scope of Defendants' document production. As a result of these efforts, the parties were able to resolve the vast majority of discovery disputes without the need for Court intervention. Nevertheless, several discovery disputes were presented to the Court and remained unresolved at the time the Settlement was reached.

- 14 -

### a. Disputes over Defendants' Assertions of Attorney-Client Privilege and Work Product Protection

50.    Class Counsel raised several discovery disputes as a result of Defendants' and AAC's assertions of attorney-client privilege and work product protection over thousands of documents Defendants withheld or redacted. These included disputes over whether Defendants' and AAC's assertions of attorney-client privilege and work product protection were timely and sufficiently established and whether they had been waived.

51.    Defendants produced the first of several privilege logs in May 2022, listing documents Defendants had withheld to date on attorney-client privilege and work product grounds. The primary privilege log spanned nearly 500 pages and listed over 6,000 entries. Defendants produced a revised version of this primary log in October 2022. In addition to this primary log, Defendants produced a variety of additional privilege logs corresponding to additional productions Defendants made during the course of fact discovery.

52.    Each time Class Counsel received a privilege log from Defendants, Class Counsel closely examined each entry to assess the propriety of Defendants' asserted claims of attorney-client privilege and work product. With respect to documents Defendants redacted, Class Counsel analyzed each of the documents' redactions to determine whether Class Counsel believed they were justified. Overall, Class Counsel specifically identified to Defendants approximately 2,000 documents believed to have been inappropriately withheld or redacted and provided the reasons for Class Counsel's position with respect to each document.

53.    As a result of Class Counsel's efforts, Defendants eventually produced hundreds of documents that had been initially withheld or redacted.

54.    Class Counsel also exchanged correspondence and met and conferred numerous times with Defendants concerning Class Counsel's contention that AAC had waived attorney-client

privilege and work product protection over documents regarding the SEC's 2018 investigation of AAC.

55.     Additionally, on January 11, 2023, during Plaintiff's examination of Katherine Peters, AAC's former Director of Revenue, counsel for Defendants clawed back one of the exhibits introduced by Class Counsel pursuant to the terms of the Stipulated Protective Order (ECF 82) ("Protective Order") on the grounds the exhibit was protected by the work product doctrine and had been inadvertently produced. The document in question purportedly was a questionnaire prepared for Defendant McWilliams in response to the SEC's investigation of AAC. Subsequently, on January 18, 2023, Defendants provided a formal notice that they were clawing back the exhibit in question. Plaintiff disputed that the document was privileged; and on February 16, 2023, Defendants filed a motion and supporting memorandum for privilege determination related to the clawed-back document. ECF 132.

56.     Plaintiff filed its opposition to Defendants' motion for privilege determination on March 2, 2023, arguing Defendants had waived any and all privileges over the documents in question by turning over documents of the same subject matter to the SEC during the course of the SEC investigation. ECF 144. Defendants filed their reply in support of their motion for privilege determination on March 9, 2023. ECF 147.

57.     Plaintiff and Defendants submitted a Discovery Dispute Statement on March 17, 2023 concerning their opposing positions regarding potential waiver more broadly. ECF 156. Plaintiff argued that the scope of Defendants' alleged waiver covered far more than the documents that were the subject of Defendants' motion for privilege determination. Plaintiff contended that AAC's disclosure of documents to the SEC during the course of the SEC's investigation waived privilege as to all documents that were disclosed to the SEC, as well as to any internal AAC documents that were

- 16 -

related to, or relied upon in creating, the documents that were disclosed to the SEC. *Id.* This dispute remained pending at the time the parties reached an agreement in principle to settle this case.

### b. Disputes over Production of Slack Messages

58. Plaintiff and Defendants exchanged correspondence, had numerous telephonic meet and confers, and submitted a Discovery Dispute Statement concerning Defendants' refusal to produce documents from AAC's "Slack" electronic messaging program. ECF 156 at 7-13. Defendants objected primarily on proportionality grounds and sought to limit any production to direct messages between marketing custodians, as opposed to running searches across Slack "channels" – user-defined categories for group messaging. Though Plaintiff was successful in obtaining Slack direct messages, the Discovery Dispute Statement concerning production of documents across relevant Slack channels was pending at the time the parties reached an agreement in principle to settle this case.

### 4. Discovery from Third Parties

59. Substantial efforts were undertaken by Class Counsel to obtain relevant evidence from third parties, including those described below. A brief description of the key subpoenas issued is set forth below.

### a. SEC

60. Plaintiff sought documents from the SEC regarding the SEC's 2018 investigation of AAC. After months of negotiation, Plaintiff was ultimately successful in obtaining nearly 2,000 pages of documents and deposition transcripts from the SEC concerning its investigation.

### b. BDO USA, LLP

61. Plaintiff sought documents from the Company's outside auditor, BDO USA, LLP ("BDO"), regarding BDO's audits, work papers, communications, and other documents related to

4860-9918-8854.v1

the professional services it provided to AAC from 2016 to 2020. Plaintiff was ultimately successful in obtaining more than 26,000 pages of documents from BDO.

### c. Bass Berry & Sims PLC

62. Plaintiff sought documents from the Company's counsel, Bass Berry & Sims PLC ("Bass Berry"), relating to Bass Berry's advice regarding AAC's collection of underpayments and accounts receivable. Plaintiff was ultimately successful in obtaining more than 100 pages of documents from Bass Berry.

### d. Clermont Partners, LLC

63. Plaintiff sought documents from AAC's investor relations consulting firm, Clermont Partners, LLC ("Clermont"), concerning professional services Clermont performed for AAC during the Class Period. Plaintiff successfully obtained nearly 14,000 pages of documents from Clermont.

### e. Former AAC Directors

64. Plaintiff subpoenaed documents from former directors of AAC, including Michael J. Blackburn, W. Larry Cash, David W. Hillis, and David Kloeppel. Plaintiff sought communications and board materials concerning AAC and the directors' resignations from AAC's board. Plaintiff successfully obtained nearly 4,300 pages of documents from former AAC directors.

### f. Analysts

65. Plaintiff subpoenaed documents from several analyst firms, including Avondale Partners, Cantor Fitzgerald, Raymond James, and William Blair, concerning analyst coverage of AAC. The subpoenas sought, *inter alia*, documents related to securities reports covering AAC, including all notes, research, and communications upon which the analysts relied in developing their reports, as well as communications between analysts and AAC employees. Plaintiff received nearly 22,000 pages of documents from the analysts.

- 18 -

### 5. Fact Depositions

66. Class Counsel expended substantial efforts identifying relevant deponents, as well as preparing for and conducting fact depositions. The following is a chart representing all fact depositions in the Litigation:

| Deponent | Date | Location |
|---|---|---|
| David Stelsel (as Plaintiff's 30(b)(6) witness) | 08/30/2021 | Remote |
| Dale Campbell (as AAC's 30(b)(6) witness) | 12/02/2021 | Remote |
| Stephen Ebbett (as AAC's 30(b)(6) witness) | 12/08/2021 | Remote |
| David King | 06/10/2022 | Nashville, TN |
| Sarah Everson | 11/09/2022 | Remote |
| Daniel Christian | 11/15/2022 | Nashville, TN |
| Katherine Peters | 01/11/2023 | Remote |
| Dale Campbell | 01/13/2023 | Remote |
| Kristina Ackermann | 01/18/2023 | Remote |
| Dan Harrington | 01/27/2023 | Remote |
| Kevin McCormac | 01/27/2023 | Remote |
| Derek Hyman | 02/08/2023 | San Diego, CA |
| Melanie Haber | 02/09/2023 | Remote |
| William Furcolo | 02/22/2023 | San Diego, CA |
| Jordan Hammond | 02/28/2023 | Nashville, TN |
| Kirk R. Manz | 03/02/2023 | Remote |
| Andrew McWilliams | 03/07/2023 | Nashville, TN |
| Michael T. Cartwright | 03/09/2023 | Nashville, TN |
| Kevin Olvera (as BDO's 30(b)(6) witness) | 03/10/2023 | Remote |
| Tina Cartwright | 03/21/2023 | Remote |
| Benjamin Hendren | 03/22/2023 | Remote |
| Stephen Ebbett | 03/24/2023 | Remote |

### F. Investigators, Experts, and Consultants Assisting the Litigation

### 1. Investigators

67. Prior to filing the Complaint (while discovery was stayed pursuant to the PSLRA), Plaintiff retained the services of an independent private investigator, L.R. Hodges & Associates, Ltd. ("LRH&A"), to help identify, locate, and contact former AAC employees, or those with knowledge of AAC's operations, who might have knowledge relevant to the claims at issue.

- 19 -

## 2. Marketing and SEO Expert

68.     Plaintiff retained the services of Peter Kent Consulting, LLC and its principal, Peter Kent, in connection with issues pertaining to AAC's alleged marketing practices. Plaintiff engaged Mr. Kent to prepare an expert report in anticipation of motions for summary judgment regarding industry standards on search engine optimization ("SEO") techniques, search engine rankings, use of complex algorithms, online advertising, and marketing practices, as well as AAC's alleged use of lead generation websites, "black-hat" SEO techniques, and other marketing tactics. Mr. Kent analyzed various documents produced in discovery, deposition transcripts and exhibits, and other relevant materials. Mr. Kent was in the process of preparing an expert report regarding these issues at the time the parties reached an agreement in principle to settle the case. Mr. Kent also provided expert guidance to Class Counsel in preparation for depositions focused on AAC's SEO and marketing practices.

## 3. Market Efficiency and Damages Expert

69.     Plaintiff retained the services of the consulting firm BVA Group and one of its partners, Mr. Dalrymple, concerning market efficiency and damages in connection with Plaintiff's claims under the Exchange Act. Mr. Dalrymple, with the assistance of other members of BVA: (a) provided critical economic analysis, as well as expert reports and testimony, in connection with class certification; (b) assisted in mediation efforts by analyzing and responding to Defendants' contentions regarding potentially recoverable damages, including by participating in certain joint mediation sessions; and (c) began preparing a merits report for use at summary judgment and trial. Following the settlement of this action, BVA also assisted Class Counsel in developing the Plan of Allocation. Mr. Dalrymple and his team spent considerable time studying the record and public information, including analyst reports and SEC filings, in order to be able to address the market in which AAC securities traded, disclosures related to AAC's finances and operations, and the related

price movement in AAC's securities. Based on this work, Mr. Dalrymple provided detailed information and analysis that were used in analyzing market efficiency, loss causation, and damages.

### 4. Accounting Expert

70. Plaintiff retained the services of the consulting firm Hemming Morse, LLP and one of its partners, Greg J. Regan, CPA/CFF, CFE, in connection with the accounting issues in this case. Plaintiff principally engaged Mr. Regan to prepare an expert report in connection with motions for summary judgment, including AAC's restatement of its historical financial results, historical accounting for revenue recognition and accounts receivable, internal controls over financial reporting, and compliance with GAAP. Mr. Regan and his team expended considerable time and effort analyzing discovery documents, financial statements, public filings with the SEC, deposition testimony and exhibits, and other relevant materials. Mr. Regan was in the process of finalizing a detailed report regarding these and other accounting issues at the time the parties reached an agreement in principle to settle this case. Mr. Regan also provided expert guidance to Class Counsel in preparation for depositions of key witnesses on accounting issues.

## IV. Strengths and Weaknesses of the Case

71. At the time of the Settlement, Class Counsel had a thorough understanding of the issues and risks present in this case.

72. Plaintiff believed there was substantial evidence to support a jury verdict in favor of the Class. At the time of the Settlement, facts and evidence supporting Plaintiff's claims included:

(a) AAC had restated its financial results with respect to its accounts receivable, which "[b]y definition . . . says that the prior financial statement was false." ECF 56 at 5.

(b) AAC had itself countersued the former owners of Referral Solutions Group, LLC ("RSG"), which was acquired by the Company in July 2015, alleging RSG engaged in

some of the same deceptive marketing practices that Plaintiff alleged Defendants had concealed from investors during the Class Period.

(c) Certain internal communications produced during discovery, Plaintiff believed, strongly supported Plaintiff's allegations that AAC's accounting practices were knowingly improper. *E.g.*, ECF 100 at n.11.

73. At the same time, there were considerable risks and uncertainties if the case had proceeded to trial and judgment. At the time the Settlement was reached, the most significant risks to recovery for the Class included the following:

(a) The risk that Class Members would not be able to recover any damages with respect to the marketing claim, which represented the majority of the damages at issue in the case, and which the Court had declined to certify. Plaintiff's motion for reconsideration was pending at the time the Settlement was reached.

(b) The risk that some or all of the Defendants would be found at summary judgment or trial not to have materially misled investors or engaged in a fraudulent scheme. Indeed, as Defendants pointed out to the Court, while the SEC had investigated certain of AAC's accounting practices, it ultimately declined to bring enforcement proceedings against AAC or any of the Defendants. (*See* ECF 132.)

(c) The risk that Defendants would be found at summary judgment or trial to have not acted with scienter when making their material misstatements or omissions, or engaging in a fraudulent scheme. For example, Defendants contended throughout the Litigation that they had not intentionally inflated AAC's accounts receivable, as they had relied on industry trends when assessing its provisions for doubtful accounts.

- 22 -

(d)     The risk that damages would not be awarded or would be limited based on Defendants' arguments that other causes resulted in the declines in the price of AAC's common stock.  For example, Defendants repeatedly noted that the restatement's announcement did not cause AAC's stock to react negatively, and thus loss causation as to the restatement claim could not be proved.  Likewise, if Defendants' arguments were persuasive at summary judgment or trial that Google's algorithm update had no nexus to Defendants' alleged false statements regarding AAC's marketing platform because the update affected multiple industries, including the substance use treatment industry as a whole, then Plaintiff may not be able to establish loss causation.

(e)     The risk that expert testimony or important factual evidence would be limited or excluded.

(f)     The risk that in what is certain to be a heated "battle of the experts," the jury would find Defendants' experts more credible, potentially undermining Plaintiff's ability to prove the elements of its claims or resulting in a damages award of minimal or no value.

(g)     The risk that the Class would not be able to recover any damages awarded, particularly in light of AAC's bankruptcy.

74.     In summary, while Plaintiff had developed strong evidence supported by expert opinion and expected to continue developing such evidence through discovery and at trial, it faced both factual and legal challenges in presenting this matter to a jury and potentially on appeal.  These risks were carefully considered by Class Counsel and Plaintiff before the mediator's proposal was accepted.

## V.     Nature and Adequacy of Settlement

75.     The proposed settlement was the result of arm's-length negotiations between zealous advocates on both sides and could not have been reached without the substantial participation and assistance of a capable mediator with extensive experience in negotiating the resolution of actions of

- 23 -

this type.  In the estimation of Class Counsel, the compromise embodied in the stipulation with Defendants represents a successful resolution of a complex and risky class action.  We believe Plaintiff's commitment to prosecuting this action, our reputation as attorneys who will zealously prosecute a meritorious case through the trial and appellate levels, and our aggressive litigation of this case put us in a strong position in settlement negotiations with Defendants.

### A. History of Settlement Negotiations

76. Settlement discussions occurred at various times during the pendency of the Litigation, including at two formal mediations with Mr. Lindstrom that occurred on September 23, 2021 and May 5, 2022.  Additionally, during the mediation process, the parties participated in numerous teleconferences with Mr. Lindstrom concerning their respective settlement positions and exchanged detailed presentations regarding their divergent views on numerous issues, including the amount of recoverable damages.  The settlement discussions were led by Darren J. Robbins and the undersigned counsel, both of whom have considerable experience in litigating and resolving complex class action lawsuits.  The lead negotiators on the defense side had similar substantial experience and included Jessica Corley and Lisa Bugni of King & Spalding LLP.

77. The parties remained far apart in their respective assessments of the strengths and weaknesses of the case during these negotiations, and no settlement was reached.  Nevertheless, the formal mediation and follow-up discussions laid the groundwork for continuing discussions with Mr. Lindstrom as this case continued and ultimately resulted in the mediator's proposal to resolve the Litigation on the terms proposed.

78. Following the mediation sessions, and while continuing to litigate the case, the parties continued settlement discussions through Mr. Lindstrom.  On March 31, 2023, Mr. Lindstrom made a mediator's proposal to both sides proposing a settlement of the Litigation in exchange for a cash payment of $3.75 million.  The parties accepted the mediator's proposal and thereafter notified the

- 24 -

Court of the proposed settlement, whereupon the Court vacated all deadlines and docketed a notation of the agreement. ECF 166. The parties then drafted, finalized, and signed the formal settlement agreement detailing the terms of the proposed settlement, which was submitted to the Court with the Motion for Preliminary Approval, filed on May 18, 2023. ECF 170.

**B.    The Settlement Is in the Best Interests of the Class and Warrants Approval**

79.    On July 6, 2023, the Court granted preliminary approval of the Settlement, as well as the form and manner of notice of the Settlement to the Class. ECF 175. Plaintiff believes it could have prevailed on the merits of the case but acknowledges there was a very real risk, as discussed above, the Class would not prevail at trial. Had Plaintiff's case successfully reached trial, the Class faced the risk a jury would find Defendants' statements inactionable or would not be convinced Defendants engaged in a scheme to defraud or acted with the requisite scienter. There were also the risks the jury would reduce the damages awarded or Plaintiff would not be able to recovery any judgment. Furthermore, even if Plaintiff prevailed at trial and Defendants possessed the resources to fund a judgment, post-trial proceedings and appeals could have delayed any recovery from Defendants.

80.    Having considered the foregoing, and evaluating Defendants' likely defenses at trial, it is my informed judgment, based upon the Litigation to date and the extensive experience of Class Counsel in litigating shareholder class actions, that the proposed settlement of this matter before the Court, upon a payment of $3.75 million in exchange for a mutual release of all claims and on the other terms set forth in the Stipulation, provides fair, reasonable, and adequate consideration and is in the best interest of the Class.

4860-9918-8854.v1

## VI. Plan of Allocation[5]

81. The proposed Plan of Allocation was created by Class Counsel with the assistance of Mr. Dalrymple based on his event study and analysis of the movement of AAC common stock during the Class Period. The Plan of Allocation is intended to fairly apportion the net proceeds of the settlement based on the inflation and subsequent declines in AAC common stock price attributable to the alleged fraud as of the date of a Class Member's purchases or acquisitions and sales of AAC common stock.

82. The Plan of Allocation estimates the amount of alleged artificial inflation in the prices of AAC common stock that was proximately caused by Defendants' scheme and materially false and misleading statements and omissions. In calculating the estimated artificial inflation, Class Counsel considered price changes in AAC common stock related to the respective alleged misrepresentations and omissions and adjusted the price change for factors that were attributable to market or industry forces and for non-fraud-related AAC-specific information, if any.

83. Using the determinations of the amount of inflation in AAC's stock price at different points during the Class Period, the Plan of Allocation apportions damages to Class Members based on the difference between the amount of inflation on the date they purchased or acquired their securities and the date they sold them, or as of July 12, 2019 (the expiration of the 90-day "lookback period"), if the shares were retained as of that date. To be eligible for a recovery, the shares must have been purchased or acquired prior to, and sold after, the least of the corrective events based on

---

[5] The summary of the Plan of Allocation provided herein is intended only to explain the basis on which the plan was developed in order to assist the Court in evaluating the fairness, reasonableness, and adequacy of the proposed settlement. Nothing set forth herein is intended to, or does, modify or affect the interpretation of the Plan of Allocation, which is set forth in full in the Notice sent to Class Members and will be applied by the Claims Administrator according to its express terms.

the losses they incurred in their transactions. Class Members who realized a net gain in their overall transactions in AAC common stock during the Class Period will not be entitled to recovery.

84. The Plan of Allocation accounts for Plaintiff's theory of liability with respect to all of Plaintiff's claims while discounting recoverable losses associated with the marketing claim to reflect the fact that the Court denied certification as to this claim, though Plaintiff's motion for reconsideration was pending at the time of the Settlement, and Plaintiff could have potentially appealed an adverse class certification order to the Court of Appeals. ECF 138 at 49.

85. Based on Class Counsel's experience in this and other securities actions, its understanding of the factual circumstances giving rise to this action, and the risks at trial, including the risks as to both liability and damages, Class Counsel believes the Plan of Allocation set forth in the Notice provides a fair, reasonable, and adequate method of compensating Class Members for the economic harm they suffered as a result of the fraud alleged in the Litigation.

## VII. Class Counsel's Application for Attorneys' Fees and Expenses Is Reasonable

86. The successful prosecution of this action required Class Counsel and its staff to perform over 8,500 hours of work and incur more than $624,000 in expenses as detailed in the accompanying declarations in support of the application for an award of fees and expenses. Based on the extensive efforts on behalf of the Class, as described above, Class Counsel is applying for compensation from the Settlement Fund on a percentage basis and has requested a fee in the amount of 17% of the Settlement Fund.

87. Class Counsel believes the percentage method is the appropriate method of fee recovery because, *inter alia*, it aligns the attorneys' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. As set forth in the accompanying memorandum in support of Class Counsel's application for an award of attorneys' fees and expenses ("Fee Memorandum"), courts throughout

- 27 -

the Sixth Circuit have applied the percentage-of-recovery method in awarding fees. Class Counsel believes the percentage sought in this case is reasonable in light of the effort required and the results obtained.

**A.      The Requested Fee Is Reasonable**

88.      In light of the nature and extent of the Litigation, the diligent prosecution of the action, the complexity of the factual and legal issues presented, and the other factors described above, and as stated in the accompanying Fee Memorandum, Class Counsel believes the requested fee of 17% of the Settlement Fund is fair and reasonable.

89.      A 17% fee award is far below percentages awarded by courts in this District and throughout the Sixth Circuit and is justified by the specific facts and circumstances in this case and the substantial risks Plaintiff had to overcome at the pleadings and class certification phases of the Litigation, and to prepare to overcome at trial, as set forth herein.

**B.      The Requested Fee Is Supported by Plaintiff**

90.      Plaintiff actively monitored the Litigation and consulted with Class Counsel during the course of settlement negotiations. Plaintiff spent considerable time and effort fulfilling its duties and responsibilities in this case, including reviewing briefs, answering discovery requests, producing documents, sitting for deposition, preparing a declaration in support of class certification, and consulting with Class Counsel concerning the merits of the Litigation. As a result, Plaintiff developed an understanding of the strengths and weaknesses of this case, the risks of continued litigation, and the nature and extent of Class Counsel's efforts on behalf of the Class.

91.      As reflected in the accompanying Declaration of Indiana Public Retirement System General Counsel Jeffrey M. Gill, Plaintiff believes the requested fee is fair and reasonable in light of the result achieved and supports the award of Class Counsel's requested fee.

- 28 -

**C. The Requested Fee Is Supported by the Effort Expended and Results Achieved**

92.     As set forth herein, the $3.75 million cash settlement was achieved as a result of extensive and creative prosecutorial and investigative efforts, complicated motion practice, years of hard-fought discovery, and analysis of voluminous evidence.

93.     As discussed in greater detail above, this case was fraught with significant risk factors concerning liability and damages.  Plaintiff's success was by no means assured.  Defendants disputed whether the alleged false statements were even actionable, disputed that investors were misled, and sought to attribute any harm suffered to non-fraud factors.  Were this Settlement not achieved, and even if Plaintiff prevailed at trial, Plaintiff and the Class faced years of costly and risky appellate litigation against Defendants with ultimate success far from certain.  It is also possible a jury could have found no liability or damages.  Plaintiff faced the further risk it would be unable to collect on a sizable judgment against Defendants.

94.     As a result of this Settlement, thousands of Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement.  These risk factors also support Class Counsel's request for 17% of the Settlement Fund.

**D. The Risk of Contingent Class Action Litigation Supports the Requested Fee Award**

95.     As set forth in the accompanying Fee Memorandum, a determination of a fair fee should include consideration of the contingent nature of the fee, the financial burden by Class Counsel, and the difficulties overcome in obtaining the Settlement.

96.     This action was prosecuted by Class Counsel on an "at-risk" contingent fee basis. Class Counsel fully assumed the risk of an unsuccessful result.  Class Counsel has received no compensation for its services during the course of this Litigation and has incurred very significant expenses in litigating for the benefit of the Class.  Any fees or expenses awarded to Class Counsel

- 29 -

have always been at risk and are completely contingent on the result achieved. Because the fee to be awarded in this matter is entirely contingent, the only certainties from the outset were that there would be no fee without a successful result and such a result would be realized only after a lengthy and difficult effort.

97. Class Counsel's efforts were performed on a wholly contingent basis despite significant risk and in the face of determined opposition. Under these circumstances, Class Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. Under all circumstances present here, a 17% fee plus expenses is fair and reasonable.

98. There are numerous cases, including many handled by my firm, where class counsel in contingent fee cases such as this, after expenditure of thousands of hours of time and incurring significant out-of-pocket costs, have received no compensation whatsoever. The losses suffered by class counsel in other actions where insubstantial settlement offers were rejected, and where class counsel ultimately receives little or no fee, should not be ignored. Class Counsel knows from personal experience that, despite the most vigorous and competent of efforts, attorneys' success in contingent litigation is never assured.

99. Lawsuits such as this are expensive to litigate. Those unfamiliar with the efforts required to litigate class actions often focus on the aggregate fees awarded but ignore the fact that those fees fund enormous overhead expenses incurred during the course of many years of litigation, are taxed by federal and state authorities, are used to fund the expenses of other contingent cases prosecuted by Class Counsel, and help pay the monthly salaries of the firms' attorneys and staff.

## VIII. Conclusion

100. For all the foregoing reasons, Class Counsel respectfully requests the Court approve the Settlement and Plan of Allocation of Settlement proceeds; approve the fee and expense

- 30 -

application; award Class Counsel 17% of the Settlement Fund plus $624,814.54 in expenses, as well as the interest earned on both amounts at the same rate for the same period as that earned on the Settlement Fund until paid; and approve the award of $11,350 to Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of September, 2023, at Nashville, Tennessee.

s/ Christopher M. Wood

CHRISTOPHER M. WOOD

4860-9918-8854.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)


Email:  cwood@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Lohr Alexandria Beck**
  lohr.beck@kslaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jack A. Gephart**
  jgephart@rgrdlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Brandon R. Keel**
  bkeel@kslaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,jkarsten@barrettjohnston.com,elusnak@barrettjohnston.com,jmartin@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **W. Travis Parham**
  travis.parham@hklaw.com,shelli.dimarco@hklaw.com,pat.grace@hklaw.com,EWard@KSLAW.com

- **Ronni D. Solomon**
  rsolomon@kslaw.com

- **Christopher Stewart**
  cstewart@rgrdlaw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis(

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)